| | |
|---|---|
| 1 | Sa'id Vakili, Esq. (SBN: 176322) |
| 2 | vakili@vakili.com |
| | Craig McLaughlin, Esq. (SBN: 182876) |
| 3 | craig@vakili.com |
| 4 | Jason C. Ming, Esq. (SBN: 219745) |
| | jason@vakili.com |
| 5 | Stephen P. Hoffman, Esq. (SBN: 287075) |
| 6 | hoffman@vakili.com |
| | **VAKILI & LEUS, LLP** |
| 7 | 3701 Wilshire Boulevard, Suite 1135 |
| 8 | Los Angeles, California  90010-2822 |
| 9 | **213/380-6010**   |   Fax: 213/380-6051 |
| 10 | |
| | *Counsel for Plaintiff DNA Specialty, Inc.* |

### UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **DNA SPECIALTY, INC.**, a California Corporation, | **CASE NO.: 2:25-cv-10379** |
| Plaintiff, | **COMPLAINT FOR DESIGN PATENT INFRINGEMENT; TRADE DRESS INFRINGEMENT OF SPIRAL-SPOKE WHEEL AND 52-SPOKE WHEEL; UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW** |
| v. | |
| **SHARKROAD, INC.**, a California Corporation and DOES 1-50, Inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## NATURE OF THE ACTION

Plaintiff DNA Specialty, Inc. ("Plaintiff" or "DNA") files this complaint for a civil action against defendant Sharkroad, Inc. ("Sharkroad") and DOES 1-50, inclusive, (collectively "Defendants") for infringement of U.S. Design Patent No. D1,086,968, trade dress infringements of DNA's spiral-spoke motorcycle wheel and DNA's 52-spoke motorcycle wheel, unfair competition under the common law of California, and alleges as follows:

## GENERAL ALLEGATIONS

Some or all of the allegations contained in the following numbered paragraphs are alleged on information and belief of DNA: 4, 8, 9, 12, 30, 34, 35, 39, 40, 41, 45, 46, 47, 51, and 53.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of the federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, including specifically 35 U.S.C. §§ 271 and 289, under the Lanham Act 15 U.S.C. § 1025(a) and under the common law of California. This Court has jurisdiction over the state law claims under 28 U.S.C. § 1338(b) and 1367(a).

2. This Court has both general and specific personal jurisdiction over Sharkroad because Sharkroad is based in California, where it is incorporated and has a registered agent for service of process in this District. Additionally, Sharkroad has facilities in Los Angeles and Anaheim, California, has engaged in infringing acts and unfair competition within this District that give rise to this suit, and has established minimum contacts with this forum, ensuring that exercising jurisdiction over Sharkroad does not violate traditional notions of fair play and substantial justice.

3. Sharkroad regularly conducts or solicits business in this District and has committed one or more acts of patent infringement, trade dress infringement, and unfair competition in this District. For example, Sharkroad has, through its website advertisements, offered to sell and has sold motorcycle wheels that include spiral wheel spokes (the "Accused Spiral-Spoke Products") and 52-spoke wheels (the "Accused 52-Spoke Products"), (collectively the "Accused Products").

4. DNA is informed and believes, and on that basis alleges, that Sharkroad has a registered business address in this District, owns, stores, and distributes its products, including the Accused Products, within this District. According to the California Secretary of State website, Sharkroad is registered as a California corporation, having initially filed with the Secretary of State on or around August 25, 2023. The agent for service of process is currently listed as Xingbo Yau ("Yau"), with an address in this District. On information and belief, Yau is the CEO of Sharkroad.

5. Venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## PARTIES

6. DNA was established over 34 years ago in Los Angeles by James and Sun Choi. Its main address is 200 W. Artesia Blvd., Compton, California 90220. A major part of DNA's business involves manufacturing and wholesale distribution of high-end aftermarket automotive and motorcycle wheels and accessories, including wheels protected by DNA's trade dress in its spiral-spoke wheels and its 52-spoke wheels.

7. Sharkroad has offices in California and is engaged in at least manufacturing, distributing, selling, advertising, and/or offering for sale, aftermarket motorcycle wheels, and is in competition with DNA.

