R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant SHARKROAD, INC.

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DNA SPECIALTY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARKROAD, INC., a California Corporation and DOES 1-50, Inclusive,<br><br>Defendants. | **Case No: 2:25-cv-10379-MWC(RAOx)**<br><br>**DEFENDANT SHARKROAD, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>**Date:** March 13, 2026<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 6A<br>First Street U.S. Courthouse<br>Los Angeles, CA<br><br>**Hon. Michelle Williams Court**<br>**United States District Judge** |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. BRIEF STATEMENT OF FACTS..................................................................2

   A. The Original Complaint ................................................................................ 2

   B. The First Amended Complaint..................................................................... 3

III. ARGUMENT........................................................................................................4

   A. Legal Standard............................................................................................... 4

   B. Both Spoke Wheel Designs Are Inherently Functional as Pled..................... 4

      1. The 52 Cylindrical-Spoke Design Is Functional......................................... 5

      2. The Spiral-Spoke Design Is Also Functional ............................................. 6

   C. Plaintiff Fails to Adequately Plead "Secondary Meaning"............................ 7

      1. Whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer.......................................................... 8

      2. The degree and manner of advertising under the claimed trademark.......... 9

      3. The length and manner of use of the claimed trademark........................... 11

      4. Whether use of the claimed trademark has been exclusive ...................... 12

   D. Unfair Competition Claims Must Also Be Dismissed ................................ 13

IV. CONCLUSION .................................................................................................13

TROJAN LAW OFFICES
BEVERLY HILLS

# TABLE OF AUTHORITES

*Art Attacks Ink, LLC v. MGA Ent. Inc.*,
    581 F.3d 1138 (9th Cir. 2009).................................................................. 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 4

*Deckers Outdoor Corp. v. Costco Wholesale Corp.*,
    No. 2:25-CV-04174-MCS-AGR,
    2025 WL 3691819 (C.D. Cal. Sept. 22, 2025)........................................ 12

*In Re Rolf Dietrich*,
    91 U.S.P.Q.2d 1622 (T.T.A.B. 2009) .................................................... 5, 6

*Louis Vuitton Malltier v. Dooney & Burke, Inc.*,
    454 F.3d 108 (2d Cir. 2006)....................................................................... 8

*Marketquest Grp., Inc. v. BIC Corp.*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) ..................................................... 7

*McGurr v. N. Face Apparel Corp.*,
    No. 221CV00269SBPDX,
    2021 WL 4706984 (C.D. Cal. Aug. 27, 2021)......................................... 8

*Millennium Lab'ys, Inc. v. Ameritox, Ltd.*,
    817 F.3d 1123 (9th Cir. 2016).................................................................. 13

*Qualitex Co. v. Jacobson Prods. Co.*,
    514 U.S. 159, 115 S. Ct. 1300, 131 L. Ed. 2d 248 (1995) ................. 5, 6

*R & A Synergy LLC v. Spanx, Inc.*,
    2019 WL 4390564 (C.D. Cal. May 1, 2019) .............................. *passim*

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) .................................................................................. 4, 7

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005)...................................................................... 7

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Sharkroad, Inc. ("Sharkroad") hereby moves to dismiss Plaintiff DNA Specialty, Inc.'s ("Plaintiff" or "DNA") trade dress claims in the First Amended Complaint (Dkt. #12, "FAC").

## I. INTRODUCTION

In the FAC, Plaintiff alleges two counts of trade dress infringement based on two *unregistered* designs for motorcycle rims described as the "spiral-spoke wheel" (FAC, ¶ 16) and the "52 cylindrical-spoke wheel" (*id.*, ¶ 23). Plaintiff also alleges a related common law unfair competition claim based on such trade dress. (*Id.*, ¶¶ 51-53.) These claims must be dismissed under Rule 12(b)(6) because (1) Plaintiff fails to allege even the bare minimum to state a plausible claim that the rim designs qualify as protectable trade dress. As both spiral-spoke wheel and the 52 cylindrical-spoke wheels are inherently functional, Plaintiff must allege sufficient facts to give Sharkroad notice of how the designs are non-functional. Even if Plaintiff could explain how the rim designs are non-functional, Plaintiff must still sufficiently allege that they have acquired secondary meaning.

