| | |
|---|---|
| 1 | Sa'id Vakili, Esq. (SBN: 176322) |
| 2 | vakili@vakili.com |
| | Craig McLaughlin, Esq. (SBN: 182876) |
| 3 | craig@vakili.com |
| 4 | Jason C. Ming, Esq. (SBN: 219745) |
| | jason@vakili.com |
| 5 | Stephen P. Hoffman, Esq. (SBN: 287075) |
| 6 | hoffman@vakili.com |
| | **VAKILI & LEUS, LLP** |
| 7 | 3701 Wilshire Boulevard, Suite 1135 |
| 8 | Los Angeles, California 90010-2822 |
| 9 | **213/380-6010**   |   Fax: 213/380-6051 |
| 10 | |
| | *Counsel for Plaintiff DNA Specialty, Inc.* |

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| **DNA SPECIALTY, INC.**, a California Corporation, | CASE NO.: **2:25-cv-10379-MWC (RAOx)** |
| | [*Hon. Michelle Williams Court*] |
| Plaintiff, | **PLAINTIFF DNA SPECIALTY, INC.'S OPPOSITION TO DEFENDANT SHARKROAD, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| v. | |
| **SHARKROAD, INC.**, a California Corporation and DOES 1-50, Inclusive, | Date: March 13, 2026 |
| | Time: 1:30 P.M. |
| Defendants. | Place: Courtroom 6A |
| | First Street U.S. Courthouse |
| | 350 West 1st Street |
| | Los Angeles, CA 90012 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARD ................................................................................... 2

III. ARGUMENT ................................................................................................. 3

    A.  *DNA Plausibly Alleges Non-Functionality* ...................................... 3

        1.  *Spiral-Spoke Wheel: Non-Functionality Pled Sufficiently* ................. 5

        2.  *Cylindrical-Spoke Wheel: Non-Functionality Pled Sufficiently* .......... 6

    B.  *DNA Plausibly Alleged Secondary Meaning* ................................... 7

        1.  *Secondary Meaning Adequately Pled for Spiral-Spoke Wheel* ........... 8

        2.  *Secondary Meaning Adequately Pled for Cylindrical-Spoke Wheel* ... 9

    C.  *Sharkroad's Motion Relies Heavily on One Unpublished Case That Is Readily Distinguishable from This Action.* ................................................ 10

    D.  *Sharkroad's Motion Improperly Swerves into a Factual Analysis of Secondary Meaning* ...................................................................... 11

    E.  *The Unfair Competition Claim Survives* ...................................... 12

IV. LEAVE TO AMEND .................................................................................. 13

V.  CONCLUSION ........................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*
944 F.2d 1446. (9th Cir. 1991) ................................................................ 13

*Adidas Am., Inc. v. Skechers USA, Inc.*
890 F.3d 747 (9th Cir. 2018) ..................................................................... 2

*Amfac Mtg. Corp. v. Arizona Mall of Tempe*
583 F.2d 426 (9th Cir. 1978) ..................................................................... 9

*Art Attacks Ink, LLC v. MGA Entm't Inc.*
581 F.3d 1138 (9th Cir. 2009) ................................................................ 2, 8

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ................................................................................... 2

*Audio Fid., Inc. v. High Fid. Recordings, Inc.*
283 F.2d 551 (9th Cir. 1960) ..................................................................... 9

*Cleary v. News Corp.*
30 F.3d 1255 (9th Cir. 1994) ................................................................... 13

*Clicks Billiards, Inc. v. Sixshooters, Inc.*
251 F.3d 1252 (9th Cir. 2001) ................................................................ 3, 7

*Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*
2024 U.S. Dist. LEXIS 153085 (C.D. Cal. Aug. 26) ................................. 6

*Eminence Capital, LLC v. Aspeon, Inc.*
316 F.3d 1048 (9th Cir. 2003) ................................................................. 13

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*
826 F.2d 837 (9th Cir. 1987) ............................................................ 3, 6, 7

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*
481 F.Supp.3d 941 (2020) ......................................................................... 3

*Interstellar Starship Servs. Ltd. v. Epix, Inc.*
184 F.3d 1107 (9th Cir. 1999) .......... 12

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*
68 F.4th 1203 (9th Cir. 2023) .......... 9

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*
150 F.3d 1042 (9th Cir. 1998) .......... 2

