R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant SHARKROAD, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DNA SPECIALTY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARKROAD, INC., a California Corporation and DOES 1-50, Inclusive,<br><br>Defendants. | **Case No: 2:25-cv-10379-MWC(RAOx)**<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>**Date:** March 6, 2026<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 6A<br>First Street U.S. Courthouse<br>Los Angeles, CA<br><br>**Hon. Michelle Williams Court**<br>**United States District Judge** |

TROJAN LAW OFFICES
BEVERLY HILLS

# Table of Content

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................3

    A. DNA Failed to State a Trade Dress Claim Because It Only Described the Trade Dress in Functional Terms ...............................................................3

        1. The Claimed Trade Dress Is the Product Itself .............................4

        2. Each Feature of the Wheel Is Utilitarian .......................................5

        3. The Design Patent Does Not Cure the Functional Defect ............7

    B. DNA's Secondary Meaning Allegations Remain Conclusory ........................8

        1. The Secondary Consideration Allegations Are Formulaic ..........9

        2. Short Duration of Use Undermines Secondary Meaning ..........10

        3. DNA's Allegations of Copying Do Not Support Secondary Meaning .......10

        4. No Plausible Allegation of Consumer Association ...................11

    C. The Likelihood of Confusion Allegations Are Derivative............................11

    D. Further Amendments Would be Futile..........................................................12

CERTIFICATE OF SERVICE...............................................................................14

# Table of Authorization

Page(s)

**Cases**

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC,*
930 F.3d 1314 (Fed. Cir. 2019)..................................................................8

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.,*
963 F.3d 859 (9th Cir. 2020).....................................................................3

*cf. L.A. Gear, Inc. v. Thom McAn Shoe Co.,*
988 F.2d 1117 (Fed. Cir. 1993).................................................................7

*City of Oakland v. BP PLC,*
969 F.3d 895 (9th Cir. 2020).....................................................................1

*Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.,*
909 F.3d 1110 (Fed. Cir. 2018).................................................................9

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
826 F.2d 837 (9th Cir. 1987)...................................................................11

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,*
4 F.3d 819 (9th Cir. 1993).........................................................................8

*Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.,*
199 F.3d 1009 (9th Cir. 1999)...............................................................4, 7

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.,*
668 F.3d 677 (9th Cir. 2012).....................................................................3

*SunEarth, Inc. v. Sun Earth Solar Power Co.,*
839 F.3d 1179 (9th Cir. 2016)...................................................................3

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
532 U.S. 23, 121 S. Ct. 1255, 149 L. Ed. 2d 164 (2001).........................6

*Wal-Mart Stores, Inc. v. Samara Bros.,*
529 U.S. 205, 120 S. Ct. 1339, 146 L. Ed. 2d 182 (2000).......................8

**Rules**

§ 43(a)...........................................................................................................12

Rule 12(b)(6) ................................................................................................1, 12

Defendant Sharkroad respectfully submits this reply[1] to Plaintiff DNA's opposition (Dkt. #20, hereinafter "Opp.") to Sharkroad's motion to dismiss DNA's trade dress claims in the First Amended Complaint (Dkt. #12, "FAC").

## I.  INTRODUCTION

Even in its opposition, DNA is still unable to explain what is non-functional about the "spiral-spoke wheel" (FAC, ¶ 16) and the "52 cylindrical-spoke wheel" (*id.*, ¶ 23) designs that would pass muster under Rule 12(b)(6). This is critical because DNA has filed this lawsuit seeking millions in damages from Sharkroad for allegedly infringing the alleged trade dress of two motorcycle-wheel rims by contending that those spoke designs belong exclusively to it. Before spending the next 18 months litigating the trade dress claims, DNA must at least plausibly allege that its spoke wheel designs are non-functional and that they have acquired the necessary secondary meaning. *City of Oakland v. BP PLC*, 969 F.3d 895, 910 (9th Cir. 2020) ("[R]ule [12(b)(6)] is designed 'to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery,' the cost of which can be 'prohibitive.'" (Citation omitted)). The Court should not permit DNA

