UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.     2:25-cv-10379-MWC-RAO                                    Date: March 10, 2026

Title:          DNA Specialty Inc v. Sharkroad, Inc. *et al*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs:            Attorneys Present for Defendants:
N/A                                                                 N/A

**Proceedings: (In Chambers) The Court DENIES Defendant's motion to dismiss (Dkt. [17]).**

Before the Court is a motion to dismiss for failure to state a claim ("Motion") filed by Defendant Sharkroad, Inc. ("Defendant" or "Sharkroad"). Dkt. # 17-2 ("*Mot.*"). Plaintiff DNA Specialty, Inc. ("Plaintiff" or "DNA") opposed, Dkt. # 20 ("*Opp.*"), and Defendant replied, Dkt. # 21 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument and **VACATES** the Motion hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers, the Court **DENIES** Defendant's Motion.

I.      Failure to Meet and Confer

As a preliminary matter, Plaintiff requests the Court deny the motion for failure to comply with Local Rule 7-3's meet and confer requirements. *Opp.* 1.

Prior to filing a motion, the Central District of California requires counsel contemplating the filing of any motion to meet and confer with opposing counsel "to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution" at least 7 days prior to the filing of the motion. L.R. 7-3. Should a party fail to do so, the court "may decline to consider [the] motion." L.R. 7-4. Local Rule 7-3 also requires counsel for the moving party "include a declaration, under penalty of perjury, that sets forth at a minimum the date(s) the conference took place and the position of each party with respect to each disputed issue that will be the subject of the motion." L.R. 7-3. "Failure to include such a declaration may result in the motion being denied." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:25-cv-10379-MWC-RAO                              Date: March 10, 2026

Title:  DNA Specialty Inc v. Sharkroad, Inc. *et al*

    To demonstrate compliance, Defendant states in its notice of motion that counsel conferred on January 29, 2026. Dkt. # 17, 4; *see also Reply* 1 n. 1 (noting Defendant requested the meet and confer on January 28, 2026). The Motion was filed less than 7 days later, on February 3, 2026. *See* L.R. 7-3. Additionally, Defendant failed to include a declaration regarding the conference of counsel. *See id.* For these reasons, the meet and confer requirements were not satisfied.

    The Court takes compliance with the Federal Rules, Local Rules and its standing order very seriously. At this juncture, because it does not appear prejudice resulted from the failure to meet and confer, the Court exercises its discretion and reaches the merits of Defendant's Motion. *See CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015) ("Failure to comply with the Local Rules does not automatically require the denial of a party's motion," especially where there is "no apparent prejudice."). Defendant is nonetheless **CAUTIONED** to adhere to applicable rules going forward.

II.    Background

    A.    Allegations in the FAC

The First Amended Complaint alleges as follows:

    Plaintiff is a California corporation that, among other things, manufactures and distributes high-end aftermarket automotive and motorcycle wheels and accessories. Dkt. # 12 ("*FAC*") ¶ 6. Defendant is a California corporation that also manufactures, distributes, and sells motorcycle wheels. *Id*. ¶¶ 3–4. Plaintiff and Defendant are competitors. *Id*. ¶ 7.

    Plaintiff is the owner of United States Patent No. D1,086,968 (the " '968 Patent"). *See id.* ¶ 10, Ex. 1. The claim is described as "[t]he ornamental design for a spiral wheel spoke." *Id.*, Ex. 1 at 17. Figure 2 of the '968 Patent is depicted as follows:



*Id.* ¶ 10, Ex. 1. The '968 Patent results from DNA's decades-long investment of time and resources in research and development in the high-end aftermarket motor vehicle wheel marketplace. *Id.* ¶ 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

Plaintiff sells two kinds of wheels at issue in this matter: "fat spiral-spoke wheels" and "fat cylindrical-spoke wheels." *See, e.g.*, *id.* ¶¶ 15–28. Defendant, in turn, sells products that infringe on the '968 Patent and Plaintiff's trade dress: (1) wheels with fat spiral spokes (the "Accused Spiral-Spoke Products"), and (2) wheels with 52 fat cylindrical spokes (the "Accused 52 Cylindrical-Spoke Products") (collectively, the "Accused Products"). *Id.* ¶¶ 3–4, 7.

