Sa'id Vakili, Esq. (SBN: 176322)
*vakili@vakili.com*
Craig McLaughlin, Esq. (SBN: 182876)
*craig@vakili.com*
Jason C. Ming, Esq. (SBN: 219745)
*jason@vakili.com*
Stephen P. Hoffman, Esq. (SBN: 287075)
*hoffman@vakili.com*
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California  90010-2822

**213/380-6010**  |  Fax: 213/380-6051

*Counsel for DNA Specialty, Inc.*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **DNA SPECIALTY, INC., a California Corporation,**<br><br>**Plaintiff/Counterclaim Defendant,**<br><br>**v.**<br><br>**SHARKROAD, INC., a California Corporation,**<br><br>**Defendant/Counterclaimant.** | **CASE NO.: 2:25-cv-10379-MWC (RAOx)**<br><br>[*Hon. Michelle Williams Court*]<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DNA SPECIALTY, INC.'S MOTION TO DISMISS COUNTS I AND II OF SHARKROAD'S AMENDED ANSWER AND COUNTERCLAIM PURSUANT TO FRCP RULE 12(b)(6) AND TO STRIKE SHARKROAD'S RELATED DEFENSES PURSUANT TO FRCP RULE 12(f)(2)** |
| | **Date:** Sept. 25, 2026<br>**Time:** 1:30 P.M.<br>**Place:** Courtroom 6A<br>First Street U.S. Courthouse<br>Los Angeles, CA |

---

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclam Counts I and II and To Strike Related Defenses*

## **TABLE OF CONTENTS**

I.   INTRODUCTION ……………………………………………………….. 1

II.  LEGAL STANDARDS……………………………………………………... 2

III. ANALYSIS…………………………………………………………… 5

    *A. Sharkroad's Inequitable Conduct Counterclaim (Count I) Violates the Materiality and Specific Intent Requirements of Federal Circuit Precedent* …………………………………………………… 5

        *1. The "Who"*…………………………………………………… 5
        *2. The "Why"* ..……………………………………………….10
        *The "Where"* …..……………………………………… ...FN1
        *a. The Court Should Allow the '620 Patent to Allen to Be Considered as Not "Outside the Pleadings"*………………………………..14
        *3. The "How"* ………………………………………………….. 16
        *4. Sharkroad Fails to Meet Even the General Pleading Standard Required For a "Specific Intent to Deceive"*………………………18

    *B. Sharkroad's Counterclaim for Invalidity (Anticipation and Obviousness) Also Fails*………………………………………………16

    *C. Sharkroad's Third and Fourth Defense for Inequitable Conduct and Sixth Defense for Invalidity Also Fail* ……………………………..30

IV.  CONCLUSION …………………………………………………………..23

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 681-82 (9th Cir. 2006) …………..15

*Aevoe Corp. v. Ae Tech. Co.*, 2013 U.S. Dist. LEXIS 31647 *; 2013 WL 876036 (D. NV March 7, 2013) ..................................................................................................14, 22

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)………………9

*Arrmaz Products Inc. v. Rieth-Riley Construction Co. Inc.*, 2024 U.S. Dist. LEXIS 107870 *; 2024 LX 99199; 2024 WL 3043317 (N.D. IN 2024)....................3, 13, 14, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)…………………………………………… 2, 23

*Autel Intelligent Tech. Corp. v. Shenzhen XTOOLTech Intelligent Co.*, No. EDCV 25-01755-KK-DTBX, 2025 WL 3652931 (C.D. Cal. Nov. 26, 2025) …………………6, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)…………………………… 2, 20, 23

*Baxter Int'l Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998)……………………13

*Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3d Cir. 1986) ………………………21

*Conner v. Harrah's Operating Co.*, No. 3:08-CV-00633-BES-RAM, 2009 U.S. Dist. LEXIS 151985 (D. Nev. July 6, 2009) …………………………………………………...8

*Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) …………………………… 2

*C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:17-CV-754 TS, 2019 U.S. Dist. LEXIS 67369 (D. UT Apr. 18, 2019)……………………………………………………..4

*Crye Precision LLC v. Duro Textiles, LLC*, 112 F. Supp. 3d 69 (S.D.N.Y. 2015)...4, 20

*Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337 (Fed. Cir. 2011) …………………………………………………………………………….. 4, 18

ii

*Energy Absorption Sys., Inc. v. Roadway Safety Service, Inc.*,1993 U.S. Dist. LEXIS 13731, 1993 WL 389014 (N.D. Ill. Sept. 16, 1993) …………………………………….22

*Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) ……………………………………… 3, 5, 6, 9, 10, 12, 13, 14, 16, 17, 22, FN1

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993).......................................5

*Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys.*, LLC, No. 99-CV-437, slip. opin. (E.D.Tex. Aug. 14, 2000) ………………………………....22

*In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524 (9th Cir. 1996) ……………………………………………………………………………….. 2

*In re Fordson Engineering Corp.*, 25 B.R. 506 (Bankr.E.D.Mich.1982)………………9

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) ………..2, 16

*Int'l Test Solutions, Inc. v. Int'l Corp.*, 2017 U.S. Dist. LEXIS 74640 *; 2017 LX 39962; 2017 WL 2118314 (ND. Cal., May 16, 2017).......................................13, 17, 19

*Kaotica IP Corp. v. Iconic Mars Corp.*, U.S. Dist. LEXIS 159012 *, 2021 WL 3726006 (S.D. Cal. Aug. 23, 2021) …………………………………………………..20

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ……….……15, 16

*Knievel v. ESPN,* 393 F.3d 1068 (9th Cir. 2005)…………………………………..15

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)…………………………3, 16

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ………2

*Martineau v. Currutt*, No. 1:21-cv-00045-JNP-DBP, 2022 U.S. Dist. LEXIS 11357, 2022 WL 180735 (D. Utah Jan. 19, 2022) …………………………………………..8

