# EXHIBIT No. 1

# Decl. of Craig McLaughlin in Support of DNA's Motion to Dismiss Counterclaim Counts I and II and to Strike Related Defenses

## Craig McLaughlin

| | |
|---|---|
| **From:** | Craig McLaughlin |
| **Sent:** | Wednesday, August 5, 2026 4:00 PM |
| **To:** | Mehdi Poursoltani; Joe Trojan; Francis Wong; Dylan Dang |
| **Cc:** | Said Vakili; Jason Ming |
| **Subject:** | DNA v. Sharkroad - Request for Meet and Confer - Amended Answer and Counterclaim |

Dear Counsel,

As DNA's counsel, I write requesting that Sharkroad kindly withdraw Counts I, II, and III in its Amended Answer and Counterclaim ("AACC") as filed on August 3, 2026.  It is apparent to DNA that the same two Counterclaim Counts (I and II) that were previously dismissed continue to be defective in the AACC according to Federal Circuit precedent, *Exergen* and *Therasense*, which the Court had cited previously in its Order dismissing them, dated July 21, 2026.  Additionally, Sharkroad's Counterclaim for Invalidity Based on Functional Design also fails Iqbal/Twombly and fails to state a claim.  The pleading defects are set forth below.

Given the short time to file a response to the AACC, DNA requests a "meet and confer" on these claims on August 12, 2026 at 3:00 PM PDT.  Please let me know, preferably by tomorrow, whether this is a good time for the meet and confer or in the alternative, kindly propose one near it or whether Sharkroad agrees to withdraw the Counts.

**Counterclaim Count I for Unenforceability and Invalidity of the '968 Patent Based On Inequitable Conduct**

The "Who"

As the Court previously held, referring to various individuals who might be responsible for the purported inequitable conduct is insufficient to satisfy the "who" pleading requirement of *Exergen*.  In its Order dismissing this Count on July 21, 2026, the Court stated: "In *Exergen*, the Federal Circuit held that a complaint referring generally to "Exergen, its agents and/or attorneys" was insufficient to identify the "who," because doing so "fails to name the specific individual associated with the filing or prosecution of the [patent] application." 575 F.3d at 1329. Similarly, here, the ACC only identifies DNA Specialty rather than specific individuals alleged to be involved in the filing or prosecution of the patent allocation. This "leaves one wondering who did what." *See Autel Intelligent Tech. Corp. v. Shenzhen XTOOLTech Intelligent Co.,* No. EDCV 25-01755-KK-DTBX, 2025 WL 3652931, at *3 (C.D. Cal. Nov. 26, 2025). Therefore, the ACC does not plead "who" with sufficient specificity to satisfy Rule 9(b)."

The AACC continues to be replete with the same failure cited by the Court to require allegations directed to a specific individual.  In fact, Sharkroad employs the same uncertain "and/or" modifier to several of its allegations about several individuals and DNA, which is an entity.  "91. Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi and/or Sun Choi, were individuals associated with the preparation, filing, and/or prosecution of the application that issued as the '968 Patent, or were otherwise substantively involved in the application and transfer of rights in the claimed design."  See also Paras. 86, 89, 92, 104.  In Para. 106, Sharkroad accuses several individuals and DNA of having the specific intent to withhold the "Prior Art Products" . . . .  See also Paras. 102, 103 and 105. These allegations do not meet the "who" standard set forth in *Exergen*.

The "Why" and "How"

As the Court also provided in its Order:  "To satisfy these requirements, defendants must plead "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30. "The materiality required to establish inequitable conduct is but-for materiality . . . [P]rior art is but-for material if the PTO would not have allowed a claim had

it been aware of the undisclosed prior art." *Therasense, Inc.,* 649 F.3d at 1291. To sufficiently allege the "why" of materiality, Defendant must "at least show 'gaps in the prior art that was before the examiner during prosecution' and 'how the reference fills those gaps*." Autel Intelligent Tech. Corp*., 2025 WL 3652931, at *5 (citing *Jackson v. NuVasive, Inc.*, No. CV 21-53-RGA, 2023 WL 5175092, at *5 (D. Del. Aug. 11, 2023)) (brackets omitted)."

While the AACC alleges a larger number of "Prior Art Products" than did the ACC, none of the alleged references show any "gaps in the prior art that was before the examiner during prosecution," let alone "how the reference fills those gaps."  Each of the references alleged, including the spoke shown in the Twist wheel in the 2021 DNA Catalog, shows a bent spoke (not a straight one as in the '968 Patent) with only partially twists along its length.  Glaringly, Sharkroad doesn't mention or distinguish U.S. Patent No. 598,620 to Allen ("Allen"), which the '968 Patent shows was before the Examiner and was rejected as being immaterial to patentability.  Sharkroad does not analyze Allen nor does it explain why it is not cumulative or how with withholding the aforementioned "Prior Art Products," in view of Allen, could possibly constitute inequitable conduct.

Specific Intent to Deceive

The Court stated in its Order:  "A 'defendant['s] failure to identify a particular individual prevents the Court from inferring that a particular person acted with the requisite intent.' *Id*."
"As noted, Defendant has not identified any specific individual. Thus, the Court is unable to analyze whether any specific individual acted with a requisite intent, which is another deficiency of the inequitable conduct counterclaim."

The AACC also fails to adequately allege the intent required.  See discussion of "who" above.

For all the above reasons, judgment on the pleadings is proper.

**Counterclaim Count II for Invalidity of the '968 Patent (Anticipation and Obviousness)**

In the AACC, Sharkroad piles up different products of the same design, each a bent spoke with incomplete twists, and concludes anticipation and obviousness, yet all for naught in view of Allen, a reference that shows the same bent spoke with incomplete twists which was rejected as being immaterial.  The alleged Choi patent was also reviewed by the Examiner and was found, alone or in combination with Allen, to be immaterial to patentability.  Accordingly, Sharkroad's conclusory allegations of anticipation and obviousness fail *Iqbal/Twombly* and judgment on the pleadings is proper.

**Counterclaim Count III for Invalidity of the '968 Patent Based On Functional Design**

In this Count, Sharkroad briefly alleges in the AACC that: "The design claimed in the '968 Patent is not primarily ornamental, but is instead dictated by functional considerations. As such, the claimed design is not eligible for design patent protection under 35 U.S.C. § 171 and is therefore invalid."  Para. 148.
Not only is this allegation wholly conclusory, but it is also not the legal standard to prove invalidity of a design patent based on functionality.  The design must be solely functional, not "primarily" ornamental or "dictated by functional considerations."

"[I]f the design claimed in a design patent is dictated solely by the function of the article of manufacture, the patent is invalid because the design is not ornamental. See *Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141, 148, 109 S. Ct. 971, 976, 103 L. Ed. 2d 118, 9 USPQ2d 1847, 1851 (1989) ("To qualify for protection, a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria of patentability."); see also *In re Carletti,* 51 C.C.P.A. 1094, 328 F.2d 1020, 1022, 140 USPQ 653, 654 (1964) (" [I]t has long been settled that when a configuration is the result of functional considerations only, the resulting design is not patentable as an ornamental design for the simple reason that it is not 'ornamental'--was not created for the purpose of ornamenting."). A design is not dictated solely by its function when alternative designs for the article of manufacture are

2

available. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed. Cir.), cert. denied, 510 U.S. 908, 114 S. Ct. 291, 126 L. Ed. 2d 240 (1993).

