R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant SHARKROAD, INC.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DNA SPECIALTY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARKROAD, INC., a California Corporation and DOES 1-50, Inclusive,<br><br>Defendants. | **Case No: 2:25-cv-10379-MWC(RAOx)**<br><br>**DEFENDANT SHARKROAD, INC.'S OPPOSITION TO DNA SPECIALTY, INC.'S MOTION TO DISMISS COUNTS I AND II OF THE AMENDED COUNTERCLAIMS AND TO STRIKE RELATED DEFENSES**<br><br>**Date:** October 2, 2026<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 6A<br>First Street U.S. Courthouse<br>Los Angeles, CA<br><br>**Hon. Michelle Williams Court**<br>**United States District Judge** |

TROJAN
LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES BEVERLY HILLS

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND FACTS ..... 4

A. Facts re Meet and Confer ..... 4

B. Facts Regarding Discovery ..... 4

III. ARGUMENT ..... 8

C. Law ..... 8

D. Count I Satisfies the Particularity Requirements of *Exergen* ..... 9

1. The AACC Cures the Precise "Who" Defect Identified by the Court 9

2. The AACC Identifies Exactly "Where" the Material Information Is Found ..... 11

3. The AACC Identifies the "When" ..... 12

4. The AACC Expressly Pleads "Why" the Omitted Art Was Material and Noncumulative and How the Examiner Would Have Used It ..... 12

5. DNA's Reliance on Allen Improperly Asks the Court to Resolve a Disputed Merits Issue ..... 13

6. The AACC Pleads Facts Supporting a Reasonable Inference of Knowledge and Specific Intent ..... 15

E. Count II Easily Satisfies Rule 8 and Directly Cures the Deficiencies Identified in the Prior Order ..... 17

F. DNA's Renewed Motion to Strike Should Also Be Denied ..... 19

G. Even If the Court Identifies a Technical Pleading Deficiency, Dismissal or Striking with Prejudice Is Unwarranted ..... 21

IV. CONCLUSION ..... 22

TROJAN LAW OFFICES BEVERLY HILLS

## TABLE OF AUTHORITIES

PAGE(S)

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ........ 2, 8, 16

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009) ........ 18

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988, 998 (9th Cir. 2018) ........ 14, 15

*LKQ Corp. v. GM Global Technology Operations LLC*,
102 F.4th 1280 (Fed. Cir. 2024) ........ 18

*Senju Pharmaceutical Co. v. Apotex, Inc.*,
921 F. Supp. 2d 297 (D. Del. 2013) ........ 10

*Sprint Telephony PCS, L.P. v. Cnty. of San Diego*,
311 F. Supp. 2d 898 (S.D. Cal. 2004) ........ 4

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) ........ 9

*Wyshak v. City Nat'l Bank*,
607 F.2d 824 (9th Cir. 1979) ........ 20

### RULES

C.D. Cal. L.R. 7-3 ........ 4

C.D. Cal. L.R. 7-17 ........ 3

C.D. Cal. L.R. 7-18 ........ 3, 20

Fed. R. Civ. P. 9(b) ........ 2, 8, 13, 16

Fed. R. Civ. P. 12(b)(6) ........ 1, 2, 3, 8, 15 , 21

Fed. R. Civ. P. 12(f)(2) ........ 1, 19

TROJAN
LAW OFFICES
BEVERLY HILLS

Defendant SharkRoad, Inc. ("SharkRoad") respectfully submits this opposition to Plaintiff DNA Specialty, Inc.'s ("DNA") motion to dismiss Counts I and II of SharkRoad's Amended Answer and Counterclaims ("AACC") pursuant to FRCP Rule 12(b)(6) and to strike SharkRoad's related defenses pursuant to Rule 12(f)(2). (Dkt. 37-1, hereinafter "Mot.").

## I. INTRODUCTION

DNA's Motion should be denied because it disregards the substantial amendments SharkRoad made in direct response to the Court's July 21, 2026 Order. (Dkt. 35.) Pursuant to that Order, SharkRoad extensively amended its pleading to add approximately 15 pages of additional facts to support its inequitable conduct and patent invalidity claims. (Dkt. 36-1.)

As to inequitable conduct, the Court previously found that SharkRoad had sufficiently pleaded the "what" and "when," but required additional allegations identifying a specific individual involved in prosecution, where the material information could be found in the prior art, why the omitted information was material and noncumulative, how the Examiner would have used it, and facts supporting a reasonable inference of knowledge and intent. (Dkt. 35 at 9-12.) The AACC now does precisely that. Among other things, it identifies Jerry Lehman by name as the inventor and original applicant; alleges that he participated in prosecution by signing the inventor declaration and power of attorney; alleges that he identified himself as DNA's "Manager Engineering"; alleges that he had an established product-development relationship with DNA and access to materials concerning **DNA's own Twisted Spoke product**, which is alleged to be critical prior art because it is *identical* to the patented design. (Dkt. 36 ¶¶ 80, 85, 90-92.) The AACC goes on to expressly allege that Mr. Lehman knew of that product but did not disclose it to the USPTO. (*Id.* ¶¶ 102-111.)

