# EXHIBIT 3

**Subject:** Re: DNA v. Sharkroad - Request for Meet and Confer - Amended Answer and Counterclaim
**Date:** Thursday, August 6, 2026 at 5:09:01 PM Pacific Daylight Time
**From:** Francis Wong
**To:** Craig McLaughlin, Said Vakili, Jason Ming
**CC:** Mehdi Poursoltani, Joe Trojan, Dylan Dang
**Attachments:** Response to Meet and Confer vFinal.pdf

Dear Craig:

Please see the attached correspondence.

Best regards,

TROJAN LAW OFFICES, P.C.
by
Francis Wong
www.trojanlawoffices.com
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone (310) 777-8399, Ext. 104
Fax: (310) 691-1086
TLO® — providing quality intellectual property services to our global clientele since 1991.
This email is intended only for the use of the individual or entity to whom or which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable Federal or State laws. If the reader of this message is not the intended recipient of this email or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please contact us immediately by telephone or response email. Thank you.

**From:** Craig McLaughlin <craig@vakili.com>
**Date:** Wednesday, August 5, 2026 at 8:42 PM
**To:** Francis Wong <wong@trojanlawoffices.com>; Mehdi Poursoltani <Poursoltani@trojanlawoffices.com>; Joe Trojan <trojan@trojanlawoffices.com>; Dylan Dang <dang@trojanlawoffices.com>
**Cc:** Said Vakili <vakili@vakili.com>; Jason Ming <jason@vakili.com>
**Subject:** RE: DNA v. Sharkroad - Request for Meet and Confer - Amended Answer and Counterclaim

Francis,

Thank you for recalling your e-mail of today regarding the "meet and confer." We look forward to your

more complete response tomorrow. Thank you also for pointing out the undismissed defenses of inequitable conduct and invalidity. DNA wishes to revisit them with the Court should Sharkroad not agree to withdraw them. Accordingly, please include them in the meet and confer based on the untenable Counterclaim Counts I - III.

"*Ferguson Beauregard/Logic Controls Div. of Dover Res., Inc. v. Mega Sys., LLC,* No. 99-CV-437, slip op. at 10 (E.D.Tex. Aug. 14, 2000) ('Merely putting the words ... "inequitable conduct' in a[n] ... Answer will not be sufficient to unleash the mischief' of the defense.)." *Exergen Corp.,* 575 F.3d at 1328. An affirmative defense of inequitable conduct cannot be saved "when the related counterclaim has already been found wanting." *Aevoe Corp.*, 2013 U.S. Dist. LEXIS 31647 *32.

If a defendant pled "affirmative defenses [which] include only conclusory allegations, without providing any information about the grounds upon which the defenses rest, it has insufficiently [pleaded] these defenses." *Powertech Tech, Inc.* (striking defenses by applying the more relaxed standard of fair notice, but recognizing that courts in the Northern District of California apply the *Iqbal/Twombly* standard of plausibility); *Barnes v. AT&T Pension Benefit Plan--Nonbargained Program*, 718 F. Supp. 2d 1167, 1172-73 (N.D. Cal. 2010) (striking defenses applying the *Iqbal/Twombly* standard of plausibility although noting that "AT & T has not alleged sufficient facts to provide notice to Barnes as to the nature of any of its affirmative defenses"). Here, applying the more relaxed standard, Sharkroad fails to put DNA on notice of the nature of the invalidity defense or upon the grounds upon which it rests.

Sharkroad's allegations of functionality are also bare conclusions: "the design claimed in the '968 Patent is not primarily ornamental but is instead dictated by function." They allege no facts in support.

Craig McLaughlin
Vakili & Leus, LLP

---

**From:** Francis Wong <wong@trojanlawoffices.com>
**Sent:** Wednesday, August 5, 2026 5:03 PM
**To:** Craig McLaughlin <craig@vakili.com>; Mehdi Poursoltani <Poursoltani@trojanlawoffices.com>; Joe Trojan <trojan@trojanlawoffices.com>; Dylan Dang <dang@trojanlawoffices.com>
**Cc:** Said Vakili <vakili@vakili.com>; Jason Ming <jason@vakili.com>
**Subject:** Re: DNA v. Sharkroad - Request for Meet and Confer - Amended Answer and Counterclaim

Dear Counsel:

We received your request to meet and confer. We are available on August 12, 2026 to meet and confer. As a preliminary response before the conference, we note that DNA's positions concerning the counterclaims are facially frivolous for several reasons.

