UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:25-cv-10379-MWC-RAO Date: October 5, 2026

Title: DNA Specialty Inc. v. Sharkroad, Inc., *et al.*

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| --- | --- |
| N/A | N/A |

**PROCEEDINGS: (IN CHAMBERS) ORDER DENYING MOTION TO DISMISS COUNTS I AND II OF THE AMENDED COUNTERCLAIM AND MOTION TO STRIKE RELATED DEFENSES) (DKT. [37]); AND DENYING AS MOOT DNA'S REQUEST FOR JUDICIAL NOTICE (DKT. [39])**

Before the Court are two motions. First, Plaintiff and Counter-Defendant DNA Specialty, Inc. ("DNA" or "Plaintiff") filed a Partial Motion to Dismiss Defendant and Counterclaimant Sharkroad, Inc.'s ("Sharkroad" or "Defendant") Amended Answer and Counterclaims ("AACC") and to Strike Defendant's related defenses. Dkt. # 37 ("*Mot.*"). Second, DNA filed a Request for Judicial Notice ("RJN"). Dkt. # 39 ("*RJN*"). Sharkroad opposed, Dkt. # 45 ("*Opp'n*"), and DNA replied, Dkt. # 46 ("*Reply*"). On October 1, 2026, the Court took the matter under submission. Dkt. # 47. Having considered the papers, the Court **DENIES** the Motion to Dismiss and Motion to Strike and **DENIES AS MOOT** the Request for Judicial Notice.

I. <u>Factual Background</u>

This case arises from Sharkroad's alleged infringement of DNA's intellectual property rights and related claims under California law. *See generally* Dkt. # 12 ("FAC"). The Court previously summarized the allegations underlying this case and its procedural history. *See* Dkt. # 35 ("*Order*"). The Court incorporates that background here by reference and recounts below only those facts necessary for deciding the current motion.

A. Plaintiff's First Amended Complaint

On October 28, 2025, DNA initiated this action against Sharkroad, Dkt. # 1, and on December 4, 2025, DNA filed its First Amended Complaint ("FAC"). Dkt. # 12. The FAC asserts four causes of action: (I) Infringement of the '968 Patent; (II) Trade Dress Infringement of DNA's Spiral-Spoke Wheel (Violation 15 U.S.C. § 1025(a)); (III) Trade Dress Infringement of DNA's 52 Cylindrical-Spoke Wheel (Violation of 15 U.S.C. § 1025(a)); and (IV) Unfair Competition Under California Common Law. *FAC* at 9–12. On March 10, 2026, the Court denied Defendant's Motion to Dismiss the FAC. *See* Dkt. # 22. The FAC alleges as follows:

*i. '968 Patent*

DNA owns United States Design Patent No. D1,086,968 ("the '968 Patent") which "depict[s] a novel spiral-spoke design." *See FAC* ¶ 10, Ex. 1. "The '968 Patent was duly issued on August 5, 2025." *See id.* Sharkroad's "Accused Spiral-Spoke Products are motorcycle wheels that include spokes that are substantially similar to the subject of the '968 Patent." *See id.* ¶ 12. On June 16, 2025, DNA sent a cease-and-desist letter to Sharkroad's Chief Executive Officer ("CEO") that included a "Notice of Allowance from the USPTO and the application number" to publicly monitor the patent's issuance. *See id.* ¶ 13, Ex. 2. The letter demanded Sharkroad cease and desist from "advertising, offering for sale and selling the Accused Spiral-Spoke Products" based on DNA's rights under the '968 Patent and its asserted trade dress rights in the product. *See id.* ¶ 14, Ex. 2. Beginning in early 2023, DNA marketed its own distinctive spiral-spoked motorcycle wheel. *See id.* ¶ 15. Sharkroad's "Accused Spiral-Spoke Products are confusingly similar to DNA's spiral-spoke wheel." *See id.* ¶ 19.

*ii. 52 Cylindrical-Spoke Wheel*

Around 2001, DNA marketed its own distinctive 52 cylindrical-spoke motorcycle wheel. *See id.* ¶ 22. As early as May 2024, DNA became aware that Sharkroad was "advertising, offering for sale, and selling 52 cylindrical-spoke motorcycle wheels as [Sharkroad's] products." *See id.* ¶ 26. Sharkroad's "[a]ccused 52 Cylindrical-Spoke Products are confusingly similar to DNA's 52 cylindrical-spoke wheel." *See id.* ¶ 28. On May 15, 2024, DNA sent a letter to Sharkroad's CEO "demanding that [Sharkroad] cease and desist and desist infringing on DNA's trade dress in its 52 cylindrical-spoke motorcycle wheels." *See id.* ¶ 27, Ex. 3.

B. Defendant's Amended Answer and Counterclaims

On August 3, 2026, Sharkroad filed its Amended Answer and Counterclaims. Dkt. # 36 ("*AACC*"). The Amended Answer and Counterclaims ("AACC") alleges as follows:

The '968 Patent is titled "Spiral Wheel Spoke," issued on August 5, 2025, and arose from U.S. Patent Application No. 29/874,416, filed on April 19, 2023. *Id.* ¶ 79. The application identifies Jerald Lehman ("Lehman") as the inventor and original applicant for the '968 Patent. *Id.* ¶ 80. Lehman's address, as identified in the patent application, was 200 West Artesia Blvd., Compton, California 90220. *Id.* "On or about May 30, 2025, [Lehman] assigned his rights in U.S. Patent Application No. 29/874,416 to Paul Choi." *Id.* ¶ 83. Paul Choi ("P. Choi") assigned his rights to DNA on September 11, 2025. *Id.* ¶ 84. DNA's principal address, as reflected in the assignment from P. Choi, is 200 West Artesia Blvd., Compton, California 90220, the same address associated with Lehman. *Id.* ¶ 85. DNA's 2025 and 2026 Statements of Information identify James Choi ("J. Choi") as Chief Executive Officer, and Sun Choi ("S. Choi") as Secretary. *Id.* ¶ 82.

