Sa'id Vakili, Esq. (SBN: 176322)
vakili@vakili.com
Craig McLaughlin, Esq. (SBN: 182876)
craig@vakili.com
Jason C. Ming, Esq. (SBN: 219745)
jason@vakili.com
Stephen P. Hoffman, Esq. (SBN: 287075)
hoffman@vakili.com
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010-2822
**213/380-6010** | Fax: 213/380-6051

*Attorneys for Plaintiff and Counter-Defendant DNA Specialty, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

**DNA SPECIALTY, INC., a California Corporation,**

**Plaintiff/Counterclaim Defendant,**

**v.**

**SHARKROAD, INC., a California Corporation,**

**Defendant/Counterclaimant.**

**CASE NO.: 2:25-cv-10379-MWC (RAOx)**

[*Hon. Michelle Williams Court*]

**PLAINTIFF AND COUNTER-DEFENDANT DNA SPECIALTY, INC.'S ANSWER TO DEFENDANT AND COUNTERCLAIMANT SHARKROAD, INC.'S AMENDED COUNTERCLAIMS**

**DEMAND FOR JURY TRIAL**

**PLAINTIFF DNA SPECIALTY, INC.'S ANSWER TO SHARKROAD, INC.'S AMENDED COUNTERCLAIMS**

Plaintiff and Counter-Defendant DNA Specialty, Inc. ("DNA") answers the Counterclaims of Defendant and Counterclaimant Sharkroad, Inc. ("Sharkroad") set forth in Sharkroad's Amended Answer and Counterclaims, filed August 3, 2026 (Dkt. # 36) (the "Amended Counterclaims"), as follows. The numbered responses below correspond to paragraphs 72 through 181 of the Amended Counterclaims. DNA denies every allegation of the Amended Counterclaims not expressly admitted below. DNA's references to the "'968 Patent," the "Twisted Spoke," and the two asserted trade dresses are for identification only and do not admit Sharkroad's characterizations of their scope, similarity, validity, or enforceability.

**RESPONSES TO GENERAL ALLEGATIONS**

**Parties**

72. DNA admits the allegations of paragraph 72.

73. DNA admits that Sharkroad is a California corporation and maintains an office at 2160 Farallon Drive, San Leandro, California 94577. DNA lacks knowledge or information sufficient to form a belief as to whether that office is Sharkroad's principal place of business and, on that basis, denies that allegation.

**Jurisdiction**

74. DNA admits that Sharkroad purports to seek declaratory relief concerning the patent and trade-dress rights at issue and that this Court has subject-matter jurisdiction over the federal claims and counterclaims. DNA denies that Sharkroad is entitled to any of the relief it seeks.

75. DNA admits that personal jurisdiction and venue are proper in this District.

**Facts**

76. DNA admits that it alleged that DNA owns intellectual property rights in the ’968 Patent, its spiral-spoke wheel trade dress, and its 52 cylindrical-spoke wheel trade dress. DNA denies any implication that those rights are invalid or unenforceable, and denies the remaining allegations of paragraph 76.

77. DNA admits that an actual controversy exists, that DNA has asserted and is asserting infringement of the ’968 Patent and the two asserted trade dresses, and that Sharkroad denies those assertions. DNA denies that Sharkroad’s denials have merit.

78. DNA admits that an immediate and actual controversy exists and that DNA seeks to enforce the ’968 Patent and the two asserted trade dresses. DNA denies that its enforcement of its rights violates or is to the detriment of any lawful right of Sharkroad.

79. DNA admits the allegations of paragraph 79.

80. DNA admits that Jerry Lehman is the named inventor and original applicant of the application that issued as the ’968 Patent and that the application materials identify his address as 200 West Artesia Blvd., Compton, California 90220. DNA denies that Mr. Lehman goes by the name of “Jerald Lehman.”

81. DNA admits that it was established in 1984 selling automotive parts, that it is a California corporation, and that it has long been engaged in the business of selling motorcycle wheels and motorcycle equipment. The records of the California Secretary of State reflect the date and circumstances of DNA’s incorporation and the identities of its signatories, and those records speak for themselves; DNA denies any characterization of those records inconsistent with their contents. Except as expressly admitted, DNA denies the remaining allegations of paragraph 81.

