R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
Mehdi Poursoltani, CA Bar No. 33,1961
poursoltani@trojanlawoffices.com
TROJAN LAW OFFICES, P.C.
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant SHARKROAD, INC.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DNA SPECIALTY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARKROAD, INC., a California Corporation and DOES 1-50, Inclusive,<br><br>Defendants. | **Case No: 2:25-cv-10379-MWC(RAOx)**<br><br>**DEFENDANT SHARKROAD, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>**Date:** November 20, 2026<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 6A<br>First Street U.S. Courthouse<br>Los Angeles, CA<br><br>**Hon. Michelle Williams Court**<br>**United States District Judge** |

# Table of Contents

I. INTRODUCTION .......... 1

II. BRIEF STATEMENT OF FACTS .......... 3

A. The Pleadings, Discovery, and Invalidity Contentions .......... 3

B. Meet-and-Confer Regarding the Proposed Amendments .......... 4

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. The Newly Produced Prior Art Catalog and DNA's Admissions Support Good Cause to Amend the Invalidity Contentions .......... 5

B. The Newly Discovered NPL 24 Reference Supports Good Cause to Amend the Invalidity Contentions .......... 7

C. Good Cause Supports Inclusion of the Inequitable Conduct Contention .......... 8

D. The NPL 22 Description Correction and NPL 21 Label Correction Are Narrow and Non-substantive .......... 10

E. The Proposed Amendments Will Not Unduly Prejudice DNA .......... 10

V. CONCLUSION .......... 11

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

# Table of Authorities

## Cases

*Kinglite Holdings Inc. v. Micro-Star Int'l Co.*,
No. CV1403009JVSPJWX, 2015 WL 6437836 (C.D. Cal. Oct. 16, 2015) ......... 5

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed. Cir. 2006) ......... 5

## Rules

C.D. Cal. L.R. 7-3 ......... 4

Standing Order Re Patent Cases (Dkt. 11), S.P.R. 3-2 ......... 3

Standing Order Re Patent Cases (Dkt. 11), S.P.R. 3-3 ......... 1, 3

Standing Order Re Patent Cases (Dkt. 11), S.P.R. 3-6 ......... 1, 4, 7, 8

## Regulations

37 C.F.R. § 1.29(a)(2) ......... 5, 9

37 C.F.R. § 1.29(b) ......... 9

Pursuant to Section 3-6 of the Court's Standing Order Re Patent Cases (Dkt. 11, "S.P.R. 3-6"), Defendant Sharkroad, Inc. ("Sharkroad" or "Defendant") respectfully moves for leave to amend its invalidity contentions served pursuant to S.P.R. 3-3 (the "Invalidity Contentions"), attached as Exhibit 1, concerning U.S. Design Patent No. D1,086,968 (the "'968 Patent"), asserted by Plaintiff DNA Specialty, Inc. ("DNA" or "Plaintiff").

## I. INTRODUCTION

Good cause exists to amend the Invalidity Contentions based on prior art produced by DNA and independently discovered by Sharkroad after its June 22, 2026 deadline to serve its Invalidity Contentions. The proposed amendments add DNA's own 2021 product catalog (the "2021 Catalog," identified as "NPL 23" in the proposed Amended Invalidity Contentions) and a newly discovered prior-art twirled-spoke wheel product (identified as "NPL 24"), neither of which was known to Sharkroad when it served its original Invalidity Contentions. (Declaration of R. Joseph Trojan ("Trojan Decl."), Ex. 1, Sharkroad's Invalidity Contentions served June 22, 2026; Ex. 2, DNA's 2021 Catalog; Ex. 14, NPL 24 supporting materials; Ex. 12, proposed Amended Invalidity Contentions).

Sharkroad requested documents concerning relevant prior-art products and diligently conferred with DNA about deficiencies in its production. Despite those efforts, DNA was essentially non-responsive.[1] (Trojan Decl., Ex. 4.) Thus, Sharkroad independently sought prior art and identified DNA's 2021 Catalog. Only after Sharkroad raised the issue with DNA did it produce the Catalog on August 17, 2026, nearly two months after the Invalidity Contentions deadline. DNA subsequently confirmed the 2021 Catalog's authenticity and admitted that it publicly disclosed and first sold the depicted DNA Twisted Spoke in approximately 2021, more than one year before the '968 Patent's filing date. (Trojan Decl., Exs. 2–3.) Through extensive

[1] The parties are coordinating an informal discovery conference with Magistrate Judge Oliver. (Trojan Decl., Ex. 4: See Sharkroad's correspondence dated September 24, 2026, included therein.)



