Sa'id Vakili, Esq. (SBN: 176322)
vakili@vakili.com
Craig McLaughlin, Esq. (SBN: 182876)
craig@vakili.com
Jason C. Ming, Esq. (SBN: 219745)
jason@vakili.com
Stephen P. Hoffman, Esq. (SBN: 287075)
hoffman@vakili.com
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010-2822
**213/380-6010** | Fax: 213/380-6051

*Counsel for DNA Specialty, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

**DNA SPECIALTY, INC., a California Corporation,**

**Plaintiff/Counterclaim Defendant,**

**v.**

**SHARKROAD, INC., a California Corporation,**

**Defendant/Counterclaimant.**

**CASE NO.: 2:25-cv-10379-MWC (RAOx)**

[*Hon. Michelle Williams Court*]

**PLAINTIFF DNA SPECIALTY, INC.'S OPPOSITION TO SHARKROAD, INC.'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS**

**Hearing Date:** December 4, 2026
**Time:** 1:30 P.M.
**Place:** Courtroom 6A
Felicitas and Gonzalo Mendez
United States Courthouse
350 W 1st Street
Los Angeles, CA 90012

## I. INTRODUCTION

In its Motion for Leave to Amend ("Motion"), Sharkroad requests leave to allow several additions to its Invalidity Contentions served on June 22, 2026. DNA does not oppose the corrections Sharkroad seeks for NPL 21 and 22, but does oppose leave to add NPL 23, NPL 24 and the entity status change to its already improper inequitable conduct contentions. Sharkroad lacks the necessary evidence of diligence and/or authority to support full grant of its Motion as will be discussed in turn below.

## II. LEGAL STANDARDS

Amending invalidity contentions "may be made only by order of the Court upon a timely showing of good cause." [Dkt. #11, S.P.R. 3-6.] One example, according to the Rule, could be the "[r]ecent discovery of *material*, prior art despite earlier diligent search." [Dkt. #11, S.P.R. 3-6(b).] (Emphasis added).

The good-cause inquiry focuses first on the moving party's diligence and then on prejudice against the non-moving party. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366- 68 (Fed. Cir. 2006). Diligence has two phases: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Spex Techs., Inc. v. Kingston Tech. Corp.*, No. 8:16-cv-01790-JVS (DFMx), 2020 WL 2527045, at *3 (C.D. Cal. Mar. 2, 2020) (quoting *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013)). Concerning the first phase, "[t]he critical issue is not *when* [the party seeking to amend] discovered [the] information, but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 109063, at *4 (N.D. Cal. Jan. 9, 2020) (alteration in original) (emphasis in original) (quoting *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010)).

The party seeking to amend bears the burden of establishing diligence. *Polaris PowerLED Techs., LLC v. VIZIO, Inc.*, No. SACV181571JVSDFMX, 2020 WL

1060365, at *1 (C.D. Cal. Jan. 22, 2020). "If the Court finds that the moving party acted diligently, it 'then considers whether there would be undue prejudice to the non-moving party.'" *Pensmore Reinforcement Tech., LLC v. Cornerstone Mfg. and Distrib., Inc.*, 674 F. Supp. 3d 781, 787 (C.D. Cal. 2023) (quoting *Apple Inc. v. Samsung Elecs. Co.*, No. CV 12-00630 LHK, 2012 WL 5632618, at *2 (N.D. Cal. Nov. 15, 2012)). Materiality cannot displace the diligence requirement. S.P.R. 3-6(b). "[I]f the moving party was not diligent, the inquiry should end." *Apple Inc. v. Samsung Electronics Co. Ltd.*, No. 12-cv-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 91450, 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013). *See also Contour IP Holding*, 2020 WL 109063, at *5 (declining to analyze prejudice where diligence was not shown).

## III. ANALYSIS

### A. Sharkroad Lacks Evidence to Support Both Prongs of the Diligence Required for Leave, Possessed DNA's Catalog Before DNA Produced It and Fails to Differentiate DNA's "Twisted Spoke" from Its Other "Prior Art Products"

Sharkroad seeks leave to add to its Invalidity Contentions, an abbreviated "Twisted Spoke" from the Twisted Spoke wheel shown in DNA's 2021 catalog. [Dkt. #54-5, ID #:1130.] (Compare NPL 23 of Sharkroad's proposed Invalidity Contentions where Sharkroad omits both ends of the spoke including the bent end that attaches to the hub flange as it does in many of its cumulative Prior Art Products. [Dkt. #54-15, ID #: 1313:15-19]. See Sharkroad's proposed Amended Invalidity Contentions - NPL Nos. 1-5, 6 (ends omitted), 7-12, 14, 15, 17-19, 21, 22-23 (ends omitted) and 24.) [Dkt. #54-15, ID #: 1286-1313].) Edits notwithstanding, Sharkroad lacks adequate evidence of diligence.