8. DNA is unaware of the true names, identities, and capacities of DOES 1-50, inclusive. Therefore, DNA is suing these defendants under the fictitious designations of

1  DOES 1-50, inclusive.  DNA is informed and believes that each of the DOE defendants
2  is responsible in some manner for the acts and omissions alleged in this complaint and
3  proximately caused damage to DNA.  DNA therefore sues these defendants by such
4  fictitious names and will amend this complaint to state their true names and capacities
5  after same has been ascertained.

6        9.  DNA is informed and believes, and thereon alleges, that in doing the acts alleged herein, each of the Defendants was the agent, principal, employee, representative, or alter ego of one or more of the other defendants, and acted with the other defendants' knowledge, consent, and approval, and within the course and scope of their agency or representative capacity.  As such, each of the Defendants is responsible for the actions of the other Defendants, as alleged herein.

## DNA'S DESIGN PATENT

      10.  DNA is the owner of U.S. Design Patent No. D1,086,968 ("the '968 Patent") depicting a novel spiral-spoke design.  The application that ripened into the '968 Patent was filed on April 19, 2023.  The '968 Patent was duly issued on August 5, 2025.  Attached hereto as **Exhibit "1"** is a true and correct copy of the '968 Patent.

      Figure 2 of the '968 Patent is depicted below here:



      11.  The '968 Patent results from DNA's decades-long investment of time and resources in research and development in the high-end aftermarket motor vehicle wheel marketplace.

      12.  DNA is informed and believes, and thereon alleges, that Sharkroad avoided such research and development by copying DNA's products instead.  The Accused Spiral-Spoke Products are motorcycle wheels that include spokes that are substantially similar to, if not slavish copies of, the subject of the '968 Patent.  An image of an Accused Spiral-Spoke Product as advertised on the Sharkroad website is depicted immediately

below:

[Screenshot of Sharkroad website showing a chrome spiral-spoke motorcycle wheel product page with navigation: FORUM, AUSSIE RIDERS!, SHOP BY BRAND, SLIP ON MUFFLERS, EXHAUST SYSTEMS, HARLEY WHEELS, ACC & PARTS, SUPPORT. Price: $599.00. Free 15% OFF.]

13. At least as early as June 2025, DNA became aware that Sharkroad was advertising and selling spiral-spoked motorcycle wheels as Sharkroad products. DNA's counsel thereafter transmitted a letter placing Sharkroad on notice of the imminent issuance as a patent of the design now embodied in the '968 Patent. The letter included a copy of the Notice of Allowance from the USPTO and the application number from which Sharkroad could and should have monitored publicly available information at the USPTO for issuance of the patent. **Exhibit "2"**, herewith, is a true and correct copy of the notification letter sent on June 16, 2025, to Sharkroad's CEO and agent for service of process.

14. The letter also notified Sharkroad of DNA's trade dress rights in DNA's "spiral spoke" motorcycle wheels and demanded that Sharkroad immediately cease and desist advertising, offering for sale and selling the Accused Spiral-Spoke Products, which are confusingly similar to DNA's spiral-spoke motorcycle wheels and infringe on DNA's

trade dress rights.

## DNA'S TRADE DRESS – SPIRAL-SPOKE WHEEL

15. In early 2023, DNA began marketing its own unique and distinctive spiral-spoked motorcycle wheel. DNA invested thousands of dollars marketing its distinctive spiral-spoke wheels and advertised them at trade shows such as SEMA.

16. DNA's trade dress in the spiral-spoke wheels include a rim for a motorcycle tire, a hub, and spokes of a spiral design connecting, in cross-lace fashion, the rim to the opposing ends of the hub. A DNA spiral-spoke wheel is shown below.

**DNA's Spiral-Spoke Wheel**



17. DNA developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, spiral-spoke motorcycle wheels. As of the date of first use in commerce of its spiral-spoke motorcycle wheels, DNA was the only source advertising, promoting, and selling such wheel designs.

18. DNA's spiral-spoke wheels are inherently distinctive, non-functional, and have acquired secondary meaning among purchasers.

19. The Accused Spiral-Spoke Products are confusingly similar to DNA's spiral-spoke wheel.

20. As of the date of this Complaint, Sharkroad has not responded to the cease-and-desist letter concerning the imminent issuance of the '968 Patent and DNA's trade dress in the spiral-spoke wheel.