Both trade dress claims fail because Plaintiff pleads only formulaic and conclusory assertions that its motorcycle wheels are "distinctive," "non-functional," and have acquired "secondary meaning," without alleging facts sufficient to make those conclusions plausible. *See, e.g.*, *R & A Synergy LLC v. Spanx, Inc.*, 2019 WL 4390564, at 7 (C.D. Cal. May 1, 2019) ("Plaintiff makes only conclusory statements that the [products] have acquired secondary meaning and distinctiveness … without explaining how any of the factors listed above are satisfied."). As in *R & A Synergy*, Plaintiff does not allege how consumers have been taught to perceive the claimed design as a source identifier rather than as a product feature, nor does it plead facts overcoming the functional nature of the design or the extensive third-party use of similar designs in the relevant market. Given that spoke-wheel designs are not distinctive considering their common use in the industry, Plaintiff must plead facts

TROJAN LAW OFFICES
BEVERLY HILLS

showing that customers recognize the "spiral" design and the "52 cylindrical" design as *source-identifying* – yet there are *no allegations that consumers would plausibly recognize those designs as belonging exclusively to Plaintiff*.

In line with *R & A Synergy* and like cases, such pleading deficiencies require dismissal under Rule 12(b)(6).

## II.   BRIEF STATEMENT OF FACTS

### A.   The Original Complaint

Plaintiff filed a complaint on October 28, 2025 alleging two claims for trade dress infringement based on its motorcycle rim designs. (Dkt. 1.) First, Plaintiff alleged "trade dress in the spiral-spoke wheels include a rim for a motorcycle tire, a hub, and spokes of a spiral design connecting, in cross-lace fashion, the rim to the opposing ends of the hub" (below left):


DNA's Spiral-Spoke Wheel


DNA's 52-Spoke Wheel

(*Id.*, ¶ 16.) Second, Plaintiff alleged "trade dress in its 52-spoke wheels [which] include a rim for a motorcycle tire, a hub, and 52 straight spokes, connecting, in cross-lace fashion, the rim to opposing ends of the hub" (above right). (*Id.*, ¶ 23.)

Since Sharkroad became aware of the complaint before it was served, Sharkroad sent a letter to DNA on November 12, 2025 demanding that it withdraw

the complaint because of myriad deficiencies on the face of the complaint, noting, in particular, the utter conclusory statements about non-functionality and secondary meaning.

### B. The First Amended Complaint

No doubt recognizing that its complaint would fail under the scrutiny of Rule 12(b)(6), Plaintiff amended its complaint on December 4, 2025. (Dkt. 12.) In the FAC, however, Plaintiff did not add meaningful facts to properly plead its alleged trade dress in the wheel designs. Plaintiff made only made trivial revisions, mainly adding the generic descriptors "fat" or "cylindrical", as exemplified below with underlining added to identify the change:

| Original Complaint (Dkt. 1) | First Amended Complaint (Dkt. 12) |
|---|---|
| "trade dress infringements of DNA's spiral-spoke motorcycle wheel and DNA's 52-spoke motorcycle wheel." ("Nature of Action" at p. 2, lines 5-7) | "trade dress infringements of DNA's spiral-spoke motorcycle wheel and DNA's 52 cylindrical-spoke motorcycle wheel." ("Nature of Action" at p. 2, lines 5-7) |
| "52-spoke wheels (the 'Accused 52-Spoke Products')." (¶ 3) | "wheels that include 52 fat, cylindrical-spokes (the 'Accused 52 Cylindrical-Spoke Products')." (¶ 3) |
| "including wheels protected by DNA's trade dress in its spiral-spoke wheels and its 52-spoke wheels." (¶ 6) | "including wheels protected by DNA's trade dress in its fat spiral-spoke wheels and in its fat cylindrical-spoke wheels." (¶ 6) |
| "spokes of a spiral design connecting, in cross-lace fashion, the rim to the opposing ends of the hub." (¶ 16) | "52 fat, ribbon-style spokes of a spiral design connecting, in radial lace fashion, alternately to the rim and to the opposing ends of the hub." (¶ 16) |
| "DNA was the only source advertising, promoting, and selling such wheel designs." (¶ 17) | "DNA believes it was the only source advertising, promoting, and selling such wheel designs." (¶ 17) |
| "a rim for a motorcycle tire, a hub, and 52 straight spokes, connecting, in cross-lace fashion, the rim to opposing ends of the hub." (¶ 23) | "a rim for a motorcycle tire, a hub with opposing ends, and 52 fat, straight, cylindrical spokes, connecting, in radial lace fashion, alternately to the rim and to opposing ends of the hub." (¶ 23) |

-3-

| DNA'S TRADE DRESS – 52-SPOKE WHEEL (Section Heading at p. 7) | DNA'S TRADE DRESS – 52 CYLINDRICAL-SPOKE WHEEL (Section Heading at p. 7) |
|---|---|
| "DNA's 52-spoke wheels are inherently distinctive, non-functional, and have acquired secondary meaning." (¶ 25) | "DNA's 52 cylindrical-spoke wheels are inherently distinctive, non-functional, and have acquired secondary meaning." (¶ 25) |

As discussed below, Plaintiff still fails to plead even bare facts to plausibly state the claims for trade dress infringement.