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
408 F.3d 596 (9th Cir. 2005) .......... 12

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir. 2001) .......... 2

*Lepton Labs, LLC v. Walker*
55 F. Supp. 3d 1230 (C.D. Cal. Sept. 23) .......... 8

*Levi Strauss & Co. v. Blue Bell, Inc.*
778 F.2d 1352 (9th Cir. 1985) .......... 12

*Marketquest Grp., Inc. v. BIC Corp.*
862 F.3d 927 (9th Cir. 2017) .......... 12

*North Star Int'l v. Ariz. Corp. Comm'n*
720 F.2d 578 (9th Cir. 1983) .......... 2

*PSM Holdings LLC v. Tiny Town LLC*
2025 U.S. Dist. LEXIS 34756 .......... 2, 4, 8, 9

*Qualitex Co. v. Jacobson Prods. Co.*
514 U.S. 159 (1995) .......... 4

*R & A Synergy LLC v. Spanx, Inc.*
2019 U.S. Dist. LEXIS 168266 .......... 10, 11

*SCG Characters LLC v. Telebrands Corp.*
2015 U.S. Dist. LEXIS 101287 (C.D. Cal. Aug. 3) .......... 7

*Sport Dimension, Inc. v. Coleman Co.*
   820 F.3d 1316 (Fed. Cir. 2016) ................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308 (2007) .................................................................................9

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.*
   2016 U.S. Dist. LEXIS 191636 (C.D. Cal. May 6) .................................8

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*
   532 U.S. 23 (2001) ...................................................................................4

*Vision Sports, Inc. v. Melville Corp.*
   888 F.2d 609 (9th Cir. 1989) ...............................................................8, 12

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*
   419 F.3d 925 (9th Cir. 2025) ...............................................................8, 12

**Statutes**

*Federal Rules of Civil Procedure*
   Rule 12(b)(6) ........................................................................................ 1, 2

*United States Code*
   15 U.S.C. § 1125 ..................................................................................... 11

**Rules**
   Local Rule 7-3 ..........................................................................................1

4

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

## I. INTRODUCTION

In its Motion to Dismiss ("Motion"), Defendant Sharkroad, Inc. ("Sharkroad") asks this Court to do precisely what Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] does not permit: resolve fact-intensive disputes about functionality and secondary meaning at the pleading stage, while disregarding detailed factual allegations and incorporated exhibits pled in the First Amended Complaint ("FAC").

DNA Specialty, Inc. ("DNA") does not seek trade dress protection for the general concept of motorcycle wheels or the abstract idea of spokes. Instead, DNA claims protectable trade dress in specific, ornamental wheel designs, including a visually distinctive spiral-spoke configuration and a visually distinctive 52-fat cylindrical-spoke configuration, that DNA developed, marketed, and sold exclusively for years before Sharkroad copied and sold the confusingly similar accused products.

At the Rule 12(b)(6) stage, this Court cannot weigh evidence, resolve competing inferences, or determine whether a defendant's alternative explanation is more persuasive. Where a plaintiff plausibly alleges non-functionality and secondary meaning based on specific design elements and marketplace facts, those allegations must be accepted as true. Disputes over whether a design is "really" functional or whether purchasers in fact associate a design with a single source are classic questions of fact not to be resolved on the pleadings. Because the FAC plausibly alleges non-functionality and secondary meaning, Sharkroad's Motion should be denied in its entirety.

On a separate basis, this Court should deny the Motion for Sharkroad's violation of Local Rule 7-3[2] that requires at least 7 days before such a motion can be filed after meeting and conferring. As confirmed by Sharkroad's Notice of Motion, the conference

---

[1] Unless otherwise indicated, "Rule" or "Rules" refer to the relevant rule(s) of the Federal Rules of Civil Procedure.

[2] Unless otherwise indicated, "Local Rule," "L.R.," or "Local Rules" refer to the Central District of California's local civil rule(s).

1
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT

took place on Jan. 29, 2026.  This motion was filed on Feb. 3, 2026.  Indeed, this "Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8." (L.R. 7-4.)

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege sufficient factual matter, accepted as true, to state a claim that is plausible on its face. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)  The Court must draw all reasonable inferences in the plaintiff's favor and may not resolve factual disputes.  "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." (*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).) Review of a Rule 12(b)(6) motion is "limited to the content of the complaint." (*North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).)