---

[1] DNA filed a Proof of Service indicating that SharkRoad's response to the FAC (Dkt. 12) was due on February 4, 2026 (Dkt. 16). On January 23, 2026, counsel for SharkRoad requested to meet and confer pursuant to L.R. 7-3 on January 28, 2026 on the instant motion. The parties met and conferred on January 29, 2026 to accommodate DNA's counsel's schedule. The instant motion was filed on February 3, 2026. (Dkt. 17.)

-1-

to conduct wasteful litigation if it cannot even plausibly allege that the spiral-spoke and 52 cylindrical-spoke wheels are protectable trade dress.

More particularly, the trade dress claims remain deficient because the two alleged trade dress consist of core structural features—*i.e.,* the configurations of the spoke—on motorcycle wheels, which itself is a functional product. Given the functionality of motorcycle wheels, DNA must plead non-functionality with specific factual support so that Sharkroad knows exactly what protectable elements it is accused of infringing. Yet, DNA is unable to explain what is non-functional about the spoke configurations of its motorcycle wheels even after amending the complaint.

Even putting aside the issue of functionality, the FAC includes only formulaic allegations of secondary meaning, without any specificity as to how consumers recognize the specific spoke configurations in the marketplace. With no plausible facts of secondary meaning, DNA resorts to arguing that its spoke configurations qualify as trade dress because Sharkroad copied it. But the allegations of copying are not only conclusory, it puts the cart before the horse because any competitor can copy DNA's designs if they are not protectable.

The Court should not permit DNA to conduct wasteful litigation on these claims when it is clear DNA does not have any trade dress rights as alleged in the FAC. Further amendments would be futile. DNA has already amended its trade dress claims yet was still unable to state a plausible claim for trade dress

infringement. Given its inability to explain in its Opposition why its claimed designs are protectable, its trade dress infringement claims must be dismissed with prejudice.

## II. ARGUMENT

**A. DNA Failed to State a Trade Dress Claim Because It Only Described the Trade Dress in Functional Terms**

As the Ninth Circuit teaches, "for a product's design to be protected under trademark law, the design must be nonfunctional….This requirement makes it **very difficult for sellers to use trademark rights to monopolize designs of products**." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 864 (9th Cir. 2020) (*citing Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir. 2012), ab*rogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016) (en banc)) (emphasis added).

The Ninth Circuit also emphasized in *Leatherman* that **"before an overall product configuration can be recognized as a trademark, the entire design must be arbitrary or non *de jure* functional."** *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1012 (9th Cir. 1999) (internal quotations omitted) (emphasis added). The Court explained that a design may be functional in *two ways*: (i) de facto functional, meaning that the product at issue has a function (a bottle of any design holds a substance); and (ii) de jure functional, meaning that the product at issue has a particular shape or configuration because it works better that way. *Id*. Under these principles, DNA cannot use trade dress law to monopolize the designs for motorcycle

wheels because its trade dress is de jure functional no matter how the spoke count, thickness, and lacing pattern are defined.

### 1. The Claimed Trade Dress Is the Product Itself

Courts repeatedly reject trade dress claims that effectively seek a monopoly over the product's configuration rather than a separable ornamental feature. *See, e.g.*, *Blumenthal Distrib., Inc.*, 963 F.3d at 866 ("We have consistently held that, as a matter of law, a product's "overall appearance" is functional, and thus unprotectable, where the whole product is **"nothing other than the assemblage of functional parts,"** and "even the arrangement and combination" of those parts is designed to make the product more functional." (Emphasis added)).