### i. The Accused 52 Cylindrical-Spoke Products

In approximately 2001, Plaintiff began marketing its distinctive 52 cylindrical-spoke motorcycle wheel. *Id.* ¶ 22. Plaintiff invested thousands of dollars marketing its 52 cylindrical-spoke wheels and advertised them at trade shows such as SEMA, AIME Expo, VTwin Expo, Dealer Expo, and numerous independent trade shows. *Id*. Plaintiff's trade dress in its cylindrical spoke wheels includes a rim for a motorcycle tire, a hub with opposing ends, and 52 fat, straight, cylindrical spokes connecting, in radial lace fashion, alternately to the rim and to opposing ends of the hub. *Id.* ¶ 23.

Plaintiff developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, 52 cylindrical-spoke motorcycle wheels. *Id.* ¶ 24. As of the date of first use in commerce of its 52 cylindrical-spoke motorcycle wheels, Plaintiff believes it was the only source advertising, promoting, and selling such wheel designs. *Id*. Plaintiff's 52 cylindrical-spoke wheels are inherently distinctive, nonfunctional, and have acquired secondary meaning among purchasers. *Id.* ¶ 25.

At least as early as May 2024, Plaintiff became aware that Defendant was advertising, offering for sale, and selling 52 cylindrical-spoke motorcycle wheels as Sharkroad products. *Id.* ¶ 26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.   2:25-cv-10379-MWC-RAO                                   Date: March 10, 2026

Title:   DNA Specialty Inc v. Sharkroad, Inc. *et al*



| **Plaintiff's 52 Cylindrical-Spoke Wheel** | **Defendant's 52-Spoke Wheel** |
|---|---|

*Id.* ¶ 23.  On May 15, 2024, DNA's counsel transmitted a letter to Xingbo Yau, Sharkroad's CEO, demanding Defendant cease and desist infringing on Plaintiff's trade dress in its 52 cylindrical-spoke motorcycle wheels.  *Id.* ¶ 27.  The Accused 52 Cylindrical-Spoke Products are confusingly similar to DNA's 52 cylindrical-spoke wheel.  *Id.* ¶ 28.  As of the FAC filing date, Defendant has not responded to the May 15, 2024 letter.  *Id.* ¶ 29.

        ii.     The Accused Spiral-Spoke Products

In early 2023, Plaintiff began marketing a unique and distinctive spiral-spoked motorcycle wheel.  *Id.* ¶ 15.  Plaintiff invested thousands of dollars marketing its distinctive spiral-spoke wheels and advertised them at trade shows such as SEMA.  *Id.* ¶ 16.  Plaintiff's trade dress in its spiral-spoke wheels includes a rim for a motorcycle tire, a hub with opposing ends, and 52 fat, ribbon-style spokes of a spiral design connecting, in radial lace fashion, alternately to the rim and to the opposing ends of the hub.  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |



**Plaintiff's spiral-spoke wheel**

*Id.* ¶ 16.  Defendant advertises the following Accused Spiral-Spoke Product on the Sharkroad website:



*Id.* ¶ 12.

Plaintiff developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, spiral-spoke motorcycle wheels.  *Id.* ¶ 17.  As of the date of first use in commerce of its spiral-spoke motorcycle wheels,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

Plaintiff believes it was the only source advertising, promoting, and selling such wheel designs. *Id*. Plaintiff's spiral-spoke wheels are inherently distinctive, non-functional, and have acquired secondary meaning among purchasers. *Id.* ¶ 18. The Accused Spiral-Spoke Products are confusingly similar to Plaintiff's spiral-spoke wheel. *Id.* ¶ 19.