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ………………………2, 16, 20

iii

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir.1998) ……………………………14, 15

*Powertech Tech., Inc. v. Tessara, Inc.*, No. C 10-0945 CW, 2012 WL 1746848 (N.D. Cal. May 16, 2012)……………………………………………………5, 21, 22, 23

*Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297 (D. Del. 2013) ................7

*Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, 2020 U.S. Dist. LEXIS 49792 *; 2020 WL 1331919 (SDNY March 13, 2020) .......................................................13, 14

*Sun Microsystems, Inc. v. Versata Enters.*, 630 F. Supp. 2d 395 (D. Del. 2009)……..21

*Tangent Techs., LLC v. Recycled Plastics Indus., LLC*, 2024 U.S. Dist. LEXIS 157277; 2024 WL 4007218 (E.D.WI, July 24, 2024) ...............................................................13

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) …………………………………………………...……........................4, 11, 17

*Turner v. City & Cnty. of S.F.,* 788 F.3d 1206, 1210 (9th Cir. 2015) …………………2

*White v. Arco/Polymers, Inc.*, 720 F.2d 1391 (5th Cir.1983) ………………………….9

*Wyshak v. City Nat'l Bank*, 607 F.2d 824 (9th Cir.1979) .................................................5

*Xilinx, Inc. v. Invention Inv. Fund I LLP*, No. C 11-0671 SI, 2011 WL 3206686 (N.D. Cal. July 27, 2011) ……………………………………………………………23

**Statutes**

35 U.S.C. § 102 …………………………………………………………………….17

35 U.S.C. § 103 …………………………………………………………………….17

**<u>Rules</u>**

F. R. Civ. P. Rule 12(b)(6)................................................................1, 2, 16, 17

F. R. Civ. P. Rule 12(f) ...............................................................................5

F. R. Civ. P. Rule 12(f)(2) ........................................................1, 2, 21, 22, 23

F. R. Civ. P. Rule 8 .................................................................................19

F. R. Civ. P. Rule 9(b) ............................................................3, 6, 17, 19, 20, 22

F. R. Evid. 201………………………………………………………………….2

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On August 3, 2026, Defendant and Counterclaimant Sharkroad, Inc. ("Sharkroad") filed an Amended Answer and Counterclaims ("AACC") [Dkt. #36] in response to the First Amended Complaint ("FAC") of Plaintiff and Counterclaim Defendant DNA Specialty, Inc. ("DNA"), wherein DNA alleged infringement of US Design Patent No. D1,086,968 ("the '968 Patent"), which claims an ornamental design of a spirally-shaped wheel spoke, along with two claims of trade dress infringement and a state claim for unfair competition.  [Dkt. #12.]  The AACC was filed after this Court granted DNA's motion to dismiss, with leave to amend, Counts I and II of Sharkroad's Answer and Counterclaim ["ACC"].  [Dkt. #35.]

In the AACC, however, Sharkroad has continued to inadequately plead inequitable conduct (Count I) and invalidity based on anticipation and obviousness (Count II).  DNA seeks dismissal of both Counts with prejudice pursuant to F. R. Civ. P. Rule 12(b)(6).

Should dismissal be granted, Sharkroad should not be able to rely on lingering and groundless defenses of inequitable conduct and patent invalidity, and those defenses should be stricken pursuant to F. R. Civ. P. Rule 12(f)(2). Leaving them intact will prejudice DNA by requiring it to continue spending resources on discovery and beyond and will not promote judicial economy through expected motion practice in discovery and before trial.

On August 5, 2026, DNA's counsel forwarded, by e-mail, a detailed critique of the inadequately pled Counts and defenses and requested a "meet and confer."  On August 6, 2026, Sharkroad's counsel responded with a detailed letter attempting to persuade DNA that the AACC was adequately pled, including a threat of sanctions.  On August 11, 2026, DNA's counsel sent a lengthy letter to Sharkroad's counsel asking it to reconsider its position to not withdraw Counts I and II and their related defenses.  On

1

August 12, 2026, both parties' counsels "met and conferred" on Zoom regarding their differing views but were unable to reach agreement, necessitating the filing of this motion.  [*See* Decl. of Craig McLaughlin, submitted herewith.]  DNA addresses below why both Counts and related defenses in the AACC continue to fail to comply with applicable law.

## II.   <u>LEGAL STANDARDS</u>

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff.  *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, a cause of action's elements that are "supported by mere conclusory statements, do not suffice."  *Id*.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  *In re Silicon*

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

*Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *see Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Under F. R. Civ. P. Rule 9(b), claims alleging fraud or mistake must be pled with particularity. "Inequitable conduct, while a broader concept than fraud, must be pled with particularity" as well. *Exergen Corp. v. Wal-mart Stores, Inc.,* 575 F.3d 1312, 1326 (Fed. Cir. 2009) (citation omitted). In patent infringement cases, courts shall apply Federal Circuit precedent to determine whether a claim of inequitable conduct is pled with adequate particularity under Rule 9(b). *Id.*

To meet the particularity requirements of Rule 9(b), in its pleading, the accused infringer "must identify the specific who, what, when, where, and how of the *material* misrepresentation or omission committed before the PTO." *Exergen Corp.*, 575 F.3d at 1328 (emphasis added). Specifically, the accused infringer must allege several factual bases.

First, the pleading must name the specific individual, with a duty to disclose during prosecution, "**who** both knew of the material information and deliberately withheld or misrepresented it." *Id*. at 1329. Second, the pleading must identify **what** "claims, and which limitations in those claims, the withheld references are relevant to, and **where** in those references the material information is found." *Id.* Third, the pleading must "identify the particular claim limitations, or combinations of claim limitations, that are supposedly absent from the information of record . . . to explain both "**why**' the withheld information is material and not cumulative, and `**how**' an examiner would have used this information in assessing the patentability of the claims." *Id*. at 1329-30. *Arrmaz Products Inc. v. Rieth-Riley Construction Co. Inc*., 2024 U.S. Dist. LEXIS 107870 *6; 2024 LX 99199; 2024 WL 3043317 (Dist. Court, ND Indiana 2024) (citing to *Exergen*).