Sharkroad fails to identify how the entire design is solely functional and without design alternatives, which would be a remarkable claim given so many spoke variations that Sharkroad has contended are material and invalidating prior art.  Sharkroad's allegations fail *Iqbal/Twombly* and fail to state claim.  Judgment on the pleadings is proper.

Best Regards,

Craig McLaughlin
Vakili & Leus, LLP
Attorneys for DNA Specialty, Inc.

3

# EXHIBIT No. 2

# Decl. Craig McLaughlin in Support of DNA's Motion to Dismiss Counterclaim Counts I and II and to Strike Related Defenses

R. JOSEPH TROJAN

DYLAN C. DANG
FRANCIS WONG
EDWIN TARVER
MEHDI POURSOLTANI
ALEXANDER D. MAZZEO

# TROJAN LAW OFFICES, P.C.

REXFORD PLAZA
9250 WILSHIRE BOULEVARD
SUITE 325
BEVERLY HILLS, CALIFORNIA 90212
www.PatenTrademark.com
REGISTERED PATENT ATTORNEYS

PATENT, TRADEMARK, COPYRIGHT,
TRADE SECRET & RELATED CAUSES

TELEPHONE (310) 777-8399
FACSIMILE (310) 777-8348
TROJAN@TROJANIP.COM

EST. 1991

August 6, 2026

Sa'id Vakili, Esq. (SBN: 176322)
Craig McLaughlin, Esq. (SBN: 182876)
Jason C. Ming, Esq. (SBN: 219745)
Stephen P. Hoffman, Esq. (SBN: 287075)
VAKILI & LEUS, LLP
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010

### *Via E-Mail*

Re:   *DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC (RAOx)
Central District of California
TLO File No. 25-11-10088

Dear Craig:

We write in response to DNA's August 5, 2026 request to meet and confer regarding Sharkroad's Amended Answer and Counterclaims (Dkt. 36), as well as DNA's follow-up email concerning Sharkroad's affirmative defenses. We are available on August 12, 2026, at 3:00 p.m. Pacific. This letter provides Sharkroad's preliminary response so that the conference can focus on any issues that genuinely remain in dispute.

Sharkroad will not withdraw Counterclaims I, II, or III and it will not withdraw the affirmative defenses that the Court previously declined to strike. The amended pleading directly addresses the deficiencies identified in the Court's July 21, 2026 Order. As discussed below, DNA's contrary arguments either disregard the new allegations or raise disputed merits issues that cannot be resolved on a motion for judgment on the pleadings.

### I.   DNA's Renewed Challenge to Sharkroad's Affirmative Defenses

DNA already sought to strike Sharkroad's affirmative defenses. The Court denied that request. The Court held that DNA's motion was untimely under Federal Rule of Civil Procedure 12(f)(2) because DNA filed a responsive pleading and then waited several months before seeking to strike the defenses. The Court also declined to strike the defenses on its own initiative, explaining that DNA's delay, its "lackluster engagement with the meet and confer process," and "the limited practical benefit of striking defenses" did not justify such relief. (Dkt. 35 at 6–7.)

VAKILI & LEUS, LLP
*DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC(RAOx)
TLO File No. 25-11-10088
August 6, 2026
Page 2 of 6

---

"Plaintiff elected to file a responsive pleading, then waited several months thereafter to seek relief under Rule 12(f). Plaintiff's delay, combined with its lackluster engagement with the meet and confer process and the limited practical benefit of striking defenses, does not persuade the Court to strike material on its own initiative." (Dkt. 35 at 7.)

The Amended Answer did not change the affirmative defenses that DNA previously challenged. (See Dkt. 36 at ¶¶ 54–71.) DNA's August 5 email nevertheless states that it "wishes to revisit" the inequitable-conduct and invalidity defenses and seeks the same relief that the Court denied. A renewed request for the same relief is governed by Local Rule 7-17, which expressly applies to a "subsequent motion for the same relief in whole or in part, whether upon the same or any allegedly different state of facts." To the extent DNA seeks reconsideration of the July 21 Order, Local Rule 7-18 permits reconsideration only upon a material difference in fact or law that could not previously have been known, new material facts or a change in law, or a manifest failure to consider material facts. The rule also prohibits repeating arguments made in connection with the original motion and, absent good cause, requires filing within fourteen days of the order, which **expired on August 4, 2026**. C.D. Cal. L.R. 7-18.

DNA's emails identify no new fact, intervening law, or material matter that the Court failed to consider. Nor does amendment of Counterclaims I and II reopen DNA's previously denied motion to strike unchanged defenses. Before DNA files any motion directed to those defenses, please identify the procedural basis for seeking the same relief again and the new facts or law that DNA contends satisfy Local Rules 7-17 and 7-18 or why its filing is still timely.

## II.    Counterclaim I Adequately Pleads Inequitable Conduct

### A.  The amended pleading identifies the specific "who"

The Court dismissed the original counterclaim because it identified only DNA Specialty rather than any specific individual involved in filing or prosecuting the application. (Dkt. 35 at 10.) The amended pleading cures that precise defect. It identifies Jerry Lehman, Paul Choi, James Choi, and Sun Choi by name and alleges their respective connections to the application, the claimed design, DNA's motorcycle-wheel business, the prior-art products, and the transfer and enforcement of the patent. (Dkt. 36 at ¶¶ 80–91, 102–108, 114–125.)

Most importantly, paragraph 91 specifically identifies what Jerry Lehman allegedly did:

> Specifically, Jerry Lehman, the named inventor and original applicant, participated in the preparation and prosecution of the application by signing the inventor's declaration and power of attorney. Before or during prosecution, Mr. Lehman knew of the DNA Twisted Spoke product because he referred to himself as the 'Manager Engineering' in the prosecution

VAKILI & LEUS, LLP
*DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC(RAOx)
TLO File No. 25-11-10088
August 6, 2026
Page 3 of 6

documents. Despite that knowledge, Mr. Lehman did not disclose the product to the USPTO. (Dkt. 36 at ¶ 91.)

The pleading further alleges that Mr. Lehman used DNA's address, had an established technical and product-development relationship with DNA, and had access to DNA's internal engineering and product materials, including materials concerning the Twisted Spoke. (*Id*., at ¶¶ 80, 85, 90–91.) It separately alleges that Paul Choi acquired the application during prosecution, that James Choi and Sun Choi were DNA principals, and that these identified individuals were substantively involved in the application, ownership, or transfer of the claimed design and knew of the omitted products. (*Id*., at ¶¶ 81–86, 91, 102–106, 114–125.)

The use of "and/or" in some allegations does not make the pleading defective. The Court's concern was that the original pleading "only identifie[d] DNA Specialty" and therefore left the reader wondering "who did what." (Dkt. 35 at 10.) The amended pleading now names the individuals and, at a minimum, attributes specific prosecution conduct, knowledge, and nondisclosure to Mr. Lehman. DNA's disagreement with whether Sharkroad can ultimately prove those allegations is a merits issue, not a pleading deficiency.