Further, the AACC identifies the omitted prior art, DNA's own Twisted Spoke product, with specificity that goes well above and beyond the requirements of Rule

TROJAN LAW OFFICES BEVERLY HILLS

9(b) and the standard set forth in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). It identifies the Twisted Spoke product as prior art that was featured in DNA's own 2021 product catalogue, even the particular page of the catalog on which it appeared. (Dkt. 36 ¶ 87.) It identifies *additional* commercial products by name and seller, dates establishing their pre-filing availability, *website locations, photographs, and product exemplars*. (*Id.* ¶¶ 87-94.) It then identifies the particular ornamental information disclosed by those products: an elongated rectangular spoke body, a rectangular cross-section twisted along the longitudinal axis, and cylindrical ends having circular cross-sections. (*Id.* ¶ 94.)

Most importantly, the AACC now does what the Court expressly said the prior pleading did not: it identifies a gap in the art before the Examiner, explains how the omitted art allegedly fills that gap, alleges why the omitted information is noncumulative, and explains how the Examiner would have used it. (*Id.* ¶¶ 96-101, 118-121.) SharkRoad specifically alleges that the Examiner considered D1,042,287 and D374,649, explains what those references did not disclose, and alleges that DNA's own 2021 Twisted Spoke product supplied the missing longitudinally twisted rectangular spoke configuration. (*Id.* ¶¶ 99-101.) Whether DNA agrees with those allegations is irrelevant at the notice pleading stage.

DNA's Motion largely avoids those allegations. Instead, DNA asks the Court to decide the merits. Its central argument is that another reference, U.S. Patent No. D598,620 to Allen ("Allen"), supposedly proves that SharkRoad's pleaded prior art was cumulative and immaterial. DNA asks the Court to compare Allen to SharkRoad's commercial prior art, determine that they are "virtually identical," infer from the patent's allowance that the Examiner deemed Allen immaterial, and then reject SharkRoad's contrary allegations. (Mot. at 10-17.) That is not a Rule 12(b)(6) analysis. It is a disputed prior-art and materiality analysis that cannot be resolved against SharkRoad on the pleadings.



TROJAN LAW OFFICES BEVERLY HILLS

DNA makes the same error as to Count II. The Court dismissed the original invalidity counterclaim because it did not identify the prior art or explain how the asserted designs were substantially similar. (Dkt. 35 at 13-14.) The AACC now identifies numerous prior-art products, describes their relevant features, provides visual comparisons, explains the asserted scope of the design, alleges the same overall visual impression for anticipation, and separately pleads the *Graham* factors applicable to design-patent obviousness. (Dkt. 36 ¶¶ 129-144.) DNA responds that a "quick look" at the images supposedly proves those allegations "untrue." (Mot. at 20.) That statement illustrates the defect in DNA's Motion: DNA asks the Court to weigh competing interpretations of the prior art instead of accepting SharkRoad's well-pleaded allegations as true. Its assertion that a "quick look" at the designs disproves invalidity essentially asks the Court to adjudicate the merits on a pleading motion. This is impermissible under Rule 12(b)(6).

Finally, DNA again seeks to strike SharkRoad's inequitable-conduct and invalidity *defenses* after this Court previously denied DNA's attempt to strike those defenses. (Dkt. 35 at 6-7.) SharkRoad did not change the affirmative defenses that DNA previously challenged. (Dkt. 36 at ¶¶ 54-71.) A renewed request for the same relief is governed by Local Rule 7-17, which expressly applies to a "subsequent motion for the same relief in whole or in part, whether upon the same or any allegedly different state of facts." To the extent DNA seeks reconsideration of the July 21 Order, Local Rule 7-18 permits reconsideration only upon a material difference in fact or law that could not previously have been known, new material facts or a change in law, or a manifest failure to consider material facts. The rule also prohibits repeating arguments made in connection with the original motion and, absent good cause, requires filing within fourteen days of the order, which **expired on August 4, 2026**. C.D. Cal. L.R. 7-18. DNA has not identified any new fact, intervening law, or material matter that the Court failed to consider. Therefore, its motion violates Local Rules 7-17 and 7-18.

TROJAN LAW OFFICES BEVERLY HILLS

Regardless, the defenses remain supported by the detailed factual allegations now contained in the AACC, and DNA cannot credibly claim surprise or lack of notice after devoting most of a thirty-one-page filing to disputing those very facts. The renewed motion to strike should be denied as well.

## II. BACKGROUND FACTS

### A. Facts re Meet and Confer

Despite the Court's previous admonishment that "Plaintiff is CAUTIONED to adhere to the applicable rules going forward" (Dkt. 35 at 6 (capitalization in original)), DNA again failed to properly adhere to the L.R. 7-3, which requires that "a [pre-filing] conference must take place in person, by telephone, or via video conference at least 7 days prior to the filing of the motion." The parties met and conferred on August 12, 2026 (Wong Decl., Ex. 5), and DNA filed its motion merely *two days* later on August 14, 2026 (Dkt. 37.) DNA clearly did not consider SharkRoad's concerns about DNA's intended motion to challenge the affirmative defenses *again* and the weakness of its challenges against the counterclaims. (Wong Decl, Ex. 3 (August 6 Letter).) It is clear that DNA rushed to file its motion to stall discovery as a dilatory tactic. (Wong Decl., Ex. 5: "At the "meet and confer" on August 12th . . . I [counsel for DNA] asked Mssrs. Dang and Wong if Sharkroad would agree to extending DNA's responses to Sharkroad's First Set of Admissions and Second Sets of Interrogatories and Requests for Documents, as they are focused nearly, if not entirely, on the Twisted spoke set forth in DNA's 2021 catalog.").