First, the court did not strike any of SharkRoad's affirmative defenses, including its defense for invalidity and inequitable conduct. Thus, even if DNA were to succeed on a motion to dismiss, which it cannot, SharkRoad still has the right to bring those defenses to DNA's infringement claim and the issues raised in the counterclaims are still relevant.

Second, DNA takes issue concerning the "who" element of the inequitable conduct. First, as you know, the original set of counterclaims did not identify any individuals by name, thus, the Court's order indicated that individuals need to be identified. SharkRoad did just that, identifying four individuals individually by name that work for DNA. The fact that the term "and/or" was used does not make the allegation unclear or conclusory. Even if we were to accept your argument at face value, the argument is still frivolous because ¶ 91 of the counterclaims clearly state the following:

Specifically, Jerry Lehman, the named inventor and original applicant, participated in the preparation and prosecution of the application by signing the inventor's declaration and power of attorney. Before or during prosecution, Mr. Lehman knew of the DNA Twisted Spoke product because he referred to himself as the "Manager Engineering" in the prosecution documents. Despite that knowledge, Mr. Lehman did not disclose the product to the USPTO.

¶ 102 states the following:

Upon information and belief, DNA, Mr. Lehman, Paul Choi, James Choi, and Sun Choi knew of the Prior Art Products before and during prosecution of the application that issued as the '968 Patent because DNA had been in the motorcycle wheel and spoke wheel business for over twenty years and because those Prior Art Products were publicly sold, advertised, and reviewed in the same industry in which DNA operated.

Third, "how' the prior art is relevant to inequitable conduct is also clearly explained by ¶ 99-100 in the pleading:

99. While the Examiner considered other prior art depicting wheel spokes during the prosecution of the '968 Patent, including prior art by the inventor, the Examiner did not review any of Prior Art Products during the prosecution which disclosed a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent. In particular, the Examiner did not review DNA's own product that it sold in 2021, which is identical in appearance compared to the claimed design in the'968 Patent as discussed above.

100. For example, the Examiner considered US Patent No. D1,042,287, which depicted a wheel with cylindrical spokes, but did not depict an elongated spoke body having the longitudinally twisted rectangular configuration shown in solid lines in Figures 1–4 of the '968 Patent. The examiner also considered D374,649 invented by James Choi, but that disclosed a "Twisted wire spoke for wire wheels." The DNA 2021 Twisted Spoke product filled that gap because the photograph on page 43 of the catalog shows a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section. The DNA product was therefore not cumulative of D1,042,287 nor references such as D374,649.

The why is also made clear:

**From:** Craig McLaughlin <craig@vakili.com>
**Date:** Wednesday, August 5, 2026 at 3:59 PM
**To:** Mehdi Poursoltani <Poursoltani@trojanlawoffices.com>, Joe Trojan <trojan@trojanlawoffices.com>, TLO #15 <wong@trojanlawoffices.com>, Dylan Dang <dang@trojanlawoffices.com>
**Cc:** Said Vakili <vakili@vakili.com>, Jason Ming <jason@vakili.com>
**Subject:** DNA v. Sharkroad - Request for Meet and Confer - Amended Answer and Counterclaim

Dear Counsel,

As DNA's counsel, I write requesting that Sharkroad kindly withdraw Counts I, II, and III in its Amended Answer and Counterclaim ("AACC") as filed on August 3, 2026. It is apparent to DNA that the same two Counterclaim Counts (I and II) that were previously dismissed continue to be defective in the AACC according to Federal Circuit precedent, *Exergen* and *Therasense*, which the Court had cited previously in its Order dismissing them, dated July 21, 2026. Additionally, Sharkroad's Counterclaim for Invalidity Based on Functional Design also fails Iqbal/Twombly and fails to state a claim. The pleading defects are set forth below.

Given the short time to file a response to the AACC, DNA requests a "meet and confer" on these claims on August 12, 2026 at 3:00 PM PDT. Please let me know, preferably by tomorrow, whether this is a good time for the meet and confer or in the alternative, kindly propose one near it or whether Sharkroad agrees to withdraw the Counts.