Lehman, P. Choi, and DNA's principals, J. Choi and S. Choi, "were aware of prior commercial spoke wheel and twisted spoke designs that predated the April 19, 2023 filing date of the '968 Patent, which were sold by DNA itself and its direct competitors." *Id.* ¶ 86. They were also aware of DNA's long-standing 25-year presence in the motorcycle wheel and spoke wheel industry. *Id.* DNA's 2021 Catalog, at page 43, "publicly displayed and offered for sale a product identified as 'Twisted Spoke,' approximately two years before the April 19, 2023 filing date of '968 Patent." *Id.* ¶ 87. "The 'Twisted Spoke' is nearly identical to the claimed design in the '968 Patent." *Id.* ¶ 88. Lehman, P. Choi, J. Choi, and S. Choi, "were aware of DNA's 'Twisted Spoke.'" *Id.* ¶ 89.

When Lehman applied for the '968 Patent, he "was acting for, with, or on behalf of DNA and/or its principals," by using the same address associated with DNA and P. Choi. *See id.* ¶ 90. Since at least 2019, Lehman had an "established technical and product-development relationship with DNA . . . and had access to DNA's confidential internal engineering and product materials, including those about the 'Twisted Spoke.'" *Id.*

Lehman, P. Choi, and DNA's principals, J. Choi and S. Choi, "were individuals associated with the preparation, filing, and/or prosecution of the application that issued as the '968 Patent, or were otherwise substantively involved in the application and transfer of rights in the claimed design." *Id.* ¶ 91. Lehman, the named inventor and original applicant,

"participated in the preparation and prosecution of the application by signing the inventor's declaration and power of attorney." *Id.* Before or during prosecution of the '968 Patent, Lehman was aware of DNA's Twisted Spoke because he identified "himself as the 'Manager Engineering' [sic] in the prosecution documents." *Id.* Despite this alleged knowledge, Lehman did not disclose the 'Twisted Spoke' product to the USPTO during prosecution of the '968 Patent. *Id.*

Additionally, during prosecution of the '968 Patent, DNA submitted no Information Disclosure Statement identifying "the prior commercial spoke wheel products, including the Twisted Spoke products, known to DNA, [Lehman], [P. Choi], and/or [S. Choi]." *Id.* ¶ 92. DNA had been in the business of selling motorcycle wheels for more than twentieth years and therefore was aware of twisted-spoke products sold by its competitors, including its own "Twisted Spoke" products. *Id.* Before the filing date of the '968 Patent, "numerous prior art products using twisted, twirled, spiral, or fat twisted spoke designs were publicly known, used, offered for sale, and/or sold." *Id.* ¶ 94.

*iii. Prior Art*

Before the April 19, 2023, filing date of the '968 Patent, numerous prior art products using twisted, twirled, spiral, or fat twisted spoke designs were publicly known, used, offered for sale, and/or sold. *Id.* Despite the existence of this prior art, the USPTO Examiner "cited certain patent references and a limited number of products." *Id.* ¶ 93.

Each of the Prior Art Products identified consists of "a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent." *Id.* ¶ 94. One of these products, the "Twisted Chrome Spoke Sets," is from Drag Specialties, "one of the largest and most influential aftermarket motorcycle parts distributors in the U.S., with a dominant presence in the Harley-Davidson and V-Twin customization market." *Id.* ¶ 95. Moreover, Buchanan's Spoke & Rim, Inc. "has sold 'spiral spokes' as early as 1986, and has featured a 'twisted Spiral spoke' on the cover of its catalogs since approximately 1990." *See id.* ¶ 136. Buchannan's product "discloses a spiral or twisted spoke configuration that is identical or substantially similar in overall visual an appearance to the claimed design." *See id.* ¶ 140.

These Prior Art Products "create the same overall visual impression as the claimed design of the '968 Patent, or render [it] an obvious variation of known twisted spoke and

spiral spoke designs that were publicly available before the filing date of the '968 Patent." *Id.* ¶ 97. "[P]rior commercial twisted, twirled, and spiral spoke products are directly material to patentability" of the '968 Patent, but these products "were not considered by the USPTO." *Id.* ¶ 98; *see also id.* ¶ 103. "The scope of ['968 Patent] is narrow and, as admitted by DNA, is limited to the spiral or twisted configuration of the elongated spoke body." *Id.* ¶ 138. Had the USPTO Examiner known of these products, the Examiner "would have rejected the claimed design as anticipated and/or obvious." *Id.* ¶ 99.

The Prior Art Products differ from the other prior art depicting wheel spokes that the Examiner reviewed during prosecution of the '968 Patent because, as indicated above, the Prior Art Products consist of "a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent." *Id.* These characteristics "disclose the same or substantially the same spiral or twisted spoke configuration, creating an overall appearance that is substantially identical to, or at least not meaningfully distinguishable from, the claimed design." *Id.* ¶ 133.

The D1,042,287 and D374,649 Patents considered by the Examiner do not disclose the characteristics of the Prior Art Products. *See id.* ¶ 100. Instead, they disclose wheels with cylindrical spokes and twisted wire spokes for wire wheels. *See id.* The Examiner did not, however, review DNA's Twisted Spoke product, which was sold in 2021 and is "identical in appearance to the claimed design of the '968 Patent." *Id.* ¶ 99. Therefore, DNA's Twisted Spoke product is not cumulative of the D1,042,287 and D374,649 Patents. *See id.* ¶ 100.

Lehman, P. Choi, J. Choi, and S. Choi "knew of the Prior Art Products before and during [the '968 Patent] prosecution because DNA had been in the motorcycle wheel and spoke wheel business," and those products were present in that industry. *See id.* ¶ 102. Additionally, Lehman, P. Choi, J. Choi, and S. Choi "would have been involved in preparing the 2021 catalog with that product and would have been involved in the sale of that product." *Id.* These individuals also "intentionally withheld the Prior Art Products identified above from the USPTO" during prosecution of the '968 Patent. *See id.* ¶ 104. Their failure to disclose the Prior Art Products was not "accidental" because "their disclosure would have shown the Examiner that the claimed spiral wheel spoke design was already known, sold, and used in the motorcycle wheel industry before the filing date of the '968 Patent." *Id.* ¶ 105. Their intent was to deceive the USPTO into allowing the

'968Patent to issue. *Id.* ¶ 106. "DNA's inequitable conduct renders the '968 Patent unenforceable." *Id.* ¶ 109.