82. DNA admits that its 2025 and 2026 Statements of Information filed with the California Secretary of State identify James Choi as Chief Executive Officer and Sun Choi as Secretary. The records of the California Secretary of State concerning DNA’s filing status speak for themselves, and DNA denies any characterization inconsistent with

those records. DNA further denies that any historical corporate filing status has any bearing on the validity or enforceability of the rights asserted in this action, and denies the remaining allegations of paragraph 82.

83. DNA admits that, on or about May 30, 2025, Jerry Lehman assigned his rights in U.S. Patent Application No. 29/874,416 to Paul Choi. Except as expressly admitted, denied.

84. DNA admits that, on or about September 11, 2025, Paul Choi assigned his rights in the ’968 Patent and U.S. Patent Application No. 29/874,416 to DNA. Except as expressly admitted, denied.

85. DNA admits that its principal business address is 200 W. Artesia Blvd., Compton, California 90220. The application materials and assignment records identify the addresses stated on their face, and those documents speak for themselves. Except as expressly admitted, DNA denies the remaining allegations of paragraph 85, including any implication arising from the use of a common business address.

86. DNA admits its longstanding participation in the motorcycle wheel business and that it was aware of its own Twisted Spoke product. DNA denies that it or any identified individual was aware of any noncumulative prior art material to the patentability of the claimed design, denies that general participation in an industry establishes any individual’s awareness of particular third-party products, and denies the remaining allegations of paragraph 86.

87. DNA admits that it authored and published the catalog identified in paragraph 87 and that page 43 of that catalog depicts DNA’s Twisted Spoke product, which DNA publicly disclosed in approximately 2021. DNA denies that the catalog was published as early as calendar year 2021 and denies the remaining allegations of paragraph 87, including any implication that the catalog image anticipates or otherwise invalidates the ’968 Patent.

88. Denied. The depicted Twisted Spoke product is a bent spoke with only

partial twists along its length and what appears to be a consistent diameter; it does not have the same overall visual appearance as the claimed design and does not anticipate or render obvious the design claimed in the ’968 Patent.

89. DNA admits that DNA and Paul Choi were aware of DNA’s Twisted Spoke product. DNA lacks knowledge or information sufficient to form a belief as to the precise scope and timing of the alleged awareness of each other individual named in paragraph 89 and, on that basis, denies those allegations. DNA denies any implication that any person was aware of noncumulative or otherwise information material to patentability or intended to deceive the USPTO.

90. DNA admits that Jerry Lehman is involved in the development of DNA’s products generally and that he used the address stated in the application materials. DNA denies that Mr. Lehman is or was an employee of DNA, denies that Mr. Lehman was involved in developing or manufacturing DNA’s Twisted Spoke product, and denies the remaining allegations of paragraph 90, including the allegation that Mr. Lehman had access to DNA’s confidential internal engineering and product materials concerning the Twisted Spoke.

91. DNA admits that Mr. Lehman was the named inventor and original applicant, that as such he executed the inventor’s declaration and power of attorney, and that he did not disclose DNA’s Twisted Spoke product to the USPTO. The prosecution documents speak for themselves as to the titles and designations appearing in them. DNA denies that Mr. Lehman or any other person knowingly withheld noncumulative information material to patentability or acted with any intent to deceive the USPTO, and denies the remaining allegations of paragraph 91.

92. DNA admits that no Information Disclosure Statement identifying the commercial products referenced in paragraph 92 was submitted during prosecution of the application that issued as the ’968 Patent and that the catalog and DNA’s Twisted Spoke product were not otherwise disclosed to the USPTO. DNA further admits its longstanding

motorcycle wheel business. DNA denies that it was "certainly aware" of twisted-spoke products sold by competitors, denies that it or any person identified in paragraph 92 knowingly withheld information material to patentability or breached any applicable duty of disclosure, and denies the remaining allegations of paragraph 92.