TROJAN LAW OFFICES
BEVERLY HILLS

supplemental searches informed by additional references that became known during its investigation, Sharkroad also recently discovered the prior-art twirled-spoke wheel product identified as NPL 24 in the proposed Amended Invalidity Contentions. (Trojan Decl., Ex. 14, NPL 24 supporting materials; Ex. 12, proposed Amended Invalidity Contentions).

Sharkroad also seeks to amend its Invalidity Contentions to include an inequitable conduct contention based on DNA's apparent misrepresentation of its micro entity status to the United States Patent and Trademark Office ("USPTO"). DNA's RFA Responses confirmed additional names used by the named inventor, Jerry Lehman. (Trojan Decl., Ex. 3, RFA Nos. 24, 25, and 27.) A search of USPTO records under those names identified at least six applications that appear to have named Lehman as an inventor before the application for the '968 Patent was filed, calling into question the accuracy of the micro entity certification. (Trojan Decl., Exs. 5–11.) DNA has since submitted papers to the USPTO correcting the patent's entity status from micro entity to small entity. (Trojan Decl., Ex. 15).

Finally, Sharkroad seeks to correct the description of Reference No. 22 in the list of prior art references ("NPL 22"). (Trojan Decl., Ex. 1 at 21:27 to 22:10; Ex. 12 at 21:27 to 22:10.) The exhibits corresponding to NPL 22 were timely served with the Invalidity Contentions, but the description of NPL 22 inadvertently repeated the description associated with the previous reference number. (Trojan Decl., ¶ 20.) This limited correction adds no new reference or invalidity contention and essentially corrects a typographical error. *Id*. Sharkroad also corrects a *single-digit* typographical error in the shorthand label for Reference No. 21, changing "NPL 20" to "NPL 21" to match the entry's existing reference number, without altering its description, supporting exhibits, or substantive contentions. (Trojan Decl., Ex. 1 at 21:13; Ex. 12 at 21:13.)



TROJAN LAW OFFICES
BEVERLY HILLS

Because Sharkroad acted diligently and the proposed amendments will not unduly prejudice DNA, the Court should permit Sharkroad to serve the proposed Amended Invalidity Contentions attached as Exhibit 12.

## II. BRIEF STATEMENT OF FACTS

### A. The Pleadings, Discovery, and Invalidity Contentions

DNA filed its First Amended Complaint on December 4, 2025. (Dkt. 12.) Sharkroad filed its Answer and Counterclaims on March 24, 2026. (Dkt. 23.) DNA filed its Reply to Sharkroad's Counterclaims on April 13, 2026. (Dkt. 25.) On August 3, 2026, Sharkroad filed its Amended Answer and Counterclaims, and on October 19, 2026, DNA filed its Answer thereto. (Dkts. 36, 52.)

On April 21, 2026, Sharkroad served its First Set of Requests for Production of Documents, seeking information and documents relevant to DNA's asserted intellectual property rights and Sharkroad's contentions. (Trojan Decl., ¶ 2.) On June 22, 2026, Sharkroad timely served its Invalidity Contentions pursuant to S.P.R. 3-3 and the Court's Civil Trial Order. (Dkt. 11; Dkt. 26; Trojan Decl., ¶ 3, Ex. 1.) Sharkroad stated in those contentions that "Plaintiff's production appears significantly deficient in light of both the documents required to be produced under S.P.R. 3-2 and Defendant's discovery requests." (Trojan Decl., Ex. 1 at 3.)

Sharkroad pursued the missing discovery through correspondence dated June 19, July 2, July 24, July 28, 2026, and September 3, 2026. The parties also conducted an extensive meet and confer on August 18, 2026. (Trojan Decl., ¶ 4, Ex. 4.) Although the parties agreed to supplement their discovery responses by September 1, 2026, DNA did not supplement its interrogatory responses and produced only limited additional materials by the deadline. (*Id.*, exchange of emails regarding supplemental discovery responses dated September 1, 2026.)

As a result, the parties are currently coordinating an informal discovery conference with Magistrate Judge Oliver. (Trojan Decl., ¶ 4, Ex. 4.) If additional documents are produced as a result of any future discovery motion, Sharkroad



TROJAN LAW OFFICES
BEVERLY HILLS

reserves the right to further amend based on documents or information produced at a later date.