#### 1. Sharkroad Lacks Adequate Evidence of Diligence Before It Served Its Invalidity Contentions

In its Motion, Sharkroad omits the full time period it had to discover DNA's 2021 catalog. According to Sharkroad on Aug. 3, 2026, the catalog was "publicly displayed"

and on the internet. [Dkt. #36, ¶ 87.] The Motion omitted the fact that DNA filed the original Complaint on Oct. 28, 2025, asserting infringement of the very patent that remained in DNA's Amended Complaint.

Sharkroad also omitted mention that it was on notice of DNA's patent infringement claim since at least as early as Sharkroad's counsel's own letter to DNA's counsel, dated November 12, 2025, requesting dismissal of the original Complaint. [Decl. Craig McLaughlin, Ex. 1.] The Invalidity Contentions weren't served until June 22, 2026, a period of 7 months and 10 days thereafter.[1]

Sharkroad also omits mention that it *produced a copy of the catalog to DNA with its own Bates numbers on July 24, 2026*. [Decl. Craig McLaughlin, Ex. 2.] Sharkroad provides no evidence of when or how it obtained the catalog or what search efforts were undertaken to try and locate it. No evidence has been submitted as to whether Sharkroad "*could have* discovered it earlier had it acted with the requisite diligence." *Contour IP Holding, LLC*, No. 3:17-CV-04738-WHO, 2020 WL 109063, at *4; *Deckers Outdoor Corp. v. Wal-Mart Stores, Inc.*, No. 2:20-cv-09521-FLA (Ex), 2024 U.S. Dist. LEXIS 251981, at *5 (C.D. Cal. Nov. 4, 2024) ("Defendant does not provide any specific facts regarding when it learned of the two articles in question, or why it could not reasonably have discovered these articles at an earlier date."); *Pacem IP Holdings, LLC v. Maxim Lighting International, Inc.*, Case No. 2:25-cv-09702 MWC-BFM, Dkt. #46 at 5 (C.D. Cal. Aug. 13, 2026) ("Defendant fails to establish diligence in discovering the basis for amendment, . . ."); *British Telecomms. PLC v. IAC/InterActiveCorp*, Civil Action No. 18-366-WCB, 2020 U.S. Dist. LEXIS 99888, at *11-12, 2020 WL 3047989 (D. Del. June 8,

[1] Sharkroad's CEO and agent for service of process Xingbo Yao had previously been served at its corporate address listed with the California Secretary of State at the time with a cease-and-desist letter from DNA's counsel on June 16, 2025, which included notice of allowance, the application and drawings that became the patent-in-suit shortly thereafter [Dkt. #12-1, Ex. 2]; [Decl. Craig McLaughlin, Ex. 3].

2020) ("IAC offers no explanation at all for its failure to discover the Welsh reference in time to include Welsh in its initial invalidity contentions.").

Sharkroad has submitted no evidence of when it uncovered the catalog, how it did so, nor its efforts to search for it since becoming aware of DNA's infringement claim at least as early as November 12, 2025. In other words, proof of "diligence in discovering the basis for amendment" is wanting. Sharkroad simply ignores this diligence requirement to show "good cause" for leave to amend.

**2. Sharkroad Lacks Adequate Evidence of Diligence After It Uncovered the Catalog**

Here too, Sharkroad submits no evidence on how it exercised adequate "diligence in seeking amendment once the basis for amendment has been discovered." *Spex Techs., Inc.*, No. 8:16-cv-01790-JVS (DFMx), 2020 WL 2527045, at *3. Sharkroad glosses over this requirement. In conclusory fashion, Sharkroad's counsel swears merely that: "Sharkroad continued investigating prior-art products after serving its original Invalidity Contentions." [Dkt. #54-3, ¶ 7.] But Sharkroad lacks adequate evidence of what it did once it obtained the catalog for itself.

While knowingly in possession of the catalog since at least as early as July 24, 2026, Sharkroad did not provide notice to DNA that it sought to add the "Twisted Spoke" from DNA's 2021 catalog to its Invalidity Contentions until September 25, 2026 (63 days later), and did not move for leave to amend until almost an additional month later on October 20, 2026 (25 more days). "IAC's delay of a month and a half between discovering the Welsh reference and moving to supplement its invalidity contentions did not reflect an appropriate degree of urgency on its part." *British Telecomms. PLC*, Civil Action No. 18-366-WCB, 2020 U.S. Dist. LEXIS 99888, at *12, 2020 WL 3047989 (D. Del. June 8, 2020).