## DNA'S TRADE DRESS – 52-SPOKE WHEEL

21. Prior to Sharkroad's unfair and infringing conduct concerning DNA's spiral-spoke motorcycle wheel, Sharkroad had begun unfairly trading off on the goodwill of a different product from DNA, namely, DNA's 52-spoke motorcycle wheel.

22. In approximately 2001, DNA began marketing its distinctive 52-spoke motorcycle wheel. DNA invested thousands of dollars marketing its 52-spoke wheels and advertised them at trade shows SEMA, AIME Expo, V-Twin Expo, Dealer Expo, and numerous independent trade shows.

23. DNA's trade dress in its 52-spoke wheels include a rim for a motorcycle tire, a hub, and 52 straight spokes, connecting, in cross-lace fashion, the rim to opposing ends of the hub.

 

**DNA's 52-Spoke Wheel**          **Sharkroad's 52-Spoke Wheel**

24. DNA developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, 52-spoke motorcycle wheels. As of the date of first use in commerce of its 52-spoke motorcycle wheels, DNA was the only source advertising, promoting, and selling such wheel designs.

25. DNA's 52-spoke wheels are inherently distinctive, non-functional, and have acquired secondary meaning among purchasers.

26. At least as early as May 2024, DNA became aware that Sharkroad was advertising, offering for sale, and selling 52-spoke motorcycle wheels as Sharkroad products.

27. On May 15, 2024, DNA's counsel transmitted a letter to Xingbo Yau, Sharkroad's CEO, demanding that Sharkroad cease and desist infringing on DNA's trade dress in its 52-spoke motorcycle wheels. **Exhibit "3"**, herewith, is a true and correct copy of said letter.

28. The Accused 52-Spoke Products are confusingly similar to DNA's 52-spoke wheel.

29. As of the date of this Complaint, Sharkroad has not responded to the May 15, 2024 letter sent by DNA's counsel.

**FIRST CAUSE OF ACTION**
(*Against All Defendants & DOES 1-50, Inclusive*)
**Infringement of the '968 Patent**

30. DNA incorporates by reference each allegation of Paragraphs 1 through 20.

31. DNA is the owner by assignment of all right, title, and interest to the '968 Patent.

32. Notwithstanding DNA's rights, Sharkroad, without permission or authorization, has imported, offered for sale, and/or sold certain aftermarket motor vehicle wheels, including at least the Accused Spiral-Spoke Products, along with any other similarly configured products, which each infringe on the claim of the '968 Patent.

33. To an ordinary observer who pays the usual attention of a purchaser, the spiral-spokes included in Accused Spiral-Spoke Products are substantially similar to the non-functional ornamental design of the spiral-spoke design claimed in the '968 Patent. This resemblance is such that it may deceive an ordinary observer, leading such person

to purchase an Accused Spiral-Spoke Product under the impression that it includes the spiral-spoke design claimed in the '968 Patent.

34.  DNA is informed and believes, and thereon alleges, that Sharkroad, without permission or authorization, has directly infringed on and continues to directly infringe on the '968 Patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale, and/or using the Accused Spiral-Spoke Products within the United States.

35.  Sharkroad was duly notified of the imminent issuance of the '968 Patent and failed to investigate its issuance. DNA is informed and believes, and thereon alleges, that since the date of issuance, Sharkroad has knowingly, irresponsibly, and willfully infringed on the '968 Patent by continuing to manufacture, import, use, sell, and/or offer for sale the Accused Spiral-Spoke Products.

36.  As a result of Sharkroad's infringement of the '968 Patent, DNA has suffered and will continue to suffer damages. DNA is entitled to recover damages adequate to compensate for this infringement, but in no event less than a reasonable royalty, as permitted under 35 U.S.C. § 284, as well as all remedies for design patent infringement allowed under 35 U.S.C. § 289.

37.  Sharkroad's infringement of the '968 Patent is causing irreparable harm for which DNA has no adequate remedy at law unless Sharkroad is preliminarily and permanently enjoined by this Court. DNA is entitled to a permanent injunction against further infringement of the '968 Patent under 35 U.S.C. § 284.

38.  In light of the allegations above, including Sharkroad's willful infringement of the '968 Patent, this case is exceptional under 35 U.S.C. § 285, entitling DNA to enhanced damages and its costs and attorneys' fees incurred in prosecuting this action.