## III. ARGUMENT

### A. Legal Standard

A complaint must plead sufficient factual matter to state a plausible claim for relief; "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *R & A Synergy LLC v. Spanx, Inc.*, *supra*, *2019 WL 4390564, at 2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Since trade dress is enforceable only if it is protectable, to state a claim for trade dress infringement under § 43(a) of the Lanham Act, a plaintiff must plausibly allege that the asserted trade dress is **(1) non-functional; (2) distinctive or has acquired secondary meaning; and (3) likely to cause confusion**. *Id.* at *3*.

Here, Plaintiff's trade dress designs are not registered, and are not entitled to any presumption of validity. Thus, to plead a claim for trade dress infringement, Plaintiff must initially plead sufficient facts to support its claim that the "spiral-spoke wheel" and the "52 cylindrical-spoke wheel" trade dress are protectable because they are non-functional and that they have acquired secondary meaning.

### B. Both Spoke Wheel Designs Are Inherently Functional as Pled

Functional product design features cannot be protected under a Lanham Act trade dress theory. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 34(2001). The Supreme Court teaches that "[t]he functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a

-4-

useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164, 115 S. Ct. 1300, 1304, 131 L. Ed. 2d 248 (1995)

Thus, for Plaintiff to state a claim that its rim designs qualify as protectable trade dress, Plaintiff must allege specific facts to plausibly allege that the design features are not functional. The Supreme Court teaches that "a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co.*, 115 S. Ct. at 1304 (internal quotations and citation omitted). The spoke wheel designs are inherently functional because they serve an obvious function and affect the cost or quality of the rims.

### 1. The 52 Cylindrical-Spoke Design Is Functional

Plaintiff's own description of the 52 cylindrical-spoke motorcycle wheel establishes that the design is functional. Plaintiff describes it as comprising "a hub with opposing ends, and 52 fat, straight, cylindrical spokes, connecting, in radial lace fashion, alternately to the rim and to opposing ends of the hub." (FAC, ¶ 23.) These kinds of features are functional as the TTAB explained in *In Re Rolf Dietrich*:

> A bicycle wheel generally comprises a tire, a metal rim to retain the tire, and spokes under tension supporting the rim and connecting the rim to a hub in the center of the wheel. The spokes are laced, either radially or tangentially, around the rim to corresponding holes around the perimeter of flanges on opposing sides of the hub. "In order for a spoke wheel to work, spokes connected to one hub flange have to pull the rim to the left with the same force that spokes connected to the [other] hub flange pull the rim to the right -- when this condition prevails, you have a tensioned spoked wheel that works."

*In Re Rolf Dietrich*, 91 U.S.P.Q.2d 1622 (T.T.A.B. 2009) (citation omitted). The TTAB rejected the applicant's request for trade dress protection for such a wheel spoke design because "[t]he applied-for design is dictated by the underlying

1 functional aspects of the physical design of applicant's wheels, which clearly 'affect
2 the quality' of applicant's bicycle wheels. The spokes in the wheel are laced that way
3 because the wheel works better that way, notwithstanding that the resulting pattern
4 when viewed from a certain angle may also happen to have visual symmetry or
5 appeal." *Id*.

6 Here, just as with a bicycle wheel in *In Re Rolf Dietrich*, metal spokes in a
7 motorcycle wheel are cylindrical by necessity, as cylindrical spokes are required to
8 bear load and distribute stress. That is why all standard bicycle wheels have
9 cylindrical spokes. Further, it is well understood that the number of spokes directly
10 affects wheel stability; the greater the number of spokes, the more stable and
11 load-bearing the wheel. Plaintiff's rim designs are defined by the number, shape,
12 and arrangement of the spokes that provide strength and stability for the rim, which
13 is their very purpose. Hence, Plaintiff cannot claim that the spokes as pled are
14 protected because doing so would improperly remove a critical functional feature of
15 motorcycle wheels from the competitive marketplace. That is the antithesis of
16 trademark law as explained by the Supreme Court in *Qualitex Co., supra,* and any
17 proposed amendment would be futile.