"To state a claim for trade dress infringement of a product, 'a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products.'" (*PSM Holdings LLC v. Tiny Town LLC*, 2025 U.S. Dist. LEXIS 34756, at *17 (W.D. Wash. Feb. 26) (motion to dismiss trade dress claim denied) (citing *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018) and quoting *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009)); *see also Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046-47 (9th Cir. 1998).)  The Court must accept all material allegations in the FAC as true and construe them in the light most favorable to Plaintiff.  (*North Star Int'l*, 720 F.2d at 580 (citation omitted).)

## III. ARGUMENT

### A. DNA Plausibly Alleges Non-Functionality

Sharkroad's Motion asserts that the aesthetic spoke features of DNA's trade dress are functional and, therefore, are incapable of trade dress protection. The Motion rests, however, on at least two fundamentally flawed premises.

First, Sharkroad essentially urges the Court to engage in a factual analysis of whether the particular feature is functional or non-functional for purposes of trade dress infringement. However, "[f]unctionality is a question of fact[.]" (*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987).) Accordingly, the Court may not engage in such an analysis at the pleading stage in ruling on a Rule 12(b)(6) motion.

Second, Sharkroad suggests that, if a particular element of the alleged trade dress has any functional properties, the entirety of the trade dress somehow cannot be protected. It is well settled, however, that "[m]ultiple functional items may be combined into a non-functional aesthetic whole." (*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 952 (D. Ariz. 2020) (denying motion to dismiss trade dress infringement claim) (citing *Fuddruckers*, 826 F.2d at 842).) "The fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress *as a whole* is functional; rather, 'functional elements that are separately unprotectable can be protected together as part of a trade dress.'" (*Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001) (italics in original, citing *Fuddruckers*).)

The *PSM Holdings* Court found that "*Clicks Billiards* is instructive," observing that:

> There, the Ninth Circuit explained that many of the elements that constituted Clicks' claimed trade dress were functional: lamps illuminating pool tables and counters for customers to place the drinks. *Id.* Of course,

these elements could not be claimed as nonfunctional, and Clicks could not 'claim a monopoly' over the 'particular type of lamps or counters' it used. *Id.* Clicks could not prevent others from copying these 'purely functional aspects.' *Id.* But it could 'claim as its mark the particular combination and arrangement of design elements' that distinguish it from others using the same concept.'

(*PSM Holdings*, 2025 U.S. Dist. LEXIS 34756, at *26-27 (citing *Clicks Billiards*).)

Here, Sharkroad treats the alleged trade dress as if DNA was claiming exclusive rights to functional wheel components, whether also ornamental or not, merely because wheel spokes have a function. That is not, and has never been, DNA's position. Regardless, Sharkroad's unfounded assertion, even if true, would effectively turn trade dress law on its head.[3]

Trade dress law does not bar protection for products that have a utilitarian purpose; it bars protection only for features that are "essential to the use or purpose of the article or if it affects the cost or quality of the article." (*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).) Even a useful article may incorporate ornamental or arbitrary features that are non-functional and protectable. (*See, e.g., Qualitex*, 514 U.S. at 165-67 (holding color of a product alone is protectable).)

Importantly, the FAC alleges that the designs incorporate aesthetic ornamental features, such as exaggerated spoke thickness and spiral twisting, and an unusually and specific high spoke count, namely, "52 fat, ribbon-style spokes of a spiral design" (FAC, 6:8) and "52 fat, straight, cylindrical spokes" (FAC, 7:18) that, if anything, increases

---

[3] By analogy, Sharkroad would have this Court believe that the most famous example of protectible trade dress, the Coca Cola bottle, cannot exist because it functions to hold a beverage and, despite its narrowed waist and external fluted features, it thus cannot qualify for trade dress protection. Obviously, that is incorrect.

manufacturing complexity and cost without improving functional performance. Certainly, such arrangements are not essential, since spokes may have cross-sections that are, for example, shaped like a triangle, square, or rectangle, have five-sides or more, appear elliptical, or there could be no spokes at all in the form of a solid wheel design.

Additionally, each trade dress is described to include the arrangement of the spokes "connecting, in radial lace fashion, alternately to the rim and to opposing ends of the hub." (FAC, 6:9-10 & 7:19.)  However, the alleged spokes could be connected in different arrangements such as to the middle of the hub, or there could be more or fewer of them.