In the FAC, DNA attempts to claim the overall product configuration as trade dress. The spiral-spoke claim is defined as: "a rim… a hub… and 52 fat, ribbon-style spokes of a spiral design connecting… alternately to the rim and opposing ends of the hub." (FAC ¶ 16.) That description encompasses the *entire visible structure of the wheel*. As the Ninth Circuit taught in *Blumenthal Distrib., Inc.*, "if everything that affects a product's appearance is functional, then its overall appearance is also functional." 963 F.3d at 866; *see also*, *Leatherman Tool Grp., Inc.*, 199 F.3d at 1013 (holding that the overall appearance of a multi-function pocket tool was not protectable as trade dress because there was no evidence that anything about its appearance, either its individual parts or their arrangement and combination, existed for any nonfunctional purpose).

-4-

Even after amendment, the FAC still does not identify specific ornamental elements separate from the structure of the wheel. For example, there is nothing ornamental about the "hub" or the "rim". At best, it appears that the heart of the alleged "52 cylindrical-spoke wheel" trade dress is the "52 fat, straight, cylindrical spokes, connecting, in radial lace fashion." (FAC, ¶ 23.) However, DNA does not explain how plain "straight, cylindrical spokes" arranged in a radial lace configuration are ornamental. Practically every bicycle or motorcycle wheel has radial spokes that are interlaced. In fact, it is difficult to imagine a spoked wheel that does not have spiral spokes arranged in "radial lace fashion". As DNA is not entitled to broadly claim that it has exclusive rights to all wheels with spokes arranged in a "radial lace fashion", it must allege how its laced pattern is different from other wheels and that difference is non-functional, which it does not do.

The same is true of the "spiral-spoke" wheel with "ribbon-style spokes" (*Id.*, ¶ 16.) The only difference is this alleged design has "ribbon-style spokes". Yet, DNA does not limit its trade dress to the "ribbon-style spokes"; rather, it attempts to broadly claim the overall product configuration of the whole wheel as its trade dress.

In short, the FAC does not isolate source-identifying ornamentation. Instead, it claims the entire wheel, including spoke count, lacing and thickness.

**2.     Each Feature of the Wheel Is Utilitarian**

In *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, the Supreme Court taught that a product feature is functional if it is essential to the use or purpose of the article

-5-

or affects the cost or quality of the article. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 24, 121 S. Ct. 1255, 1257, 149 L. Ed. 2d 164 (2001). As discussed above, the FAC itself defines each trade dress as consisting of:

- a rim;
- a hub;
- 52 spokes (either "ribbon" or "cylindrical");
- a radial lace configuration; and
- spokes connecting alternately to rim and hub.

(FAC ¶¶ 16, 23.) These features are not incidental decorative flourishes. *They are the core structural components of a spoked motorcycle wheel.* They are essential to the wheel's performance. They directly affect structural integrity, load distribution, durability, safety, and even manufacturing cost.

DNA argues that wheels "may" be configured differently and that spokes could be fewer or shaped differently. (Opp. at 5:5-10.) While that may be true, the mere existence of alternative designs does not defeat functionality. It merely means there are functional alternatives.

Given the functional characteristics of these features, the FAC must plead facts showing that each feature is not functional—but it does not. DNA never alleges that the *number of spokes* serve no structural purpose. Nor does it allege that the *increased thickness* of the individual spokes does not affect the strength of the wheel. Nor does it allege that the *radial lacing* does not affect load transfer. Nor does it allege that the *spiral geometry* does not alter stress distribution. Instead, it simply

labels the designs "non-functional." (FAC ¶¶ 18, 25.) That is a legal conclusion, not a factual allegation.

In fact, it would be futile for DNA to amend the FAC to include such additional allegations because the number of spokes, thickness or spiraling of the spokes, and lace arrangement are features that *improve* the function of the wheel. *Leatherman Tool Grp., Inc.* 199 F.3d at 1012 ("De jure functionality, on the other hand, means **that the product is in its particular shape because it works better in this shape**." (Emphasis added; citation omitted)).