     As early as June 2025, Plaintiff became aware that Defendant was advertising and selling spiral-spoked motorcycle wheels as Sharkroad products. *Id.* ¶ 13. Plaintiff's counsel notified Defendant by letter of, inter alia, of Plaintiff's trade dress rights in DNA's "spiral spoke" motorcycle wheels and demanded that Defendant immediately cease and desist advertising, offering for sale and selling the Accused Spiral-Spoke Products. *Id.* ¶ 14. As of the FAC filing date, Defendant has not responded to the cease-and-desist letter. *Id.* ¶ 20.

     B.    <u>Procedural History</u>

     On October 28, 2025, Plaintiff filed a Complaint against Defendant and Does 1-50 (collectively, "Defendants") in this Court. Dkt. # 1. On December 4, 2025, Plaintiff filed the FAC asserting four claims for relief: (1) Infringement of the '968 Patent; (2) Violation of 15 U.S.C. § 1025(a) - Trade Dress Infringement of DNA's Spiral-Spoke Wheel; (3) Violation of 15 U.S.C. § 1025(a) - Trade Dress Infringement of DNA's 52 Cylindrical-Spoke Wheel; and (4) Unfair Competition Under California Common Law. *FAC*. Plaintiff seeks injunctive relief, including a preliminary and permanent injunction against Defendants from making, selling, using, or importing products claimed in the '968 Patent and infringing on Plaintiff's trade dress rights; the destruction of all accused products found to have infringed on Plaintiff's rights; an accounting of Defendants' profits; lost profits; increased damages due to willful and deliberate infringement of the '968 Patent; and a finding that this is an exceptional case, entitling Plaintiff to reasonable attorneys' fees and costs under 35 U.S.C. § 285. *FAC* p. 13–15.

     On February 3, 2026, Defendant filed this Motion. *Mot*. Defendant seeks to dismiss the trade dress infringement and unfair competition claims (Counts Two, Three, and Four).

III.    <u>Legal Standard</u>

     To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a cause of action's elements that are "supported by mere conclusory statements, do not suffice." *Id*. Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted)

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

IV.   Discussion

   A.   Trade dress infringement claims

Trade dress is protected under the Lanham Act, 15 U.S.C. § 1125(a). To state a claim for trade-dress infringement, a plaintiff must plausibly plead "that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009).

Defendant argues the FAC fails to adequately plead (1) that either spoke wheel design is nonfunctional, and (2) that either spoke wheel design has acquired sufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

"secondary meaning" to be protectable. *Mot.* 4-13.[1] The Court addresses the arguments in turn.

    *i.*    *Functionality*

"A product feature is functional if it is essential to the product's use or if it affects the cost and quality of the product." *Rachel v. Banana Republic*, 831 F.2d 1503, 1506 (9th Cir. 1987). The "functionality analysis focuses on the item as a whole—not on whether any one particular feature is functional." *Lepton Labs v. Walker*, 55 F. Supp. 3d 1230, 1238 (C.D. Cal. 2014). Thus, "as a matter of law, a product's overall appearance is functional, and thus unprotectable, where the whole product is nothing other than the assemblage of functional parts, and even the arrangement and combination of those parts is designed to make the product more functional." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 865 (9th Cir. 2020) (quotations omitted). However, functional elements that are "separately unprotectable" can be protected together as part of a trade dress when the "overall visual impression that the combination and arrangement of those elements create" constitutes a unique trade dress. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001). In most instances where trade dress is at issue, functionality is an issue of fact. *Id.* at 1258; *see, e.g.*, *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry, Inc.*, No. CV 12–02215–RGK (VBKx), 2012 WL 12921035, at *5 (C.D. Cal. Aug. 8, 2012), aff'd in part sub nom. *A'Lor Int'l, Ltd. v. Tappers Fine Jewelry*, 605 F. App'x 662 (9th Cir. 2015) ("Although courts consider a number of factors in determining functionality, this inquiry is a 'question of fact' and is therefore inappropriate for determination at the Rule 12(b)(6) stage."). "Notwithstanding this general principle, courts may dismiss trade dress infringement claims that fail to plead 'how' a trade dress is non-functional." *Simplehuman, LLC v. Volume Distributors, Inc.*, No. LA CV23-02219 JAK (ASx), 2024 WL 1813511, at *7 (C.D. Cal. Feb. 15, 2024).