Under Federal Circuit precedent, to prevail on a claim of inequitable conduct

3

involving an omission or misrepresentation of prior art, an accused infringer must also prove, by clear and convincing evidence, two separate and distinct elements: (1) the reference was "material" to the prosecution of the patent and (2) the applicant had "specific intent" to deceive the PTO. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

In *Therasense, Inc. v. Becton*, the Federal Circuit addressed how "the inequitable conduct doctrine has plagued not only the courts but also the entire patent system." The Court noted that alleging inequitable conduct has become "a common litigation tactic," asserted in "almost every major patent case" on even the "slenderest grounds." The Federal Circuit also recognized many costs of this "absolute plague," including "increased adjudication cost and complexity, reduced likelihood of settlement, burdened courts, strained PTO resources, increased PTO backlog, and impaired patent quality." To remedy this problem, the Court "tighten[ed] the standards for finding both intent and materiality." *C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:17-CV-754 TS, 2019 U.S. Dist. LEXIS 67369, at *3-4 (D. Utah Apr. 18, 2019) (citing various passages from *Therasense*).

The requirements for pleading inequitable conduct are stringent. In addition to identifying the specific who, what, when, where, why, and how of the material misrepresentation or omission, the accused infringer must plead sufficient facts "from which the court may *reasonably infer* that a specific individual" had knowledge of the material reference <u>and</u> deliberately withheld it with the intent to deceive the PTO. *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (emphasis added). To qualify as a material reference, it must be "but-for" material, meaning "the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291.

4

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

Affirmative defenses may be stricken if they present an "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." F. R. Civ. P. Rule 12(f). The purpose of a Rule 12(f) motion is to avoid the prejudicial expense of litigating spurious issues. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517(1994).  A defense is insufficiently pled if it fails to give the plaintiff fair notice of the nature of the defense and fails to provide any information about the grounds upon which it rests.  *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *Powertech Tech., Inc. v. Tessara, Inc.,* No. C 10-0945 CW, 2012 WL 1746848, at *5 (N.D. Cal. May 16, 2012) ("affirmative defenses [which] include only conclusory allegations, without providing any information about the grounds upon which the defenses rest, it has insufficiently [pleaded] these defenses.").

## III.  ANALYSIS

Like the ACC, Counts I and II continue to be fatally flawed.

### A.  Sharkroad's Inequitable Conduct Counterclaim (Count I) Violates the Materiality and Specific Intent Requirements of Federal Circuit Precedent

While DNA does not concede that other elements of this test are met, as will be seen below, the allegations of inequitable conduct in the AACC fail to adequately "identify the specific" 'who', 'where', 'why' and 'how' "of the material misrepresentation or omission" regarding the prior art references during prosecution before the PTO. *Exergen Corp.*, 575 F.3d at 1328.

#### 1.  The "Who"

The pleading must identify the *specific individual* with a duty to disclose during prosecution **'who'** both knew of the material information <u>and</u> deliberately withheld or misrepresented it.  *Id*. at 1329.

As this Court previously held, referring to various individuals who might be responsible for the purported inequitable conduct is insufficient to satisfy the "who" pleading requirement of *Exergen*.  In its July 21, 2026, Order dismissing this Count, the

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

Court explained one of the defects in the 'who' by stating:

> In *Exergen*, the Federal Circuit held that a complaint referring generally to "Exergen, its agents and/or attorneys" was insufficient to identify the "who," because doing so "fails to name the specific individual associated with the filing or prosecution of the [patent] application." 575 F.3d at 1329. Similarly, here, the ACC only identifies DNA Specialty rather than specific individuals alleged to be involved in the filing or prosecution of the patent allocation [sic]. This "leaves one wondering who did what." *See Autel Intelligent Tech. Corp. v. Shenzhen XTOOLTech Intelligent Co.*, No. EDCV 25-01755-KK-DTBX, 2025 WL 3652931, at *3 (C.D. Cal. Nov. 26, 2025). Therefore, the ACC does not plead "who" with sufficient specificity to satisfy Rule 9(b)." [Dkt. #35, pg. 10.]

While failing to satisfy a single 'who' requirement of *Exergen* is sufficient to dismiss the Count, the *Exergen* 'who' requirement goes beyond merely naming the "specific individual associated with the filing or prosecution of the [patent] application." Indeed, the 'who' also requires pleading that the specific individual "both knew of the material information and deliberately withheld or misrepresented it." *Exergen Corp.*, 575 F.3d at 1329.

In the AACC, Sharkroad not only continues to accuse DNA, but also throws a number of individuals into the scrum and pleads "and/or" that any of them alone or together committed one, some or none of the required elements of inequitable conduct. As previously decided by the Court, Sharkroad's reference to DNA as an individual warranted dismissal.  The AACC, however, continues to include such allegations where the basis of the claim is not filing an information disclosure statement that includes the purported material information.

92. During prosecution of the application that issued as the '968 Patent, no

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

Information Disclosure Statement was submitted identifying the prior commercial spoke wheel products, including the Twisted Spoke products, **known to DNA**, Mr. Lehman, Paul Choi, James Choi, **and/or** Sun Choi. (Emphasis added.)

123. Upon information and belief, **Plaintiff**, Mr. Lehman, Paul Choi, James Choi, **and/or** Sun Choi knew the withheld products were material because those products disclosed the same ornamental twisted, twirled, spiral, and/or fat twisted spoke designs claimed in the '968 Patent.  (Emphasis added.)

104. Upon information and belief, **DNA**, Mr. Lehman, Paul Choi, James Choi, **and/or** Sun Choi intentionally withheld the Prior Art Products identified above from the USPTO during prosecution of the application that issued as the '968 Patent.  (Emphasis added.)

The "and/or" allegations leave open a range of possibilities regarding 'who' knew of the purported material prior art and who withheld it from the PTO during prosecution, including DNA alone.