### B.  The amended pleading identifies where the material information is found

The Court found the original pleading deficient because it did not identify where the material information appeared in the cited products, images, or links. (Dkt. 35 at 10–11.) The amended pleading now identifies DNA's 2021 catalog, the specific catalog page, the "Twisted Spoke" product, side-by-side images comparing that product to Figure 1 of the '968 Patent, additional product names and websites, dates showing pre-filing public availability, and product exemplars. (Dkt. 36 at ¶¶ 87–94.) Paragraph 94 then identifies the specific ornamental features disclosed by the cited products: an elongated rectangular spoke body, a rectangular cross-section twisted along the body's longitudinal axis, and cylindrical ends with circular cross-sections. (*Id*., at ¶ 94.) Those allegations provide the location and content that the Court found missing from the original counterclaim.

### C.  The amended pleading explains why the references are material and noncumulative and how the Examiner would have used them

The Court required Sharkroad to allege the gap in the art before the Examiner, how the omitted references filled that gap, why the omitted information was noncumulative, and how the Examiner would have used it. (Dkt. 35 at 11–12.) Paragraphs 96 through 101 do exactly that. They allege that the omitted products disclosed the same or substantially the same ornamental features, created the same overall visual impression, and were not reviewed during prosecution. They further compare the omitted DNA product to two references that were before the Examiner—U.S. Patent Nos. D1,042,287 and D374,649—and identify the missing feature: the longitudinally

VAKILI & LEUS, LLP
*DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC(RAOx)
TLO File No. 25-11-10088
August 6, 2026
Page 4 of 6

---

twisted rectangular spoke body shown in solid lines in Figures 1 through 4 of the '968 Patent. (Dkt. 36 at ¶¶ 96–101.) The amended claim alleges:

> The DNA 2021 Twisted Spoke product filled that gap because the photograph on page 43 of the catalog shows a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section. The DNA product was therefore not cumulative of D1,042,287 nor references such as D374,649. (Dkt. 36 at ¶ 100.)

The amended pleading then alleges how the Examiner would have used that information: the Examiner would have compared the omitted product's overall visual impression to the claimed design and would have had a basis to reject the claim under 35 U.S.C. § 102 or § 103. (*Id.*, at ¶¶ 99–101, 118–121.) These are the specific allegations that the Court found absent from the original pleading.

DNA's reliance on U.S. Patent No. D598,620 (Allen) does not establish a pleading defect. At most, DNA disputes whether the omitted products are cumulative in light of an additional reference. The amended pleading alleges the opposite and explains why at least the DNA 2021 Twisted Spoke product supplied ornamental information missing from the references considered by the Examiner. Whether Allen ultimately defeats Sharkroad's noncumulativeness and but-for-materiality evidence requires consideration of the prosecution history and a comparison of the references. That factual dispute cannot be resolved against Sharkroad on the pleadings, where the Court must accept the nonmovant's factual allegations as true and construe them in its favor. (Dkt. 35 at 7.)

### D. The amended pleading supports a plausible inference of knowledge and specific intent

The Court recognized that, at the pleading stage, the required inference is one that is "plausible and that flows logically from the facts alleged." (Dkt. 35 at 12 (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327–29 (Fed. Cir. 2009)).) The amended pleading alleges that the identified individuals knew of the products because DNA had operated in the motorcycle-wheel industry for decades, DNA itself advertised and sold the Twisted Spoke before the patent filing, the omitted products were sold and advertised in DNA's market, and Mr. Lehman was DNA's "Manager Engineering" and participated in prosecution. (Dkt. 36 at ¶¶ 81, 86–92, 102–103, 114–123.)

The pleading also alleges deliberate withholding, a specific intent to deceive the USPTO, and facts supporting that inference: the omitted references directly concerned the same design

VAKILI & LEUS, LLP
*DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC(RAOx)
TLO File No. 25-11-10088
August 6, 2026
Page 5 of 6

---

DNA sought to patent; the references were not obscure or unrelated; no Information Disclosure Statement identified them; and disclosure would have shown that the claimed design was already known and sold. (*Id.*, at ¶¶ 104–108, 120–125.) Those allegations are more than a bare recitation of intent. They provide the factual basis from which Sharkroad asks the Court to draw the reasonable inference required at the pleading stage. Whether Sharkroad can later prove inequitable conduct by clear and convincing evidence is not the Rule 12(c) question.

### III.    Counterclaim II Adequately Pleads Anticipation and Obviousness

The Court dismissed the original invalidity counterclaim because it did not describe the asserted prior art or explain how the designs were substantially similar. The Court stated that the original pleading "provides no explanation as to how any designs were substantially similar, nor does it make any reference or description to what the 'prior art' is." (Dkt. 35 at 14.) The amended pleading cures both deficiencies in detail.

The amended pleading identifies DNA's 2021 Twisted Spoke and numerous other products by seller, product name, website, date, and image. (Dkt. 36 at ¶¶ 87–94.) It alleges the precise claimed features disclosed by those products and explains why they create the same overall visual impression. (Id. ¶¶ 94, 96–101, 131–133.) It also addresses claim scope, alleging that the ends shown in broken lines form no part of the claimed design and that the claimed ornamental scope therefore centers on the spiral or twisted elongated spoke shown in solid lines. (*Id.*, at ¶ 133.)

For obviousness, the pleading identifies Buchanan's spiral spokes as same-field prior art, alleges public availability before the filing date, compares their overall visual impression to the claimed design, and pleads the Graham factors, including the scope and content of the prior art, the differences between the prior art and claimed design, and the knowledge of an ordinary designer in wheel-spoke design. (*Id.*, at ¶¶ 134–144.) These allegations are not the "bare-bones recitation of statutes" addressed in the July 21 Order. (Dkt. 35 at 14.)

DNA's assertions that the cited products are bent, contain incomplete twists, or are cumulative of Allen dispute Sharkroad's pleaded comparisons and the ultimate weight of the prior art. They do not show that the amended allegations fail to provide notice or plausibly allege invalidity. A Rule 12(c) motion does not permit DNA to replace Sharkroad's pleaded factual allegations with DNA's preferred interpretation of the references. (See Dkt. 35 at 7 (the Court must accept the nonmovant's factual allegations as true and construe them in the light most favorable to the nonmovant).)

### IV.    DNA Waived Its Right to Challenge Counterclaim III Functional Design

DNA contends that the third counterclaim "fail *Iqbal/Twombly* and fail to state claim. Judgment on the pleadings is proper." DNA's challenge to Counterclaim III lacks merit

VAKILI & LEUS, LLP
*DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC(RAOx)
TLO File No. 25-11-10088
August 6, 2026
Page 6 of 6

for the same reason its challenge to the affirmative defenses is frivolous.  DNA already waived the opportunity to challenge the claim by filing a reply to the counterclaims. Critically, DNA did not challenge counterclaim III in its prior motion for judgment on the pleadings and instead challenged only Counterclaims I and II.  As SharkRoad did not amend the counterclaim per the Court's order, DNA waived its chance to dismiss this claim pursuant to FRCP 12(g).  As you know, "[t]he philosophy underlying [Rule 12(g)] is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics." *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 904 (S.D. Cal. 2004), *opinion clarified sub nom. Sprint Tel. PCS, L.P. v. Cnty. of San Diego*, No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) (quoting *Aetna Life Ins. Co. v. Alla Medical Servs., Inc.*, 855 F.2d 1470, 1475, n. 2 (9th Cir.1988).)   A motion to challenge counterclaim III serves no "practical purpose" as the Court already noted with respect to DNA's previous motion and is just a "dilatory" tactic.