This is reason alone to deny the motion. See *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 904 (S.D. Cal. 2004) ("The philosophy underlying [Rule 12(g) ] is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics.").

### B. Facts Regarding Discovery



TROJAN LAW OFFICES BEVERLY HILLS

On July 21, 2026, the Court denied DNA's prior motion to strike and granted in part its motion for judgment on the pleadings as to as to Counterclaims I (inequitable conduct) and II (invalidity), with leave to amend. (Dkt. 35.)

Accordingly, SharkRoad filed the AACC on August 3, 2028 (Dkt. 36), along with a redlined version of the same (Dkt. 36-1). In relevant part, the crux of the amended allegations was based on DNA's own Twisted Spoke product, which was sold before the asserted '968 Patent was filed:

> 88. The "Twisted Spoke" is nearly identical to the claimed design in the '968 Patent:




> 89. Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi and/or Sun Choi, were aware of DNA's "Twisted Spoke".

(Dkt. 36-1 at p. 14.)

On July 24, 2026, SharkRoad propounded discovery directed to the Twisted Spoke product. (Wong Decl., ¶ 2.) DNA's response to that discovery was due on August 24, 2026.

TROJAN LAW OFFICES BEVERLY HILLS

On August 5, 2026, DNA sent an email requesting to meet and confer on this motion. (Wong Decl., Ex. 1.) SharkRoad responded the following day. (*Id.*) The parties met and conferred on August 12. (*Id.*, Ex. 4 (memorialization emails).)

In the meet and confer, DNA asked "if SharkRoad would agree to extending DNA's responses to SharkRoad's First Set of Admissions and Second Sets of Interrogatories and Requests for Documents, as they are focused nearly, if not entirely, on the Twisted spoke set forth in DNA's 2021 catalog." (Wong Decl., Ex. 5 (Craig McLaughlin's 8/15 email).) SharkRoad declined. (*Id.*)

DNA filed the present motion on August 14. (Dkt. 37.)

The next day, August 15, reiterated its request for the discovery extension:

> In light of DNA's Motion to Dismiss filed yesterday, DNA requests that SharkRoad reconsider DNA's request for a delay in responding to this discovery until after the Court rules on the Motion, which DNA believes will make said responses moot and therefore would have predictably resulted in a waste of DNA's resources to respond to it by the current due date.

(Wong Decl., Ex. 5 (Craig McLaughlin's 8/15 email).) SharkRoad initially declined, explaining:

> As we discussed during the August 12 conference, DNA's contention that the Twisted Spoke prior art is cumulative of prior art considered by the USPTO during prosecution goes to the merits of SharkRoad's claims and defenses. That is precisely one of the reasons SharkRoad requires discovery—to determine the relevant facts and develop the evidentiary record concerning, among other things, the nature of the prior art, DNA's knowledge of it, and whether it is in fact cumulative.
>
> DNA's position effectively puts the cart before the horse. DNA cannot resolve a disputed merits issue in its own favor and then rely on that conclusion as a basis to withhold otherwise responsive discovery. Whether the Twisted Spoke ultimately proves cumulative is an issue to be determined on an appropriate



TROJAN LAW OFFICES BEVERLY HILLS

> factual record, not a basis for suspending DNA's discovery obligations.

(Wong Decl., Ex. 5: (Wong 8/17 email.)

On August 18, 2026, SharkRoad offered a compromise:

> While SharkRoad made it clear that it will not agree to stay discovery pending the resolution to DNA's pending motion to dismiss as discussed in prior correspondences, we can agree to provide to a limited two-week extension until September 8, 2026 with the understanding that SharkRoad [*sic*, DNA] will provide **substantive responses and produce responsive documents for the second set**. We want to avoid a situation where, after an extension, DNA simply serves objections and/or offers to confer, without substantive responses and production.

(Wong Decl., Ex. 6: (Wong 8/18 email) (emphasis in original).)

DNA declined the offer. It served discovery responses on August 24, substantially objecting to the document requests concerning the Twisted Spoke product as follows.

> DNA has previously produced documents relating to the design of the '968 Patent. Particularly in view of the '620 Patent to Allen, which was examined during prosecution and found to be immaterial to patentability as has been repeatedly pointed out to SharkRoad and is a subject of the currently pending Motion to Dismiss filed by DNA on Aug. 14, 2026, SharkRoad continues to harass DNA by requesting documents cumulative thereto and thus it would be unduly burdensome and oppressive to search for and produce the irrelevant documents SharkRoad seeks here.