**Counterclaim Count I for Unenforceability and Invalidity of the '968 Patent Based On Inequitable Conduct**

-
The "Who"

-
As the Court previously held, referring to various individuals who might be responsible for the purported inequitable conduct is insufficient to satisfy the "who" pleading requirement of *Exergen*. In its Order dismissing this Count on July 21, 2026, the Court stated: "In *Exergen*, the Federal Circuit held that a complaint referring generally to "Exergen, its agents and/or attorneys" was insufficient to identify the "who," because doing so "fails to name the specific individual associated with the filing or prosecution of the [patent] application." 575 F.3d at 1329. Similarly, here, the ACC only identifies DNA Specialty rather than specific individuals alleged to be involved in the filing or prosecution of the patent allocation. This "leaves one wondering who did what." *See Autel Intelligent Tech. Corp. v. Shenzhen XTOOLTech Intelligent Co.,* No. EDCV 25-01755-KK-DTBX, 2025 WL 3652931, at *3 (C.D. Cal. Nov. 26, 2025). Therefore, the ACC does not plead "who" with sufficient specificity to satisfy Rule 9(b)."

The AACC continues to be replete with the same failure cited by the Court to require allegations directed to a specific individual. In fact, Sharkroad employs the same uncertain "and/or" modifier to several of its allegations about several individuals and DNA, which is an entity. "91. Upon information and belief, Jerry Lehman, Paul Choi, and DNA's principals, including James Choi and/or Sun Choi, were individuals associated with the preparation, filing, and/or prosecution of the application that issued as the '968 Patent, or were otherwise substantively involved in the application and transfer of rights in the

claimed design." See also Paras. 86, 89, 92, 104. In Para. 106, Sharkroad accuses several individuals and DNA of having the specific intent to withhold the "Prior Art Products" . . . . See also Paras. 102, 103 and 105. These allegations do not meet the "who" standard set forth in *Exergen*.

The "Why" and "How"

-

As the Court also provided in its Order: "To satisfy these requirements, defendants must plead "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30. "The materiality required to establish inequitable conduct is but-for materiality . . . [P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense, Inc.,* 649 F.3d at 1291. To sufficiently allege the "why" of materiality, Defendant must "at least show 'gaps in the prior art that was before the examiner during prosecution' and 'how the reference fills those gaps." *Autel Intelligent Tech. Corp*., 2025 WL 3652931, at *5 (citing *Jackson v. NuVasive, Inc*., No. CV 21-53-RGA, 2023 WL 5175092, at *5 (D. Del. Aug. 11, 2023)) (brackets omitted)."

While the AACC alleges a larger number of "Prior Art Products" than did the ACC, none of the alleged references show any "gaps in the prior art that was before the examiner during prosecution," let alone "how the reference fills those gaps." Each of the references alleged, including the spoke shown in the Twist wheel in the 2021 DNA Catalog, shows a bent spoke (not a straight one as in the '968 Patent) with only partially twists along its length. Glaringly, Sharkroad doesn't mention or distinguish U.S. Patent No. 598,620 to Allen ("Allen"), which the '968 Patent shows was before the Examiner and was rejected as being immaterial to patentability. Sharkroad does not analyze Allen nor does it explain why it is not cumulative or how with withholding the aforementioned "Prior Art Products," in view of Allen, could possibly constitute inequitable conduct.

Specific Intent to Deceive

-

The Court stated in its Order: "A 'defendant['s] failure to identify a particular individual prevents the Court from inferring that a particular person acted with the requisite intent.' *Id*."
"As noted, Defendant has not identified any specific individual. Thus, the Court is unable to analyze whether any specific individual acted with a requisite intent, which is another deficiency of the inequitable conduct counterclaim."

The AACC also fails to adequately allege the intent required. See discussion of "who" above.

For all the above reasons, judgment on the pleadings is proper.