II. Procedural History

On March 24, 2026, Defendant filed its Answer and Counterclaims. Dkt. # 23 ("*ACC*"). On April 13, 2026, Plaintiff filed a Reply to the ACC and answered the Counterclaims. Dkt. # 25 ("*ACC Reply*"). On June 23, 2026, Plaintiff filed a Motion for Judgment on the Pleadings and Motion to Strike. Dkt. # 28. On July 21, 2026, the Court denied Plaintiff's Motion to Strike and granted Plaintiff's Motion for Judgment on the Pleadings as to Counterclaims One and Two ("Prior Order"). Dkt. # 35 ("*MJOP Order*"). On August 3, 2026, Defendant filed its Amended Answer and Counterclaims. Dkt. # 36 ("*AACC*"). On August 14, 2026, Plaintiff filed the present Motion and Request for Judicial Notice. *See Mot.*; *RJN*.

III. Motion to Dismiss

A. Legal Standard: Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 8 requires a complaint to clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). Pleadings that are "verbose, confusing and conclusory" are subject to dismissal. *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981). A plaintiff fails to comply with Rule 8 if "all defendants are lumped together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

A defendant may move to dismiss a claim in the plaintiff's complaint if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the pleading stage, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

As such, the plausibility standard is a "context-specific task that requires the reviewing court to [1] draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, and [2] to "'draw all reasonable inferences in favor of the nonmoving party.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. Of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." *Id.* at 773–74 (internal citation and quotation marks omitted) (cleaned up). However, "[c]onclusory allegations and unreasonable inferences do not provide [ ] a basis" for determining a plaintiff is entitled to relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) ("The court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (cleaned up). Nor may the Court accept legal conclusions and threadbare recitals of the elements of a cause of action. *Malheur Forest Fairness Coal. V. Iron Triangle, LLC*, 164 F.4th 710, 723 (9th Cir. 2026) ("Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief.") (citation omitted); *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025); *Doe I v. Cysco Sys., Inc.*, 73 F.4th 700, 713 (9th Cir. 2023) ("Although a reviewing court must accept a complaint's factual allegations as true, the same is not true of legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (cleaned up).

Though resolution of a motion to dismiss under Rule 12(b)(6) is normally confined to the allegations stated in the complaint, the court "may also 'consider [1] materials that are submitted with and attached to the complaint'; [2] 'judicial notice of matters of public record'; and [3] unattached evidence on which the complaint necessarily relies if: [a] the complaint refers to the document; [b] the document is central to the plaintiff's claim; and [c] no party questions the authenticity of the document.'" *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (cleaned up) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)).

B. Legal Standard: Rule 9(b)

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the false representations' time, place, and specific content. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). A pleader must "identify the who, what, when, where, and how of the misconduct charged . . . ." *Davidson v. Sprout Foods, Inc.*, 106 F.4th 842, 852 (9th Cir. 2024) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)). The allegations "must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). In essence, the defendant must be able to adequately answer the fraud allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

C. Discussion

*i. Counterclaim I: Inequitable Conduct*

DNA moves to dismiss Sharkroad's First Counterclaim for Inequitable Conduct because DNA asserts that the counterclaim violates the materiality and specific intent requirements of Federal Circuit precedent. *Mot.* at 11–26.

Whether inequitable conduct has been adequately pled is subject to Federal Circuit law because it "pertains to or is unique to patent law." *Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (citing *Intel Corp. v. Commonwealth Sci. & Indus. Rsrch. Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006)). "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the [U.S. Patent and Trademark Office ("PTO")]." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citing *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). Specifically, the accused infringer "must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* "Inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Thus,

> the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id*. at 1328–29.[1]

*a. "Who"*

To satisfy the "who," requirement of Rule 9(b), the pleading must "name the specific individual associated with the filing or prosecution of the [patent] application . . . , who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329.

DNA argues that the AACC does not adequately identify who committed the alleged misconduct and instead groups multiple individuals together in "and/or" allegations. *Mot.* at 12–15. The Court finds that the AACC sufficiently identifies Lehman and P. Choi to sufficiently identify the "who" of the material omissions and misrepresentations, but that the AACC's allegations with respect to J. Choi and S. Choi fall short of Rule 9(b)'s requirements.

---

[1] DNA does not argue that the AACC fails to identify the "what" and "when" considerations. *See Mot.* Because DNA does not challenge the counterclaim on these grounds, the Court concludes Sharkroad has adequately pled the "what" and "when" of its inequitable conduct counterclaim. *See AbCellera Biologics Inc. v. Bruker Cellular Analysis*, No. 20-CV-08624-JST, 2024 WL 37213, at *7 (N.D. Cal. Jan. 2, 2024) (finding defendant adequately pled "what" and "where" because plaintiffs did not challenge inequitable conduct counterclaim on those grounds).

*1. Lehman and P. Choi*

The AACC identifies Lehman as the individual who allegedly committed the inequitable conduct in alleging that Lehman was "[t]he inventor and original applicant for the '968 Patent," *AACC* ¶ 80, and that he "participated in the preparation and prosecution of the ['968 Patent] application by signing the inventor's declaration and power of attorney." *Id.* ¶ 91. *See, e.g., Lund Motion Prods. v. T-Max (Hangzhou) Tech. Co.*, No. SACV 17-01914-CJC(JPRx), 2018 WL 5086563, at *2 (C.D. Cal. June 5, 2018) (finding satisfaction of the "'who' required of Rule 9(b)" where claim asserted "that the [individual] inventors . . . and the [specific] attorneys who prosecuted the Patents-in-Suit . . . withheld known material information.").