93. DNA admits that the prosecution history of the '968 Patent reflects the patent references and other references cited and considered by the Examiner, which speak for themselves. DNA denies any implication that the examination was inadequate or that the cited references fail to address the material design features at issue.

94. DNA admits that it publicly disclosed and first sold its Twisted Spoke product in approximately 2021. DNA lacks knowledge or information sufficient to form a belief as to the alleged historical publication, public-use, offer-for-sale, and sale dates of the particular third-party products and website depictions identified in paragraph 94 and, on that basis, denies those allegations. DNA denies that the identified products disclose the claimed design as a whole, denies that Sharkroad's verbal description accurately characterizes the claimed design, and denies that the identified products establish invalidity of the '968 Patent.

95. DNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Drag Specialties' market size, influence, and position and, on that basis, denies them.

96. DNA admits the nondisclosure of its catalog and Twisted Spoke product as stated in its response to paragraph 92 above. DNA denies that the identified products disclose the same or substantially the same claimed ornamental design or constitute information material to patentability, and incorporates its response to paragraph 99 concerning the Examiner's review. Except as expressly admitted, denied.

97. Denied.

98. Denied. DNA denies that the identified products constitute information material to patentability and incorporates its response to paragraph 99 concerning the

Examiner's review.

99. DNA admits that the Examiner considered prior art references concerning wheel spokes and that DNA first sold its Twisted Spoke product in approximately 2021 without disclosing it during prosecution. DNA admits that neither its catalog nor that product is identified among the references cited on the face of the '968 Patent. DNA lacks knowledge or information sufficient to form a belief concerning any unrecorded independent review by the Examiner and, on that basis, denies those allegations. DNA denies that the identified products are noncumulative, but-for material information, denies that their disclosure would have prevented issuance, denies that the Twisted Spoke product is identical in appearance to the claimed design, and denies that Sharkroad accurately describes the claim. Except as expressly admitted, denied.

100. DNA admits that the Examiner cited U.S. Design Patent Nos. D1,042,287 and D374,649 and that the latter names James Choi as inventor. Those references speak for themselves. DNA denies Sharkroad's characterizations of those references, of the claimed design, and of the alleged gap in the prior art; the Examiner also considered U.S. Patent No. 598,620 to Allen, which discloses a twisted spoke, and the commercial products Sharkroad identifies are cumulative of the references that were before the Examiner. DNA denies that the Twisted Spoke product supplied noncumulative information or information material to patentability. Except as expressly admitted, denied.

101. Denied.

102. DNA admits its longstanding wheel business, that it was aware of its own Twisted Spoke product, and that the product was publicly disclosed and first sold in approximately 2021 and was not disclosed during prosecution. DNA admits that Paul Choi was involved in developing that product and communicated with its manufacturer. DNA denies that Mr. Lehman was involved in developing or manufacturing that product or communicated with its manufacturer about it. DNA lacks knowledge or information

sufficient to form a belief as to the alleged availability of particular third-party products as early as 2010 and, on that basis, denies those allegations. DNA denies that any person knowingly concealed invalidating prior art or information material to patenability, and except as expressly admitted, DNA denies the remaining allegations of paragraph 102, including the speculation that each named individual "would have been involved" in preparing the 2021 catalog or in the sale of the Twisted Spoke product.

103. Denied. DNA denies that it or any identified individual knew of undisclosed information that would have prevented issuance of the '968 Patent, and denies that the identified products disclose the same or substantially the same claimed ornamental design.

104. Denied. DNA admits only the nondisclosure identified in its response to paragraph 92 above and denies that any person intentionally withheld information material to patentability.

105. Denied.

106. Denied.

107. DNA admits that it has operated in the motorcycle wheel industry for decades. DNA denies the remaining allegations of paragraph 107, including the asserted inference of deceptive intent.

108. DNA admits that the catalog and DNA's Twisted Spoke product were not disclosed to the USPTO during prosecution. DNA denies that this establishes deceptive intent, denies that the identified products were "directly" or otherwise material to patentability, and denies that any individual engaged in inequitable conduct. Except as expressly admitted, denied.