**B. Meet-and-Confer Regarding the Proposed Amendments**

On September 25, 2026, Sharkroad informed DNA of its intent to amend its Invalidity Contentions and requested an L.R. 7-3 conference, offering availability on September 30 and October 1. On October 2, Sharkroad provided redlined proposed amendments, renewed its conference request, and offered availability on October 5. On October 6, Sharkroad provided a revised redline and again requested the conference, offering availability on October 7. The parties ultimately met and conferred on October 7, 2026. (Trojan Decl., Ex. 17.)

During the conference, DNA asserted that inequitable conduct allegations should not be included in the Invalidity Contentions. Sharkroad disagreed and explained that the additional details were included out of an abundance of caution to ensure that Sharkroad could not later be accused of failing to fully disclose the factual basis for its inequitable conduct allegations. To resolve the disagreement, Sharkroad offered to remove the inequitable conduct section from the proposed Amended Invalidity Contentions if DNA agreed that Sharkroad would not subsequently be precluded from asserting those allegations on the ground that they were not disclosed in its Invalidity Contentions. DNA declined that proposal. (Ex. 17, October 7, 2026 email summarizing the conference.)

DNA also disputed that Sharkroad had good cause to amend and indicated that it would oppose the motion. Because the parties could not resolve their differences, Sharkroad proceeded with this Motion for Leave to Amend its Invalidity Contentions.

## III. LEGAL STANDARD

Section 3-6 of the Court's Standing Order Re Patent Cases provides that amendment of infringement or invalidity contentions "may be made only by order of the Court upon a timely showing of good cause." (Dkt. 11, S.P.R. 3-6.) The Standing



TROJAN LAW OFFICES
BEVERLY HILLS

Order identifies, as a nonexclusive example of circumstances that may support good cause absent undue prejudice, the "[r]ecent discovery of material, prior art despite earlier diligent search." (*Id.*) It further provides that "[t]he duty to supplement discovery responses does not excuse the need to obtain leave of court to amend contentions." (*Id.*)

Further, "good cause … require[s] a showing that the party seeking leave to amend acted with diligence in promptly moving to amend when new evidence is revealed in discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). The diligence inquiry considers both "diligence in discovering the basis for amendment" and "diligence in seeking amendment once the basis for amendment has been discovered." *Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, No. CV1403009JVSPJWX, 2015 WL 6437836, at *4 (C.D. Cal. Oct. 16, 2015).

A person seeking micro entity status under the gross income basis must certify, among other requirements, that neither the applicant nor any inventor or joint inventor "has been named as the inventor or a joint inventor on more than four previously filed patent applications," subject to specified exclusions. 37 C.F.R. § 1.29(a)(2).

## IV. ARGUMENT

### A. The Newly Produced Prior Art Catalog and DNA's Admissions Support Good Cause to Amend the Invalidity Contentions

The invalidity contentions should be amended to include DNA's 2021 Catalog because Sharkroad acted diligently before and after serving its Invalidity Contentions. It served document requests on April 21, 2026, approximately two months before the contentions were due, identified DNA's deficient production in the Invalidity Contentions, and continued pursuing the missing discovery through repeated correspondence. DNA nevertheless did not produce the 2021 Catalog until August 17, 2026 or confirm its authenticity, publication, public disclosure, and first sale until August 24, 2026, nearly two months after Sharkroad served its Invalidity



TROJAN LAW OFFICES
BEVERLY HILLS

Contentions and nearly four months after Sharkroad served its first set of document requests. (Trojan Decl., ¶¶ 2-6). The 2021 Catalog depicts a DNA twisted spoke product having a design identical or substantially similar to the design claimed in the ’968 Patent. DNA also produced additional catalogs depicting other twisted spoke products marketed by DNA.

| the ’968 Patent | the 2021 Catalog, NPL 23<br>(Trojan Decl., Ex. 2) |
| --- | --- |
| <br>FIG.1 |  |

On August 24, 2026, DNA served the RFA Responses. DNA admitted that the 2021 Catalog is a genuine DNA document, was authored and published by DNA, and discloses the DNA Twisted Spoke. DNA also admitted that it publicly disclosed and first sold the DNA Twisted Spoke in approximately 2021. (Trojan Decl., Ex. 3, RFA Nos. 1 to 3 and 5 to 7.)

The 2021 Catalog and DNA’s admissions are material to Sharkroad’s Invalidity Contentions. DNA admitted that the 2021 Catalog is genuine, was authored and published by DNA, and depicts the DNA “Twisted” spoke. *Id*. DNA further admitted that it publicly disclosed and first sold that product in approximately 2021, more than one year before the ’968 Patent’s filing date. *Id*. These facts support contentions that Sharkroad could not have presented with the same specificity before DNA produced the Catalog and served the RFA Responses.