Sharkroad diverts from its failure to meet the two evidentiary requirements of diligence by focusing instead on a discovery skirmish regarding when DNA produced *the*

*same catalog that Sharkroad already had in its possession*. Thereafter, Sharkroad insisted that DNA had a separate obligation to reproduce the catalog to Sharkroad, which DNA ultimately did with DNA's own Bates numbers on August 17, 2026. [Dkt. #54-5, Ex. 2.] Sharkroad did not rely on DNA as the exclusive source of the catalog that was publicly available.

Sharkroad argues that: "The 2021 Catalog and DNA's admissions are material to Sharkroad's Invalidity Contentions. DNA admitted that the 2021 Catalog is genuine, was authored and published by DNA, and depicts the DNA 'Twisted' spoke." [Memo. at 6:19-21.]

However, DNA's timely responses on Aug. 24, 2026, to Sharkroad's Requests for Admissions about the catalog do not help Sharkroad here. Sharkroad's own possession of the catalog (at some undisclosed date prior to producing it) provided an earlier basis to seek leave. Waiting for DNA's response to the Requests was unnecessary and only extended Sharkroad's lack of diligence before "seeking amendment once the basis for amendment has been discovered." *Spex Techs., Inc.*, No. 8:16-cv-01790-JVS (DFMx), 2020 WL 2527045, at *3 (C.D. Cal. Mar. 2, 2020).

**3. DNA's "Twisted Spoke" is Cumulative of Other References and Doesn't Add Value to Sharkroad's Current Invalidity Contentions and Thus Is Not Material Here**

Sharkroad doesn't even attempt to argue that there is any substantive difference between DNA's "Twisted Spoke" and the many other bent spoke Prior Art Products it has included in its existing Contentions. In other words, the "Twisted Spoke" from DNA's 2021 catalog adds nothing to the existing Contentions that isn't already present in several of Sharkroad's other Prior Art Products. Sharkroad provides no evidence that it would cost Sharkroad anything if NPL 23 was not allowed. "IAC did not otherwise demonstrate in what ways Welsh was a superior reference to the other references already of record." *British Telecomms. PLC*, Civil Action No. 18-366-WCB, 2020 U.S. Dist.

LEXIS 99888, at *15, 2020 WL 3047989 (D. Del. June 8, 2020) (motion for leave to amend denied).

Sharkroad's proposed Amended Invalidity Contentions make this clear. Its invalidity analysis therein does not cite DNA's "Twisted Spoke" (NPL 23) as unique among the many other bent spoke Prior Art Products. And Sharkroad's anticipation analysis of NPL 23 just states: "With respect to NPL 23." [Dkt. #54-15, ID #:1313 at 15-19.] Like the other bent spoke, partially twisted Prior Art Products, it clearly does not anticipate the spiral spoke of the '968 Patent.

As for obviousness, it is Buchanan's partially twisted bent spoke that is featured as a primary reference (NPL 21), while DNA's "Twisted Spoke" is buried equally among the others and is not distinguished from Buchanan or the others in any way. (See Sharkroad's proposed Amended Invalidity Contentions - NPL Nos. 1-5, 6 (ends omitted), 7-12, 14, 15, 17-19, 21, 22-23 (ends omitted) and 24.) [Dkt. #54-15, ID #: 1286-1313.] Sharkroad fails to explain how DNA's bent partially "Twisted Spoke" would not rise or fall with the many other bent spoke Prior Art Products in its invalidity analysis.

DNA's "Twisted Spoke" is cumulative of other Prior Art Products and, according to S.P.R. 3-6(b), is therefore not *material* here, warranting denial of the Motion.

For the reasons set forth above, good cause for leave has not been established.

**B. The NPL 24 Reference Fails the Good Cause Requirements for Leave**

"About October 3, 2026, Sharkroad discovered the additional twirled-spoke product identified as NPL 24 in the proposed Amended Invalidity Contentions." [Dkt. #54-3, ¶ 7.] Sharkroad concedes that the reference was available at least on "an archived webpage was dated August 14, 2015 and customer service reviews dated as early as March 26, 2010." [Memo. at 7:17-19.]