# SECOND CAUSE OF ACTION
***(Against All Defendants & DOES 1-50, Inclusive)***
**Violation of 15 U.S.C. § 1025(a)**
**Trade Dress Infringement of DNA's Spiral-Spoke Wheel**

39. DNA incorporates by reference as though fully set forth, those allegations from paragraphs 1 through 38, inclusive, of this Complaint as though fully stated above.

40. Sharkroad's activities have the tendency to confuse and deceive and, on information and belief, have already confused and deceived customers and potential customers for DNA products into believing that Sharkroad's products originate with, is sponsored, endorsed, or licensed by, or is otherwise associated with DNA. DNA is informed and believes, and thereon alleges, that customers are, and are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Sharkroad's goods.

41. DNA is informed and believes, and thereon alleges, that Sharkroad has obtained profits as a result of its acts of infringement, false designation of origin, and unfair competition, the precise amount of which is presently unknown, but which will be established, along with damages to DNA, according to proof.

42. By reason of the unlawful, deceptive, and wrongful manner in which Sharkroad has obtained these profits, Sharkroad is an involuntary trustee holding these profits in constructive trust for the benefit of DNA.

43. Sharkroad's infringing conduct was knowing and willful and, pursuant to 15 U.S.C. § 1117, DNA is entitled to treble damages and attorneys' fees.

44. Sharkroad's infringement of DNA's trade dress is causing irreparable harm for which DNA has no adequate remedy at law unless Sharkroad is preliminarily and permanently enjoined by this Court. DNA is entitled to such relief.

## THIRD CAUSE OF ACTION
***(Against All Defendants & DOES 1-50, Inclusive)***
**Violation of 15 U.S.C. § 1025(a)**
**Trade Dress Infringement of DNA's 52-Spoke Wheel**

45. DNA incorporates by reference as though fully set forth, those allegations from paragraphs 1 through 44, inclusive, of this Complaint as though fully stated above.

46. Sharkroad's activities have the tendency to confuse and deceive and, on information and belief, have already confused and deceived customers and potential customers for DNA products into believing that Sharkroad's product originates with, is sponsored, endorsed, or licensed by, or is otherwise associated with DNA. DNA is informed and believes, and thereon alleges, that customers are, and are likely to continue being mistaken or deceived as to the true source, origin, sponsorship, and affiliation of Sharkroad's goods.

47. DNA is informed and believes, and thereon alleges, that Sharkroad has obtained profits as a result of their acts of infringement, false designation of origin, and unfair competition, the precise amount of which is presently unknown, but which will be established, along with damages to DNA, according to proof.

48. By reason of the unlawful, deceptive, and wrongful manner in which Sharkroad has obtained these profits, Sharkroad is an involuntary trustee holding these profits in constructive trust for the benefit of DNA.

49. Sharkroad's infringing conduct was knowing and willful and, pursuant to 15 U.S.C. § 1117, DNA is entitled to treble damages and attorneys' fees.

50. Sharkroad's infringement of DNA's trade dress is causing irreparable harm for which DNA has no adequate remedy at law unless Sharkroad is preliminarily and permanently enjoined by this Court. DNA is entitled to such relief.

### FOURTH CAUSE OF ACTION
### (*Against All Defendants & DOES 1-50, Inclusive*)
### Unfair Competition Under California Common Law

51. DNA incorporates by reference as though fully set forth, those allegations from paragraphs 1 through 50, inclusive, of this Complaint as though fully stated above.

52. Sharkroad's acts also constitute acts of unfair competition under California common law, including, but not limited to, Sharkroad's sale of confusingly similar products. Such tortious conduct has unfairly exploited DNA's reputation in the market which has caused injury to the reputation and goodwill of DNA. As a direct and proximate result of Sharkroad's conduct, DNA has suffered damages, the precise amount of which is presently unknown, but which will be established according to proof.

53. DNA is informed and believes, and thereon alleges, that Sharkroad has committed the foregoing acts with the intention of depriving DNA of its legal rights, with oppression, fraud, or malice, and in conscious disregard of DNA's rights. DNA is therefore entitled to an award of exemplary damages, according to proof.