### 2. The Spiral-Spoke Design Is Also Functional

19 Likewise, Plaintiff's own description of the spiral-spoke configuration fairs no
20 better because it is functional. Twisting or spiraling metal spokes inherently
21 strengthens the wheel, distributes load, and enhances durability—precisely the type
22 of utilitarian advantage that *R & A Synergy* held defeats trade dress protection. As
23 that court explained: "Functional features are those that 'constitute the actual benefit
24 that the consumer wishes to purchase, as distinguished from an assurance that a
25 particular entity made, sponsored, or endorsed a product.'" *Id.* at *5 (citation
26 omitted).

27 Protecting a spiral-spoke configuration would grant Plaintiff a monopoly over
28 a mechanically advantageous wheel structure, a result the court in *R & A Synergy*

TROJAN LAW OFFICES
BEVERLY HILLS

1 expressly warned against: "The Lanham Act 'does not exist to reward manufacturers
2 for their innovation in creating a particular device; that is the purpose of the patent
3 law and its period of exclusivity.'" *Id.* at *5 (quoting *TrafFix Devices, Inc.*, *supra*,
4 532 U.S. at 34). Accordingly, both spoke designs are functional and unprotectable
5 as trade dress.

### C. Plaintiff Fails to Adequately Plead "Secondary Meaning"

Even if the spoke designs are not inherently functional, Plaintiff has still failed to adequately plead that they have acquired sufficient "secondary meaning" to be protectable. Plaintiff merely alleges—without supporting facts—that "DNA's spiral-spoke wheels are inherently distinctive, non-functional, and have acquired secondary meaning among purchasers." (FAC, ¶ 18.) It makes the same claim about the 52 cylindrical-spoke wheels. (*Id.*, ¶ 25.) These conclusory allegations are defective on their face. *R & A Synergy*, *supra*, 2019 WL 4390564, at *7 ("Assuming as true all allegations in the FAC, Plaintiff has not sufficiently alleged that its purported trade dress in the entirety of the Sleevey product line maintains a "secondary meaning" or is "inherently distinctive." Plaintiff makes only conclusory statements that the Sleevey products have acquired secondary meaning and distinctiveness, … without explaining how any of the factors listed above are satisfied.").

Here, to determine whether a product's trade dress has acquired secondary meaning, courts will consider: "**(1)** whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, **(2)** the degree and manner of advertising under the claimed trademark, **(3)** the length and manner of use of the claimed trademark, and **(4)** whether use of the claimed trademark has been exclusive." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1262 (S.D. Cal. 2018) (internal quotation marks omitted; emphasis added) (quoting *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005)).

-7-

Applying these four factors to the spoke wheel trade dress, Plaintiff has failed to state a plausible claim that the trade dress has acquired the necessary secondary meaning to maintain a claim for trade dress infringement.

### 1. Whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer

The only allegation that Plaintiff makes about whether actual purchasers of its rims associate the spoke designs with DNA was to allege that "DNA developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, spiral-spoke motorcycle wheels" (FAC, ¶ 17) and "as the source of high-quality, 52 cylindrical-spoke motorcycle wheels." (*id*., ¶ 24). Even if this is taken at face value, it does not support secondary meaning.

The spokes of Plaintiff's designs—whether they are "spiral," "fat," "cylindrical"— are merely geometric features of the rim. As one Central District of California court has noted in a similar case, a threadbare allegation that a basic geometric shape has achieved secondary meaning is not enough:

> To begin, Plaintiff still seeks trademark protection for a basic geometric shape. While there is no prohibition on seeking protection for shapes, as the Court previously noted, "[b]asic geometric shapes ... are not protectable as inherently distinctive." *Louis Vuitton Malltier v. Dooney & Burke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006). Thus, Plaintiff must allege that his Round Atom has achieved secondary meaning. However, Plaintiff merely alleges that the "reputation associated with the Round Atom, and its secondary meaning, is significant," and that the Round Atom "is an indicator of source, is strong, fanciful, non-functional, distinctive, and inherently distinctive." … "Such general allegations of secondary meaning or distinctiveness are inadequate" to state a plausible trademark claim.

*McGurr v. N. Face Apparel Corp.*, No. 221CV00269SBPDX, 2021 WL 4706984, at *3 (C.D. Cal. Aug. 27, 2021) (internal citations omitted).