The alleged trade dress features were selected to create a distinctive visual impression in the custom motorcycle wheel aftermarket, where wheels are purchased primarily for appearance rather than bare mechanical necessity or functionality.  The appearances here have been sufficiently so desirous that Sharkroad decided to avoid investing in creating its own designs, preferring instead to infringe on not just one, but two wheel designs of DNA.

### 1. *Spiral-Spoke Wheel: Non-Functionality Pled Sufficiently*

As mentioned above, the FAC alleges that the trade dress of DNA's spiral-spoke wheel includes 52 fat, ribbon-style spiral spokes arranged in a radial lace pattern, creating a twisted visual appearance selected for aesthetics rather than necessity or functionality.  Yet Sharkroad oddly asserts: "Twisting or spiraling metal spokes inherently strengthens the wheel, distributes load, and enhances durability—precisely the type of utilitarian advantage that *R & A Synergy* held defeats trade dress protection." (Motion, 6:20-22.)

Sharkroad not only seeks to engage the Court in an impermissible factual determination and evidence weighing, but it further fails to provide even a single factual basis to support such a conclusion.  Nor would it be appropriate for DNA to introduce evidence here that fat spiral spoke geometry does not alter the fundamental load-bearing

mechanics of a spoked wheel.  A wide variety of radial-lace spoke configurations provide equivalent structural integrity and performance.  The spiral spoke configuration, instead, creates a visually dynamic appearance that is immediately recognizable and intentionally departs from conventional spoke configurations used for mere utilitarian purposes.  Such fact-intensive evidentiary matters cannot be considered or decided in ruling on a Rule 12(b)(6) motion to dismiss.

Importantly, DNA alleges that it owns U.S. Design Patent No. D1,086,968, which claims an ornamental spiral-spoke design, and DNA further alleges that such spiral spokes were incorporated into the infringing spiral-spoked wheels.  While not dispositive, a design patent is strong circumstantial evidence that a design is not dictated by its function. (*See Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*, 2024 U.S. Dist. LEXIS 153085, at *4 (C.D. Cal. Aug. 26) (citing *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016)).)

Sharkroad's assertion that "spokes are functional" misses the point of trade dress, which may include functional features. (*See Fuddruckers*, 826 F.2d at 842.)  DNA does not claim spokes in the abstract; it claims a specific ornamental configuration of the wheels.  Whether that configuration is necessary to function—and clearly it is not, given the myriad ways in which wheel spokes may be configured—is a factual question that cannot be resolved on a Rule 12(b)(6) motion to dismiss.

### 2. *Cylindrical-Spoke Wheel: Non-Functionality Pled Sufficiently*

The FAC similarly alleges that DNA's cylindrical-spoke wheel employs fat, cylindrical spokes of 52 in number, chosen for visual impact rather than performance. The unusually high number of spokes and their fattened, cylindrical profile exceed what is required for ordinary utilitarian wheel performance.[4]  Conventional motorcycle

---

[4] Tellingly, not only does Sharkroad not assert that the *fattened* spokes of DNA's trade dress are necessary for the wheel to function, but Sharkroad even copied DNA's description of fat spokes in its advertising description emphasizing the fattened feature.

wheels routinely employ significantly fewer spokes with thinner profiles while meeting all functional requirements. The visual density created by 52 oversized spokes was chosen to produce a bold, distinctive aesthetic associated with DNA, not to satisfy any engineering constraint.

Regardless, whether 52 fat spokes are functionally necessary—and they are not—is a factual issue not appropriate for consideration in ruling on a Rule 12(b)(6) motion. (*See Clicks Billiards*, 251 F.3d at 1258 ("Functionality is a question of fact."); *accord Fuddruckers*, 826 F.2d at 843; *see also SCG Characters LLC v. Telebrands Corp.,* 2015 U.S. Dist. LEXIS 101287, at *19 (C.D. Cal. Aug. 3) ("Because, ordinarily, the functionality inquiry is heavily fact-intensive, courts have held that this issue cannot be resolved at the motion to dismiss stage.") (citing cases).) At this stage, DNA's well-pleaded allegations of non-functionality must be accepted as true.

Ultimately, Sharkroad asks the Court to decide that DNA's designs are functional simply because Sharkroad says they are. That is not the inquiry on a Rule 12(b)(6) motion. Whether these designs confer mechanical advantages or whether fewer spokes would suffice are engineering questions requiring evidence, not argument.