DNA's attempt to compare its wheels to a Coca Cola bottle (Opp. at 4, fn. 3) is misplaced because the shape of the Coca Cola Bottle does not affect its core function to hold liquid. Whereas here, the design of the spokes undoubtedly impacts the functionality and manufacturing costs of the wheel as discussed above.

### 3. The Design Patent Does Not Cure the Functional Defect

DNA relies heavily on the existence of Design Patent D1,086,968 as circumstantial evidence of non-functionality. (Opp. at 6:7-13.) But a design patent protects ornamental aspects only. It does not establish that the overall configuration is non-functional for trade dress purposes. Trade dress functionality analysis is distinct from design patent ornamentality, which are governed by different legal standards. *See, e.g., Leatherman Tool Group, Inc.*, *supra*, 199 F.3d at 1012; *cf. L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993).

In fact, the Federal Circuit recognized the distinction:

-7-

> Though trademarks and design patents have certain similarities … **Trademarks and design patents serve different purposes and have different governing law.** Trademarks promote competition by permitting a **perpetual monopoly** over symbols that "distinguish[ ] a firm's goods and identif[y] their source, without serving any other significant function."

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1320 (Fed. Cir. 2019) (internal citations omitted). Therefore, the existence of a design patent that provides only 15 years of exclusivity is irrelevant to the perpetual trade dress protection that DNA seeks here, and each have their own unique legal requirements for qualifying for protection.

Moreover, the design patent applies only to the spiral-spoke configuration — not the 52 cylindrical-spoke wheel. The FAC asserts trade dress for both. Thus, even taking the patent into account, the FAC still fails to plausibly allege that the claimed spoke arrangements are not dictated by utilitarian considerations.

**B.    DNA's Secondary Meaning Allegations Remain Conclusory**

The Supreme Court teaches that "[i]t seems to us that design, like color, is not inherently distinctive" when it comes to trade dress protection. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212, 120 S. Ct. 1339, 1344, 146 L. Ed. 2d 182 (2000). Thus, to state a trade dress claim for product design, the plaintiff must plausibly allege acquired distinctiveness (secondary meaning). *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 824 (9th Cir. 1993) ("[A] product's trademark or trade dress acquires a secondary meaning when the purchasing public associates the mark or dress with a single producer or source rather than with the product itself.").

-8-

The problem that DNA has here is that ***if it narrows its trade dress to specific features like the exact number of 52 spokes, their fatness, and the ribbon or cylindrical shape, then DNA must also plausibly state that these specific features are recognized by consumers as coming from a single source such that the designs based on those features have acquired secondary meaning.*** DNA does not even come close to plausibly pleading that these features have secondary meaning in the minds of consumers.

### 1. The Secondary Consideration Allegations Are Formulaic

The FAC alleges that DNA "developed a reputation for high-quality products" (FAC ¶¶ 17, 24), it was the "only source" at first use (*id.*), and that it invested "thousands of dollars" in advertising (*id.* at ¶¶ 15, 22). The allegations are formulaic and vague. For example, the phrase "thousands of dollars" is so vague that it cannot plausibly indicate that DNA's designs sufficiently penetrated the market to create secondary meaning.

To plausibly allege that the features above have acquired secondary meaning, DNA must allege specific facts, such as the ones set forth by the Federal Circuit:

> (1) association of the trade dress with a particular source by actual purchasers (typically measured by customer surveys); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark.

*Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1120 (Fed. Cir. 2018). Even if it were to allege such facts, DNA must explain how they

-9-

relate to the specific design features that constitute the alleged trade dress. For example, if DNA contends in the opposition that "[t]he visual density created by 52 oversized spokes was chosen to produce a bold, distinctive aesthetic associated with DNA, not to satisfy any engineering constraint" (Opp. at 7:2-4), then it must allege specific facts to support the contention that consumers recognize "52 oversized spokes" as DNA's trade dress. It should allege specific advertising that touts the "look" of the "52 oversized spokes." Yet, none of its arguments are rooted in facts as alleged in the FAC.