    Defendant argues that both challenged spoke wheel designs are inherently functional as pled. *Mot.* 4–7. First, Defendant argues that Plaintiff's own description of the 52 cylindrical-spoke design is functional. The FAC describes the design as comprising "a hub with opposing ends, and 52 fat, straight, cylindrical spokes,

---

[1] Defendant also argues, for the first time on reply, that the FAC's likelihood of confusion allegations are derivative of the deficient trade dress claims. *Reply* 11–12. Arguments raised for the first time in reply may be disregarded. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Moreover, since the trade dress claims survive, the argument is moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

connecting, in radial lace fashion, alternately to the rim and to opposing ends of the hub." *FAC* ¶ 23. Defendant asserts the Trademark Trial and Appeal Board (TTAB) has found features on a bicycle wheel's spokes functional. *See Mot.* 5 (*citing In Re Rolf Dietrich*, 91 U.S.P.Q.2d 1622 (T.T.A.B. 2009) (rejecting applicant's request for trade dress protection on a wheel spoke design because the applied-for design was functional; for example, "[t]he spokes in the wheel are laced that way because the wheel works better that way . . ."). Additionally, Defendant argues the spiral-spoke configuration is functional as pled, because "[t]wisting or spiraling metal spokes inherently strengthens the wheel, distributes load, and enhances durability." *Mot.* 6–7.

The Court finds that Defendant's arguments as to the functionality of the spoke designs are premature, because Defendant asks the Court to make factual findings. For one, Defendant does not cite authority for its contentions that "the greater the number of spokes, the more stable and load-bearing the wheel," or that twisting metal spokes "inherently strengthens the wheel." *See id*. 6.[2] The Court may not rely on Defendant's unsupported statements. Additionally, arguments that a design is functional (and that it has not acquired secondary meaning) are "more appropriate for summary judgment or a jury." *Vision Quest Indus., Inc. v. Ortho Sys*., No. 17-CV-1395-CAB-NLS, 2017 WL 4169764, at *2 (S.D. Cal. Sept. 20, 2017). For example, in *Blumenthal Distrib., Inc. v. Herman Miller, Inc*., 963 F.3d 859 (9th Cir. 2020), a case on which Defendant relies, the Ninth Circuit explored what makes a claimed trade dress "functional" in considering whether to sustain a jury verdict in defendant's favor on a trade dress claim. *See Reply* 4; *Blumenthal*, 963 F.3d at 866.

Here, the FAC contains non-conclusory allegations that the designs incorporate a certain spoke thickness, shape (i.e., spiral twisting or cylindrical), count, and arrangement. *See, e.g.*, *FAC* ¶¶ 16, 23. Thus, the FAC plausibly alleges that "the combination and arrangement of those elements" creates an "overall visual impression" that constitutes a unique trade dress. *See Clicks Billiards*, 251 F.3d at 1259.

---

[2] Decisions of the Trademark Appeals Board are not binding on this Court, nor is it facially apparent that the design examined in *In re Rolf Dietrich* is similar to the claimed trade dress in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

Based on the foregoing, and in recognition that "functionality is not ordinarily resolved at the pleading stage," the FAC sufficiently alleges non-functionality. *See Simplehuman*, 2024 WL 1813511, at *8.

  *ii.*  *Secondary meaning*

Next, Defendant argues that the FAC fails to plead the spoke designs have acquired sufficient "secondary meaning" to be protectable. *Mot.* 7–13.