"Apotex's broadly cast net around the inventors and those acting on their behalf also does not allow the court to reasonably infer that a specific individual both knew of the invalidating information and had a specific intent to deceive the PTO. Apotex's vague allegations could implicate all or none of the individuals who had dealings with the PTO during the reexamination. As such, the court finds that Apotex has insufficiently pled 'who' deceived the PTO." *Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013).  Like in *Senju*, in addition to again including DNA, a non-individual, Sharkroad also uses the qualifier "and/or" to accuse several individuals of the offense,

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

which does not permit a reasonable inference that any accused individual was responsible for both of the elements required.

But there is more.  In the AACC, Sharkroad employs the uncertain "and/or" modifier in more of its allegations about several individuals.

89.  Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi **and/or** Sun Choi, were aware of DNA's "Twisted Spoke".  (Emphasis added.)

91.  Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi **and/or** Sun Choi, were individuals associated with the preparation, filing, **and/or** prosecution of the application that issued as the '968 Patent, or were otherwise substantively involved in the application and transfer of rights in the claimed design. (Emphasis added.)

To the extent that Sharkroad has included inconsistent allegations, such as lumping these individuals together, *ad seriatim*, without using the "and/or" qualifier, those allegations reflect confusion and speculation and continue to leave the Court "wondering who did what." *See Autel Intelligent Tech. Corp.*  The allegations of the 'who' are far from "well pleaded."

Moreover, the "court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading." *Martineau v. Currutt*, No. 1:21-cv-00045-JNP-DBP, 2022 U.S. Dist. LEXIS 11357, at *13, 2022 WL 180735 (D. Utah Jan. 19, 2022) (collecting cases); *Conner v. Harrah's Operating Co.*, No. 3:08-CV-00633-BES-RAM, 2009 U.S. Dist. LEXIS 151985, at *5 (D. Nev. July 6, 2009) (collecting cases).  Sharkroad's confusing and inconsistent allegations do not meet

8

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

the 'who' requirement of *Exergen*.

As if the allegations above weren't fatal enough, Sharkroad alleges that it was DNA that committed the purported inequitable conduct.

> 109. **DNA's inequitable conduct** renders the '968 Patent unenforceable.
>
> (Emphasis added.)

This allegation, which was added into the AACC, leaves no doubt as to 'who' ultimately committed the purported inequitable conduct - only DNA, which is an entity and cannot have committed the offense. As an organization, DNA has no duty of candor with the USPTO during examination, "'the duty applies only to individuals, not to organizations).'" *Exergen Corp.*, 575 F.3d at 1329 (motion for leave to amend denied).

Here, Sharkroad alleges that it was only DNA that committed the inequitable conduct. The allegation must be accepted as true.

> "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr.E.D.Mich.1982). Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them. *See White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983); *Fordson*, 25 B.R. at 509. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

This Court previously found Sharkroad's allegations to be defective on the precise ground that it pled DNA as responsible for the purported inequitable conduct. But Sharkroad did not cure the pleading, it added on. Sharkroad now admits it was DNA that committed the purported inequitable conduct, which the 'who' of *Exergen* forbids. Under this prong alone, DNA's motion to dismiss Count I with prejudice should be granted.

9

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

### 2. The "Why"

The pleading must also identify the particular claim limitations, or combinations of claim limitations, that are supposedly absent from the information of record . . . to explain both **'why'** the withheld information is material and not cumulative and explain **'how'** an examiner would have used this information in assessing the patentability of the claim. *Exergen Corp.*, 575 F.3d at 1329-30.

Sharkroad generally alleges that any twist or spiral feature in a spoke makes it *ipso facto* material prior art. "The Prior Art Products are especially material because prior commercial twisted, twirled, and spiral spoke products are directly material to patentability and were not considered by the USPTO." [Dkt. #36, ¶ 98.] The prosecution record, however, shows otherwise.

In the AACC, Sharkroad fails to sufficiently allege 'why' the purportedly withheld bent-spoke references are material and non-cumulative. Instead of withdrawing its fatally defective Counterclaim, Sharkroad doubled down and added at least 9 more "prior art" spokes to the AACC, each of which appears identical to the others, including the Twisted Spoke from DNA's catalog, none of which Sharkroad distinguishes from the others. [Dkt. #36, ¶ 94.]

These "Prior Art Products," however, are quite different from the '968 Patent, as each is a bent spoke with an attachment button for affixing to an axial plate and exhibits twists on only a portion of the spoke. [Dkt. #12-1.] Because they are identical to each other, they are equally immaterial to patentability, as the entire prosecution record shows, yet Sharkroad continues to glaringly ignore.

According to the face page of the '968 Patent, the Examiner conducted a search, and identified and reviewed 18 separate prior art references, none of which were cited to prevent the '968 Patent's issuance. Sharkroad, however, selectively cites only two of them, including US Design Patent No. 374,649 to Choi ("the '649 Patent to Choi"). [Dkt. #36, ¶¶ 99-100.] A copy of that patent is attached to the declaration of Craig McLaughlin

10

and the concurrently filed Request for Judicial Notice.  [RJN, Ex. 1.]

The '649 Patent to Choi discloses a spirally shaped spoke with a bent end terminated in a button-style attachment means and with spiral twists along *the entire length of the spoke*.  The Examiner found this reference insufficient, alone or in combination with any other reference, as a basis to reject the application or to prevent the allowance and issuance of the '968 Patent.  The '649 Patent to Choi was clearly determined *not to* be "but-for" material in character, a reference that would otherwise have prevented the claim from advancing to allowance.  *Therasense*, 649 F.3d at 1291.

Further bolstering the immateriality of Sharkroad's references are images in U.S. Patent No. 598,620 to Allen ("'620 Patent to Allen" or "Allen"), the first reference cited on the face page of the patent-in-suit.  The Examiner reviewed it and determined it was insufficiently material to prevent allowance.  A copy of the patent is attached to the declaration of Craig McLaughlin and the concurrently filed Request for Judicial Notice. [RJN, Ex. 2.]