## V.    Conclusion

For the reasons above, Sharkroad will not withdraw Counterclaims I, II, or III and will not withdraw its inequitable-conduct or invalidity defenses. The amended pleading addresses the specific deficiencies identified in the July 21 Order, and DNA's remaining arguments concern disputed facts and the merits of Sharkroad's defenses and counterclaims.  The Court has already admonished DNA that "Plaintiff is CAUTIONED to adhere to the applicable rules going forward." (Dkt. 35 at 6.) DNA should heed that warning. If DNA insists on proceeding with a motion, *SharkRoad will seek all appropriate relief, including sanctions and recovery of the attorneys' fees and costs incurred in opposing the motion*.

Very truly yours,

TROJAN LAW OFFICES, P.C.
by

/s/R. Joseph Trojan
R. Joseph Trojan, Esq.

RJT:fw:dcd

# EXHIBIT No. 3

# Decl. of Craig McLaughlin in Support of DNA's Motion to Dismiss Counterclaim Counts I and II and to Strike Related Defenses



VAKILI & LEUS, LLP
ATTORNEYS

Telephone
213/380-6010

Facsimile
213/380-6051

www.vakili.com

11 August 2026

Wilshire Colonnade • Penthouse Suite 1135 • 3701 Wilshire Boulevard • Los Angeles, California 90010-2822

**VIA EMAIL ONLY**

Francis Wong, Esq.
*wong@trojanlawoffices.com*
**TROJAN LAW OFFICES**
9250 Wilshire Blvd., Suite 325
Beverly Hills CA 90212-3326

> Re: ***DNA Specialty, Inc. v. Sharkroad, Inc.***, **USDC Case No. 2:25-cv MWC (RAOx)**
> **Meet and Confer re: Your Correspondence of August 6, 2026, etc.**

Dear Francis:

Thank you for your letter dated August 6, 2026, which was sent in response to my e-mail of the previous day. Now that you have expressed Sharkroad's position that it will not withdraw any of Counts I-III or their related defenses, I will attempt to further explain DNA's reasoning for Sharkroad to reconsider prior to our scheduled "meet and confer" on August 12th at 3:00 pm via Zoom (link was previously forwarded), which we agree would also be an opportune time to "meet and confer" over the Joint Claim Construction and Prehearing Statement.

I will address below the subjects of your letter of August 6th, some of which appears to have merit, beginning with the inadequately pled Counterclaim Counts and continuing remaining issues, which are limited to dismissing Counts I and II pursuant to Rule 12(b)(6) and striking their related defenses under Rue 12(f)(2).

### Counterclaim Count I Does Not Adequately Plead Inequitable Conduct

We clearly have rehashed the requirements to plead with particularity an inequitable conduct claim under *Exergen Corp. v. Wal-mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) several times, going back to our earlier "meet and confer," the motion for judgment on the pleadings, its opposition and reply. The Court also recognized that *Exergen* is the standard by which Count I is to be evaluated and rightfully dismissed Sharkroad's Counts I and II for failure to state a claim.

#### The 'Who'

In its Amended Answer and Counterclaim ("AACC" or "Dkt. #36"), Sharkroad not only continues to accuse DNA, but also throws a number of individuals into the scrum and pleads "and/or" that any of them alone or together committed one, some or none of the required elements of inequitable conduct. As previously decided by the Court, Sharkroad's reference to DNA as an individual warranted dismissal. The AACC, however, continues to include such allegations where the basis of the claim is not filing an information disclosure statement:

> 92. During prosecution of the application that issued as the '968 Patent, no Information Disclosure Statement was submitted identifying the prior commercial spoke wheel products, including the Twisted Spoke products, known to DNA, Mr. Lehman, Paul Choi, James Choi, and/or Sun Choi.

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 2 of 10

123.   Upon information and belief, Plaintiff. Mr. Lehman, Paul Choi, James Choi, and/or Sun Choi knew the withheld products were material because those products disclosed the same ornamental twisted, twirled, spiral, and/or fat twisted spoke designs claimed in the '968 Patent.

104.   Upon information and belief, DNA, Mr. Lehman, Paul Choi, James Choi, and/or Sun Choi intentionally withheld the Prior Art Products identified above from the USPTO during prosecution of the application that issued as the '968 Patent.

109.   DNA's inequitable conduct renders the '968 Patent unenforceable.

The "and/or" allegations leave open a range of possibilities regarding 'who' knew of the purported material prior art and who withheld it from the PTO during prosecution, including only DNA, which is an entity rather than an individual. *Exergen Corp.*, 575 F.3d at 1329.

"Apotex's broadly cast net around the inventors and those acting on their behalf also does not allow the court to reasonably infer that a specific individual both knew of the invalidating information and had a specific intent to deceive the PTO. Apotex's vague allegations could implicate all or none of the individuals who had dealings with the PTO during the reexamination. As such, the court finds that Apotex has insufficiently pled 'who' deceived the PTO." *Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 307 (D. Del. 2013). Like in *Senju*, Sharkroad has fatally included DNA "and/or" the individuals it accused in the AACC, which does not permit a reasonable inference that any accused individual was responsible for both of the elements required.

Paragraph No. 109, which was added into the AACC, leaves no doubt as to 'who' ultimately committed the purported inequitable conduct - only DNA, which is an entity and cannot have committed the offense.   As an organization, DNA has no duty of candor with the USPTO during examination, "'the duty applies only to individuals, not to organizations).'" *Exergen* Corp., 575 F.3d at 1329 (motion for leave to amend denied).

Moreover: "'Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' *In re Fordson Engineering Corp.*, 25 Bankr. 506, 509 (Bankr. E.D. Mich. 1982)." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

But there is more:

In the AACC, Sharkroad employs the uncertain "and/or" modifier in several other of its allegations about several individuals.  Sharkroad's allegations are also inconsistent and uncertain about who possesses the requisite knowledge of the purported material information about who was associated with the preparation, filing, and/or prosecution of the application that issued as the '968 Patent.

89.    Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi and/or Sun Choi, were aware of DNA's "Twisted Spoke".

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 3 of 10

91.    Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi and/or Sun Choi, were individuals associated with the preparation, filing, and/or prosecution of the application that issued as the '968 Patent, or were otherwise substantively involved in the application and transfer of rights in the claimed design.

92.    During prosecution of the application that issued as the '968 Patent, no Information Disclosure Statement was submitted identifying the prior commercial spoke wheel products, including the Twisted Spoke products, known to DNA, Mr. Lehman, Paul Choi, James Choi, and/or Sun Choi.