(Wong Decl., Ex. 1: RPD 90.)

As of this filing on September 11, 2026, DNA has only produced the catalogue of the Twisted Spoke product and confirmed in request for admission response that the catalogue was genuine and was made by DNA; it has not produced any other



TROJAN LAW OFFICES BEVERLY HILLS

documents responsive to discovery on the challenged claims at issue in the AACC. (*Id.*, ¶ 10; see also, Ex. 2: RFA Nos. 1-3, 5-7.)

As reflected in these correspondences, DNA's present motion has little to do with the adequacy of SharkRoad's AACC; rather, the motion is a desperate attempt to avoid having to produce discovery on the Twisted Spoke product which is now a central focus of SharkRoad's counterclaims of patent invalidity and inequitable conduct.

## III. ARGUMENT

### C. Law

To survive Rule 12(b)(6), a pleading need only contain sufficient factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pleaded factual allegations as true and draw reasonable inferences in favor of the nonmoving party. Indeed, this Court applied that same standard in its July 21 Order. (Dkt. 35 at 7-8.)

Rule 9(b) applies to inequitable conduct. *Exergen Corp. v. Wal-Mart Stores, Inc.*, *supra*, 575 F.3d at 1326. Under *Exergen*, the pleading must identify the specific "who, what, when, where, and how" of the alleged omission. *Id.*at 1328. But Rule 9(b) expressly permits "[m]alice, intent, knowledge, and other conditions of a person's mind" to be alleged generally. Fed. R. Civ. P. 9(b). Thus, while a pleading must contain underlying facts supporting scienter, it need only support a **reasonable inference** that a specific individual knew of the material information and withheld it with the requisite intent. *Exergen*, 575 F.3d at 1328–29.

That distinction between pleading and proof is critical. At the pleading stage, the inference must be "plausible" and flow logically from the facts alleged. *Id* at 1329 n.5. SharkRoad is not required at Rule 12(b)(6) to prove inequitable conduct by clear and convincing evidence or establish that deceptive intent is the single most reasonable inference from a completed evidentiary record. Those are merits

TROJAN LAW OFFICES BEVERLY HILLS

standards. *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290–91 (Fed. Cir. 2011) (*en banc*).

Likewise, although but-for materiality is ultimately required under *Therasense*, the question on this Motion is whether SharkRoad has **plausibly alleged** materiality, not whether DNA can present a competing reference or argument from which a fact finder might ultimately reach a different conclusion.

### D. Count I Satisfies the Particularity Requirements of *Exergen*

#### 1. The AACC Cures the Precise "Who" Defect Identified by the Court

The Court's prior ruling was specific. The original counterclaim identified only DNA rather than "specific individuals alleged to be involved in the filing or prosecution" and therefore left the reader "wondering who did what." (Dkt. 35 at 10.) The Court granted leave to amend. (*Id.* at 12.)

The AACC cures that defect. It identifies Jerry Lehman, Paul Choi, James Choi, and Sun Choi by name and alleges their respective relationships to the patent application, DNA, and the claimed design. (Dkt. 36 ¶¶ 80-92, 102-108, 114-125.) Importantly, it makes detailed allegations concerning the individual most directly connected to prosecution of the patent at issue—Jerry Lehman:

> Specifically, Jerry Lehman, the named inventor and original applicant, participated in the preparation and prosecution of the application by signing the inventor's declaration and power of attorney. Before or during prosecution, Mr. Lehman knew of the DNA Twisted Spoke product because he referred to himself as the 'Manager Engineering' in the prosecution documents. Despite that knowledge, Mr. Lehman did not disclose the product to the USPTO.

(Dkt. 36 ¶ 91.)

The AACC also alleges that Lehman used the same DNA address reflected in the application and assignments, had an established technical and product-



TROJAN LAW OFFICES BEVERLY HILLS

development relationship with DNA by at least 2019, and had access to DNA's confidential internal engineering and product materials concerning the Twisted Spoke. (*Id.* ¶¶ 80, 85, 90-91.) These allegations do not leave one "wondering who did what." They identify a specific individual, his role in prosecution, the information he allegedly knew, the factual basis for that knowledge, and the alleged nondisclosure.

DNA nevertheless argues that use of "and/or" in certain other allegations somehow eliminates these specific allegations. (Mot. at 6–9.) It does not. A pleading must be read as a whole. The presence of alternative allegations concerning additional individuals does not erase paragraph 91's direct allegation that Lehman himself knew of DNA's Twisted Spoke and failed to disclose it.

Nor does DNA fairly characterize the AACC as alleging only uncertain collective conduct. Paragraph 106 alleges that "DNA, Mr. Lehman, Paul Choi, James Choi, and Sun Choi intentionally withheld the Prior Art Products with the specific intent to deceive the USPTO into allowing the '968 Patent to issue." (Dkt. 36 ¶ 106.) Paragraph 124 likewise alleges that Mr. Lehman, Paul Choi, James Choi, and Sun Choi "deliberately withheld" the identified prior-art products "with the specific intent to deceive the USPTO and obtain allowance of the '968 Patent." (*Id.* ¶ 124.) Those allegations identify the persons alleged to have possessed the requisite knowledge and intent.