**Counterclaim Count II for Invalidity of the '968 Patent (Anticipation and Obviousness)**

-

In the AACC, Sharkroad piles up different products of the same design, each a bent spoke with incomplete twists, and concludes anticipation and obviousness, yet all for naught in view of Allen, a reference that shows the same bent spoke with incomplete twists which was rejected as being immaterial. The alleged Choi patent was also reviewed by the Examiner and was found, alone or in combination with Allen, to be immaterial to patentability. Accordingly, Sharkroad's conclusory allegations of anticipation and obviousness fail *Iqbal/Twombly* and judgment on the pleadings is proper.

**Counterclaim Count III for Invalidity of the '968 Patent Based On Functional Design**

-

In this Count, Sharkroad briefly alleges in the AACC that: “The design claimed in the ’968 Patent is not primarily ornamental, but is instead dictated by functional considerations. As such, the claimed design is not eligible for design patent protection under 35 U.S.C. § 171 and is therefore invalid.” Para. 148.

Not only is this allegation wholly conclusory, but it is also not the legal standard to prove invalidity of a design patent based on functionality. The design must be solely functional, not “primarily” ornamental or “dictated by functional considerations.”

“[I]f the design claimed in a design patent is dictated solely by the function of the article of manufacture, the patent is invalid because the design is not ornamental. See *Bonito Boats, Inc. v. Thunder Craft Boats, Inc*., 489 U.S. 141, 148, 109 S. Ct. 971, 976, 103 L. Ed. 2d 118, 9 USPQ2d 1847, 1851 (1989) ("To qualify for protection, a design must present an aesthetically pleasing appearance that is not dictated by function alone, and must satisfy the other criteria of patentability."); see also *In re Carletti,* 51 C.C.P.A. 1094, 328 F.2d 1020, 1022, 140 USPQ 653, 654 (1964) (" [I]t has long been settled that when a configuration is the result of functional considerations only, the resulting design is not patentable as an ornamental design for the simple reason that it is not 'ornamental'--was not created for the purpose of ornamenting."). A design is not dictated solely by its function when alternative designs for the article of manufacture are available. *See L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed. Cir.), cert. denied, 510 U.S. 908, 114 S. Ct. 291, 126 L. Ed. 2d 240 (1993).

Sharkroad fails to identify how the entire design is solely functional and without design alternatives, which would be a remarkable claim given so many spoke variations that Sharkroad has contended are material and invalidating prior art. Sharkroad’s allegations fail *Iqbal/Twombly* and fail to state claim. Judgment on the pleadings is proper.

Best Regards,

Craig McLaughlin
Vakili & Leus, LLP
Attorneys for DNA Specialty, Inc.

---

This email has been scanned for spam and viruses. Click here to report this email as spam.

R. JOSEPH TROJAN

DYLAN C. DANG
FRANCIS WONG
EDWIN TARVER
MEHDI POURSOLTANI
ALEXANDER D. MAZZEO

**TROJAN LAW OFFICES, P.C.**
REXFORD PLAZA
9250 WILSHIRE BOULEVARD
SUITE 325
BEVERLY HILLS, CALIFORNIA 90212
www.PatenTrademark.com
REGISTERED PATENT ATTORNEYS

PATENT, TRADEMARK, COPYRIGHT,
TRADE SECRET & RELATED CAUSES

TELEPHONE (310) 777-8399
FACSIMILE (310) 777-8348
TROJAN@TROJANIP.COM

EST. 1991

August 6, 2026

Sa'id Vakili, Esq. (SBN: 176322)
Craig McLaughlin, Esq. (SBN: 182876)
Jason C. Ming, Esq. (SBN: 219745)
Stephen P. Hoffman, Esq. (SBN: 287075)
VAKILI & LEUS, LLP
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010

***Via E-Mail***

Re: *DNA Specialty, Inc. v Sharkroad, Inc.*
Case No. 2:25-cv-10379-MWC (RAOx)
Central District of California
TLO File No. 25-11-10088

Dear Craig:

We write in response to DNA's August 5, 2026 request to meet and confer regarding Sharkroad's Amended Answer and Counterclaims (Dkt. 36), as well as DNA's follow-up email concerning Sharkroad's affirmative defenses. We are available on August 12, 2026, at 3:00 p.m. Pacific. This letter provides Sharkroad's preliminary response so that the conference can focus on any issues that genuinely remain in dispute.