The AACC alleges that Lehman assigned his rights in U.S. Patent Application No. 29/874,416 to P. Choi. *See AACC* ¶ 83. Because P. Choi acquired those rights before the '968 Patent was issued, the AACC sufficiently alleges P. Choi's involvement in the patent prosecution process and, therefore, supports the inference that P. Choi participated in that process.

*2. J. Choi and S. Choi*

The AACC fails to sufficiently tie the remaining named specific individuals, J. Choi and S. Choi, to the filing or prosecution of the '968 Patent. *See generally AACC.* The AACC alleges that J. Choi, and S. Choi were "associated with the preparation, filing, and/or prosecution of the application" for the '968 Patent, "or were otherwise substantively involved in the application and transfer of rights in the claimed design." *Id.* ¶ 91. The AACC also alleges that Lehman acted "for, which, or on behalf of DNA and/or its principals" when applying for the '968 Patent, because Lehman used the same address associated with DNA and P. Choi and, since 2019, "had an established technical and product-development relationship with DNA" including access to "confidential internal engineering and product materials." *See id.* ¶ 90. But the AACC does not allege underlying facts showing how J. Choi and S. Choi themselves participated in the preparation, filing, or prosecution of the '968 Patent application, nor does it identify particular acts taken by either individual in connection with that application. *See generally AACC*; *see also Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 n.3 (Fed. Cir. 2005) ("In the context of an inequitable conduct determination, the 'applicant' includes anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. § 1.56, namely: the inventor, the prosecuting attorney or agent, and

anyone associated with the inventor or the assignee who is **substantively involved** in the preparation or prosecution of the application.") (emphasis added). Without underlying facts connecting J. Choi and S. Choi to the '968 Patent application, the Court cannot reasonably infer that they were involved in its prosecution as required by *Exergen*. *See Exergen*, 575 F.3d at 1328–29.

*3. Conduct Attributed to DNA*

The Court disregards DNA's argument that the AACC attributes the alleged conduct to DNA as an entity because the Court reads the AACC as a whole and finds that it sufficiently identifies Lehman and P. Choi to satisfy the "who" of the alleged inequitable conduct. *See generally AACC*. The AACC's deficiencies with respect to J. Choi and S. Choi do not negate its allegations establishing Lehman's and P. Choi's involvement in the prosecution of the Patent. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, (9th Cir. 2021) ("[W]hen ruling on [a Rule 12(b)(6) motion] courts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citations omitted).

*b. "Where"*

To establish the "where," the pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exergen*, 575 F.3d at 1329.

The Prior Order found that the ACC failed the "where" requirement because it did not provide "context to the prior art images" or "guidance on where the material information is found within the source images and/or URL links." *MJOP Order* at 10–11. DNA now argues that the AACC contains similar deficiencies. *Mot.* at 18 n.1. But the AACC cures these defects. The AACC identifies the specific page of DNA's 2021 catalog where the "Twisted Spoke" product was displayed, reproduces the relevant catalog page, includes a figure comparing the DNA Twisted Spoke to Figure 1 of the '968 Patent, and identifies additional products by manufacturer or seller, product name, website date, and exemplar. *See Opp'n* at 15 (citing *AACC* ¶¶ 87–88, 94). The AACC further alleges that the photo depicts a "single spoke comprising an elongated rectangular body" and other characteristics corresponding to the claimed design of the '968 Patent." *See id.* ¶ 100. The AACC further describes the material information Sharkroad contends each of the Prior Art Products discloses:

> Each of the above Prior Art Products are found in the indicated website when searching for the product name and disclose a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the ‘968 Patent.

*Id.* ¶ 94. The AACC identifies the ‘968 Patent’s relevant limitations by alleging that “[t]he scope of [‘968 Patent] is narrow and, as admitted by DNA, is limited to the spiral or twisted configuration of the elongated spoke body.” *AACC* ¶ 138. Accordingly, the AACC satisfies the “where” requirement. *See, e.g., Buergofol GmbH v. Omega Liner Co., Inc.*, No. 4:22-CV-04112-KES, 2024 WL 3541248, at *9 (D.S.D. July 25, 2024) (“Here too Omega has met the [‘where’] burden under Rule 9(b)—it clearly pointed to the relevant prior art, going so far as to include the order number under which the prior art was sold and articulated the aspects of the prior art that correspond to the claims in the ‘882 Patent.”); *see also Breville Pty Ltd. v. Storebound LLC*, No. 12-cv-01783-JST, 2013 WL 1758742, at *14–15 (N.D. Cal. Apr. 24, 2013) (finding the “where” requirement satisfied where the counterclaim identified a “limitation regarding the size of the cutting disk” in all claims of the patent-in-suit and alleged that the withheld prior art disclosed “cutting teeth [ ] within the inner diameter of the feed tube,” thereby “adequately identif[ying] the claims and limitations to which the withheld references are relevant,” even though “[t]he counterclaim could be clearer on this point.”).

*c. “Why” and “How” (Materiality)*

A party pleading inequitable conduct must plead “‘why’ the withheld information is material and not cumulative, and ‘how’ an examiner would have used this information in assessing the patentability of the claims.” *Exergen*, 575 F.3d at 1329–30. “The materiality required to establish inequitable conduct is but-for materiality . . . [P]rior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art.” *Therasense, Inc.*, 649 F.3d at 1291. Sufficiently alleging the “why” of materiality requires “at least show ‘gaps in the prior art that was before the examiner during prosecution’ and ‘how the reference fills those gaps.” *Autel Intelligent Tech. Corp. v. Shenzhen XTOOLTech Intelligent Co.*, No. EDCV 25-01755-KK-DTBX, 2025 WL 3652931, at *5 (C.D. Cal. Nov. 26, 2025) (citing *Jackson v. NuVasive, Inc.*, No. CV 21-53-RGA, 2023 WL 5175092, at *5 (D. Del. Aug. 11, 2023)) (brackets omitted).