109. Denied. The allegation is a legal conclusion which doesn't require a response. DNA nonetheless denies that it committed inequitable conduct.

110. Paragraph 110 states legal conclusions concerning 35 U.S.C. § 287(a) to which no response is required. To the extent a response is required, DNA denies that

paragraph 110 accurately states the requirements or effect of § 287(a) and denies that Sharkroad is entitled to any limitation of damages beyond those, if any, imposed by that statute on the facts of this case. DNA further avers that Sharkroad has had actual knowledge of DNA's rights in the claimed design since no later than June 16, 2025, when DNA sent Sharkroad's Chief Executive Officer a cease-and-desist letter enclosing the USPTO Notice of Allowance, and actual notice of its claim of infringement no later than the filing of this action on October 28, 2025.

111. Denied. DNA denies that 35 U.S.C. § 287(a) categorically bars recovery of pre-suit damages; any limitation under that provision depends on the applicable marking and notice facts and the period for which patent damages are sought, which are matters of proof. The filing of this action on October 28, 2025 constituted notice under § 287(a), and § 287(a) does not limit DNA's trade-dress or state law remedies.

## RESPONSES TO COUNT I

**(*Unenforceability and Invalidity of the '968 Patent Based on Inequitable Conduct*)**

112. DNA incorporates its responses to paragraphs 72 through 111 as though fully set forth here.

113. DNA admits that it owns the '968 Patent.

114. DNA admits that Mr. Lehman was the named inventor and original applicant and that rights in the application and the '968 Patent were assigned through Paul Choi to DNA, as set forth in DNA's responses to paragraphs 83 and 84 above. DNA denies that ownership, assignment, or enforcement establishes that any named individual was involved in or substantively connected to the preparation, filing, or prosecution of the application, or owed or breached any duty of disclosure, or engaged in inequitable conduct. The records of the California Secretary of State concerning DNA's incorporation speak for themselves. Except as expressly admitted, DNA denies the remaining allegations of paragraph 114.

115. DNA admits that DNA's Twisted Spoke product was not disclosed during prosecution and incorporates its responses to paragraphs 89 and 102 concerning the alleged knowledge of particular individuals. DNA denies that the identified products constituted information material to patentability or that any person knowingly withheld such information. DNA lacks knowledge or information sufficient to form a belief as to the alleged historical availability of the particular third-party designs, including the allegation of public availability as early as 2010, and, on that basis, denies those allegations. Except as expressly admitted, denied.

116. DNA admits that its Twisted Spoke product was not disclosed to the USPTO during prosecution of the application filed April 19, 2023 and issued August 5, 2025. DNA denies that the omission involved information material to patentability or constituted inequitable conduct.

117. DNA admits that the catalog and DNA's Twisted Spoke product were not disclosed during prosecution, including by Mr. Lehman or Paul Choi, and admits its longstanding motorcycle wheel business. DNA denies that the omitted information was noncumulative and/or material to patentability, denies that any omission prevented the Examiner from considering material prior art, and denies that the identified products anticipated or rendered obvious the claimed design. DNA lacks knowledge or information sufficient to form a belief concerning the alleged public display of particular third-party designs since 2010 and denies those allegations on that basis. Except as expressly admitted, denied.

118. DNA admits that the Examiner considered prior art references concerning wheel spokes and that DNA first sold its Twisted Spoke product in approximately 2021 without disclosing it during prosecution. DNA incorporates its response to paragraph 99 concerning the Examiner's review. DNA denies that the Twisted Spoke product is identical in appearance to the claimed design or supplies material information absent from the references the Examiner considered, denies Sharkroad's verbal characterization of the

claim, and denies the remaining allegations of paragraph 118.

119. Denied. The depicted product is a bent spoke with only partial twists along its length, appears to have a consistent diameter,and is not nearly identical to the claimed design.