The Catalog concerns DNA’s own product disclosures and sales, yet DNA produced it only after Sharkroad independently identified it and pursued its production. The Catalog and subsequent admissions provide evidence supporting the

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

additional anticipation and alternative obviousness contentions identified as NPL 23. Its discovery and production after the original contentions deadline, despite Sharkroad's earlier investigative and discovery efforts, support good cause under S.P.R. 3-6.

**B. The Newly Discovered NPL 24 Reference Supports Good Cause to Amend the Invalidity Contentions**

The NPL 24 Reference should be added to the invalidity contentions because Sharkroad separately discovered NPL 24 on or about October 3, 2026 through supplemental searches of third-party marketplaces. (Trojan Decl., ¶ 7, Ex. 14.) Its earlier investigation had identified 22 prior-art products, disclosed as NPL 1 through NPL 22 in its June 22, 2026 Invalidity Contentions. (Trojan Decl., Ex. 1, Reference Nos. 1–22, NPL 1–22.) Continuing that investigation, Sharkroad identified the additional prior-art product and its historical supporting materials, evaluated the reference, and incorporated it into the proposed Amended Invalidity Contentions. (Trojan Decl., Exs. 12, 14.)

The reference depicts a twirled spoke substantially similar in overall visual appearance to the design claimed in the '968 Patent. Its supporting materials include an archived webpage dated August 14, 2015 and customer reviews dated as early as March 26, 2010. *Id*.

| the '968 Patent | Prior art product, NPL 24 (Ex. 14) |
|---|---|
|  FIG.1 |  |

NPL 24 supplies an additional commercial twirled-spoke wheel reference supported by an archived webpage predating the April 19, 2023 filing date of the '968 Patent. (Trojan Decl., Ex. 14.) Sharkroad contends that the depicted spoke

design supports its anticipation and alternative obviousness theories, as explained in the proposed Amended Invalidity Contentions. Sharkroad identified the reference through the supplemental investigation described above, evaluated its supporting materials, and pursued amendment after disclosing it to DNA. These circumstances support good cause under S.P.R. 3-6.

**C. Good Cause Supports Inclusion of the Inequitable Conduct Contention**

The inequitable conduct contention should be amended because during discovery, Sharkroad discovered that Mr. Jerry Lehman, named inventor of the ’968 Patent, apparently falsely certified that “[n]either the applicant nor the inventor nor a joint inventor has been named as the inventor or a joint inventor on more than four previously filed U.S. patent applications.” (Trojan Decl., Ex. 5.)

Based on that discovery, Sharkroad diligently propounded discovery to confirm whether Mr. Lehman was entitled to micro entity status. In the RFA Responses, DNA admitted that Jerry Lehman has also been known as Gerald Lehman, Jerry L. Lehman, and Gerald Lucian Lehman. (Trojan Decl., Ex. 3, RFA Nos. 24, 25, and 27.) After receiving those admissions, Sharkroad searched USPTO records under the confirmed names and identified the following applications that appear to have named Lehman as an inventor before the filing of the application for the ’968 Patent:

U.S. Application No. 29/874,401, filed earlier on April 19, 2023 (Ex. 6);

U.S. Application No. 29/869,554, filed on January 4, 2023 (Ex. 7);

U.S. Application No. 29/794,780, filed on June 15, 2021 (Ex. 8);

U.S. Application No. 18/296,903, filed on April 6, 2023 (Ex. 9);

U.S. Application No. 29/679,966, filed on February 12, 2019 (Ex. 10); and

U.S. Application No. 18/187,532, filed on March 21, 2023 (Ex. 11).

(Trojan Decl., Exs. 6-11.) DNA admitted that Jerry Lehman was not an employee of DNA. (Trojan Decl., Ex. 3, RFA No. 8.) DNA’s counsel subsequently confirmed that



TROJAN LAW OFFICES
BEVERLY HILLS

Lehman instead performed services for DNA as an independent contractor. (Trojan Decl., Ex. 13.)

These records call into question the accuracy of the micro entity certification. The proposed Amended Invalidity Contentions will include an inequitable conduct contention based on the alleged misrepresentation of micro entity status and identify the certification and the prior applications supporting that contention.

On October 5, 2026, DNA's counsel informed Sharkroad's counsel that DNA "corrected the micro-entity status." (Trojan Decl., Ex. 16.) The USPTO record reflects that DNA submitted papers correcting the '968 Patent's entity status from micro entity to small entity. (Trojan Decl., Ex. 15.)