The Motion for leave to amend to add NPL 24 suffers from a similar lack of evidence of diligence as set forth above. Sharkroad submits no evidence as to why it could not have discovered NPL 24 with reasonable diligence before its Invalidity

Contentions were served on June 22, 2026. "Defendant does not explain why it could not have discovered the Fiene and Su patents with reasonable diligence prior to the April 13, 2026 deadline, notwithstanding the use of an AI tool." *Pacem IP Holdings, LLC*, Case No. 2:25-cv-09702 MWC-BFM, Dkt. #46 at 4-5.

Furthermore, Sharkroad fails to establish that adding NPL 24 is necessary. "NPL 24 concerns a twirled-spoke product substantially similar to the claimed design and *the same category of prior-art products already addressed in Sharkroad's original Invalidity Contentions*." [Memo. at 10:20-23.] (Emphasis added.)

Like NPL 23, Sharkroad fails to submit evidence to distinguish NPL 24 from its other Prior Art Products. "IAC did not otherwise demonstrate in what ways Welsh was a superior reference to the other references already of record." *British Telecomms. PLC*, Civil Action No. 18-366-WCB, 2020 U.S. Dist. LEXIS 99888, at *15, 2020 WL 3047989 (D. Del. June 8, 2020) (motion for leave to amend denied). Accordingly, given the many other Prior Art Products that already are set forth in its existing Contentions, Sharkroad does not explain how it would be harmed by denial of the Motion with respect to NPL 24. For all of the reasons set forth above, good cause for leave has not been established.

### C. There Is No Basis to Include an Inequitable Conduct Contention to the Invalidity Contentions, Let Alone to Include a Voluntary and USPTO-Accepted Micro-Entity Status Correction

In its existing Invalidity Contentions, Sharkroad improperly included assertion of inequitable conduct. It resembles Count I of its Counterclaim. [Dkt. #36.] Sharkroad now seeks leave to amend to compound its error to add to its Invalidity Contentions, "out of an abundance of caution," a voluntarily corrected entity status by DNA which was paid in August 2026 to the USPTO and accepted. [Dkt. #54-18, ID #:1338.] Sharkroad, however, fails to support its request with any authority that inequitable conduct in general is authorized by S.P.R. 3-3 or germane to invalidity at all. As previously explained to Sharkroad's counsel prior to the "meet and confer," inequitable conduct can only result

in unenforceability, but not invalidity, and thus does not belong in its Invalidity Contentions and should be stricken. [Dkt. #54-20, ID #1352.]

Inequitable conduct is an equitable defense, unlike invalidity which is statutory in nature. "The Supreme Court has discussed inequitable conduct, as a defense to a claim of patent infringement, in terms of enforceability, *see, e.g., Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814-16, 89 L. Ed. 1381, 65 S. Ct. 993 (1945)." *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1560 (Fed. Cir. 1984). "Focusing on the effect of inequitable conduct as a defense, we conclude that it results in unenforceability." *Id.*

Furthermore, Sharkroad was asked to provide authority that could specifically support an inequitable conduct claim for the voluntary correction from "micro-entity status" to "small entity status," particularly in view of *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-92 (Fed. Cir. 2011) (*en banc*) that requires "but-for" materiality, clear and convincing evidence of an intent to deceive and in view of the fact that the appropriate corrective fees were paid and accepted by the USPTO. [Dkt. #54-20, ID #1352.] No such authority ever materialized. Sharkroad also provides no facts supporting its conclusion that Mr. Lehman's fee status error could constitute inequitable conduct and no facts showing that the voluntary entity status correction was not excused.

> If status as a micro entity is established in good faith in an application or patent, and fees as a micro entity are paid in good faith in the application or patent, and it is later discovered that such micro entity status either was established in error, or that the Office was not notified of a loss of entitlement to micro entity status as required by paragraph (i) of this section through error*, the error will be excused upon compliance with the separate submission and itemization requirements of paragraph (k)(1) of this section and the deficiency payment requirement of paragraph (k)(2) of this section*.

37 CFR 1.29(k) (emphasis added).

Sharkroad has not sought leave to add such allegations to its Counterclaim, apparently preferring that they be improperly added here. DNA's refusal to waive its improper addition was warranted.