### PRAYER FOR RELIEF

WHEREFORE, DNA prays for judgment against Defendants and DOES 1-50, inclusive, and each of them, as follows:

a. The Court finds that Defendants have directly infringed on the '968 Patent and holds Defendants liable for this infringement;

b. The Court finds that Defendants' infringement of the '968 Patent has been and continues to be willful;

c. The Court issues a preliminary and permanent injunction against Defendants and their affiliates, subsidiaries, assignees, employees, agents, or anyone acting in privity or concert from infringing on the '968 Patent. This injunction includes prohibiting the making, offering to sell, selling, using, or importing into the United States products claimed in the '968

       Patent; and using or incorporating the design claimed in the '968 Patent until its expiration;

d. For an order requiring the destruction of all Accused Spiral-Spoke Products found to have infringed on DNA's rights and related advertising and promotional materials depicting such products;

e. For an accounting of Defendants' profits and an order that Defendants hold all such profits in constructive trust for the benefit of DNA;

f. The Court awards DNA its lost profits and/or the total profit made by Defendants from infringement of the '968 Patent under 35 U.S.C. § 289;

g. The Court awards DNA increased damages under 35 U.S.C. § 284 for Defendants' willful and deliberate infringement of the '968 Patent;

h. The Court declares that this is an exceptional case entitling DNA to its reasonable attorneys' fees and costs under 35 U.S.C. § 285;

i. The Court finds that Defendants have passed off or otherwise infringed on DNA's trade dress rights in **DNA's spiral-spoke wheels** under 15 U.S.C. § 1025(a);

j. The Court issues a preliminary and permanent injunction against Defendants and their affiliates, subsidiaries, assignees, employees, agents, or anyone acting in privity or concert from infringing DNA's trade dress rights in **DNA's spiral-spoke wheels**. This injunction includes prohibiting the making, advertising, promoting, marketing, displaying, offering to sell, selling, using, or importing into the United States the Accused Spiral-Spoke Products;

k. For an order requiring the destruction of all Accused Spiral-Spoke Products found to have infringed on DNA's rights and related advertising and promotional materials depicting such products;

l. For an accounting of Defendants' profits and an order that Defendants hold all such profits in constructive trust for the benefit of DNA;

m. The Court awards DNA its lost profits and/or Defendants' profits resulting from such violation, trebles the amount pursuant to 15 U.S.C. § 1117, and awards DNA its costs too;

n. The Court finds the violations by Defendants to be exceptional and awards DNA its attorneys' fees;

o. The Court finds that Defendants have passed off or otherwise infringed DNA's trade dress rights in **DNA's 52-spoke wheels** under 15 U.S.C. § 1025(a);

p. The Court issues a preliminary and permanent injunction against Defendants and their affiliates, subsidiaries, assignees, employees, agents, or anyone acting in privity or concert from infringing DNA's trade dress rights in **DNA's 52-spoke wheels**. This injunction includes prohibiting the making, offering to sell, selling, using, or importing into the United States the Accused 52-Spoke Products;

q. For an order requiring the destruction of all Accused 52-Spoke Products found to have infringed on DNA's rights and related advertising and promotional materials depicting such products;

r. For an accounting of Defendants' profits and an order that Defendants hold all such profits in constructive trust for the benefit of DNA;

s. The Court awards DNA its lost profits and/or Defendants' profits resulting from such violation according to proof, trebles the amount pursuant to 15 U.S.C. § 1117, and awards DNA its costs too;

t. The Court finds the violations by Defendants to be exceptional and awards DNA its attorneys' fees;

    u. The Court finds that Defendants committed unfair competition in violation of California Common Law and awards DNA damages according to proof, as well as exemplary damages;

    v. For an award of interest, including prejudgment interest, according to proof; and

    w. For any additional relief that the Court deems just and proper.

DATED: October 28, 2025          **VAKILI & LEUS, LLP**

By: /s/ *Sa'id Vakili*
Sa'id Vakili, Esq.
Craig McLaughlin
*Counsel for Plaintiff DNA Specialty, Inc.*

## DEMAND FOR JURY TRIAL

Pursuant to FRCP 38 and Local Rule 201, Plaintiff hereby demands a trial by jury of its claims to the extent authorized by law.

DATED: October 28, 2025                    VAKILI & LEUS, LLP


                                           By: /s/ *Sa'id Vakili*
                                           Sa'id Vakili, Esq.
                                           Craig McLaughlin
                                           *Counsel for Plaintiff DNA Specialty, Inc.*