## 2. The degree and manner of advertising under the claimed trademark

As Plaintiff cannot plausibly allege that its spoke wheel designs are distinctive given widespread third-party use, Plaintiff is required to plead specific source-identifying advertising to show secondary meaning. Yet, Plaintiff merely alleges that "DNA invested thousands of dollars marketing its distinctive spiral-spoke wheels and advertised them at trade shows such as SEMA." (FAC, ¶ 15.) Similarly, it alleges "DNA invested thousands of dollars marketing its 52-cylindrical spoke wheels and advertised them at trade shows SEMA, AIME Expo, VTwin Expo, Dealer Expo, and numerous independent trade shows." (*Id.*, ¶ 22.) However, Plaintiff fails to allege that its advertising promoted the spoke designs as source identifying feature on its own. This is fatal to its claims.

In *R & A Synergy*, the court explained:

> Plaintiff does allege that the Sleevey product line has generated over $5.8 million in revenue, ... and that Sleevey products have been worn by celebrities, showcased at trade shows, and featured in magazines… However, while evidence of continued and widespread sales or advertising may suggest secondary meaning, … such evidence of sales is not dispositive and "does not in itself create legally protectable rights" in the product being sold, .... Without more, all Plaintiff has alleged is that Plaintiff has successfully sold its Sleevey products to date, which is insufficient to equate any "secondary meaning" about any feature of the Sleevey products with the Sleevey brand. Indeed, "[t]he test of secondary meaning is the effectiveness of the effort to create it," not merely the effort to sell the product generally....**Plaintiff has not alleged that it sufficiently urged consumers to associate any particular feature of the Sleevey products with the Sleevey brand, other than by promoting the general design and purpose of sleeved undergarments in its advertisements.**

*R & A Synergy*, 2019 WL 4390564, at *7 (internal citations omitted; emphasis added). Plaintiff's allegations here are even more deficient than in *R & A Synergy*.

-9-

All Plaintiff has alleged here is that it has spent a few "thousands of dollars marketing" and featured its wheels at a handful of tradeshows, which is insufficient to state a claim that its spiral spoke design has acquired "secondary meaning".

Indeed, it is especially necessary for Plaintiff to allege specific facts that it has advertised the spoke designs as source-identifying trade dress because spoke wheels are common in the industry. As the court in *R & A Synergy* noted, product designs that are common in the industry are generic and unprotectable: "[G]eneric product designs are unprotectible even upon a showing of secondary meaning." *R & A Synergy*, 2019 WL 4390564, at *4 (citations omitted). Here, Plaintiff does not plead facts showing that the spoke wheel designs are uncommon in the motorcycle wheel market.

Further, the *R & A Synergy* court explained that where a design is "so common in the industry that it cannot be said to identify a particular source", specific allegations are required to explain how advertising overcame that commonness: "The test of secondary meaning is the effectiveness of the effort to create it, not merely the effort to sell the product generally." *Id.* at *7*. The court emphasized that secondary meaning requires facts showing that consumers associate the design with a single source, not merely that the product has been sold or promoted: "The primary inquiry of the secondary meaning analysis is directed towards the consumer's attitude about the mark in question: does it denote to him a single thing coming from a single source?" *Id.* (internal quotation marks omitted).

Here, Plaintiff does not allege facts showing that purchasers view the spoke wheel designs as identifying DNA as the source. Assertions that Plaintiff "invested thousands of dollars" in marketing or attended trade shows are insufficient under *R & A Synergy*, which held that "such evidence of sales is not dispositive and 'does not in itself create legally protectable rights.'" *Id.* (citation omitted). Absent allegations that Plaintiff's advertising taught consumers to associate DNA's spokes specifically

-10-

with DNA as a **source indicator**, the secondary meaning allegations do not support the trade dress claims.

In short, Plaintiff has not alleged that it sufficiently advertised the spokes such that consumers would recognize the spiral design or the 52 cylindrical design as the DNA brand. Based on its allegations in the FAC, Plaintiff's promotion of the general design of the wheels in its advertisements is not enough to plausibly claim secondary meaning.