At this stage, the burden is not on DNA to disprove every conceivable functional explanation, but only to plausibly allege non-functionality, which it has done. Accepting the FAC's allegations as true, DNA has plausibly alleged non-functionality.

### B.     DNA Plausibly Alleged Secondary Meaning

"The trade dress of a product or service attains secondary meaning when the purchasing public associates the dress with a particular source." (*Fuddruckers*, 826 F.2d at 844.) Secondary meaning may be established through circumstantial evidence, including the length and exclusivity of use, advertising, consumer recognition, and

---

"21*3.5" Front Wheel for 00-06 Softail Harley 21 Wheel Updating, Fat Spoke Laced 21x3.5 Fat Spoke Wheel for Harley Softail Front Wheel." (*See* FAC, Ex. 2.)

copying. (*See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005).)

DNA's wheel designs function as source identifiers in a market where consumers, dealers, and custom motorcycle builders routinely recognize products by appearance rather than by trademarks affixed to packaging. Wheels are frequently displayed, sold, and installed without packaging and, once installed, branding is seldom visible, even on close inspection. Because of this, purchasers associate the distinctive visual appearance of DNA's spiral-spoke and cylindrical-spoke wheels with DNA as the source.

"Like the functionality analysis, the secondary meaning inquiry 'is a question of fact' often inappropriate for disposition at the pleading stage." (*PSM Holdings*, 2025 U.S. Dist. LEXIS 34756, at *28-29; *accord Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, 2016 U.S. Dist. LEXIS 191636, at *12-13 (C.D. Cal. May 6) (citing, e.g., *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1238 (C.D. Cal. Sept. 23)).)

### 1. Secondary Meaning Adequately Pled for Spiral-Spoke Wheel

The FAC alleges market launch in early 2023 as well as significant advertising expenditures and promotion at major trade shows, including SEMA. (FAC, 6:4-6.) The FAC also alleges that "DNA developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, spiral-spoke motorcycle wheels." (FAC, 6:25-26.) The FAC further alleges exclusivity at the time of launch. (FAC, 6:26-28.)

Copying is highly probative of secondary meaning. (*See Art Attacks Ink*, 581 F.3d at 1145.) Indeed, copying alone may suffice to prove secondary meaning. (*See Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("[P]roof of copying strongly supports an inference of secondary meaning."); *see also PSM Holdings*, 2025 U.S. Dist. LEXIS 34756, at *31-32 ("It is sufficient to *allege* copying—which is enough to support an inference of secondary meaning.") (italics added, citing *Vision Sports*).) This is because "[t]here is no logical reason for the precise copying save an attempt to

realize upon a secondary meaning that is in existence.'" (*PSM Holdings*, 2025 U.S. Dist. LEXIS 34756, at *30-31 (quoting *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 550 (2024)); *accord Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960).)

Here, the FAC alleged copying by Sharkroad. (FAC, 4:26-5:16.) Furthermore, in the June 16, 2025 cease-and-desist letter to Sharkroad's CEO, Xingbo Yao, counsel for DNA wrote: "It has come to our attention that Sharkroad has recently been offering for sale and selling what appears to be substantially similar, if not downright knockoffs, of DNA's twisted spoke motorcycle wheels." (FAC, Ex. 1, 3d para.) These materials are properly considered on a Rule 12(b)(6) motion. (*See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 430 (9th Cir.1978).) In sum, DNA has plausibly alleged secondary meaning.

### 2. Secondary Meaning Adequately Pled for Cylindrical-Spoke Wheel

The FAC alleges widespread trade-show advertising and promotion since 2001 and marketplace recognition of its distinctive fat 52 spoke wheels, stating that "DNA developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, 52 cylindrical-spoke motorcycle wheels." (FAC, 7:13-16 & 8:13-18.) The FAC also alleges that Sharkroad introduced its accused products only after DNA's designs achieved marketplace recognition and commercial success, and further that Sharkroad deliberately mimicked the overall visual appearance of DNA's wheels rather than adopting readily available alternative designs. (FAC, 8:21-23.)