### 2. Short Duration of Use Undermines Secondary Meaning

Further, it is worth noting that the allegation of secondary meaning is especially implausible since the spiral-spoke wheel was allegedly launched in early 2023. (FAC ¶ 15.) The complaint was filed in 2025. (Dkt. 1.) A two-year window, without detailed allegations of substantial commercial success, is insufficient to plausibly plead secondary meaning, especially for a product configuration.

### 3. DNA's Allegations of Copying Do Not Support Secondary Meaning

DNA argues that copying alone can support an inference of secondary meaning. (Opp. at 8:22 – 9:13.) But the FAC essentially alleges that Sharkroad sold similar wheels. It does not plead facts showing intentional copying for brand association, or any evidence Sharkroad sought to capitalize on DNA's reputation or good will.

To the contrary, Sharkroad is free to use radial laced spokes because they are common functional features long used for motorcycle wheels. In fact, any competitor is free to copy functional features. *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844–45 (9th Cir. 1987) ("Competitors may intentionally copy product features for a variety of reasons. They may, for example, choose to copy wholly functional features that they perceive as lacking any secondary meaning because of those features' intrinsic economic benefits.").

### 4. No Plausible Allegation of Consumer Association

Critically, the FAC does not allege plausible consumer association. For example, DNA does not allege that consumers refer to the wheel design as "the DNA wheel." Or that dealers recognize the design as DNA's. Nothing in the FAC indicates the appearance of the wheel design alone identifies the source. Moreover, there is no allegation in the FAC that consumers were surveyed or confused because of the configuration. The FAC does not allege facts to plausibly show that any consumer association is based on the wheel design, as opposed to the brand name.

As a final note, DNA argues that wheels are purchased based on appearance. (Opp. at 5:10-12.) But that assertion appears in DNA's briefing, not in detailed factual allegations in the FAC.

### C. The Likelihood of Confusion Allegations Are Derivative

Both trade dress counts (Second and Third Causes of Action) incorporate general allegations of confusion. (FAC ¶¶ 40, 46.) However, these allegations are

conclusory and derivative of the deficient trade dress claims. Without adequately pleading protectable, non-functional trade dress, and secondary meaning, there can be no viable confusion claim under § 43(a).

### D. Further Amendments Would be Futile

Despite the expanded argument in opposition to Sharkroad's motion to dismiss, DNA could not cure three core pleading defects in the FAC as discussed above: namely, 1) the claimed trade dress features of the wheels are structural components and are defined in functional terms; 2) the features have not acquired secondary meaning; and 3) there is no plausible likelihood of confusion based on these specific features.

DNA argues that the Court should look passed the obvious deficiencies of its FAC because "[a]t the Rule 12(b)(6) stage, this Court cannot weigh evidence, resolve competing inferences, or determine whether a defendant's alternative explanation is more persuasive." (Opp. at 1:13-15.) But even under the lenient pleading standard, DNA must still plausibly allege non-functionality and secondary meaning based on specific design elements and marketplace facts before it can be allowed to waste money and time litigating these trade dress claims.

### III. CONCLUSION

For the foregoing reasons, the Court should GRANT the motion to dismiss without leave to amend.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | By: |
| Dated: February 26, 2026 | /s/R. Joseph Trojan |
|  | R. Joseph Trojan |
|  | Dylan C. Dang |
|  | TROJAN LAW OFFICES |
|  | 9250 Wilshire Blvd., Suite 325 |
|  | Beverly Hills, CA 90212 |
|  | Telephone: (310) 777-8399 |
|  | Facsimile: (310) 777-8348 |
|  | Attorneys for Defendant |
|  | SHARKROAD, INC. |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2026, I filed the foregoing with the Court's CM/ECF system, which will cause it to be served electronically upon all counsel of record.

/s/R. Joseph Trojan
R. Joseph Trojan