  *a.*  Legal Standard

The Ninth Circuit defines secondary meaning as "the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). Secondary meaning may be obtained when "the purchasing public associates the dress with a particular source." *Clicks Billiards*, 251 F.3d at 1262 (citation omitted); *see Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) (secondary meaning exists when, "in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself.").

Courts consider the following non-exhaustive list of factors to determine whether a secondary meaning has attached to the claimed dress: "(1) direct consumer testimony or consumer perception; (2) exclusivity, manner, and length of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) established place in the market; (6) actual confusion; and (7) proof of intentional copying by the defendant." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 68 F. Supp. 3d 1170, 1173 (C.D. Cal. 2014) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1152 (9th Cir. 1999)). *See, e.g.*, *Red Star Traders, LLC v. Abbyson Living Corp.*, No. CV 16-02781 AB (KSX), 2016 WL 9108405, at *6–7 (C.D. Cal. June 22, 2016) (denying plaintiff's motion for preliminary injunction in part because plaintiff failed to argue several of the "*Filipino Yellow Pages* factors"). Like functionality, the secondary meaning element of a trade dress claim is also a question of fact. *See Clicks Billiards*, 251 F.3d at 1261 ("Whether a particular trade dress has acquired secondary meaning is a question of fact.") (internal citations and quotation marks omitted); *accord Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) (secondary meaning is a question of fact); *Givenchy S.A. v. BCBG Max Azria Grp., Inc.*, No. CV 10-8394-GHK SHX, 2012 WL 3072327, at *5 (C.D. Cal. Apr. 25,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

2012) (in denying motion for summary judgment, noting "[t]he issue of secondary meaning is inherently factual, with the relevant factors to be weighed by a jury.").

      *b.*    *Discussion*

Of the *Filipino Yellow Pages* factors, Defendant raises arguments that the following elements are inadequately pled: consumer perception ("whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer"); the amount and manner of advertising; and the exclusivity, manner, and length of use. *See Mot.* 7 (citing *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1262 (S.D. Cal. 2018)).

Conversely, Plaintiff has identified allegations in the FAC that support numerous *Filipino Yellow Pages* factors. *Opp.* 7–10. The Court finds, based on the following allegations, that the FAC sufficiently pleads the secondary meaning of its trade dress.

**Copying.** The Ninth Circuit has held that deliberate copying may suffice to support an inference of secondary meaning. *See Clicks Billiards*, 251 F.3d at 1264. Here, the FAC alleges Defendant copied Plaintiff's trade dress of the spiral spoke wheel and cylindrical wheel. *FAC* ¶¶ 12 (alleging Defendant avoided research and development costs "by copying DNA's products instead"), 23, 26 (alleging Defendant was advertising and selling "52 cylindrical-spoke motorcycle wheels as Sharkroad products").

Defendant, in reply, argues that copying cannot be alleged because radial laced spokes are "common functional features," so anyone can use them. *Reply* 11. At this stage, the Court may not make a factual finding as to the spokes' functionality. *See supra* Section IV.A. Thus, the argument does not persuade.

**Advertising; manner and length of use.** "[T]he Ninth Circuit has consistently held that allegations relating to the duration of use, sales, and promotional activities, such as those Plaintiff alleges, may be sufficient to support an inference of secondary meaning." *Benefit Cosmetics LLC v. E.L.F. Cosmetics, Inc.*, 2023 WL 4409104 (N.D. Cal. July 07, 2023) (collecting cases). The FAC alleges that "DNA invested thousands of dollars marketing its distinctive spiral-spoke wheels and advertised them at trade shows such as SEMA." *Id.* ¶ 15. Similarly, it alleges "DNA invested thousands of dollars marketing its 52-cylindrical spoke wheels and advertised them at trade shows SEMA, AIME Expo, VTwin Expo, Dealer Expo, and numerous independent trade shows." *Id.* ¶ 22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

**Consumer Perception.** The FAC alleges that "DNA developed a reputation for high-quality products in the marketplace and among purchasers as the source of high-quality, spiral-spoke motorcycle wheels" *id.*, ¶ 17, as well as a reputation "as the source of high-quality, 52 cylindrical-spoke motorcycle wheels," *id.* ¶ 24.