Figures 6 and 7 are particularly illustrative.  Comparing Sharkroad's "Prior Art Products," Figure 6 shows a bent spoke that is virtually identical, with twists along only a part of the straight portion of the spoke body.  Figure 7 shows a spoke without a bend and with a twisted mid-portion, also of insufficient materiality to prevent allowance.



*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

Like Sharkroad's "Prior Art Products," these Figures do not show a straight spoke having twists along its entire length, as depicted in the '968 Patent.

Indeed, the '620 Patent to Allen shows that Sharkroad's Prior Art Products are not different from but are instead cumulative of Figure 6 and thus fill no gaps[1] in the prior art of the prosecution record. Sharkroad's failure to mention Allen in the pleading, let alone to distinguish it from the Prior Art Products, shows that Sharkroad knows it *cannot establish* the required materiality of any of the references it accuses DNA (and now others) of withholding from the PTO. The record shows that *none* of Sharkroad's references are material to patentability but are merely cumulative, and that Sharkroad's allegations of materiality and withholding such references with an intent to deceive are false, and that its Counterclaim is objectively baseless.

Referring to the "Twisted Spoke" shown in Paragraph 88 of the AACC, Sharkroad pled this whopper: "Because the art already before the Examiner did not disclose those features, the reference was noncumulative and would have supplied a basis for rejection under 35 U.S.C. § 102 or § 103." [Dkt. #36, ¶ 101.] Figure 6 of the '620 Patent to Allen directly contradicts this allegation, yet Sharkroad pled it anyway, with *actual knowledge*[2]

---

[1]   In view of Allen, it is plain to see that Sharkroad cannot point to **'where'** in the Prior Art Products the material information is found, thus failing this prong of *Exergen* too.

[2]   What is quite striking is that Sharkroad again ignores Allen, showing that Figure 6 is veritably identical to each of the Prior Art Products that Sharkroad advances, knowing that the Examiner found Allen be immaterial to patentability, especially after Allen was included and discussed extensively in DNA's earlier Motion for Judgment on the Pleadings. DNA notes, only for context and not for the truth of any disputed merits issue, that Sharkroad's own Invalidity Contentions—which are outside the pleadings and which DNA does not ask the Court to weigh in resolving this Motion—reflect that Sharkroad was keenly aware of the '620 Patent to Allen at least as early as the day before the Motion for Judgment on the Pleadings was filed. [Dkt. #31, pg. 15 of 19, lns. 14-15.]

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

of Allen, its contents, and the duty to conduct an adequate pre-filing investigation.

"Given Mipox's failure to establish facial but-for materiality of the ITS data sheets, the examiner could not have used the ITS data sheets to deny the '683 patent." *Int'l Test Solutions, Inc. v. Int'l Corp.*, 2017 U.S. Dist. LEXIS 74640 *16; 2017 LX 39962; 2017 WL 2118314 (ND. Cal., May 16, 2017); *Tangent Techs., LLC v. Recycled Plastics Indus., LLC*, 2024 U.S. Dist. LEXIS 157277 *20; 2024 WL 4007218 (E.D.WI, July 24, 2024) ("Defendant therefore does not explain why the photographs are but-for material to patentability" and amendment would be "futile because Defendant's allegations of inequitable conduct fail as a matter of law.").

Even if the inventor of the subject application had knowledge during prosecution of any of the references that Sharkroad advances, there can be no inequitable conduct for failing to disclose a reference that is not "but-for" material. Indeed, "a patentee need not cite an otherwise material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner." *Baxter Int'l Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1328 (Fed. Cir. 1998).

Here, Sharkroad does not even make an attempt to distinguish the purportedly withheld prior art from the '620 Patent to Allen, a knowingly fatal reference to this Count that the Examiner reviewed and rejected as immaterial to patentability. "Because Reggiani makes no attempt to distinguish the '138 publication from the disclosed publications and because these cannot be the basis of an inequitable conduct claim, the Court finds that Reggiani has failed to sufficiently allege that the reference is non-cumulative." *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, 2020 U.S. Dist. LEXIS 49792 *17; 2020 WL 1331919 (SDNY March 13, 2020); *Arrmaz Products Inc.*, 2024 U.S. Dist. LEXIS 107870 *12 (granting motion for judgment on the pleadings on this and other grounds). Similarly, Sharkroad's undistinguished references cannot form the basis of an inequitable conduct claim.

"To satisfy the 'why' component, Defendants' counterclaim must also plead with

13

particularity that the withheld information is not cumulative of the information actually disclosed during prosecution. Such facts are absent from Defendants' counterclaim. Therefore, the Court finds that Defendants' counterclaim fails to plead with particularity 'why' the withheld information is material and not cumulative." *Aevoe Corp. v. Ae Tech. Co.*, 2013 U.S. Dist. LEXIS 31647 *22; 2013 WL 876036 (D. NV March 7, 2013); *Signify N. Am. Corp.*, 2020 U.S. Dist. LEXIS 49792 *17; *Arrmaz Products Inc.*, 2024 U.S. Dist. LEXIS 107870 *12; *Crye Precision LLC v. Duro Textiles, LLC*, 112 F. Supp. 3d 69, 81 (S.D.N.Y. 2015).  Not only did Sharkroad not allege facts to distinguish the purported references from those of the prosecution record, including the '620 Patent to Allen, it also failed to credibly allege that its purported references were non-cumulative, thus failing both requirements of the 'why.'

### a. The Court Should Allow the '620 Patent to Allen to Be Considered as Not "Outside the Pleadings"

Because Sharkroad failed to distinguish the references in the prosecution record before filing its Counterclaim against DNA doesn't mean that the Court is prevented from considering Allen to aid it in concluding that Sharkroad's Counterclaim for inequitable conduct is inadequately pled, is meritless and is objectively baseless.

Indeed, as a threshold issue to plead Count I, *Exergen* required review of Allen and the other 17 references listed on the face page of the '968 Patent and to confirm that they were not cumulative before suing DNA for fraud on the patent office.  [Dkt. #12-1]  This was an intrinsic duty and central to the 'who.'