And to the extent that Sharkroad has included inconsistent allegations, such as lumping these individuals together, *ad seriatim*, without using the "and/or" qualifier, those allegations reflect confusion and speculation and continue to leave the Court "wondering who did what." *See Autel Intelligent Tech. Corp. v. Shenzhen XTOOLTech Intelligent Co.*, No. EDCV 25-01755-KK-DTBX, 2025 WL 3652931, at *3 (C.D. Cal. Nov. 26, 2025).

Moreover, the "court need not accept as true factual allegations that are contradicted by other factual allegations within the same pleading." *Martineau v. Currutt*, No. 1:21-cv-00045-JNP-DBP, 2022 U.S. Dist. LEXIS 11357, at *13, 2022 WL 180735 (D. Utah Jan. 19, 2022) (collecting cases); *Conner v. Harrah's Operating Co.*, No. 3:08-CV-00633-BES-RAM, 2009 U.S. Dist. LEXIS 151985, at *5 (D. Nev. July 6, 2009) (collecting cases).

Sharkroad's confusing and inconsistent allegations do not meet the 'who' requirement of *Exergen*. Even if they did, Sharkroad admits that it was DNA that committed the purported inequitable conduct, which *Exergen* forbids.

### The 'Why'

Sharkroad generally alleges that any twist or spiral feature in a spoke makes it *ipso facto* material prior art. "The Prior Art Products are especially material because prior commercial twisted, twirled, and spiral spoke products are directly material to patentability and were not considered by the USPTO." [Dkt. #36, ¶ 98.] The prosecution record, however, shows otherwise.

In the AACC, Sharkroad fails to sufficiently allege 'why' the purportedly withheld bent-spoke references are material and non-cumulative. Instead of withdrawing its fatally defective Counterclaim, Sharkroad doubled down and added at least 9 more "prior art" spokes to the AACC, each of which appears identical to the others, including the Twisted Spoke from DNA's catalog, and none of which Sharkroad distinguishes from the others. [Dkt. #36, ¶ 94.] These "Prior Art Products," however, are quite different from the '968 Patent, as each is a bent spoke with an attachment button for affixing to an axial plate and exhibits twists on only a portion of the spoke. Because they are identical to each other, they are equally immaterial to patentability, as the entire prosecution record shows, yet Sharkroad continues to glaringly ignore that.

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 4 of 10

---

According to the face page of the '968 Patent, the Examiner conducted a search, identified and reviewed 18 separate prior art references, none of which were cited to prevent the '968 Patent's issuance. [Dkt. #12-1.] Sharkroad, however, selectively cites only two of them, including US Design Patent No. 374,649 to Choi ("the '649 Patent to Choi"). [Dkt. #36, ¶¶ 99-100.]

The '649 Patent to Choi discloses a spirally shaped spoke with a bent end terminated in a button-style attachment means and with spiral twists along the entire length of the spoke. The Examiner found this reference insufficient, alone or in combination with any other reference, as a basis to reject the application or to prevent the allowance and issuance of the '968 Patent. The '649 Patent to Choi was clearly determined not to be "but-for" material in character, a reference that would otherwise have prevented the claim from advancing to allowance. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011).

Further bolstering the immateriality of Sharkroad's references are images in U.S. Patent No. 598,620 to Allen ("'620 Patent to Allen" or simply "Allen"), the first reference cited on the face page of the patent-in-suit. The Examiner reviewed it and determined it was insufficiently material to prevent allowance.

As Sharkroad well knows, Figures 6 and 7 are particularly illustrative. In comparison with Sharkroad's "Prior Art Products," Figure 6 shows a bent spoke that is virtually identical, with twists along only a part of the straight portion of the spoke body. Figure 7 shows a spoke without a bend and with a twisted mid-portion, also of insufficient materiality to prevent allowance.



Like Choi and Sharkroad's references, this reference too does not show a straight spoke having twists along its entire length, as depicted in the '968 Patent.

These references, rejected by the Examiner for immateriality, show that Sharkroad's Prior Art Products are not different from Figure 6 of the '620 Patent to Allen but rather are cumulative of Allen and thus contradict the allegations in the AACC - they fill no gaps in the prior art of the prosecution

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 5 of 10

---

record. Sharkroad's failure[1] to mention Allen in the pleading, let alone to distinguish it from the Prior Art Products, shows that Sharkroad knows that it *cannot* establish the required materiality of any of the references it accuses DNA (and now others) of withholding from the PTO. The record shows that none of Sharkroad's references are material to patentability but are merely cumulative, and that Sharkroad's allegations of materiality and withholding such references with an intent to deceive are false, and that its Counterclaim is objectively baseless.

Referring to the "Twisted Spoke" shown in Paragraph 88 of the AACC, Sharkroad pled this whopper: "Because the art already before the Examiner did not disclose those features, the reference was noncumulative and would have supplied a basis for rejection under 35 U.S.C. § 102 or § 103." [Dkt. #36, ¶ 101.] Figure 6 of the '620 Patent to Allen directly contradicts this allegation, yet Sharkroad pled it anyway, with actual knowledge of Allen, its contents, and the duty to conduct an adequate pre-filing investigation.

"Given Mipox's failure to establish facial but-for materiality of the ITS data sheets, the examiner could not have used the ITS data sheets to deny the '683 patent." *Int'l Test Solutions, Inc. v. Int'l Corp.*, 2017 U.S. Dist. LEXIS 74640 *16; 2017 LX 39962; 2017 WL 2118314 (ND. Cal., May 16, 2017); *Tangent Techs., LLC v. Recycled Plastics Indus., LLC*, 2024 U.S. Dist. LEXIS 157277 *20; 2024 WL 4007218 (E.D.WI, July 24, 2024) ("Defendant therefore does not explain why the photographs are but-for material to patentability" and amendment would be "futile because Defendant's allegations of inequitable conduct fail as a matter of law.").

Even if the inventor of the subject application had knowledge during prosecution of any of the references that Sharkroad advances, there can be no inequitable conduct for failing to disclose a reference that is not "but-for" material. Indeed, "a patentee need not cite an otherwise material reference to the PTO if that reference is merely cumulative or is less material than other references already before the examiner." *Baxter Int'l Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1328 (Fed. Cir. 1998).

Here, Sharkroad does not even make an attempt to distinguish the purportedly withheld prior art from the '620 Patent to Allen, a knowingly fatal reference to this Count that the Examiner reviewed and rejected as immaterial to patentability. "Because Reggiani makes no attempt to distinguish the '138 publication from the disclosed publications and because these cannot be the basis of an inequitable conduct claim, the Court finds that Reggiani has failed to sufficiently allege that the reference is non-cumulative." *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc*, 2020 U.S. Dist. LEXIS 49792 *17; 2020 WL 1331919 (SDNY March 13, 2020); *Arrmaz Products Inc. v. Rieth-Riley Construction Co.*

---

[1] What is quite striking is that Sharkroad again ignores Allen, showing that Figure 6 is veritably identical to each of the Prior Art Products that Sharkroad advances, knowing that the Examiner found Allen be immaterial to patentability, especially after Allen was included and discussed extensively in DNA's Motion for Judgment on the Pleadings and is included in Sharkroad's own Invalidity Contentions which reflect that Sharkroad was keenly aware of the Allen at least as early as the day before the Motion for Judgment of the Pleadings was filed. [Dkt. #31, pg. 15 of 19, lns. 14-15.]