DNA's reliance on *Senju Pharmaceutical Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297 (D. Del. 2013), is therefore misplaced. The problem there was a broadly cast allegation that could implicate "all or none" of the individuals connected to the relevant proceeding. *Id.* at 307. Here, SharkRoad specifically alleges that Lehman—the named inventor and applicant who participated in prosecution—knew of DNA's Twisted Spoke and did not disclose it.

DNA's argument based on paragraph 109 is weaker still. Paragraph 109 states that "DNA's inequitable conduct renders the '968 Patent unenforceable." (Dkt. 36 ¶

TROJAN LAW OFFICES BEVERLY HILLS

109.) DNA characterizes this legal conclusion as a supposedly binding "judicial admission" that DNA alone—and no individual—committed the alleged conduct. (Mot. at 9.) Nothing in paragraph 109 says that. The paragraph states the legal consequence SharkRoad alleges follows from the conduct pleaded in the preceding paragraphs. It does not negate the express allegations concerning Lehman, the Chois, their knowledge, their nondisclosure, or their intent. DNA cannot convert an allegation concerning patent unenforceability into an affirmative factual admission that the specifically identified individuals alleged throughout the AACC did nothing.

Critically, it is important to note that the Counterclaims are directed to DNA, which is an entity that acts through individuals. The allegations undoubtedly specify which individuals acted on behalf of the entity. The amended pleading therefore cures the exact "who" deficiency identified by the Court.

TROJAN
LAW OFFICES
BEVERLY HILLS

### 2. The AACC Identifies Exactly "Where" the Material Information Is Found

The Court previously found the "where" element deficient because the original pleading contained images and URLs but did not provide "guidance on where the material information is found within the source images and/or URL links." (Dkt. 35 at 10-11.) Again, the AACC directly addresses that concern.

The AACC identifies DNA's 2021 catalog, **page 43**, and the specific "Twisted Spoke" product displayed there approximately two years before the filing date. (Dkt. 36 ¶ 87.) It reproduces the relevant catalog page. (*Id.*) It then places the DNA Twisted Spoke alongside Figure 1 of the '968 Patent for comparison. (*Id.* ¶ 88.)

The AACC also identifies additional products by manufacturer or seller, product name, website, date, and exemplar. (*Id.* ¶ 94.) And unlike the prior pleading, paragraph 94 expressly tells DNA and the Court what material information SharkRoad contends those sources disclose:

> a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section,

> which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent.

(*Id.* ¶ 94.)

That is the guidance the Court found absent. DNA's present disagreement as to whether those features are sufficiently similar to invalidate the patent is not a "where" pleading deficiency.

**3. The AACC Identifies the "When"**

The AACC provides concrete dates. It alleges that the '968 application was filed on *April 19, 2023*, that DNA itself publicly displayed and offered the Twisted Spoke in its *2021 catalog*, and that other twisted-spoke products were publicly available years earlier. (Dkt. 36 ¶ 86.)

Count I then identifies the precise relevant prosecution period: the prior art allegedly was not disclosed *from the April 19, 2023 filing date through the August 5, 2025 issuance of the '968 Patent.* (Dkt. 36 ¶¶ 94-111.) That readily supplies the "when."

**4. The AACC Expressly Pleads "Why" the Omitted Art Was Material and Noncumulative and How the Examiner Would Have Used It**

The Court previously explained what was missing from the original pleading: SharkRoad had not identified a gap in the prior art before the Examiner or explained how the withheld information filled that gap. (Dkt. 35 at 11.) The Court also found insufficient factual allegations explaining how the Examiner would have used that information. (*Id.* at 11-12.) Paragraphs 96 through 101 of the AACC were added to answer exactly those questions.

First, SharkRoad alleges that the omitted commercial products disclose the same or substantially the same ornamental features claimed in the '968 Patent and create the same overall visual impression. (Dkt. 36 ¶¶ 96-99.)



TROJAN LAW OFFICES BEVERLY HILLS

Second, SharkRoad alleges what the Examiner did and did not consider. The AACC alleges that the Examiner considered other wheel-spoke references but did not consider the identified commercial Prior Art Products, including DNA's own 2021 Twisted Spoke. (*Id.* ¶ 99.)

Third, the AACC identifies a specific gap in the art before the Examiner. It alleges that D1,042,287 depicted *cylindrical* spokes but did not depict "an elongated spoke body having the longitudinally twisted *rectangular* configuration shown in solid lines in Figures 1–4 of the '968 Patent." (*Id.* ¶ 100 (emphasis added).) The AACC separately addresses D374,649 and alleges that DNA's 2021 product supplied the claimed configuration absent from the art considered by the Examiner. (*Id.*)

Fourth, SharkRoad expressly alleges noncumulativeness. The AACC alleges that DNA's 2021 Twisted Spoke filled the missing gap because it possessed the elongated rectangular body, longitudinal twist, and cylindrical ends. Hence, "[t]he DNA product was therefore not cumulative of D1,042,287 nor references such as D374,649." (*Id.*)

Finally, paragraph 101 alleges how the Examiner would have used the omitted information: by comparing its overall visual impression to the claimed design and finding that it disclosed the twisted spoke, thereby supplying a basis for rejection under § 102 or § 103. (*Id.* ¶ 101.) In short, the AACC tells DNA and the Court what was missing from the prosecution record, why it mattered, and what the Examiner allegedly would have done with it.