Sharkroad will not withdraw Counterclaims I, II, or III and it will not withdraw the affirmative defenses that the Court previously declined to strike. The amended pleading directly addresses the deficiencies identified in the Court's July 21, 2026 Order. As discussed below, DNA's contrary arguments either disregard the new allegations or raise disputed merits issues that cannot be resolved on a motion for judgment on the pleadings.

## I. DNA's Renewed Challenge to Sharkroad's Affirmative Defenses

DNA already sought to strike Sharkroad's affirmative defenses. The Court denied that request. The Court held that DNA's motion was untimely under Federal Rule of Civil Procedure 12(f)(2) because DNA filed a responsive pleading and then waited several months before seeking to strike the defenses. The Court also declined to strike the defenses on its own initiative, explaining that DNA's delay, its "lackluster engagement with the meet and confer process," and "the limited practical benefit of striking defenses" did not justify such relief. (Dkt. 35 at 6–7.)

---

"Plaintiff elected to file a responsive pleading, then waited several months thereafter to seek relief under Rule 12(f). Plaintiff's delay, combined with its lackluster engagement with the meet and confer process and the limited practical benefit of striking defenses, does not persuade the Court to strike material on its own initiative." (Dkt. 35 at 7.)

The Amended Answer did not change the affirmative defenses that DNA previously challenged. (See Dkt. 36 at ¶¶ 54–71.) DNA's August 5 email nevertheless states that it "wishes to revisit" the inequitable-conduct and invalidity defenses and seeks the same relief that the Court denied. A renewed request for the same relief is governed by Local Rule 7-17, which expressly applies to a "subsequent motion for the same relief in whole or in part, whether upon the same or any allegedly different state of facts." To the extent DNA seeks reconsideration of the July 21 Order, Local Rule 7-18 permits reconsideration only upon a material difference in fact or law that could not previously have been known, new material facts or a change in law, or a manifest failure to consider material facts. The rule also prohibits repeating arguments made in connection with the original motion and, absent good cause, requires filing within fourteen days of the order, which **expired on August 4, 2026**. C.D. Cal. L.R. 7-18.

DNA's emails identify no new fact, intervening law, or material matter that the Court failed to consider. Nor does amendment of Counterclaims I and II reopen DNA's previously denied motion to strike unchanged defenses. Before DNA files any motion directed to those defenses, please identify the procedural basis for seeking the same relief again and the new facts or law that DNA contends satisfy Local Rules 7-17 and 7-18 or why its filing is still timely.

## II. Counterclaim I Adequately Pleads Inequitable Conduct

### A. The amended pleading identifies the specific "who"

The Court dismissed the original counterclaim because it identified only DNA Specialty rather than any specific individual involved in filing or prosecuting the application. (Dkt. 35 at 10.) The amended pleading cures that precise defect. It identifies Jerry Lehman, Paul Choi, James Choi, and Sun Choi by name and alleges their respective connections to the application, the claimed design, DNA's motorcycle-wheel business, the prior-art products, and the transfer and enforcement of the patent. (Dkt. 36 at ¶¶ 80–91, 102–108, 114–125.)

Most importantly, paragraph 91 specifically identifies what Jerry Lehman allegedly did:

> Specifically, Jerry Lehman, the named inventor and original applicant, participated in the preparation and prosecution of the application by signing the inventor's declaration and power of attorney. Before or during prosecution, Mr. Lehman knew of the DNA Twisted Spoke product because he referred to himself as the 'Manager Engineering' in the prosecution

documents. Despite that knowledge, Mr. Lehman did not disclose the product to the USPTO. (Dkt. 36 at ¶ 91.)

The pleading further alleges that Mr. Lehman used DNA's address, had an established technical and product-development relationship with DNA, and had access to DNA's internal engineering and product materials, including materials concerning the Twisted Spoke. (*Id*., at ¶¶ 80, 85, 90–91.) It separately alleges that Paul Choi acquired the application during prosecution, that James Choi and Sun Choi were DNA principals, and that these identified individuals were substantively involved in the application, ownership, or transfer of the claimed design and knew of the omitted products. (*Id*., at ¶¶ 81–86, 91, 102–106, 114–125.)