Here, the AACC alleges that various Prior Art Products were directly material to the patentability of the '968 Patent but were not considered by the USPTO, characterizing those products as "twisted, twirled, and spiral spoke products," and differentiating the other prior art depicting wheel spokes considered by the Examiner from the Prior Art Products not reviewed during the '968 Patent prosecution, which disclosed:

> a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent.

*AACC* ¶¶ 98–99. The AACC further alleges a "narrow" scope of the patent-in-suit, "limited to the spiral or twisted configuration of the elongated spoke body," *id.* ¶ 138, which is "the same or substantially the same spiral or twisted spoke configuration" as disclosed by the Prior Art Products, "creating an overall appearance that is substantially identical to, or at least not meaningfully distinguishable from, the claimed design." *Id.* ¶ 133. These allegations sufficiently identify the gaps in the prior art considered by the Examiner and explain why the Prior Art Products were allegedly material and non-cumulative. *See, e.g.*, *Deere & Co. v. Kinze Mfg., Inc. AG Leader Tech., Inc.*, No. 420CV00389RGEHCA, 2023 WL 9472300, at *10 (S.D. Iowa May 1, 2023) ("A prior art reference may be material and non-cumulative if it contains 'a more complete combination of the elements claimed' in the patent at issue 'than anything else before the [US]PTO.'") (quoting *Semiconductor Energy Lab'y Co. v. Samsung Elecs. Co., Ltd.*, 204 F.3d 1368, 1374 (Fed. Cir. 2000)); *Autel Intelligent Tech. Corp.*, 2025 WL 3652931, at *4 ("Defendants may not be 'required to use the term non-cumulative,' but they must at least show 'gaps in the prior art that was before the examiner during prosecution' and 'how the [ ] reference[ ] fills those gaps.'") (internal quotation marks and citation omitted).

DNA argues that the pleadings must address the Patent to Allen because it demonstrates that the Prior Art Products are cumulative of "Allen." *See Mot.* at 20–22. But "Plaintiff has not cited authority stating that Defendants must plead non-cumulativeness as to every single prior art combination raised by the PTO at some point in patent prosecution to survive a motion to dismiss." *Sleep No. Corp. v. Sizewise Rentals, LLC*, No. EDCV1800356ABSPX, 2019 WL 1877606, at *4 (C.D. Cal. Jan. 31, 2019) (finding that "Defendants have submitted sufficient factual allegations to support their position that the Withheld Art . . . is not cumulative of the other art considered by the

PTO" despite Plaintiff's argument that the counterclaim failed to establish non-cumulativeness of three specific prior art patents). Indeed, the AACC contains detailed allegations distinguishing the withheld Prior Art as non-cumulative of the prior art reviewed by the Examiner, including distinguishing the withheld Prior Art and US Patent Nos. D1,042,287 and D374,649. *AACC* ¶¶ 99–101; *see also Sleep No. Corp.*, 2019 WL 1877606, at *4. Thus, the AACC sufficiently alleges the "why."

The AACC also sufficiently alleges how the references fill those gaps. As explained *supra*, the AACC's allegations compare the '968 Patent to the Prior Art Products. *See generally AACC.* The AACC alleges that the Examiner did not review DNA's Twisted Spoke product, which was sold in 2021 and is "identical in appearance to the claimed design." *Id.* ¶ 99. The AACC asserts that the product was identical in appearance and identifies specific characteristics of that product and other Prior Art Products. *Id.* It also clarifies that the "scope of ['968 Patent] is narrow, and . . . limited to the spiral or twisted configuration of the elongated spoke body." *Id.* ¶ 138. These allegations explain how the identified characteristics of the Prior Art Products allegedly fill the gaps in the '968 Patent prosecution record by providing a basis to understand how an Examiner would have compared those characteristics to the claimed design in assessing patentability. Thus, the AACC adequately alleges "how" the references fill those gaps. *See, e.g., Autel Intelligent Tech. Corp.*, 2025 WL 3652931, at *5 (finding sufficient allegations of the 'how' where defendants allege "'[b]ut for withholding the industry standards, including the J1850 and ISO 9141-2, the '451 Patent would not have issued since the industry standards taught or disclosed' the 'synchronously sending' limitation.").

*d. Knowledge and Intent*

Pleading a counterclaim for inequitable conduct further requires alleging "sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind. . . . A reasonable inference is one that is plausible and that flows logically from the facts alleged." *Autel Intelligent Tech. Corp.*, 2025 WL 3652931, at *5 (quoting *Exergen*, 575 F.3d at 1327–29) (quotation marks omitted). A "defendant['s] failure to identify a particular individual prevents the Court from inferring that a particular person acted with the requisite intent." *Id.* Deceptive intent may be inferred from circumstantial evidence, so long as the inference is reasonable and drawn from the facts alleged in the pleading." *Lund Motion*, WL 5086563, at *3 (citing *Exergen*, 575 F.3d at 1327, 1328 n.5.).

Here, the AACC alleges sufficient facts to support a reasonable inference that Lehman and P. Choi knew of the relevant Prior Art Products during prosecution of the '968 Patent. The AACC alleges that Lehman had an "established technical and product-development relationship with DNA . . . and had access to DNA's confidential internal engineering and product materials, including those about the 'Twisted Spoke." *See AACC ¶ 90.* The AACC further alleges that Lehman identified "himself as the 'Manager Engineering' [sic] in the [Twisted Spoke] prosecution documents." *Id.* ¶ 91. These allegations, taken together, provide a factual basis from which the Court can reasonably infer that Lehman knew of the "Twisted Spoke" before and during prosecution of the '968 Patent. *See Avocent Huntsville, LLC v. ZPE Sys., Inc.*, No. 3:17-CV-04319-WHO, 2018 WL 4859527, at *9 (N.D. Cal. July 23, 2018) (finding knowledge and intent sufficiently alleged where "ZPE provides a factual basis to infer that . . . Mr. Davidson, owed a duty of disclosure in prosecuting the Asserted Patents, and knew of specific information in prior art, either because he prosecuted the purported prior art patents, participated in litigation involving purported prior art products, or cited to purported prior art in the prosecution of the '213 patent, which overlapped with the prosecution of the Asserted Patents.").