120. DNA admits that DNA and Paul Choi were aware of DNA's Twisted Spoke product and that the product was not disclosed to the USPTO. DNA denies that anyone deliberately obscured material information from the Examiner, intended to deceive the Examiner, or withheld information that would have prevented issuance of the '968 Patent. DNA incorporates its response to paragraph 89 concerning the alleged awareness of the other named individuals. Except as expressly admitted, denied.

121. DNA admits that its Twisted Spoke product was publicly available in approximately 2021 and was not disclosed during prosecution. DNA denies that the identified products disclose the same or substantially the same claimed design or would have caused the Examiner to reject it. DNA lacks knowledge or information sufficient to form a belief as to the alleged historical availability of the particular third-party designs and denies those allegations on that basis. Except as expressly admitted, denied.

122. DNA admits its longstanding participation in the motorcycle wheel business and that it was aware of its own Twisted Spoke product. DNA denies that industry participation establishes any individual's knowledge of every identified product or of information material to patentability, and incorporates its responses to paragraphs 89 and 102 concerning individual knowledge. Except as expressly admitted, denied.

123. Denied.

124. Denied.

125. DNA admits its longstanding participation in the motorcycle wheel and spoke wheel industry. DNA denies that this establishes any individual's knowledge of the identified products or those products' materiality to patentability, and denies any inequitable conduct. Except as expressly admitted, denied.

126. DNA admits that an actual and justiciable controversy exists concerning the enforceability of the ’968 Patent and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination in its favor or that any determination in Sharkroad’s favor is necessary or appropriate.

127. Denied.

128. Denied.

**RESPONSES TO COUNT II**

**(*Invalidity of the ’968 Patent – Anticipation and Obviousness*)**

129. DNA incorporates its responses to paragraphs 72 through 128 as though fully set forth here.

130. DNA admits that Sharkroad so contends. DNA denies that the ’968 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, 112, or 171, or on any other ground.

131. DNA admits that its Twisted Spoke product was publicly disclosed and first sold in approximately 2021. DNA denies that the identified products disclose a design with the same overall visual impression as the claimed design or anticipate or render it obvious, individually or in any asserted combination, and denies that the ’968 Patent is invalid. Except as expressly admitted, denied.

132. DNA admits that it first sold its Twisted Spoke product in approximately 2021. DNA denies that the product is identical in appearance to the design claimed in the ’968 Patent, denies that it discloses the same design as claimed, and denies that it anticipates the ’968 Patent. Except as expressly admitted, denied.

133. DNA admits that the portions of the ’968 Patent figures depicted in broken lines form no part of the claimed design. DNA denies Sharkroad’s characterization of the claimed design as limited to a generic spiral or twisted configuration, denies that the identified products create the same overall visual impression as the claimed design from the perspective of an ordinary observer, denies that any differences are minor or

insignificant, and denies anticipation under 35 U.S.C. § 102. Except as expressly admitted, denied.

134. Denied.

135. DNA lacks knowledge or information sufficient to form a belief as to when the particular Buchanan products identified by Sharkroad became publicly available and, on that basis, denies the alleged timing. DNA denies that those products establish invalidity of the ’968 Patent.

136. DNA lacks knowledge or information sufficient to form a belief as to the alleged historical sales, catalog-cover depictions, and publication dates of the particular Buchanan products and, on that basis, denies those allegations.

137. DNA admits that paragraph 137 presents images that Sharkroad identifies as the patented design and a purported Buchanan product. DNA denies that the comparison establishes equivalence, anticipation, or obviousness. DNA lacks knowledge or information sufficient to form a belief as to the authenticity, historical date, or completeness of the particular Buchanan depiction and, on that basis, denies those allegations.

138. DNA admits that the ’968 Patent claims the ornamental design for a spiral wheel spoke as shown and described in Figures 1–4, with broken-line subject matter forming no part of the claimed design. DNA denies that it has admitted Sharkroad’s narrow verbal construction of the claim and denies the remaining allegations of paragraph 138.

139. DNA admits that the products described as Buchanan spokes concern wheel spokes. DNA denies that this establishes their status as prior art, the knowledge of an ordinary designer, or invalidity. Except as expressly admitted, denied.