Based on the foregoing, the proposed Amended Invalidity Contentions include an inequitable conduct contention based on newly discovered information concerning the micro entity certification for the '968 Patent. DNA's admissions regarding Jerry Lehman's additional names led Sharkroad to USPTO records showing that Lehman appears to have been named as an inventor on at least six applications filed before the application for the '968 Patent. (Trojan Decl., Ex. 3, RFA Nos. 24, 25, and 27; Exs. 6 through 11.) That information calls into question the accuracy of the certification submitted under 37 C.F.R. § 1.29(a)(2).[2]

Sharkroad does not ask the Court to decide the merits of the inequitable conduct contention on this motion. The question is whether Sharkroad should be permitted to include that contention in its Invalidity Contentions based on

---

[2] The exclusion in 37 C.F.R. § 1.29(b) does not appear to apply. That provision excludes a previously filed application from the application filing limit only when the inventor assigned, or was obligated by contract or law to assign, all ownership rights in that application *as a result of the inventor's previous employment*. (See 37 C.F.R. § 1.29(b) (emphasis added)). Here, DNA admitted that Lehman was not its employee, and DNA's counsel confirmed that he was an independent contractor. (Ex. 3, RFA No. 8; Ex. 13.) Accordingly, based on the presently available evidence, the above-mentioned applications count toward the application filing limit under 37 C.F.R. § 1.29(a)(2).



TROJAN LAW OFFICES
BEVERLY HILLS

information discovered after the original contentions were served. Because the information was identified through DNA's later RFA Responses and the resulting USPTO search, and because the alleged misrepresentation bears directly on the enforceability of the '968 Patent, good cause supports the proposed amendment.

**D. The NPL 22 Description Correction and NPL 21 Label Correction Are Narrow and Non-substantive**

The requested correction to NPL 22 does not introduce a new prior art reference or contention. Sharkroad timely served the exhibits corresponding to NPL 22 on June 22, 2026; only the accompanying description was incorrect. Amending that description to conform to the materials already served will make the Invalidity Contentions accurate without changing the substance of Sharkroad's original disclosure. This proposed amendment amounts to a minor correction to clarify the original disclosure.

Sharkroad also corrects a *single-digit typographical error in the shorthand label* for Reference No. 21, changing "NPL 20" to "NPL 21" to match the entry's existing reference number, without altering its description, supporting exhibits, or substantive contentions. (Trojan Decl., Ex. 1 at 21:13.)

**E. The Proposed Amendments Will Not Unduly Prejudice DNA**

The proposed amendments will not unfairly surprise DNA. The catalog amendments, NPL 23, rely on DNA's own documents and admissions. NPL 24 concerns a twirled-spoke product substantially similar to the claimed design and the same category of prior-art products already addressed in Sharkroad's original Invalidity Contentions. The inequitable conduct contention relies on the prosecution record of DNA's patent and DNA's RFA Responses concerning the named inventor. DNA is therefore positioned to address the relevant evidence, including whether any statutory or regulatory exclusion applies to the identified applications. The NPL 22 correction concerns materials that DNA received with the original Invalidity Contentions. The NPL 21 correction is purely clerical and does not change the



TROJAN LAW OFFICES
BEVERLY HILLS

underlying reference, supporting evidence, or substantive invalidity contentions. Sharkroad identified DNA's deficient production in its original contentions and earlier correspondence, continued pursuing discovery, and sought amendment after DNA produced the Catalog and served the RFA Responses. Any limited burden associated with responding to the amendments is outweighed by the value of resolving the asserted invalidity and inequitable conduct contentions on a complete and accurate record.

## V. CONCLUSION

For the foregoing reasons, Sharkroad respectfully requests that the Court grant its Motion for Leave to Amend its Invalidity Contentions and permit Sharkroad to serve the proposed Amended Invalidity Contentions attached as Exhibit 12.

Respectfully submitted,

By:

Dated: October 20, 2026

/s/R. Joseph Trojan

R. Joseph Trojan
TROJAN LAW OFFICES, P.C.
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348
Attorneys for Defendant
SHARKROAD, INC.

## L.R. 11-6.2. CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Sharkroad, Inc., certifies that this brief contains 3025 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 20, 2026

/s/R. Joseph Trojan
R. Joseph Trojan
Attorneys for Defendant
SHARKROAD, INC.

TROJAN LAW OFFICES
BEVERLY HILLS

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2026, I filed the foregoing with the Court's CM/ECF system, which will cause it to be served electronically upon all counsel of record.

/s/R. Joseph Trojan
R. Joseph Trojan

TROJAN LAW OFFICES
BEVERLY HILLS