*Assuming arguendo* that inequitable conduct belongs in Invalidity Contentions, Sharkroad lacks evidence of adequate diligence for leave to amend them. Each of the applications for patent Sharkroad lists to support a mistaken "micro-entity" assertion was available in the public record long before this case was filed. [Dkt. #54-3, ¶¶ 9-14.] Sharkroad presents no evidence of entity certification for five of the six asserted patent applications, nor why, with reasonable diligence, it could not locate those applications long before it did. DNA Specialty, Inc. was shown as applicant or assignee on the face page of each. [Dkt. #54-9 through 14.] "Defendant does not explain why it could not have discovered the Fiene and Su patents with reasonable diligence prior to the April 13, 2026 deadline, notwithstanding the use of an AI tool." *Pacem IP Holdings, LLC*, Case No. 2:25-cv-09702 MWC-BFM, Dkt. #46 at 4-5. Sharkroad also does not provide evidence about what efforts it made to locate the applications, and why it waited beyond service of its Invalidity Contentions to seek admissions from DNA about Lehman's name.

For the reasons set forth above, good cause for leave has not been established.

**D. DNA Does Not Oppose Correction of NPL 21 and NPL 22**

Although Sharkroad submits no evidence of reasonable diligence as to why the purported errors were not discovered earlier than here near the end of discovery, DNA does not oppose leave to amend either of these two proposed corrections.

**E. DNA Will Suffer Prejudice by Grant of the Motion**

Lacking adequate evidence of diligence here, there should be no need to inquire about prejudice to DNA. *Apple Inc.*, No. 12-cv-0630-LHK (PSG), 2013 U.S. Dist. LEXIS 91450, 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013). *See also Contour IP Holding*, 2020 WL 109063, at *5. Nonetheless, DNA would be prejudiced by a grant of

the Motion to include NPL 23, NPL 24 or the proposed entity correction status.

The hearing date of the instant Motion is the same date as the close of fact discovery. [Dkt. #26 at 3.] If granted, DNA will be precluded from noticing, preparing for and deposing any Sharkroad witness about such added information. Otherwise, discovery may need to be reopened and Sharkroad has not made such a request. "*In re Milk Prods. Antitrust Litig.*,195 F.3d 430, 438 (8th Cir. 1999) (holding the need to reopen discovery is 'precisely the sort of prejudice that justifies denial of a motion to amend under Rule 15(a).')." *Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 U.S. Dist. LEXIS 144392, at *9 (N.D. Cal. May 3, 2010) (motion for leave to amend invalidity contentions denied). Should leave be granted to amend to add NPL 23, 24 or the entity status correction, it should also include a limited reopening of discovery at Sharkroad's expense.

Should the Motion for leave be granted as to NPL 23, 24 or the change in entity status, DNA would be prejudiced by having to spend time arguing at later stages that the added prior is immaterial and cumulative of its Prior Art Products, as they do not contribute to a different invalidity analysis than Sharkroad currently presents. Similarly, allowing the entity status correction to be added to Invalidity Contentions would result in more time arguing and briefing that impropriety.

## IV. CONCLUSION

For all the above reasons, Sharkroad's Motion should be denied in its entirety.

Respectfully submitted,

**VAKILI & LEUS, LLP**

Dated: November 13, 2026

By: */s/ Craig McLaughlin*
Craig McLaughlin, Esq.
*Counsel for DNA Specialty, Inc.*

**CERTIFICATION OF COMPLIANCE**

The undersigned counsel of record for DNA Specialty, Inc., hereby certifies that according to the Word program count feature, this Memorandum contains 3,256 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 13, 2026 By: */s/ Craig McLaughlin*
*Counsel for DNA Specialty, Inc.*

**CERTIFICATE OF SERVICE**

*DNA Specialty, Inc. v. Sharkroad, Inc., et al.*
*USDC C.D. Cal. Case No.: 2:25-CV-10379-MWC (RAOx)*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On November 13, 2026, I served the foregoing document described as **PLAINTIFF DNA SPECIALTY, INC.'S OPPOSITION TO SHARKROAD, INC.'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS** on all interested parties in this action at the addresses listed below, as follows:

R. Joseph Trojan, Esq.
*trojan@trojanlawoffices.com*
Dylan C. Dang, Esq.
*dang@trojanlawoffices.com*
Francis Wong, Esq.
*wong@trojanlawoffices.com*
Mehdi Poursoltani, Esq.
*poursoltani@trojanlawoffices.com*
**TROJAN LAW OFFICES, P.C.**
9250 Wilshire Boulevard, Suite 325
Beverly Hills, California 90212
**310/777-8399** | Fax: 310/777-8348

*Counsel for Defendant and Counterclaimant Sharkroad, Inc.*

I hereby certify that on the 13th day of November 2026, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

Executed on November 13, 2026, in Los Angeles, California.

/s/ *Jason C. Ming*
Jason C. Ming