### 3. The length and manner of use of the claimed trademark

Plaintiff alleges that "[i]n approximately 2001, DNA began marketing its distinctive 52 cylindrical-spoke motorcycle wheel." (FAC, ¶ 22.) However, there are no allegations regarding how it used the 52 cylindrical-spoke design as its trade dress; the nature and scope of that use (*e.g.*, whether the use of it as trade dress was high-volume and long-term); whether consumers or the public recognized the design as trade dress (*e.g.*, whether Plaintiff ever received unsolicited media coverage or whether the 52 cylindrical-spoke motorcycle wheel has significant sales success). *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) ("Other circuits have explicitly held that extensive use alone cannot establish secondary meaning.…Our own cases have suggested that secondary meaning requires more than extensive use alone.").

By contrast, in cases where extensive use was found to be persuasive of secondary meaning, the relevant facts in those cases were highly detailed and specific. For example, in *Deckers Outdoor Corp. v. Costco Wholesale Corp.*, a Central District of California court found the complaint to be sufficient where the Plaintiff pled that, over the course of 20 years, it had sold "millions of dollars' worth of UGG© Tasman, … and a consumer confusion survey showed "approximately thirty-five percent of survey respondents mistakenly believe that a third-party infringing product was authorized or affiliated with Plaintiff." *Deckers Outdoor Corp. v. Costco Wholesale Corp.*, No. 2:25-CV-04174-MCS-AGR, 2025 WL

-11-

3691819, at *4 (C.D. Cal. Sept. 22, 2025). The court found "[t]hese allegations, which the Court takes as true for purposes of this motion, raise an inference that actual purchasers associate the trade dress with Plaintiff; that there has been significant degree of advertising, including unsolicited media attention, of products bearing the trade dress…". None of that can be found in Plaintiff's complaint here regarding the 52 cylindrical-spoke motorcycle wheel.

The allegations regarding the spiral-spoked wheel are even weaker. Plaintiff alleges that "[i]n early 2023, DNA began marketing its own unique and distinctive spiral-spoked motorcycle wheel." (FAC, ¶ 15.) The allegation that the spiral-spoke design has acquired secondary meaning within three years of its launch is particularly implausible on its face, especially considering the absence of any other alleged facts regarding the degree and manner of advertising as discussed above.

The length and manner of use as pled do not support secondary meaning.

### 4. Whether use of the claimed trademark has been exclusive

Lastly, Plaintiff alleges that, "[a]s of the date of first use in commerce of its spiral-spoke motorcycle wheels, DNA believes it was the only source advertising, promoting, and selling such wheel designs." (FAC, ¶ 17.) It makes the same claim about the 52 cylindrical-spoke motorcycle wheel. (*Id.*, ¶ 24.) These bare allegations do not support an inference that Plaintiff's use of the spoke wheel designs has been exclusive. As discussed above, these functional designs have been used by third parties. Indeed, Plaintiff cannot in good faith claim exclusivity because spokes on motorcycle wheels has long been used in the industry as reflected in the listing of prior art cited in connection with Plaintiff's corresponding design patent for the wheel designs, which was submitted as Exhibit B to the complaint. (Dkt. 12-1, p. 22 of 31.) This is why Plaintiff revised the complaint to state that it "*believes* it was the only source advertising, promoting, and selling such wheel designs." (FAC, ¶ 17 (emphasis added.)

In sum, Plaintiff's trade dress claims for the alleged unregistered spoke wheel designs fail because it pleads only formulaic and conclusory assertions that its spoke-wheel designs are "distinctive," "non-functional," and has acquired "secondary meaning," without alleging facts sufficient to make those conclusions plausible. Critically, Plaintiff does not allege how consumers have been taught to perceive the claimed designs as a source identifier rather than as product features, nor does it plead facts overcoming the functional nature of the designs or the extensive third-party use of similar designs in the relevant market.

### D. Unfair Competition Claims Must Also Be Dismissed

The Ninth Circuit teaches that "trade dress infringement claims under the Lanham Act and unfair competition claims under California Business and Professions Code section 17200 are inextricably linked." *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016). Thus, for the same reasons discussed above, to the extent that Plaintiff's unfair competition claims are based on the trade dress allegations, they must also be dismissed.

### IV. CONCLUSION

For the foregoing reasons, the Court should GRANT the motion to dismiss without leave to amend.

Respectfully submitted,

By:

Dated: February 3, 2026

/s/R. Joseph Trojan
R. Joseph Trojan
Dylan C. Dang
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348
Attorneys for Defendant
SHARKROAD, INC.

-13-

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3, 2026, I filed the foregoing with the Court's CM/ECF system, which will cause it to be served electronically upon all counsel of record.

/s/R. Joseph Trojan
R. Joseph Trojan