Additionally, the FAC alleges that Sharkroad copied DNA's designs to avoid research and development, includes side-by-side product images, and also includes and references a May 15, 2024 cease-and-desist letter to Sharkroad's CEO, Xingbo Yao, in which DNA stated: "It has come to our attention that Sharkroad has been recently

offering for sale and selling what appears to be highly similar, if not downright knockoffs, of DNA's 52-spoke motorcycle wheels that have been in the marketplace since at least as early as 2001." (FAC, Ex. 3, 2d para.) As noted above, such materials are properly considered on a Rule 12(b)(6) motion. In addition to the specific factual allegations in the FAC as referenced above, these allegations readily support an inference of intentional copying, which is highly probative of both secondary meaning and likelihood of confusion.[5] In sum, DNA has adequately alleged secondary meaning.

### C. Sharkroad's Motion Relies Heavily on One Unpublished Case That Is Readily Distinguishable from This Action.

In its Motion, Sharkroad challenges both trade dress claims in the FAC asserting that DNA inadequately pled non-functionality and secondary meaning, relying heavily on *R & A Synergy LLC v. Spanx, Inc.*, 2019 U.S. Dist. LEXIS 168266,[6] an unpublished Central District of California case from 2019 where the court dismissed trade dress claims under Rule 12(b)(6). However, Sharkroad's reliance on *R & A Synergy* is misplaced.

In that case, the court was specifically concerned with the description of the trade dress (not at issue here) in the plaintiff's First Amended Complaint, namely finding that the plaintiff had failed to allege a sufficiently precise description of its trade dress and, instead, the plaintiff had referred generically to an entire clothing line in numerous different styles, fabrics, and more than a dozen colors. (*See R & A Synergy*, 2019 U.S. Dist. LEXIS 168266, at *13-15.) The *R & A Synergy* Court observed that "Plaintiff has not described any particular color, shape, fabric, or arrangement of materials used in any individual Sleevey product with sufficient specificity to allow the Court to conclude

---

[5] Notably, Sharkroad did not challenge DNA's allegations concerning likelihood of confusion. As can be seen from the images in the FAC and DNA's allegations of copying as set forth above, Sharkroad has veritably conceded this element.

[6] 2019 U.S. Dist. LEXIS 168266 (C.D. Cal. May 1).

even what the trade dress is for that product." (*Id.* at *13 (citation omitted).) "Because Plaintiff's purported definition of the trade dress for its Sleevey products broadly encompasses the entire family of Sleevey products, a finding that the concept of sleeved undergarments as embodied by the Sleevey product line constitutes actionable trade dress would impermissibly result in trade dress protection of the Sleevey product design as a whole, rather than any of the specific trade dress elements of any particular Sleevey product." (*Id.* at *14-15.) As a result, that court held the plaintiff's claims failed to put the defendant on notice of the particular trade dress being allegedly infringed. (*Id.* at *15.) As the foregoing makes clear, that is not the situation here.

Furthermore, Sharkroad's Motion fails to mention that the plaintiff in that case thereafter amended the pleading to tighten up the description of the alleged trade dress, which satisfied the Court:

> [In the FAC,] Plaintiff alleged the entire line of Sleevey products was being infringed by Defendant's entire line of Spanx Arm Tights. [Citation.] In the SAC, however, the Plaintiff has identified specific designs that are allegedly being infringed, [citation], and has pleaded exhibits providing a visual comparison of the allegedly infringing designs. …. Considering Plaintiff's factual allegations as true for the purpose of this motion, Plaintiff has sufficiently pleaded a complaint which gives rise to a plausible claim for trade dress infringement under 15 U.S.C. § 1125.

(*R & A Synergy LLC v. Spanx, Inc.*, 2019 U.S. Dist. LEXIS 228629, at *4-5 (C.D. Cal. Sept. 4) (citations omitted) (denying motion to dismiss as to the trade dress infringement claims).) Accordingly, *R & A Synergy* does not aid Sharkroad.

### D. Sharkroad's Motion Improperly Swerves into a Factual Analysis of Secondary Meaning

Sharkroad dedicates the last several pages of its Motion to analysis of additional factual matters. For example, Sharkroad cites the four factors to *determine* secondary

meaning at trial or on motion for summary judgment in a *trademark* case. (*See* Motion, pg. 7, last para.) "To *determine* whether a descriptive mark has acquired secondary meaning, courts consider: '(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive.'" (*Yellow Cab Co. of Sacramento*, 419 F.3d at 930 (quoting *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (en banc) (emphasis added).)