Defendant argues that Plaintiff failed to "allege how consumers have been taught to perceive the claimed designs as a source identifier rather than as product features." *Mot.* 13 (citing *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019)). For example, the FAC does not allege that consumers refer to the wheel design as "the DNA wheel." *Reply* 11.

The Court finds *R & A Synergy, LLC* is inapposite and does not support applying a heightened pleading requirement. *In R & A Synergy, LLC*, the court found secondary meaning insufficiently pled where, "[w]ithout more, all Plaintiff has alleged is that Plaintiff has successfully sold its Sleevey products to date, which is insufficient to equate any 'secondary meaning' about any feature of the Sleevey products with the Sleevey brand." *Id.* at *7. Here, the FAC has alleged something "more" than just sales of the Accused Products. It alleges that Plaintiff spent years marketing and advertising its spiral-spoke and cylindrical-spoke wheels and developing a reputation as "the source of" said wheels. *FAC* ¶¶ 15-17, 22-24. Thus, the FAC alleges some facts as to consumer perception.

**Exclusivity at Time of Launch.** The FAC alleges exclusivity at the time of launch. *FAC* ¶ 17 ("As of the date of first use in commerce of its spiral-spoke motorcycle wheels, DNA believes it was the only source advertising, promoting, and selling such wheel designs."), 24 (alleging same, as to the 52 cylindrical-spoke motorcycle wheel).

Defendant argues these allegations are bare and conclusory, and that the wheels were not exclusive because spokes on motorcycle wheels have "long been used in the industry." *Mot.* 12. Further, Plaintiff's design patent for the wheel designs, submitted as Exhibit B to the complaint, lists prior art, further evidencing that the designs "have been used by third parties." *Id.*

Defendant does not cite cases to support its arguments, including its suggestion that the existence of prior art demonstrates a lack of exclusivity as to the trade dress. *See Mot.* 12-13. Moreover, Defendant's arguments require a factual finding that would be premature at this stage. The Court has not been presented evidence regarding whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | |
|---|---|---|
| Case No. | 2:25-cv-10379-MWC-RAO | Date: March 10, 2026 |
| Title: | DNA Specialty Inc v. Sharkroad, Inc. *et al* | |

Plaintiff was not, in fact, the only source advertising, promoting, and selling such wheel designs, nor could it consider such evidence on a motion to dismiss.

Given the variety of factors considered, the FAC's allegations raise a plausible inference that consumers viewed the alleged trade dress as primarily identifying Plaintiff as the source of the product, rather than merely identifying the product itself. Thus, the FAC has plausibly pleaded that Plaintiff's trade dress has acquired a secondary meaning.

          c.      Conclusion

"A court must test the legal merits of a plaintiff's alleged trade dress at summary judgment or trial when the parties provide with all relevant, admissible evidence—not at the pleading stage when the court has little more than the plaintiff's allegations and the defendant's summary denial of them." *Lepton Labs, LLC*, 55 F. Supp. 3d at 1240. At this early stage, the Court is satisfied that the FAC gives Defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal ellipsis and citation omitted); *see Vision Quest*, 2017 WL 4169764, at *2. For the foregoing reasons, the FAC sufficiently states claims as to a protectable trade dress.

    B.    Unfair Competition

Plaintiff's fourth claim for relief asserts violations of California's unfair competition law. *FAC* ¶¶ 51–53. Defendant argues, to the extent this claim is premised on the trade dress allegations, it, too, must be dismissed. *Mot.* 13. Because the FAC sufficiently states claims as to a protectable trade dress, the unfair competition claim is also adequately alleged.

V.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss.

**IT IS SO ORDERED.**

 

:

**Initials of Preparer**  TJ