If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir.1998).  Here, Count I of the AACC necessarily relies on review of Allen and the other 17 references cited on the face page of the '968 Patent to adequately plead the 'why' and the 'how' as required by the Federal Circuit.  It is thus proper to incorporate other

references the Examiner reviewed in the prosecution record that formed a part of that duty whether or not the references were specifically mentioned in (or intentionally omitted from) the Counterclaim.

As the Ninth Circuit explains, there are instances in the pleading stage to consider material where there is no mention or reference of it in the complaint if the claim necessarily depended upon it – "even though the complaint did not 'allege or describe the contents of the surrounding pages,' it was proper to incorporate them because the claim necessarily depended on them." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Knievel v. ESPN,* 393 F.3d 1068 (9th Cir. 2005)).  Here, Allen represents *material which is necessarily invoked by the legal requirements to support Sharkroad's Counterclaim for inequitable conduct* and thus is not "outside the pleadings."

Additionally, Sharkroad itself specifically refers to the references in the prosecution record by alleging the following: "The prosecution history of the '968 Patent reflects that the USPTO Examiner cited certain patent references and a limited number of products."  [*See* Dkt. #36, ¶ 93.]  "While the Examiner considered other prior art depicting wheel spokes during the prosecution of the '968 Patent, . . . ."  [*See* Dkt. #36, ¶ 99.]  In fact, Sharkroad referenced two patents from that very record.  [*See* Dkt. #36, ¶ 100.]

But Sharkroad conveniently selected only two of the 18 references cited in the '968 Patent document and intentionally omitted mention of Allen.

The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken — or doom — their claims. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.,* 443 F.3d 676, 681-82 (9th Cir. 2006) (observing "the policy concern underlying the rule: Preventing

15

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").  *Khoja*, 899 F.3d at 1002.

Allowing incorporation of Allen by reference here is proper and prevents such tactics.

Furthermore, DNA advances yet another option for the Court to consider Allen as not "outside the pleadings." *In re Silicon Graphics Inc. Sec. Litig.*; *Lee*.

DNA submits concurrently its Request for Judicial Notice of Allen and Choi. [RJN.]

The Court can and should consider the Allen patent as not "outside the pleadings," because a.) Allen is referenced on the face page of the '968 Patent document which was attached to the FAC and is the basis of Sharkroad's claim of inequitable conduct, b.) the review of Allen by Sharkroad was required, intrinsic and central to Sharkroad's duty to meet the necessary element of the 'why' c.) Sharkroad actually alleged that the Examiner reviewed the patents listed on the face page of the '968 Patent and Sharkroad selectively invoked two of them in the AACC, and d.) the Court should grant DNA's Request for Judicial Notice.

Comparing the alleged Prior Art Products to Allen readily shows that "reasonable inferences from that content" are not "plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*.

### 3. The 'How'

Sharkroad also fails to credibly allege **'how'** an examiner would have used this information in assessing the patentability of the claim.  *Exergen Corp.*, 575 F.3d at 1329-30.  Sharkroad offers no analysis of how the bent-spoke prior art anticipates or renders obvious the patented design in view of the '620 Patent to Allen.

Here, we know exactly how the Examiner would have used the Prior Art Products to assess patentability of the claim.  Each of these products appears identical (or

16

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

sufficiently so) to Figure 6 of the '620 Patent to Allen, which was deemed immaterial to patentability.  In fact, after the Examiner reviewed each of the 18 references of record, no rejection was issued during prosecution under §102 or §103, or on any other ground of invalidity.

Indeed, it is blatantly apparent that Sharkroad's bent-spoke prior art does not fill any gaps in the prosecution references and clearly none anticipate the '968 Patent.  In view of Allen, Sharkroad offers no references that an examiner could look to in combination to determine obviousness.  Not only has Sharkroad abjectly failed to explain the 'how,' but its allegations of materiality, anticipation, and obviousness are each objectively baseless.

The AACC suffers from the same inadequacies as the ACC by failing to adequately allege the 'why' and 'how' required under F. R. Civ. P. Rule 9(b) and Federal Circuit precedent and, here, *cannot be cured*.  "ITS data sheets are not but-for material under *Therasense*, which is a deficiency that cannot be solved by further amended pleading.  Moreover, Mipox already had an opportunity to amend in response to ITS's first motion to dismiss, suggesting that further leave to amend would be futile."  *Int'l Test Solutions, Inc.*, 2017 U.S. Dist. LEXIS 74640 *23.  Under this prong alone, DNA's Rule 12(b)(6) motion should be granted.

After two attempts[3], Sharkroad has repeatedly failed to adequately allege the 'who," has failed to present any "but-for" material prior art and has failed to adequately plead the 'why,' 'where' and 'how' as required under F. R. Civ. P. Rule 9(b) and Federal Circuit precedent.  Indeed, Sharkroad cannot establish any of these necessary elements

---

[3]  Actually, three attempts if one considers the Proposed Amended Answer and Counterclaim Sharkroad provided to DNA, which was not filed, but was different than the ACC and the AACC, but nonetheless had to be reviewed by DNA and was responded to in the Motion for Judgment on the Pleadings.  [Dkt. #30-1, Decl. Craig McLaughlin, Exs. 1 and 2.]

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

and allowing amendment would be futile. Accordingly, Count I should be dismissed with prejudice.

### 4. Sharkroad Fails to Meet the General Pleading Standard Required For a "Specific Intent to Deceive"

A claim of inequitable conduct must also plead sufficient facts "from which the court may reasonably infer that a *specific individual*" knew of the material reference <u>and</u> deliberately withheld it to deceive the PTO. *Delano Farms Co.*, 655 F.3d at 1350 (emphasis added).

In the AACC, Sharkroad alleges that DNA withheld the purported references as follows:

"104. Upon information and belief, DNA, Mr. Lehman, Paul Choi, James Choi, and/or Sun Choi intentionally withheld the Prior Art Products identified above from the USPTO during prosecution of the application that issued as the '968 Patent."