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 6 of 10

---

*Inc.*, 2024 U.S. Dist. LEXIS 107870 *12; 2024 LX 99199; 2024 WL 3043317 (Dist. Court, ND Indiana 2024) (granting motion for judgment on the pleadings on this and other grounds). Similarly, Sharkroad's undistinguished references cannot form the basis of an inequitable conduct claim.

"To satisfy the 'why' component, Defendants' counterclaim must also plead with particularity that the withheld information is not cumulative of the information actually disclosed during prosecution. Such facts are absent from Defendants' counterclaim. Therefore, the Court finds that Defendants' counterclaim fails to plead with particularity 'why' the withheld information is material and not cumulative." *Aevoe Corp. v. Ae Tech. Co.*, 2013 U.S. Dist. LEXIS 31647 *22; 2013 WL 876036 (D. NV March 7, 2013); *Signify N. Am. Corp.*, 2020 U.S. Dist. LEXIS 49792 *17; *Arrmaz Products Inc.*, 2024 U.S. Dist. LEXIS 107870 *12; *Crye Precision LLC v. Duro Textiles, LLC*, 112 F. Supp. 3d 69, 81 (S.D.N.Y. 2015). Not only did Sharkroad not allege facts to distinguish with particularity the purported references from those of the prosecution record, including the '620 Patent to Allen, it also failed to credibly allege that its purported references were non-cumulative, thus failing both requirements of the 'why.'

### The 'How'

Sharkroad also fails to allege 'how' an examiner would have used this information in assessing the patentability of the claim. *Exergen Corp.*, 575 F.3d at 1329-30. Sharkroad offers no analysis of how the bent-spoke prior art anticipates or renders obvious the patented design in view of the '620 Patent to Allen.

Here, we know exactly how an Examiner would have used the Prior Art Products to assess patentability of the claim. Each of these products appears identical (or sufficiently so) to Figure 6 of the '620 Patent to Allen, which was deemed by the Examiner in this prosecution to be immaterial to patentability. In fact, after the Examiner reviewed the 18 references of record, no rejection was issued during prosecution under §102 or §103, or on any other ground of invalidity.

Indeed, it is blatantly apparent that Sharkroad's bent-spoke prior art does not fill any gaps in the prosecution references and clearly none anticipate the '968 Patent. In view of Allen, Sharkroad offers no references that an examiner could look to in combination to determine obviousness. Not only has Sharkroad abjectly failed to explain the 'how,' but its allegations of materiality, anticipation, and obviousness are each objectively baseless.

The AACC suffers from the same inadequacies as the ACC by failing to adequately allege the 'why' and 'how' required under F. R. Civ. P. Rule 9(b) and Federal Circuit precedent and, here, cannot be cured. "ITS data sheets are not but-for material under *Therasense*, which is a deficiency that cannot be solved by further amended pleading. Moreover, Mipox already had an opportunity to amend in response to ITS's first motion to dismiss, suggesting that further leave to amend would be futile." *Int'l Test Solutions, Inc.*, 2017 U.S. Dist. LEXIS 74640 *23. Under this prong alone, DNA's motion to dismiss should be granted.

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 7 of 10

---

After two filed attempts and a separate proposed pleading, Sharkroad has repeatedly failed to adequately allege the 'who," has failed to present any "but-for" material prior art and has failed to adequately allege the 'why' and 'how' as required under F. R. Civ. P. Rule 9(b) and Federal Circuit precedent. Accordingly, dismissal with prejudice is properly granted here since there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.

### The AACC Fails to Meet the Pleading Requirement For a "Specific Intent to Deceive"

A claim of inequitable conduct must also plead sufficient facts "from which the court may reasonably infer that a *specific individual*" knew of the material reference and deliberately withheld it to deceive the PTO. *Delano Farms Co.* v. California Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (emphasis added).

In the AACC, Sharkroad alleges that DNA withheld the purported references as follows:

104. Upon information and belief, DNA, Mr. Lehman, Paul Choi, James Choi, and/or Sun Choi intentionally withheld the Prior Art Products identified above from the USPTO during prosecution of the application that issued as the '968 Patent.

In view of Allen, it is readily apparent that none of the Prior Art Products were material, let alone "but-for" material to patentability. Accordingly, any knowledge of them during prosecution was irrelevant and certainly could not constitute any intent to deceive. There simply was no duty to disclose them, and thus there could be no intent to deceive the PTO if disclosure was not required.

In the AACC, Sharkroad adds a purported motive-to-deceive allegation as follows:

105. Upon information and belief, the withholding was not accidental or inadvertent. DNA, Mr. Lehman, Paul Choi, James Choi, and Sun Choi had a strong motive to withhold the Prior Art Products because their disclosure would have shown the Examiner that the claimed spiral wheel spoke design was already known, sold, and used in the motorcycle wheel industry before the filing date of the '968 Patent. In particular, the "Twisted Spoke" product anticipated or rendered obvious the design.

Sharkroad fails to allege a factual basis for the purported motivation to infer a specific intent to deceive under Rule 9(b). In essence, Sharkroad alleges that DNA obtained the patent by committing fraud, but does not plausibly allege any special value such a patent would have to the accused parties to induce a specific intent to commit the fraud.

The pleading doesn't allege a particular factual basis why fraudulently obtaining this patent would motivate DNA, the entity, or any of the alleged possible individuals to commit fraud on the PTO. Pleading general economic value, which Sharkroad hasn't even alleged, isn't adequate. "Mipox pleads no factual basis to explain why these ordinary economic circumstances would plausibly induce fraud on the PTO." *Int'l Test Solutions, Inc.,* 2017 U.S. Dist. LEXIS 74640 *22. "Accordingly, Mipox has failed plausibly to allege specific intent to deceive." *Id.*

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 8 of 10

---

While wholly ignoring Allen, Sharkroad does not provide sufficient facts that justify a reasonable inference that any of the allegedly accused parties had appreciated that the references were material to the patentability of the claim, or that they had a specific intent to deceive the PTO by withholding them. "Defendant again fails to provide sufficient facts that justify a reasonable inference that Mr. Panzer and the inventors knew of the references, appreciated their materiality to the asserted claims, or that they had specific intent to deceive the PTO." *Arrmaz Products Inc.*, 2024 U.S. Dist. LEXIS 107870 *19 (granting motion for judgment on the pleadings on this and other grounds).

Like the counterclaimant in *Arrmaz*, Sharkroad has likely not complied with the general pleading requirements under Rule 8, let alone those under Rule 9(b). "Not only does Defendant fail to allege sufficient facts to satisfy the particularity requirements under Rule (9b), but Defendant may even fail to meet general pleading requirements under Rule 8 with regard to these individuals." Id.

Having failed to allege sufficient facts that justify a reasonable inference that any of the accused various parties had appreciated that the references were material to patentability of the claim, or that they had a specific intent to deceive the PTO by withholding them, Sharkroad's pleadings have demonstrably failed nearly every prong of the particularity requirements of Rule 9(b) and Federal Circuit precedent. Accordingly, DNA's Rule 12(b)(6) motion should be granted with prejudice.