Whether SharkRoad will ultimately prove those allegations is not before the Court. Rule 9(b) only requires SharkRoad to plead the factual basis of its theory with particularity. It has done so.

#### 5. DNA's Reliance on Allen Improperly Asks the Court to Resolve a Disputed Merits Issue

Unable to show that the foregoing allegations are missing, DNA asks the Court to reject them as supposedly false. DNA relies heavily on the Allen patent,



TROJAN LAW OFFICES BEVERLY HILLS

D598,620, and asks the Court to conclude that Allen contains the same information as SharkRoad's commercial Prior Art Products. (Mot. at 10-17.) DNA repeatedly characterizes Allen as "virtually identical," insists that it renders the omitted references cumulative, and asserts that the Examiner "determined" Allen to be insufficiently material because the '968 Patent ultimately issued. (*Id.*)

Those assertions are DNA's **arguments about the evidence**, not facts that displace the allegations of the AACC.

Even assuming the Court takes judicial notice of Allen's existence and drawings, which is should not, judicial notice does not permit the Court to take notice of DNA's disputed interpretation of those drawings. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage. Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."). Nor may incorporation by reference be used to assume the truth of a document in a manner that merely disputes well-pleaded allegations. *Id.* at 1003.

That is precisely what DNA proposes. The AACC alleges that the withheld commercial products contain ornamental information that was not before the Examiner and that the DNA 2021 Twisted Spoke filled a gap in the prosecution art. (Dkt. 36 ¶¶ 99-101.) DNA contends Allen proves the opposite. Resolving that disagreement requires comparing the asserted prior art, considering the prosecution record, determining the relevant visual impression, and deciding whether the omitted references were materially cumulative. Those are merits questions.

Indeed, DNA's own terminology demonstrates the point. Whether two design references are "virtually identical," whether one "fills a gap," and whether differences in bends, ends, dimensions, or degree of twist alter the overall visual

TROJAN
LAW OFFICES
BEVERLY HILLS

impression are quintessential comparative questions that must be resolved on the merits. DNA cannot transform its preferred answers into judicially noticeable facts.

DNA also overstates what can be inferred from the Examiner's consideration of Allen. The fact that Allen appears among references considered during prosecution does not establish an adjudicative fact that the Examiner affirmatively "determined" Allen to be immaterial, much less that every different commercial twisted-spoke product was likewise immaterial or cumulative. That is DNA's inference from the prosecution outcome. SharkRoad pleads a contrary inference as to different, omitted products. On Rule 12(b)(6), that factual disagreement cannot be resolved against SharkRoad.

*Khoja* is particularly instructive because it rejected the use of extrinsic documents as a mechanism to create a defense to otherwise well-pleaded allegations. 899 F.3d at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."). DNA's Allen argument does exactly that.

Nor does *Exergen* require SharkRoad, at the pleading stage, to distinguish its omitted references from every one of the eighteen references appearing on the face of the '968 Patent. The Court's prior Order required allegations identifying the gap in the prosecution art and explaining how the omitted information fills it. (Dkt. 35 at 11.) The AACC now contains those allegations. DNA seeks to replace that pleading requirement with an evidentiary requirement to prove noncumulativeness against the entire prosecution record before discovery. Neither *Exergen* nor the Court's Order imposes such a requirement.

**6. The AACC Pleads Facts Supporting a Reasonable Inference of Knowledge and Specific Intent**

The Court's prior intent ruling flowed directly from the absence of any identified individual. Because the original pleading had "not identified any specific

TROJAN LAW OFFICES BEVERLY HILLS

individual," the Court stated that it was "unable to analyze whether any specific individual acted with a requisite intent." (Dkt. 35 at 12.) That problem no longer exists.

The AACC alleges that DNA had been in the motorcycle-wheel industry for decades; DNA itself advertised and sold the Twisted Spoke before the patent application; competing twisted-spoke products had been sold and advertised in the same market for years; Lehman was the named inventor and applicant; Lehman identified himself as "Manager Engineering"; Lehman had an established technical and product-development relationship with DNA; and Lehman had access to DNA materials concerning the Twisted Spoke. (Dkt. 36 ¶¶ 81, 86-92, 102-103.)

The AACC then alleges intentional nondisclosure and explains the factual basis for the inference of deceptive intent. The references allegedly concerned the same design DNA was attempting to patent; they were commercial products in DNA's own market rather than obscure or unrelated references; DNA itself had sold the Twisted Spoke; no IDS identifying those products was submitted; and disclosure allegedly would have demonstrated that the design was already known and sold. (*Id.* ¶¶ 104-108, 120-125.)

Those allegations provide a factual basis from which the Court can reasonably infer knowledge and intent. That is what *Exergen* requires at the pleading stage.