The use of "and/or" in some allegations does not make the pleading defective. The Court's concern was that the original pleading "only identifie[d] DNA Specialty" and therefore left the reader wondering "who did what." (Dkt. 35 at 10.) The amended pleading now names the individuals and, at a minimum, attributes specific prosecution conduct, knowledge, and nondisclosure to Mr. Lehman. DNA's disagreement with whether Sharkroad can ultimately prove those allegations is a merits issue, not a pleading deficiency.

**B. The amended pleading identifies where the material information is found**

The Court found the original pleading deficient because it did not identify where the material information appeared in the cited products, images, or links. (Dkt. 35 at 10–11.) The amended pleading now identifies DNA's 2021 catalog, the specific catalog page, the "Twisted Spoke" product, side-by-side images comparing that product to Figure 1 of the '968 Patent, additional product names and websites, dates showing pre-filing public availability, and product exemplars. (Dkt. 36 at ¶¶ 87–94.) Paragraph 94 then identifies the specific ornamental features disclosed by the cited products: an elongated rectangular spoke body, a rectangular cross-section twisted along the body's longitudinal axis, and cylindrical ends with circular cross-sections. (*Id*., at ¶ 94.) Those allegations provide the location and content that the Court found missing from the original counterclaim.

**C. The amended pleading explains why the references are material and noncumulative and how the Examiner would have used them**

The Court required Sharkroad to allege the gap in the art before the Examiner, how the omitted references filled that gap, why the omitted information was noncumulative, and how the Examiner would have used it. (Dkt. 35 at 11–12.) Paragraphs 96 through 101 do exactly that. They allege that the omitted products disclosed the same or substantially the same ornamental features, created the same overall visual impression, and were not reviewed during prosecution. They further compare the omitted DNA product to two references that were before the Examiner—U.S. Patent Nos. D1,042,287 and D374,649—and identify the missing feature: the longitudinally

twisted rectangular spoke body shown in solid lines in Figures 1 through 4 of the '968 Patent. (Dkt. 36 at ¶¶ 96–101.) The amended claim alleges:

> The DNA 2021 Twisted Spoke product filled that gap because the photograph on page 43 of the catalog shows a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section. The DNA product was therefore not cumulative of D1,042,287 nor references such as D374,649. (Dkt. 36 at ¶ 100.)

The amended pleading then alleges how the Examiner would have used that information: the Examiner would have compared the omitted product's overall visual impression to the claimed design and would have had a basis to reject the claim under 35 U.S.C. § 102 or § 103. (*Id.*, at ¶¶ 99–101, 118–121.) These are the specific allegations that the Court found absent from the original pleading.

DNA's reliance on U.S. Patent No. D598,620 (Allen) does not establish a pleading defect. At most, DNA disputes whether the omitted products are cumulative in light of an additional reference. The amended pleading alleges the opposite and explains why at least the DNA 2021 Twisted Spoke product supplied ornamental information missing from the references considered by the Examiner. Whether Allen ultimately defeats Sharkroad's noncumulativeness and but-for-materiality evidence requires consideration of the prosecution history and a comparison of the references. That factual dispute cannot be resolved against Sharkroad on the pleadings, where the Court must accept the nonmovant's factual allegations as true and construe them in its favor. (Dkt. 35 at 7.)

**D. The amended pleading supports a plausible inference of knowledge and specific intent**

The Court recognized that, at the pleading stage, the required inference is one that is "plausible and that flows logically from the facts alleged." (Dkt. 35 at 12 (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327–29 (Fed. Cir. 2009)).) The amended pleading alleges that the identified individuals knew of the products because DNA had operated in the motorcycle-wheel industry for decades, DNA itself advertised and sold the Twisted Spoke before the patent filing, the omitted products were sold and advertised in DNA's market, and Mr. Lehman was DNA's "Manager Engineering" and participated in prosecution. (Dkt. 36 at ¶¶ 81, 86–92, 102–103, 114–123.)

The pleading also alleges deliberate withholding, a specific intent to deceive the USPTO, and facts supporting that inference: the omitted references directly concerned the same design

---

DNA sought to patent; the references were not obscure or unrelated; no Information Disclosure Statement identified them; and disclosure would have shown that the claimed design was already known and sold. (*Id*., at ¶¶ 104–108, 120–125.) Those allegations are more than a bare recitation of intent. They provide the factual basis from which Sharkroad asks the Court to draw the reasonable inference required at the pleading stage. Whether Sharkroad can later prove inequitable conduct by clear and convincing evidence is not the Rule 12(c) question.