The AACC also alleges that both Lehman and P. Choi were aware of prior commercial spoke-wheel designs that predate the filing of the '968 Patent, *see id.* ¶ 86, and that they would have been involved in preparing the 2021 catalog and selling the "Twisted Spoke" product. *Id.* ¶ 102. To the extent the AACC sufficiently connects P. Choi to the patent prosecution process, these allegations likewise support a reasonable inference that he knew of the relevant prior art during prosecution. *See Nomadix, Inc. v. Hosp. Core Servs. LLC*, No. CV 14-08256 DDP VBKX, 2015 WL 3948804, at *7 (C.D. Cal. June 29, 2015) (finding knowledge and intent "adequately pled" where defendant "alleges sufficient facts to support an inference that Plaintiff's lawyer had sufficient state of mind, because Defendant alleges that he knew of the prior art and affirmatively misrepresented it to the patent examiner[,]" which "certainly supports an inference of intent to deceive.")

As to "intent," the AACC alleges that Lehman and P. Choi "intentionally withheld the Prior Art Products [ ] from the USPTO[,]" and that such withholding was not "accidental" because "disclosure [of the Prior Art Products] would have shown the Examiner that the claimed spiral wheel spoke design was already known, sold, and used in the motorcycle wheel industry before the filing date of the '968 Patent." *AACC* ¶¶ 104–05. Because the AACC alleges facts connecting Lehman and P. Choi to both the relevant Prior Art and the prosecution of the '968 Patent, these allegations are sufficient to support a reasonable inference of deceptive intent as to those individuals. *See, e.g.*, *Lund Motion*,

WL 5086563, at *3 (finding the allegations sufficient where the counterclaim identified when the individuals involved in prosecution were "made aware of the withheld information . . . [and] alleged a pattern of withholding information over the course of several years," supporting an inference of deceptive intent.); *see also Spigen Korea Co LTD v. Lijun Liu*, No. CV169185DOCDFMX, 2018 WL 6038283, at *5 (C.D. Cal. Feb. 12, 2018) ("Defendants have alleged facts from which the Court can reasonably infer specific intent, including knowledge of materiality, at the pleading stage: Defendants allege that Chae knew of but nonetheless withheld KUM '435 during prosecution, failed to inform his client about the duty of candor to the USPTO, and had the specific intent to deceive the USPTO.") (citations omitted).

For the aforementioned reasons, Sharkroad has sufficiently pleaded Inequitable Conduct. Accordingly, the Motion is **DENIED** as to Counterclaim I.

*ii. Counterclaim II: Anticipation and Obviousness Invalidity*

Sharkroad brings an invalidity counterclaim for anticipation and obviousness of the '968 Patent under 35 U.S.C. §§ 102 and 103. *AACC* ¶¶ 129–46. DNA moves to dismiss this counterclaim on two bases: (1) Sharkroad's allegations are conclusory and rest entirely on the same prior art products allegedly considered cumulative of the '620 Patent to Allen during the '968 Patent prosecution; and (2) Sharkroad does not explain how any particular prior art reference anticipates the patent-in-suit or renders it obvious and therefore fails to plead a plausible basis for invalidity. *Mot.* at 26. For the following reasons, the Court finds that neither of DNA's arguments merit a dismissal of this counterclaim at the pleading stage.

"Courts are split on whether invalidity claims must meet the pleading standards of *Twombly* and *Iqbal*." *Sliding Door Co. v. KLS Doors, LLC*, No. EDCV 13-00196 JGB, 2013 WL 2090298, at *4 (C.D. Cal. May 1, 2013). "Various courts have concluded that conclusory statements that a patent is invalid under various sections of the U.S. Code without any further factual detail regarding the grounds for this invalidity are insufficient." *See Deckers Outdoor Corp. v. Rue Services Corp.*, No. CV 13-6303 JVS (VBKx), 2013 WL 12139134, at *2 (C.D. Cal. Dec. 23, 2013) (collecting cases); *see also Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-CV-06721-JCS, 2019 WL 4071028, at *1 (N.D. Cal. Mar. 5, 2019) (interpreting "civil actions generally" as described in *Iqbal* to apply to invalidity counterclaims). "However, other cases have found the pleading of such counterclaims to be sufficient in light of the more detailed invalidity contentions required

by local patent rules." *Deckers Outdoor Corp.*, 2013 WL 12139134, at *2 (collecting cases).

The Court's Standing Patent Rule 3-3 requires parties opposing patent infringement to serve invalidity contentions, this requirement does not supplant or lower the *Iqbal* standard for allegations of patent invalidity. *See* S.P.R. 3-3; *see also Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*, 811 F.3d 1314, 1320 (Fed. Cir. 2016) ("Like Patent Local Rules, the S.P.R.s 'are essentially a series of case management orders that fall within a district court's broad power to control its docket and enforce its order."). Therefore, the Court will consider whether the pleadings support a plausible claim for invalidity. *See, e.g.*, *Eagle Eyes Traffic Indus. United States Holding v. AJP Distributors., Inc.*, No. 2:18-cv-01583 SJO (AS), 2018 WL 4859260, at *3 (C.D. Cal. June 22, 2018) ("In order to properly plead invalidity, Defendants must describe its counterclaim with specificity and must provide 'enough facts to state a claim to relief that is plausible on its face'." (citations omitted)).

Under 35 U.S.C. § 102, a patent claim is invalid if the claimed invention was "patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention . . . ." 35 U.S.C. § 102(a)(1). Under section 103, "[a] patent for a claimed invention may not be obtained . . . if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.

Here, the AACC indicates that DNA's 2021 Catalog, at page 43, "publicly displayed and offered for sale a product identified as 'Twisted Spoke,' approximately two years before the April 19, 2023 filing date of '968 Patent." *AACC* ¶ 87. It further specifies that the "Twisted Spoke" product is nearly identical to the patent-in-suit, *see id.* ¶ 88, because it consists of "a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section." *Id.* ¶ 100. The AACC also clarifies that "[t]he scope of ['968 Patent] is narrow and, as admitted by DNA, is limited to the spiral or twisted configuration of the elongated spoke body." *Id.* ¶ 138. The AACC alleges that the Prior Art Products "disclose the same or substantially the same spiral or twisted spoke configuration, creating an overall appearance that is substantially identical to, or at least not meaningfully distinguishable from, the claimed design," *see id.*

¶ 133, because they consist of "a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent." *Id.* ¶ 99.