140. Denied.

141. Denied.

142. Denied.

143. Denied.

144. Denied.

145. DNA admits that an actual and justiciable controversy exists concerning the validity of the ’968 Patent and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination in its favor or that any determination in Sharkroad’s favor is necessary or appropriate.

146. Denied.

**RESPONSES TO COUNT III**

**(*Invalidity of the ’968 Patent Based on Functional Design*)**

147. DNA incorporates its responses to paragraphs 72 through 146 as though fully set forth here.

148. Denied. The design claimed in the ’968 Patent is ornamental and is not dictated solely by the utilitarian function of a wheel spoke. Among other things, the existence of numerous alternative spoke designs—including the many alternative designs Sharkroad itself identifies in its Amended Counterclaims—demonstrates that the claimed design is not dictated by function.

149. DNA admits that an actual and justiciable controversy exists concerning Sharkroad’s assertion that the patented design is functional and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination in its favor or that any determination in Sharkroad’s favor is necessary or appropriate.

150. Denied.

**RESPONSES TO COUNT IV**

**(*Non-Infringement of the ’968 Patent*)**

151. DNA incorporates its responses to paragraphs 72 through 150 as though fully set forth here.

152. DNA admits that it has accused Sharkroad of infringing the ’968 Patent in this action.

153. Paragraph 153 alleges that “Plaintiff”—DNA—“has not and is not infringing any claim of the ’968 Patent.” As written, that allegation requires no response because DNA cannot infringe its own patent. To the extent Sharkroad intended to allege that Sharkroad has not infringed and is not infringing the ’968 Patent, directly or indirectly, DNA denies those allegations. DNA admits that an actual controversy exists between the parties concerning the ’968 Patent.

154. DNA admits that an actual and justiciable controversy exists concerning infringement of the ’968 Patent and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination of non-infringement.

155. Denied.

## <u>RESPONSES TO COUNT V</u>

**(*Invalidity of the Alleged Spiral-Spoke Trade Dress*)**

156. DNA incorporates its responses to paragraphs 72 through 155 as though fully set forth here.

157. Denied.

158. DNA admits that it contends that its spiral-spoke trade dress is valid and enforceable.

159. DNA admits that an actual and justiciable controversy exists concerning the validity and enforceability of DNA’s spiral-spoke trade dress and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination in its favor or that any determination in Sharkroad’s favor is necessary or appropriate.

160. Denied.

## RESPONSES TO COUNT VI

**(*Non-Infringement of the Alleged Spiral-Spoke Trade Dress*)**

161. DNA incorporates its responses to paragraphs 72 through 160 as though fully set forth here.

162. DNA admits that it owns and asserts the spiral-spoke trade dress.

163. Denied.

164. Denied.

165. DNA lacks knowledge or information sufficient to form a belief as to the individual motives of all consumers who purchase Sharkroad's accused products and, on that basis, denies those allegations. DNA denies that Sharkroad's accused products are unlikely to cause confusion and denies that consumers' consideration of a product's merits excludes confusion as to source, affiliation, sponsorship, or approval.

166. DNA admits that it alleges that Sharkroad has infringed DNA's spiral-spoke trade dress.

167. DNA admits that an actual and justiciable controversy exists concerning infringement of DNA's spiral-spoke trade dress and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination of non-infringement.

168. Denied.

## RESPONSES TO COUNT VII

**(*Invalidity of the Alleged Cylindrical-Spoke Trade Dress*)**

169. DNA incorporates its responses to paragraphs 72 through 168 as though fully set forth here.

170. Denied.

171. DNA admits that it contends that its 52 cylindrical-spoke trade dress is valid and enforceable.

172. DNA admits that an actual and justiciable controversy exists concerning the validity and enforceability of DNA's cylindrical-spoke trade dress and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination in its favor or that any determination in Sharkroad's favor is necessary or appropriate.