Sharkroad then proceeds to analyze each of these factors on pages 8 to 13 of its Motion, in an apparent attempt to prompt this Court to engage in the related fact-intensive determinations, which is wholly improper at the pleading stage.[7] Conspicuously, Sharkroad omits the legal standard that courts may also consider allegations of copying, as set forth above, and allegations thereof as DNA has pled. The Court should not, and must not, accept this invitation.

DNA has adequately pled secondary meaning as discussed above, including allegations to support each of the four prongs of *Yellow Cab*, and has included allegations of copying for both trade dress claims, which alone may plausibly support secondary meaning. (*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d at 615.)

### E. The Unfair Competition Claim Survives

Because DNA has plausibly alleged trade dress infringement under the Lanham Act, its common law unfair competition claim is congruent and necessarily survives. (*See Cleary v. News Corp.*, 30 F. 3d 1255, 1262-63 (9th Cir. 1994); *see also Acad. of*

---

[7] Even "'summary judgment is generally disfavored in the trademark arena' due to 'the intensely factual nature of trademark disputes.'" (*Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005); *accord Interstellar Starship Servs. Ltd. v. Epix, Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999) (citing *Levi Strauss & Co.*, 778 F.2d at 1356 n.5).)

*Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (reversing dismissal of both a trademark infringement claim and an unfair competition claim where likelihood of consumer confusion was shown).) Accordingly, this Court should deny Sharkroad's Motion as to DNA's unfair competition claim.

IV.   **LEAVE TO AMEND**

If the Court identifies any pleading deficiency, DNA respectfully requests leave to amend. Ninth Circuit law strongly favors amendment, particularly where any alleged defect is factual and curable. (*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).) In the unlikely event that this Court grants Sharkroad's Motion, the Court should allow DNA leave to amend to address any perceived deficiencies.

V.   **CONCLUSION**

Accepting DNA's allegations as true and drawing all reasonable inferences in its favor—which courts are required to do when deciding a Rule 12(b)(6) motion—this Court cannot conclude that, as a matter of law, DNA's asserted trade dress is functional or lacks secondary meaning. At most, Sharkroad raises factual disputes that should not be resolved at the pleading stage. Moreover, since DNA has sufficiently pled claims for trade dress infringement, its unfair competition claim is also sufficiently pled. Accordingly, Sharkroad's Motion should be denied in its entirety.

DATED: February 20, 2026                              **VAKILI & LEUS, LLP**

By: /s/ *Sa'id Vakili / Craig McLaughlin*
Sa'id Vakili, Esq.
Craig McLaughlin, Esq.
*Counsel for Plaintiff DNA Specialty, Inc.*

# **CERTIFICATE OF COMPLIANCE**

(*Central District of California, Local Rule 11-6.2*)

The undersigned, counsel of record for Plaintiff DNA Specialty, Inc., certifies that this brief contains 4,004 words, which complies with the word limit of L.R. 11-6.1.

DATED: February 20, 2026            **VAKILI & LEUS, LLP**

By: /s/ *Sa'id Vakili*
Sa'id Vakili, Esq.
Craig McLaughlin, Esq.
*Counsel for Plaintiff DNA Specialty, Inc.*

**CERTIFICATE OF SERVICE**
*DNA Specialty, Inc. v. Sharkroad, Inc., et al.*
*U.S.D.C. C.D. Cal. Case No.: 2:25-CV-10379-MWC (RAOx)*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On February 20, 2026, I served the foregoing document described as **PLAINTIFF DNA SPECIALTY, INC.'S OPPOSITION TO DEFENDANT SHARKROAD, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** on all interested parties in this action at the addresses listed below, as follows:

R. Joseph Trojan, Esq. (*trojan@trojanlawoffices.com*)
Dylan C. Dang, Esq. (*dang@trojanlawoffices.com*)
Francis Wong, Esq. (*wong@trojanlawoffices.com*)
**TROJAN LAW OFFICES**
9250 Wilshire Blvd., Suite 325
Beverly Hills, California 90212

**310/777-8399** | Fax: 310/777-8348

*Counsel for Defendant Sharkroad, Inc.*

I hereby certify that on the 20th day of February 2026, I will cause to be served the above-referenced document via electronic transmission to the person at the e-mail addresses listed above. I declare under penalty under the laws of the United States that the above is true and correct.

Executed on February 20, 2026, in Los Angeles, California.

/s/ *Jason C. Ming*
Jason C. Ming

CERTIFICATE OF SERVICE