In view of Allen, it is readily apparent that none of the Prior Art Products were material, let alone "but-for" material to patentability. Accordingly, any knowledge of them during prosecution was irrelevant and certainly could not constitute any intent to deceive. There simply was no duty to disclose them, and thus there could be no intent to deceive the PTO if disclosure was not required.

In the AACC, Sharkroad adds a purported *motive-to-deceive* allegation as follows:

105. Upon information and belief, the withholding was not accidental or inadvertent. DNA, Mr. Lehman, Paul Choi, James Choi, and Sun Choi had a strong motive to withhold the Prior Art Products because their disclosure would have shown the Examiner that the claimed spiral wheel spoke design was already known, sold, and used in the motorcycle wheel industry before the filing date of the '968 Patent. In particular, the "Twisted Spoke" product anticipated or rendered obvious the design.

Sharkroad fails to allege a factual basis for the purported motivation to infer a

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

*specific* intent to deceive under Rule 9(b). In essence, Sharkroad alleges that DNA obtained the patent by committing fraud, but does not plausibly allege any special value such a patent would have to the accused parties to induce a *specific intent* to commit the fraud.

The pleading doesn't allege a particular factual basis why fraudulently obtaining this patent would motivate DNA, the entity, or any of the alleged possible individuals to commit fraud on the PTO. Pleading general economic value, which Sharkroad hasn't even alleged, isn't adequate. "Mipox pleads no factual basis to explain why these ordinary economic circumstances would plausibly induce fraud on the PTO." *Int'l Test Solutions, Inc.*, 2017 U.S. Dist. LEXIS 74640 *22. "Accordingly, Mipox has failed plausibly to allege specific intent to deceive." *Id.*

Sharkroad does not provide sufficient facts that justify a reasonable inference that any of the allegedly accused parties had appreciated that the references were material to the patentability of the claim, or that they had a specific intent to deceive the PTO by withholding them. "Defendant again fails to provide sufficient facts that justify a reasonable inference that Mr. Panzer and the inventors knew of the references, appreciated their materiality to the asserted claims, or that they had specific intent to deceive the PTO." *Arrmaz Products Inc.*, 2024 U.S. Dist. LEXIS 107870 *19 (granting motion for judgment on the pleadings on this and other grounds).

Like the counterclaimant in *Arrmaz*, Sharkroad has likely not complied with the general pleading requirements under Rule 8, let alone those under Rule 9(b). "Not only does Defendant fail to allege sufficient facts to satisfy the particularity requirements under Rule (9b), but Defendant may even fail to meet general pleading requirements under Rule 8 with regard to these individuals." *Id.*

Having failed to allege sufficient facts that justify a reasonable inference that any of the accused various parties had appreciated that the references were material to patentability of the claim, or that they had a specific intent to deceive the PTO by

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

withholding them, Sharkroad's pleadings have demonstrably failed nearly every prong of the particularity requirements of Rule 9(b) and Federal Circuit precedent.  Accordingly, DNA's motion to dismiss Count I with prejudice should be granted.

**B.   *Sharkroad's Counterclaim for Invalidity (Anticipation/Obviousness) Fails***

"[F]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555.

In its Counterclaim for Invalidity based on anticipation and obviousness, Sharkroad concludes both, relying at best on the same immaterial prior art as pled in the Counterclaim for Inequitable Conduct.  Sharkroad alleges:  "For example, DNA's own "Twisted Spoke" products that it sold in 2021, well before the filing date of the '968 Patent, *is identical in appearance compared to the claimed design in the '968 Patent and thus anticipates it* by disclosing the same design as claimed in the patent as shown below: . . . ." (Emphasis added.)  [Dkt. #36, ¶ 132.]

A quick look at the images in the paragraph shows that this allegation on its face is untrue.  In fact, Sharkroad's entire invalidity "analysis" rests solely on the same Prior Art Products that would have been rejected as cumulative of Allen in the prosecution record.  Here, there is no room for speculation and no reasonable inference.  As set forth in the 'why' section above, Sharkroad's factual allegations of invalidity raise no such right to relief.  *Id.*; *Moss*.

Accordingly, Count II cannot be a plausible claim and therefore dismissal with prejudice is appropriate.  *Kaotica IP Corp. v. Iconic Mars Corp.*, U.S. Dist. LEXIS 159012, at *3, 2021 WL 3726006 (S.D. Cal. Aug. 23, 2021); *Crye Precision LLC*, 112 F. Supp. 3d at 79.

**C.   *Sharkroad's Third and Fourth Defense for Inequitable Conduct and Sixth Defense for Invalidity Also Fail***

As an initial matter, DNA recognizes that the Court denied DNA's prior motion to strike these defenses, allowing Sharkroad leave to amend Counts I and II of the

20

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

Counterclaim. Sharkroad has now done so, and after extensive "meet and confer" efforts, including exchanging detailed correspondence with Sharkroad's counsel, DNA rightfully challenges the amended pleading as set forth above. Should the Court properly grant DNA's motion as to Count I or II, the Count-related defense would be in a different posture than it had been by allowing it to remain pending, awaiting possible cure of the related Counts by amendment, as set forth in the Order. [Dkt. #35.] Indeed, for those Counts so dismissed, their related defense(s) should not be left hanging bare and without any basis whatsoever, prejudicing DNA by requiring it to waste time and resources addressing the defense(s) in discovery and beyond, including wasteful discovery and motion practice in connection with them. In connection with any Count dismissed with prejudice, the Court should properly strike its related defense under Rule 12(f)(2) without leave to amend.

If a defendant pled "affirmative defenses [which] include only conclusory allegations, without providing any information about the grounds upon which the defenses rest, it has insufficiently [pleaded] these defenses." *Powertech Tech, Inc.,* striking defenses by applying the more relaxed standard of fair notice.