### Sharkroad's Counterclaim for Invalidity (Anticipation/Obviousness) Fails

In its Counterclaim for Invalidity based on anticipation and obviousness, Sharkroad concludes both, relying at best on the same immaterial prior art as pled in the Counterclaim for Inequitable Conduct. Sharkroad newly alleges: "For example, DNA's own "Twisted Spoke" products that it sold in 2021, well before the filing date of the '968 Patent, *is identical in appearance compared to the claimed design in the '968 Patent and thus anticipates it* by disclosing the same design as claimed in the patent as shown below: . . . ." (Emphasis added.) [Dkt. #36, ¶ 132.]

A quick look at the images in the paragraph shows, on their face, that this allegation is untrue. In fact, Sharkroad's entire invalidity "analysis" rests solely on the cumulative Prior Art Products that were disclosed and rejected by way of Allen in the prosecution record.

Accordingly, Count II cannot be a plausible claim and therefore dismissal with prejudice is appropriate. *Kaotica IP Corp. v. Iconic Mars Corp.*, U.S. Dist. LEXIS 159012, at *3, 2021 WL 3726006 (S.D. Cal. Aug. 23, 2021); *Crye Precision LLC*, 112 F. Supp. 3d at 79 (S.D.N.Y. 2015). Sharkroad's Count II fails to state a plausible claim and should therefore fall under *Iqbal/Twombly*.

### Sharkroad's Related Defenses of Inequitable Conduct and Invalidity

Unlike the previous motion to strike, DNA need not rely on the Court's own initiative under Rule 12(f)(1) to strike the subject defenses because Rule 12(f)(2) applies here, and would be timely, provided the motion is filed within 21 days of service of Sharkroad's Amended Answer and Counterclaim.

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 9 of 10

---

There are additional facts worth considering. Should the Court properly dismiss Counts I or II, such a related defense would be in a different posture than allowing it to remain pending, awaiting possible cure of the related Count by amendment, as set forth in the Order. However, for those Counts dismissed with prejudice, as the prospective motion is likely to result in, there will be nothing in the associated defenses to save them and no reason to let them linger as they will prejudice DNA with further expenditure of resources and burden the Court with unnecessary motion practice.

The defenses fail to provide fair notice of the nature of the defense or the grounds upon which it rests and would be left hanging bare and without any basis whatsoever, prejudicing DNA by requiring it to waste time and resources addressing the defense(s) in discovery and beyond. Motion practice concerning the same will also not promote judicial economy.

If a defendant pled "affirmative defenses [which] include only conclusory allegations, without providing any information about the grounds upon which the defenses rest, it has insufficiently [pleaded] these defenses." *Powertech Tech, Inc.* (striking defenses by applying the more relaxed standard of fair notice, but recognizing that courts in the Northern District of California apply the *Iqbal/Twombly* standard of plausibility); *Barnes v. AT&T Pension Benefit Plan--Nonbargained Program*, 718 F. Supp. 2d 1167, 1172-73 (N.D. Cal. 2010) (striking defenses applying the *Iqbal/Twombly* standard of plausibility although noting that "AT & T has not alleged sufficient facts to provide notice to Barnes as to the nature of any of its affirmative defenses"). Here, applying the more relaxed standard, Sharkroad fails to put DNA on notice of the nature of these defenses or upon the grounds upon which they rest.

**In its Third Defense**, Sharkroad cites a collection of variously named "Equitable Doctrines," including "inequitable conduct" and "unclean hands." [Dkt. #36, ¶ 56.]

An affirmative defense of inequitable conduct must set forth the content of the alleged misrepresentation or omission and indicate the materiality of the alleged misrepresentation or omission. *Energy Absorption Sys., Inc. v. Roadway Safety Service, Inc.*,1993 U.S. Dist. LEXIS 13731, 1993 WL 389014, at *2 (N.D. Ill. Sept. 16, 1993). Sharkroad has not credibly done so as described above. Indeed, an affirmative defense cannot be saved "when the related counterclaim has already been found wanting." *Aevoe Corp. v. Ae Tech. Co.*, 2013 U.S. Dist. LEXIS 31647 *32; 2013 WL 876036 (D. NV March 7, 2013).

However, these defenses are wholly conclusory and woefully inadequate to satisfy the particularity requirements imposed by the Federal Circuit, as explained above, and should not be left to be exploited by Sharkroad. [Dkt. #36, ¶ 57.] "*Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys., LLC*, No. 99-CV-437, slip op. at 10 (E.D.Tex. Aug. 14, 2000) ('Merely putting the words ... "inequitable conduct' in a[n] ... Answer will not be sufficient to unleash the mischief of the defense.)." *Exergen Corp.*, 575 F.3d at 1328. The "inequitable conduct" defense, and to the extent that "unclean hands" would include it, should properly be stricken under Rule 12(f)(2) without leave to amend.

VAKILI & LEUS, LLP

Francis Wong, Esq.
**TROJAN LAW OFFICES**
11 August 2026
Page 10 of 10

---

Similarly, and pursuant to the analysis above, **Sharkroad's Fourth Defense (Inequitable Conduct)** is pled bare without particularity and without any basis or facts to provide fair notice of the nature of the defense or the grounds upon which it rests. It clearly cannot rest on the allegations in the Count I as described above. It thus should be stricken under Rule 12(f)(2) without leave to amend.

**Sharkroad's Sixth Defense for Invalidity** consists solely of conclusory allegations of invalidity under a bushel of patent statutes. It alleges no prior art to even begin an anticipation or obviousness analysis. [Dkt. #36, ¶ 59.] And the defense certainly cannot rely on the baseless allegations of Count II. On what factual basis was each (or any) of the referenced statutes violated? The allegations don't say. The defense is pled bare without any basis or facts to provide fair notice of the nature of the defense or the grounds upon which it rests. It thus should be stricken under Rule 12(f)(2) without leave to amend.

In conclusion, please consider the issues and points made so that Sharkroad will consider changing positions and we look forward to engaging in a productive "meet and confer."

Thank you.

Cordially yours,

VAKILI & LEUS, LLP

*Craig McLaughlin*

Craig McLaughlin, Esq.

CM:ms
Cc:  All Counsel

# EXHIBIT No. 4

# Decl. of Craig McLaughlin in Support of DNA's Motion to Dismiss Counterclaim Counts I and II and to Strike Related Defenses

US00D374649S

# United States Patent [19]

## Choi

[11]  **Patent Number:**  **Des. 374,649**

[45]  **Date of Patent:**  **✱✱Oct. 15, 1996**

[54]  **TWISTED WIRE SPOKE FOR WIRE WHEELS**

[76]  Inventor:  **James H. Choi**, 2157 E. Del Amo Blvd., Rancho Dominguez, Calif. 90220

[✱✱]  Term:  **14 Years**

[21]  Appl. No.: **30,530**

[22]  Filed:  **Nov. 1, 1994**

[52]  **U.S. Cl.** ............................................................. **D12/213**

[58]  **Field of Search** ..................................... D12/204, 213; 301/37.1, 37.26, 37.42, 104, 105, 108.1, 108.5

[56]  **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 251,017 | 12/1881 | Moore | 301/104 |
| 396,262 | 1/1889 | Boland | 301/104 |
| 520,845 | 6/1894 | Fay | 301/104 |
| 598,620 | 2/1898 | Allen | 301/104 |

*Primary Examiner*—Marcus A. Jackson
*Attorney, Agent, or Firm*—Albert O. Cota

[57]  **CLAIM**

The ornamental design for a twisted wire spoke for wire wheels, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of an twisted wire spoke for wire wheels showing my new design;

FIG. **2** is a right side elevational view thereof, the left side view being a mirror image thereof;

FIG. **3** is a bottom plan view thereof;

FIG. **4** is a top plan view thereof;

FIG. **5** is a back elevational view thereof; and,

FIG. **6** is a front elevational view thereof.