DNA instead demands that SharkRoad plead some additional "special value" the patent supposedly possessed sufficient to motivate fraud. (Mot. at 19.) Neither Rule 9(b) nor *Exergen* makes a separate allegation of extraordinary economic motive an element of inequitable conduct. The question is whether the factual allegations permit a reasonable inference that a particular individual knew of material information and deliberately withheld it. *Exergen*, 575 F.3d at 1328–29. SharkRoad has pleaded those underlying facts.

TROJAN
LAW OFFICES
BEVERLY HILLS

DNA's argument also improperly imports the ultimate evidentiary burden into the pleading stage. Whether SharkRoad can prove after discovery[1] that a particular individual actually possessed the requisite intent is a different question. At this stage, the inference need only be plausible and flow logically from the pleaded facts. *Id.* The allegations concerning DNA's own prior product, Lehman's role and access, the relationship of the omitted products to the claimed design, and the alleged nondisclosure satisfy that requirement.

Count I should therefore remain.

**E. Count II Easily Satisfies Rule 8 and Directly Cures the Deficiencies Identified in the Prior Order**

The contrast between the original and amended Count II is dispositive. The Court dismissed the original claim because it did not identify or describe the asserted prior art and did not "provide[] [an] explanation as to how any designs were substantially similar." (Dkt. 35 at 14.) The Court expressly granted leave to amend because amendment was not futile. (*Id.*) The AACC now provides exactly that missing information.

It identifies DNA's own 2021 Twisted Spoke and numerous other commercial products by seller, product name, website, date, and image. (Dkt. 36 ¶¶ 87-94, 131-133.) It describes the specific ornamental features allegedly disclosed by those products. (*Id.* ¶ 94.) It alleges that those products create the same overall visual impression as the claimed design. (*Id.* ¶¶ 96-99, 131-133.) It specifically alleges that DNA's own 2021 product is identical in appearance to the claimed design and supplies a visual comparison. (*Id.* ¶ 132.)

The AACC further explains the asserted scope of the claimed design. Paragraph 133 alleges that the opposite ends of the claimed spoke are depicted in

[1] Even though DNA is refusing to produce documents, discovery has already confirmed some of the allegations concerning the Twisted Spoke product and Mr. Lehman's role at DNA.



TROJAN LAW OFFICES BEVERLY HILLS

broken lines and form no part of the claim, leaving the claimed ornamental scope centered on the spiral or twisted configuration of the elongated spoke shown in solid lines. The pleading then alleges that the Prior Art Products disclose the same or substantially the same spiral or twisted configuration and create an overall appearance substantially identical to, or not meaningfully distinguishable from, the claimed design. (*Id.* ¶ 133.) Those allegations are directly relevant to anticipation because the ordinary-observer test governs design-patent anticipation. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-41 (Fed. Cir. 2009).

The obviousness allegations are even more detailed. Under *LKQ Corp. v. GM Global Technology Operations LLC*, 102 F.4th 1280 (Fed. Cir. 2024), design-patent obviousness is governed by the flexible *Graham* framework. The AACC expressly follows that framework. It identifies Buchanan's spiral-spoke product as a specific reference and alleges that such spiral spokes were publicly available well before the April 19, 2023 filing date. (Dkt. 36 ¶¶ 135-137.) It identifies Buchanan as prior art in the same field of endeavor. (*Id.* ¶ 139.) It alleges that Buchanan creates an identical or substantially similar overall visual impression and identifies the asserted differences as minor variations in dimensions or degree of twist. (*Id.* ¶ 140.) It addresses the level of the ordinary designer and alleges why that designer would have found it obvious to adopt or modify the known spiral-spoke configuration. (*Id.* ¶ 141.) It also pleads analogous art and a reason an ordinary designer would consider combinations of the identified references. (*Id.* ¶¶ 143-144.)

That is not remotely comparable to the "bare-bones" pleading the Court dismissed. DNA does not identify a missing element. Instead, DNA tells the Court that "[a] quick look at the images" demonstrates SharkRoad's allegation is "untrue." (Mot. at 20.) That argument should be rejected on its face because it asks the Court to choose DNA's interpretation of competing designs over SharkRoad's pleaded allegations.

TROJAN LAW OFFICES BEVERLY HILLS

DNA emphasizes, for example, alleged bends or attachment features in the prior art. But the AACC specifically alleges that the ends shown in broken lines in the '968 Patent are not part of the claimed design. (Dkt. 36 ¶ 133.) Whether differences in unclaimed portions, the extent of the twist, dimensions, or other details are sufficient to alter the relevant overall visual impression presents the merits of SharkRoad's invalidity case—not a Rule 8 pleading question.

DNA's reliance on Allen is even less relevant to Count II. Cumulativeness is an issue DNA raises concerning inequitable-conduct materiality. It is not a pleading rule that immunizes an issued patent from an invalidity challenge merely because the Examiner considered another allegedly similar reference. The question under Rule 8 is whether SharkRoad has alleged a plausible factual basis for anticipation and obviousness. It plainly has.

DNA may ultimately argue that Allen, the prosecution history, the asserted differences among the designs, or the statutory presumption of validity defeats SharkRoad's invalidity case. Those are matters for the merits. They do not render the detailed allegations of Count II implausible as a matter of pleading.