### III. Counterclaim II Adequately Pleads Anticipation and Obviousness

The Court dismissed the original invalidity counterclaim because it did not describe the asserted prior art or explain how the designs were substantially similar. The Court stated that the original pleading "provides no explanation as to how any designs were substantially similar, nor does it make any reference or description to what the 'prior art' is." (Dkt. 35 at 14.) The amended pleading cures both deficiencies in detail.

The amended pleading identifies DNA's 2021 Twisted Spoke and numerous other products by seller, product name, website, date, and image. (Dkt. 36 at ¶¶ 87–94.) It alleges the precise claimed features disclosed by those products and explains why they create the same overall visual impression. (Id. ¶¶ 94, 96–101, 131–133.) It also addresses claim scope, alleging that the ends shown in broken lines form no part of the claimed design and that the claimed ornamental scope therefore centers on the spiral or twisted elongated spoke shown in solid lines. (*Id*., at ¶ 133.)

For obviousness, the pleading identifies Buchanan's spiral spokes as same-field prior art, alleges public availability before the filing date, compares their overall visual impression to the claimed design, and pleads the Graham factors, including the scope and content of the prior art, the differences between the prior art and claimed design, and the knowledge of an ordinary designer in wheel-spoke design. (*Id*., at ¶¶ 134–144.) These allegations are not the "bare-bones recitation of statutes" addressed in the July 21 Order. (Dkt. 35 at 14.)

DNA's assertions that the cited products are bent, contain incomplete twists, or are cumulative of Allen dispute Sharkroad's pleaded comparisons and the ultimate weight of the prior art. They do not show that the amended allegations fail to provide notice or plausibly allege invalidity. A Rule 12(c) motion does not permit DNA to replace Sharkroad's pleaded factual allegations with DNA's preferred interpretation of the references. (See Dkt. 35 at 7 (the Court must accept the nonmovant's factual allegations as true and construe them in the light most favorable to the nonmovant).)

### IV. DNA Waived Its Right to Challenge Counterclaim III Functional Design

DNA contends that the third counterclaim "fail *Iqbal/Twombly* and fail to state claim. Judgment on the pleadings is proper." DNA's challenge to Counterclaim III lacks merit

---

for the same reason its challenge to the affirmative defenses is frivolous. DNA already waived the opportunity to challenge the claim by filing a reply to the counterclaims. Critically, DNA did not challenge counterclaim III in its prior motion for judgment on the pleadings and instead challenged only Counterclaims I and II. As SharkRoad did not amend the counterclaim per the Court's order, DNA waived its chance to dismiss this claim pursuant to FRCP 12(g). As you know, "[t]he philosophy underlying [Rule 12(g)] is simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics." *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 904 (S.D. Cal. 2004), *opinion clarified sub nom. Sprint Tel. PCS, L.P. v. Cnty. of San Diego*, No. 03-CV-1398-K(LAB), 2004 WL 859333 (S.D. Cal. Jan. 23, 2004) (quoting *Aetna Life Ins. Co. v. Alla Medical Servs., Inc.*, 855 F.2d 1470, 1475, n. 2 (9th Cir.1988).) A motion to challenge counterclaim III serves no "practical purpose" as the Court already noted with respect to DNA's previous motion and is just a "dilatory" tactic.

**V. Conclusion**

For the reasons above, Sharkroad will not withdraw Counterclaims I, II, or III and will not withdraw its inequitable-conduct or invalidity defenses. The amended pleading addresses the specific deficiencies identified in the July 21 Order, and DNA's remaining arguments concern disputed facts and the merits of Sharkroad's defenses and counterclaims. The Court has already admonished DNA that "Plaintiff is CAUTIONED to adhere to the applicable rules going forward." (Dkt. 35 at 6.) DNA should heed that warning. If DNA insists on proceeding with a motion, *SharkRoad will seek all appropriate relief, including sanctions and recovery of the attorneys' fees and costs incurred in opposing the motion*.

Very truly yours,

TROJAN LAW OFFICES, P.C.
by

/s/R. Joseph Trojan
R. Joseph Trojan, Esq.

RJT:fw:dcd