The AACC alleges that the Prior Art Products "disclose the same or substantially the same spiral or twisted spoke configuration, creating an overall appearance that is substantially identical to, or at least not meaningfully distinguishable from, the claimed design," *see id.* ¶ 133, because they consist of "a single spoke comprising an elongated rectangular body with two cylindrical ends, said body having a rectangular cross-section, which is twisted along the longitudinal axis of the body, and each said ends having a circular cross-section that is reflected in the ornamental design of the '968 Patent." *Id.* ¶ 99. The AACC further alleges that the Prior Art Products "create the same overall visual impression as the claimed design of the '968 Patent, or render that design an obvious variation of known twisted spoke and spiral spoke designs that were already publicly available before the filing date of the '968 Patent." *Id.* ¶ 97. And the AACC alleges that:

> the withheld commercial prior art products were publicly available before the filing date, were in the same motorcycle wheel and spoke wheel industry in which Plaintiff operated, disclosed the same or substantially the same twisted, twirled, spiral, and/or fat twisted spoke designs, and would have caused the Examiner to reject the claimed design as anticipated and/or obvious.

*Id.* ¶¶ 121. Sharkroad argues that the AACC's obviousness allegations satisfy the pleading standard:

> It identifies Buchanan's spiral-spoke product as a specific reference and alleges that such spiral spokes were publicly available well before the April 19, 2023 filing date. ([*AACC*] ¶¶ 135-137.) It identifies Buchanan as prior art in the same field of endeavor. (*Id.* ¶ 139.) It alleges that Buchanan creates an identical or substantially similar overall visual impression and identifies the asserted differences as minor variations in dimensions or degree of twist. (*Id.* ¶ 140.) It addresses the level of the ordinary designer and alleges why that designer would

> have found it obvious to adopt or modify the known spiral-spoke configuration. (*Id.* ¶ 141.) It also pleads analogous art and a reason an ordinary designer would consider combinations of the identified references. (*Id.* ¶¶ 143-144.)

*Opp'n* at 22. The Court agrees. Sharkroad "lists specific prior art that could potentially invalidate [DNA's] patent[,]" as to constitute "specific factual allegations of invalidity." *The Beer Barrel, LLC v. Deep Wood Brew Prods., LLC*, No. 2:16-CV-00440-DN-BCW, 2016 WL 5936874, at *6 (D. Utah Oct. 12, 2016); *see also Lopez v. Fluidra USA LLC*, No. 21CV0044 DMS (MDD), 2021 WL 2939812, at *2 (S.D. Cal. July 13, 2021) (finding defendants invalidity counterclaims for anticipation and obviousness sufficient where "Defendants identify the grounds for their invalidity counterclaims (anticipation and obviousness), and . . . also identify and explain why specific prior art references support those counterclaims."); *Philips N. Am. LLC v. Garmin Int'l, Inc.*, No. CV 19-06301-AB (KS), 2019 WL 9512698, at *4 (C.D. Cal. Nov. 25, 2019) ("Defendant's Counterclaim contains sufficient facts to plausibly show only that the '007 Patent . . . [is] anticipated by or obvious in view of Defendant's referenced prior art. The Court also reminds Plaintiff that it will receive Defendant's invalidity contentions, which will describe in detail the various grounds for invalidity and provide further notice."). The AACC sufficiently alleges a counterclaim for invalidity of the '968 Patent based on anticipation and obviousness, and DNA's Motion to Dismiss is accordingly **DENIED** as to Counterclaim II.

IV. Motion to Strike

A. Legal Standard; Rule 12(f)

Under Rule 12(f), the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Court may either act "on its own" or "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(1)–(2). "The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial." *Merrell v. Marriott Int'l*, Inc., No. 23-cv-06664-WHO, 822 F.Supp.3d 1075, 1082 (N.D. Cal. Mar. 9, 2026) (awaiting publication) (citation omitted). "Motions to strike are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Id.* (quotation marks and citation omitted); *see also David v. George*

*Chiala Farms, Inc.*, 809 F. Supp. 3d 954, 964 (N.D. Cal. 2025) ("[M]otions to strike are generally disfavored."). "In most cases, a motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Merrell*, 822 F.Supp.3d at 1082 (quotation marks and citation omitted).

B. Legal Standard: Rule 8(b)

The Federal Rules of Civil Procedure require a party to "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Affirmative defenses are subject to the same pleading standard as complaints and must provide the opposing party with "'fair notice' of the defense being advanced." *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). "Unless the defense is one that falls under Rule 9, there is no requirement that a party plead an affirmative defense with particular specificity. . . . Thus, in some cases, simply pleading the name of the affirmative defense is sufficient. . . . Other affirmative defenses, however, require greater specificity." *Solis v. Zenith Capital, LLC*, No. C 08–4854 PJH, 2009 WL 1324051, *2 (N.D. Cal. May 8, 2009) (citations omitted). Whether to grant a motion to strike is within the sound discretion of the district court, viewing the pleadings in the light most favorable to the non-moving party. *Mag Instrument, Inc. v. JS Products, Inc.*, 595 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003).

C. Discussion

The Court previously denied DNA's prior Motion to Strike Sharkroad's third, fourth, fifth, sixth, seventh, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth defenses as due to Plaintiff's "delay, combined with its lackluster engagement with the meet and confer process." *See MJOP Order* at 7. DNA now renews its Motion to Strike Sharkroad's third and fourth defenses for inequitable conduct and sixth defense for invalidity. *Mot.* at 26–28.