173. Denied.

## RESPONSES TO COUNT VIII

**(*Non-Infringement of the Alleged Cylindrical-Spoke Trade Dress*)**

174. DNA incorporates its responses to paragraphs 72 through 173 as though fully set forth here.

175. DNA admits that it owns and asserts the 52 cylindrical-spoke trade dress.

176. Denied.

177. Denied.

178. DNA lacks knowledge or information sufficient to form a belief as to the individual motives of all consumers who purchase Sharkroad's accused products and, on that basis, denies those allegations. DNA denies that Sharkroad's accused products are unlikely to cause confusion and denies that consumers' consideration of a product's merits excludes confusion as to source, affiliation, sponsorship, or approval.

179. DNA admits that it alleges that Sharkroad has infringed DNA's cylindrical-spoke trade dress.

180. DNA admits that an actual and justiciable controversy exists concerning infringement of DNA's cylindrical-spoke trade dress and that Sharkroad seeks a judicial determination. DNA denies that Sharkroad is entitled to a determination of non-infringement.

181. Denied.

## RESPONSE TO SHARKROAD'S PRAYER FOR RELIEF

DNA denies that Sharkroad is entitled to any of the relief requested in subparagraphs (a) through (i) of the prayer of the Amended Counterclaims, including dismissal of DNA's First Amended Complaint; any declaration of non-infringement, invalidity, or unenforceability of the '968 Patent or of DNA's trade dresses; damages or treble damages; attorneys' fees; costs; pre- or post-judgment interest; or any other relief.

## RESPONSE TO JURY DEMAND

DNA admits that Sharkroad has demanded a trial by jury on all issues so triable and does not oppose that demand. DNA independently demands a trial by jury on all issues so triable.

## ADDITIONAL DEFENSES

Without assuming any burden of pleading or proof that applicable law places on Sharkroad, DNA asserts the following additional defenses to the Amended Counterclaims. To the extent any of these defenses controvert elements of Sharkroad's counterclaims, they supplement the responses above.

### FIRST DEFENSE

**(*Absence of Inequitable Conduct*)**

Neither DNA nor any individual owing a duty of disclosure under 37 C.F.R. § 1.56 knowingly withheld noncumulative information material to the patentability of the design claimed in the '968 Patent, and no such person acted with the specific intent to deceive the USPTO. The omission of DNA's catalog and Twisted Spoke product from the prosecution record, without the required knowledge, but-for materiality, and specific deceptive intent, does not render the '968 Patent unenforceable, and no person engaged in egregious affirmative misconduct in the prosecution of the application. Moreover, as the Court has determined, the Amended Counterclaims fail to allege facts connecting

James Choi or Sun Choi to the preparation, filing, or prosecution of the application that issued as the ’968 Patent. (Dkt. # 48 at 10–11.)

**SECOND DEFENSE**

**(*Cumulativeness and Absence of But-For Materiality*)**

The information alleged to have been withheld from the USPTO is cumulative of the prior art the Examiner considered and would not have prevented allowance of the claimed design. The Examiner considered references disclosing twisted and spiral wheel spokes, including U.S. Patent No. 598,620 to Allen and U.S. Design Patent No. D374,649 to Choi. The commercial products Sharkroad identifies, including the product depicted on page 43 of DNA’s catalog, show bent spokes that are only partially twisted along their length and are of a consistent diameter; they are cumulative of or less material than the disclosures already before the Examiner and do not disclose the overall ornamental appearance of the claimed design. Accordingly, the allegedly withheld information was not but-for material to patentability.

**THIRD DEFENSE**

**(*Validity and Ornamentality of the Claimed Design*)**

The ’968 Patent is presumed valid under 35 U.S.C. § 282(a), and Sharkroad bears the burden of proving invalidity by clear and convincing evidence. The products and publications Sharkroad cites do not anticipate the claimed design under 35 U.S.C. § 102 and do not render it obvious under 35 U.S.C. § 103 when the claimed design is considered as a whole from the perspective of an ordinary observer familiar with the prior art. The claimed design is ornamental and is not dictated solely by function—as confirmed by the many alternative spoke designs available, including those Sharkroad itself identifies—and the ’968 Patent satisfies the applicable statutory requirements, including those of 35 U.S.C. §§ 112 and 171.