While "'a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent.' *Cipollone*, 789 F.2d at 188 (quotation omitted). Here, the Court concludes that Versata's equitable estoppel defense is not detailed enough to allow Sun to avoid surprise and undue prejudice, and that the defense, as currently alleged, is clearly insufficient." *Sun Microsystems, Inc. v. Versata Enters.,* 630 F. Supp. 2d 395, 409 (D. Del. 2009). Here, none of the defenses may rely on any of the later Counterclaim allegations. Applying the more relaxed standard, Sharkroad fails to put DNA on notice of the nature of these defenses or upon the grounds upon which they rest.

**In its Third Defense**, Sharkroad cites a collection of variously named "Equitable Doctrines," including "inequitable conduct" and "unclean hands." [Dkt. #36, ¶ 56.]

21

An affirmative defense of inequitable conduct must set forth the content of the alleged misrepresentation or omission and indicate the materiality of the alleged misrepresentation or omission. *Energy Absorption Sys., Inc. v. Roadway Safety Service, Inc.*,1993 U.S. Dist. LEXIS 13731, 1993 WL 389014, at *2 (N.D. Ill. Sept. 16, 1993). Sharkroad's allegations do no such thing.

"*Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys., LLC,* No. 99-CV-437, slip op. at 10 (E.D.Tex. Aug. 14, 2000) ('Merely putting the words ... "inequitable conduct' in a[n] ... Answer will not be sufficient to unleash the mischief of the defense.)." *Exergen Corp.,* 575 F.3d at 1328. Moreover, an affirmative defense cannot be saved "when the related counterclaim has already been found wanting." *Aevoe Corp.*, 2013 U.S. Dist. LEXIS 31647 *32.

To the extent that Sharkroad's assertion of "unclean hands" or any other listed defense relates to inequitable conduct, fraud or mistake, Rule 9(b) should apply to it as well. *Powertech Tech., Inc.,* (striking defense of unclean hands for failure to comply with Rule 9(b)). The "inequitable conduct" defense, and to the extent that "unclean hands" would include it, should properly be stricken under Rule 12(f)(2) without leave to amend.

Pursuant to the analysis directly above, **Sharkroad's Fourth Defense** (Inequitable Conduct) is pled bare and without any basis or facts to provide fair notice of the nature of the defense or the grounds upon which it rests. It also wholly fails to meet the pleading requirements for the defense. *Energy Absorption Sys., Inc.; Aevoe Corp..*, 2013 U.S. Dist. LEXIS 31647 *32. [Dkt. #36, ¶ 57.] It thus should also be stricken under Rule 12(f)(2) without leave to amend.

**Sharkroad's Sixth Defense for Invalidity** consists solely of conclusory allegations of invalidity under a bushel of patent statutes. It alleges no prior art to even begin an anticipation or obviousness analysis. [Dkt. #36, ¶ 59.] On what factual basis was each (or any) of the referenced statutes violated? The allegations don't say. And the defense certainly cannot rely on the baseless allegations of Count II set forth later in the

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

Counterclaim.

In dismissing Count II, this Court stated: "This bare-bones recitation of statutes does not meet the requirements of *Twombly* and *Iqbal* **and does not put defendants on notice**." *Xilinx, Inc. v. Invention Inv. Fund I LLP*, No. C 11-0671 SI, 2011 WL 3206686, at *6 (N.D. Cal. July 27, 2011).  Defendant provides no explanation as to how any designs were substantially similar, nor does it make any reference or description to what the "prior art" is."  [Emphasis added.]  [Dkt. #35.]

Similarly, the related defense is pled bare by simply citing statutes without any facts to provide fair notice of the nature of the defense or the grounds upon which it rests. *Powertech Tech., Inc.*  It thus should be stricken as insufficient under Rule 12(f)(2) without leave to amend.

## IV.    CONCLUSION

For all the above reasons, DNA's Motion should be granted.

Respectfully submitted,

**VAKILI & LEUS, LLP**

Dated: August 14, 2026                  By: /s/ *Craig McLaughlin*
Sa'id Vakili, Esq.
Craig McLaughlin, Esq.
*Counsel for Plaintiff and Counterclaim Defendant DNA Specialty, Inc.*

23

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

## CERTIFICATION OF COMPLIANCE

The undersigned counsel of record for DNA Specialty, Inc., hereby certifies that according to the Word program count feature, this Memorandum contains 6,964 words, which complies with the word limit of L.R. 11-6.1.

Dated: Aug. 14, 2026                    By: */s/ Craig McLaughlin*
                                            Craig McLaughlin, Esq.
                                            *Counsel for Plaintiff and Counterclaim Defendant DNA Specialty, Inc.*

*Memo. of Pts. & Auth. in Support of DNA's Notice of Motion and Motion to Dismiss Counterclaim Counts I and II and To Strike Related Defenses*

## CERTIFICATE OF SERVICE

*DNA Specialty, Inc. v. Sharkroad, Inc., et al.*
*U.S.D.C. C.D. Cal. Case No.: 2:25-CV-10379-MWC (RAOx)*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On August 14, 2026, I served the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DNA SPECIALTY, INC.'S MOTION TO DISMISS COUNTS I AND II OF SHARKROAD'S AMENDED ANSWER AND COUNTERCLAIM PURSUANT TO FRCP RULE 12(b)(6) AND TO STRIKE SHARKROAD'S RELATED DEFENSES PURSUANT TO FRCP RULE 12(f)(2)** on all interested parties in this action at the addresses listed below, as follows:

R. Joseph Trojan, Esq.
*trojan@trojanlawoffices.com*
Dylan C. Dang, Esq.
*dang@trojanlawoffices.com*
Francis Wong, Esq.
*wong@trojanlawoffices.com*
Mehdi Poursoltani, Esq.
*poursoltani@trojanlawoffices.com*
**TROJAN LAW OFFICES, P.C.**
9250 Wilshire Boulevard, Suite 325
Beverly Hills, California 90212
**310/777-8399** | Fax: 310/777-8348

*Counsel for Defendant and Counterclaimant Sharkroad, Inc.*

I hereby certify that on the 14th day of August 2026, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

Executed on August 14, 2026, in Los Angeles, California.

/s/ *Jason C. Ming*
Jason C. Ming

CERTIFICATE OF SERVICE