**1 Claim, 1 Drawing Sheet**



**U.S. Patent**          Oct. 15, 1996          **Des. 374,649**



Fig.1.



Fig.2.



Fig.3.



Fig.4.



Fig.5.



Fig.6.

# EXHIBIT No. 5

# Decl. of Craig McLaughlin in Support of DNA's Motion to Dismiss Counterclaim Counts I and II and to Strike Related Defenses

(No Model.)

# W. G. ALLEN.
## METAL SPOKE.

No. 598,620.                          Patented Feb. 8, 1898.



Fig. 1.

Fig. 2.

Fig. 3.

Fig. 4.

Fig. 5.

Fig. 6.

Fig. 7.

Witnesses.
W. R. Edelen.
Ruus Lewis

Inventor.
William G. Allen,
by Pollok & Mauro,
his attorneys.

THE NORRIS PETERS CO., PHOTO-LITHO., WASHINGTON, D. C.

# UNITED STATES PATENT OFFICE.

## WILLIAM G. ALLEN, OF HARTFORD, CONNECTICUT.

## METAL SPOKE.

**SPECIFICATION** forming part of Letters Patent No. 598,620, dated February 8, 1898.

Application filed September 22, 1897. Serial No. 652,566. (No model.)

*To all whom it may concern:*

Be it known that I, WILLIAM G. ALLEN, of Hartford, Connecticut, have invented a new and useful Improvement in Metal Spokes, which improvement is fully set forth in the following specification.

This invention relates to the construction of metal wheel-spokes for bicycles and other vehicles; and its object is to produce a spoke which, while possessing great tensile strength in proportion to weight and capable of being readily and cheaply made, shall present a brilliant and elegant appearance in comparison with the spoke now ordinarily used.

The principal departure from ordinary practice in making the improved spoke consists in forming the intermediate portion of irregular or angular instead of circular cross-section, leaving the ends rounded. I further preferably impart to this intermediate portion as a finishing step a twist, so that the edges or angles form parallel helices. Spokes of this description impart to the wheel a highly-ornamental appearance, and when in motion the reflection of light from the angles of the spoke, particularly when twisted, produces a brilliant scintillating effect. In making spokes of this sort several difficulties have to be avoided in order to obtain a successful result. If the blank were reduced to angular or irregular cross-section and twisted from end to end, it would have to be drawn very hard in order to obtain the requisite tensile strength. In such case the bending of the headed end to form the shoulder is difficult and the metal when bent is greatly strained and breaks readily at the bend. Moreover, if the stock is angular there would not be a suitable bearing under the head. It also becomes difficult to shape the other end and cut the thread thereon.

In making the improved spoke I proceed in the following way: The blanks are cut of proper length from steel-wire stock of circular cross-section of the proper softness and toughness to admit of threading and of bending the headed end without loss of strength. The middle part of the blank is then brought to a triangular, square, hexagonal, or other polygonal or irregular cross-section, leaving the ends circular in cross-section. This change of shape is preferably effected by the use of rolls having grooves of proper shape and adapted to act on the middle part of the blank and finished, if desired, by swaging-dies; but the means employed form no part of the invention and may be of any suitable sort. The physical effect produced is to increase the hardness, compactness, and tensile strength of the middle portion, leaving the ends unaltered. The middle portion is then preferably twisted, making a spiral of greater or less pitch, as desired. In changing the shape of the middle portion of the spoke it is advantageous at the same time to reduce it in sectional area, and the procedure above described will accomplish that result. Obviously a blank having circular ends of greater diameter than the angular reduced portion can be produced in other ways; but that described above is believed to be the most practical and effective. The subsequent operations of heading, bending, and threading are or may be performed in the usual way.

Many specific varieties of spokes can be produced within the scope of the invention. As already stated, the reduced middle portion may be of various forms in cross-section, and the helices may have various pitches. The twist may also extend over a part only of the reduced portion and may be interrupted at one or more places, thus producing different effects upon the eye and giving to different wheels distinctive appearances.

In the accompanying drawings, which form part of this specification, Figures 1 to 5, inclusive, illustrate blanks having their middle portions of different polygonal form in cross-section. Fig. 6 illustrates a twisted spoke, and Fig. 7 another form of twisted spoke, the end portions being broken away.

In Figs. 1 to 5, *a* designates the circular ends, and *b* the polygonal intermediate portion, of the spoke. In Fig. 1 this portion presents in cross-section a square, in Fig. 2 a triangle, in Fig. 3 a pentagon, in Fig. 4 an oblong parallelogram, and in Fig. 5 a hexagon.

As shown in Fig. 6, the middle portion of the finished spoke has twisted parts or sections *c*, alternating with plain or untwisted parts *d*. A wheel provided with these spokes would exhibit while in motion bright circular bands separated by duller zones. Of course the number of twisted sections may be greater

598,620

or less than shown in this figure. Fig. 6 also shows one of the ends provided with a head *e* and shoulder *f* and the other with a screw-thread. It will be understood, however, that the invention is applicable to spokes which are not shouldered at one end or which have other attaching means than those shown.

Fig. 7 illustrates a spoke which has the middle portion twisted from end to end.

The foregoing description will enable persons skilled in the art of metal-working to comprehend my invention fully and to modify the construction of the spoke in various ways additional to those specifically indicated.

Having now particularly described my invention, what I claim as new, and desire to secure by Letters Patent, is—

1. A metal spoke having end portions of circular cross-section, and an intermediate portion of angular cross-section and twisted so that the edges form parallel helices, substantially as described.

2. A metal wheel-spoke having end portions of relatively large diameter, and a reduced middle portion of polygonal cross-section twisted so that its angles form parallel helices, substantially as described.

3. A metal spoke having end portions of circular cross-section, and a reduced twisted middle portion of polygonal cross-section, substantially as described.

4. A metal spoke having end portions of circular cross-section of relatively soft metal and a harder middle portion of polygonal cross-section, the middle portion being twisted, substantially as described.

5. A metal spoke having end portions of circular cross-section and a reduced middle portion of polygonal cross-section, the edges forming parallel helices extending over part of said middle portion, substantially as described.

In testimony whereof I have signed this specification in the presence of two subscribing witnesses.

WILLIAM G. ALLEN.

Witnesses:
REEVE LEWIS,
S. T. CAMERON.