**F. DNA's Renewed Motion to Strike Should Also Be Denied**

DNA previously moved to strike SharkRoad's inequitable-conduct and invalidity defenses. (Dkt. 28.) The Court denied that request. It held that DNA's Rule 12(f)(2) motion was untimely because DNA had already responded to the pleading and then waited months to seek relief. (Dkt. 35 at 6.) The Court also expressly declined to strike the defenses *sua sponte*, explaining: "Plaintiff's delay, combined with its lackluster engagement with the meet and confer process and the limited practical benefit of striking defenses, does not persuade the Court to strike material on its own initiative." (Dkt. 35 at 7.)

As such, *SharkRoad did <u>not</u> change the affirmative defenses that DNA previously challenged*. (Compare Dkt. 36 ¶¶ 54-71.) DNA's instant motion to strike those unamended defenses is effectively a request to reconsider the prior ruling



TROJAN LAW OFFICES BEVERLY HILLS

regarding those unchanged defenses, but **DNA has not established the requirements of Local Rule 7-18** to warrant reconsideration. It identifies no intervening change of law, new material fact concerning the defenses, or manifest failure by the Court to consider material facts. *See* C.D. Cal. L.R. 7-18.

In any event, the defenses readily satisfy the applicable fair-notice standard. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979). DNA cannot credibly claim that it lacks notice of the basis for SharkRoad's inequitable-conduct or invalidity defenses. The same AACC contains dozens of paragraphs identifying the specific prior art, alleged nondisclosure, prosecution actors, materiality theory, anticipation theory, and obviousness theory. DNA's ability to devote the majority of its Motion to attacking those precise theories demonstrates that it understands them. Nor is there any practical justification for requiring SharkRoad to duplicate all of those factual allegations verbatim beneath the affirmative-defense headings. At most, if the Court concludes that express incorporation is technically necessary, that issue can be corrected by a simple amendment. It provides no basis for striking a potentially dispositive defense without leave to amend.

DNA's request concerning the Sixth Defense is especially overbroad. Paragraph 59 of the Answer does not assert only anticipation and obviousness. It asserts invalidity under §§ 101, 102, 103, 112, and 116, and separately alleges that the claimed design is dictated by functional considerations and is invalid under § 171. (Dkt. 36 ¶ 59.) DNA's Motion to dismiss Count II addresses only anticipation and obviousness. It provides no basis to strike the entire Sixth Defense, including independent invalidity theories that are not the subject of the Motion.

The same is true of the Third Defense. Paragraph 56 identifies multiple equitable doctrines, including waiver, estoppel, laches, consent, unclean hands, reasonable avoidance, and acquiescence in addition to inequitable conduct. (Dkt. 36 ¶ 56.) Even if DNA had identified some defect in the inequitable-conduct



TROJAN LAW OFFICES
BEVERLY HILLS

component—which it has not—that would not justify striking independent equitable defenses wholesale.

Most fundamentally, Counts I and II are adequately pleaded for the reasons above. The factual predicates for the corresponding defenses therefore remain in the case. DNA's derivative request to strike necessarily fails with its Rule 12(b)(6) arguments.

**G. Even If the Court Identifies a Technical Pleading Deficiency, Dismissal or Striking with Prejudice Is Unwarranted**

DNA repeatedly requests dismissal and striking **with prejudice**. That request is particularly inappropriate.

The Court's prior Order identified discrete pleading deficiencies and expressly concluded amendment was not futile. (Dkt. 35 at 12, 14.) SharkRoad responded with extensive new allegations directed to every deficiency the Court identified. At minimum, those amendments demonstrate that SharkRoad can allege concrete facts concerning the prosecution actors, prior art, materiality, noncumulativeness, scienter, anticipation, and obviousness.

If the Court nevertheless concludes that a particular allegation should identify an individual more specifically, eliminate "and/or," expressly distinguish an additional prosecution reference, or formally incorporate factual allegations into an affirmative defense, each supposed defect is readily curable. None establishes futility.

DNA's principal substantive argument—that Allen defeats SharkRoad's materiality and invalidity theories—is not a pleading defect that could justify dismissal with prejudice. It is a disputed merits defense. SharkRoad is entitled to develop the evidentiary record before the Court decides whether DNA's characterization of Allen, the omitted commercial prior art, or the prosecution history is correct.



TROJAN LAW OFFICES BEVERLY HILLS

Accordingly, if the Court finds any remaining technical deficiency, SharkRoad respectfully requests leave to amend rather than dismissal or striking with prejudice.

## IV. CONCLUSION

For the foregoing reasons, SharkRoad respectfully requests that the Court **DENY** DNA's Motion in its entirety. In the alternative, should the Court identify any technical pleading deficiency, SharkRoad requests leave to amend.

Respectfully submitted,

By:

Dated: September 11, 2026

/s/R. Joseph Trojan

R. Joseph Trojan
Dylan C. Dang
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348
Attorneys for Defendant
SHARKROAD, INC.

TROJAN LAW OFFICES BEVERLY HILLS