*i. Third and Fourth Defenses for Inequitable Conduct*

The Court DNA moves to strike Sharkroad's third defense (equitable doctrines) and fourth defense (inequitable conduct), arguing that Sharkroad fails to put DNA on notice of the nature of these defenses or . . . the grounds upon which they rest." *Mot.* at 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**



"Inequitable conduct renders a patent unenforceable and is, therefore, an affirmative defense to an allegation of patent infringement." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1096 (Fed. Cir. 2024); *Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244, 1252 (Fed. Cir. 2024). "To prove inequitable conduct, a party must show that the patentee withheld material information from the PTO, and did so with the specific intent to deceive the PTO." *Luv n' Care, Ltd.*, 98 F.4th at 1096–97. The party claiming inequitable conduct bears the burden of proving both requirements "by clear and convincing evidence." *Id.*; *Freshub*, 93 F.4th at 1252. "With respect to intent to deceive, gross negligence or negligence under a 'should have known' standard is insufficient; instead, actual deceptive intent must be shown to be the single most reasonable inference able to be drawn from the evidence." *Glob. Tubing LLC v. Tenaris Coiled Tubes LLC*, 167 F.4th 1357, 1370 (Fed. Cir. 2026) (citation omitted); *see also Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. ... an unsupported charge of inequitable conduct in the Patent Office is a negative contribution to the rightful administration of justice.").

DNA argues that the heightened pleading standard of Rule 9(b) should be applied to "any . . . listed defense [that] relates to inequitable conduct, fraud, or mistake." *Mot.* at 28. In support of this argument, DNA cites *Powertech Tech., Inc. v. Tessera, Inc.*, No. C 10-945 CW, 2012 WL 1746848, at *5 (N.D. Cal. May 16, 2012), for the proposition that Rule 9(b) applies to such defenses. But *Powertech* is not binding on this Court, and the Ninth Circuit resolved a prior circuit split in whether to apply a "fair notice" or heightened pleading standard to affirmative defenses. *See Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) ("Nonetheless, "[T]he 'fair notice' required by the pleading standards only requires describing the [affirmative] defense in 'general terms.'") (citation omitted); *see also Aubin Indus., Inc. v. Caster Concepts, Inc.*, No. 2:14-CV-02082-MCE, 2015 WL 3914000, at *6 (E.D. Cal. June 25, 2015) (interpreting *Kohler* as "standing for the proposition that *Wyshak,* and not *Twombly/Iqbal,* provides the proper yardstick for assessing the sufficiency of affirmative defenses[,]" and applying the *Wyshak* standard to alleged defense of unclean hands in patent infringement case); *Vetstem, Inc. v. Regen Labs LLC*, No. 2:24-CV-02475-AB-PDX, 2024 WL 7119828, at *4 (C.D. Cal. Oct. 10, 2024) ("[A]ffirmative defense pleadings need only provide fair notice of the defense . . . ."); *MyGo, LLC v. Mission Beach Indus., LLC*, No. 316CV02350GPCRBB, 2017 WL 107346, at *7 (S.D. Cal. Jan. 11, 2017) ("MBI's allegations regarding MyGo's micro entity status, while unable to pass muster under Rules 12(b)(6) and 9(b), nonetheless give MyGo fair notice of the grounds for MBI's defense [of inequitable conduct and fraud].").

Accordingly, the Court analyzes Sharkroad's third and fourth affirmative defenses under the fair notice standard and finds that both satisfy its requirements at the pleading stage. As discussed *supra*, Section III.C.i, the AACC identifies the specific Prior Art that DNA is alleged to have withheld, alleges the knowing nondisclosure of the Prior Art, and the specific actors involved. *See AACC* ¶ 106 ("Lehman, [and P.] Choi . . . intentionally withheld the Prior Art Products with the specific intent to deceive the USPTO into allowing the '968 Patent to issue." These allegations put DNA on notice of Sharkroad's allegation that their intentional non-disclosure of specified prior art products constituted inequitable conduct. *See, e.g., Aubin Indus., Inc.*, 2015 WL 3914000, at *6 (denying motion to strike unclean hands defense which was " specifically premised on a contention that Aubin 'is asserting a patent which it has reason to know is not infringed and is invalid,' . . . That allegation, on its face, puts Aubin on notice of Caster's allegation that Aubin filed this lawsuit in bad faith knowing its claims were invalid.").

The Court therefore **DENIES** DNA's Motion to Strike Sharkroad's third and fourth affirmative defenses.

*ii. Sixth Defense for Invalidity*

DNA also moves to strike Sharkroad's sixth defense (patent invalidity based on anticipation, obviousness, and functional design) on the grounds that such defense "alleges no prior art to even begin an anticipation or obviousness analysis." *Mot.* at 28–29. As discussed, *supra* Section III.C.ii, the AACC sets forth sufficient allegations to support a claim for anticipation and obviousness, and these same allegations suffice to support its affirmative defense on these bases. *See, e.g., Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*, 609 F. Supp. 3d 1092, 1105 (C.D. Cal. 2022) ("For the same reasons that the Court concluded that Cornerstone's inequitable conduct counterclaims are sufficiently pleaded, the Court concludes that the same factual allegations support this defense.").

V. <u>Request for Judicial Notice</u>

Finally, DNA requests the Court judicially notice U.S. Patent No. 374,649 to Choi ("'649 Patent to Choi") and U.S. Patent No. 598,620 to Allen ("'620 Patent to Allen"). *See RJN.* Because the Court did not rely on these documents in ruling on the instant motion, the Court **DENIES** DNA's RJN as **MOOT**. *See Carr v. Walmart, Inc.*, 764 F. Supp. 3d 879, 888 (C.D. Cal. 2025); *Baker v. City of San Diego*, 463 F. Supp. 3d 1091, 1098 (S.D. Cal. 2020).

VI. Conclusion

For the foregoing reasons, the Court **DENIES** DNA Specialty's Motion to Dismiss and Motion to Strike (Dkt. # 37) and **DENIES** DNA Specialty Inc.'s Request for Judicial Notice (Dkt. # 39).

**IT IS SO ORDERED.**

:

**Initials of Preparer** TJ