**FOURTH DEFENSE**

**(*Protectable Trade Dress and Infringement*)**

DNA's asserted spiral-spoke and 52 cylindrical-spoke trade dresses, each considered in its overall configuration, are nonfunctional and have acquired distinctiveness and secondary meaning identifying DNA as their source. Sharkroad's accused products create a likelihood of confusion as to source, affiliation, sponsorship, or approval. DNA further maintains that Sharkroad's accused spiral-spoke products infringe the properly construed claim of the '968 Patent.

**FIFTH DEFENSE**

**(*Scope of Any Limitation Under 35 U.S.C. § 287(a)*)**

Any limitation of damages under 35 U.S.C. § 287(a) must be determined from the applicable marking and notice facts and the period for which patent damages are sought. Sharkroad has had actual knowledge of DNA's rights in the claimed design since no later than June 16, 2025, and the filing of this action on October 28, 2025 constituted notice under § 287(a). An asserted absence of marking does not establish invalidity, unenforceability, or non-infringement; does not bar otherwise recoverable damages for infringement occurring after legally sufficient notice; and does not limit DNA's trade-dress remedies.

**SIXTH DEFENSE**

**(*No Entitlement to the Monetary Relief Demanded*)**

Sharkroad's prayer for damages, treble damages, and interest identifies no substantive basis for monetary recovery on its declaratory-judgment counterclaims, and DNA denies any conduct that would support such recovery. DNA further denies that this is an exceptional case warranting an award of attorneys' fees to Sharkroad under 35 U.S.C. § 285 or 15 U.S.C. § 1117(a), and denies that Sharkroad is entitled to fees, costs, or interest on any other basis.

**SEVENTH DEFENSE**

**(*Reservation*)**

Discovery and DNA's investigation are ongoing. DNA reserves the right to seek leave to assert additional defenses that become known or available as this action proceeds.

**PRAYER FOR RELIEF**

WHEREFORE, DNA respectfully requests that the Court:

1. Enter judgment in favor of DNA and against Sharkroad on each of the Amended Counterclaims;

2. Order that Sharkroad take nothing by the Amended Counterclaims and deny the declarations and monetary relief Sharkroad requests;

3. Award DNA its recoverable costs and, where authorized and warranted, its reasonable attorneys' fees, including under 35 U.S.C. § 285 and 15 U.S.C. § 1117(a); and

4. Award DNA such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

DNA demands a trial by jury on all issues so triable.

*Respectfully submitted,*

**VAKILI & LEUS, LLP**

Dated: October 19, 2026

By: /s/ *Craig McLaughlin*
Craig McLaughlin, Esq.
*Attorneys for Plaintiff and Counter-Defendant DNA Specialty, Inc.*

**CERTIFICATE OF SERVICE**

*DNA Specialty, Inc. v. Sharkroad, Inc., et al.*
*U.S.D.C. C.D. Cal. Case No.: 2:25-CV-10379-MWC (RAOx)*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On October 19, 2026, I served the foregoing document described as **PLAINTIFF AND COUNTER-DEFENDANT DNA SPECIALTY, INC.'S ANSWER TO DEFENDANT AND COUNTERCLAIMANT SHARKROAD, INC.'S AMENDED COUNTERCLAIMS; DEMAND FOR JURY TRIAL** on all interested parties in this action at the addresses listed below, as follows:

R. Joseph Trojan, Esq.
*trojan@trojanlawoffices.com*
Dylan C. Dang, Esq.
*dang@trojanlawoffices.com*
Francis Wong, Esq.
*wong@trojanlawoffices.com*
Mehdi Poursoltani, Esq.
*poursoltani@trojanlawoffices.com*
**TROJAN LAW OFFICES, P.C.**
9250 Wilshire Boulevard, Suite 325
Beverly Hills, California 90212
**310/777-8399** | Fax: 310/777-8348

*Counsel for Defendant and Counterclaimant Sharkroad, Inc.*

I hereby certify that on the 19th day of October 2026, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

Executed on October 19, 2026, in Los Angeles, California.

/s/ *Jason C. Ming*
Jason C. Ming