R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Francis Wong, CA Bar No. 284,946
wong@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348

Attorneys for Defendant SHARKROAD, INC.

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DNA SPECIALTY, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SHARKROAD, INC., a California Corporation and DOES 1-50, Inclusive,<br><br>Defendants. | **Case No: 2:25-cv-10379-MWC(RAOx)**<br><br>**DEFENDANT SHARKROAD, INC.'S OPPOSITION TO DNA'S EX PARTE APPLICATION FOR RELIEF FROM ORDER STRIKING OPPOSITION (DKT. 67)**<br><br>**Hon. Michelle Williams Court**<br>**United States District Judge** |

TROJAN LAW OFFICES
BEVERLY HILLS

Defendant Sharkroad, Inc. ("Sharkroad") respectfully submits this opposition to Plaintiff DNA Specialty, Inc.'s ("DNA") *Ex Parte* Application for Relief from Order Striking Opposition (Dkt. 67) and for Leave to File Opposition With Corrected AI Declaration (Dkt. 70, the "Application" or "App.").

## I. INTRODUCTION

DNA asks the Court to undo, on an emergency basis, the very remedy the Court chose. The Court struck DNA's Opposition "WITHOUT LEAVE TO REFILE." Dkt. 67 at 2. DNA now asks for leave to refile what it calls "the same Opposition." App. at 1:18–19. That is a motion for reconsideration in all but name, and it fails every standard that applies. DNA admits the violation was its own: DNA states that it "acknowledges the omission and takes responsibility for it." *Id.* at 1:9. A party that concedes it created the crisis cannot obtain *ex parte* relief, cannot point to new facts or law under Local Rule 7-18, and cannot recast a court-ordered sanction as a missed deadline under Rule 6(b). Nor did DNA lack warning. The November 20 Order is the third time in five months that the Court has had to address DNA's failure to follow its rules, and the second time on this very requirement.

In July 2026, the Court found that DNA had stopped engaging in the Local Rule 7-3 conference process and that its "conduct does not promote judicial economy, and the Motion may be stricken on that basis." Dkt. 35 at 6. The Court nonetheless reached the merits, cited DNA's "lackluster engagement with the meet and confer process," but warned, "Plaintiff is CAUTIONED to adhere to the applicable rules going forward." *Id.* at 6–7 (capitalization in original).

In September 2026, DNA filed a motion to dismiss and a request for judicial notice without any AI declaration at all. The Court quoted Standing Order ¶ 1a to DNA verbatim, including the Standing Order's warning that "[f]ailure to submit a declaration attesting to the use or non-use of AI may result in the Court striking the filing," but "decline[d] to strike the pleadings on this basis" and instead ordered DNA to cure. Dkt. 42 at 1–2. The Court also found that DNA's filings violated Standing



TROJAN LAW OFFICES
BEVERLY HILLS

Order ¶ 8(d) and warned that "[s]ubsequent failures to comply with this requirement will result in the Court striking the relevant pleading without further warning." *Id.* at 2 n.1. Only two months after the warning, DNA filed an AI declaration that omitted the very attestation the Court had quoted to it, and the Court struck the Opposition "WITHOUT LEAVE TO REFILE." Dkt. 67 at 2. DNA now asks the Court to change its mind.

DNA filed this Application even though Sharkroad warned it, before filing, that the Application was procedurally improper. After reviewing DNA's draft papers, Sharkroad's counsel wrote that "DNA's motion is styled as a motion for relief, but in substance it is a motion for reconsideration governed by Local Rule 7-18," and quoted the rule in full. Dkt. 70-1 at 12/13. DNA did not respond to that point; DNA's counsel instead asked whether Sharkroad would "stipulate to the cure that DNA is seeking." *Id.* at 11–12/13. Sharkroad declined, explaining that the parties have no authority to stipulate around a remedy the Court itself imposed. *Id.* at 11/13. DNA filed anyway, asserting in the Application that it "is not a motion for reconsideration." App. at 1:27. That label cannot change the substance of what DNA seeks.

The Application fails for several independent reasons. *First*, the Court has already decided the question DNA presents. *Second*, DNA cannot satisfy *Mission Power* because, by its own admission, it created the very crisis from which it seeks relief. *Third*, whatever its label, the Application is a motion for reconsideration that cannot satisfy Local Rule 7-18, and neither Rule 6(b) nor Rule 54(b) supplies a workaround. *Fourth*, granting the Application would prejudice Sharkroad. *Finally*, DNA once again has not followed the rules: the Application omits the opposing-counsel information Local Rule 7-19 requires and was not served as this Court's Standing Order directs. Any one of these reasons is sufficient to deny the Application.

//

//

//



TROJAN LAW OFFICES
BEVERLY HILLS

## II. ARGUMENT

### A. The Court Has Already Decided the Question DNA Presents

Before reaching the *Mission Power* factors, the Application fails for a more basic reason: the November 20 Order decided not only that DNA's declaration was deficient, but also the consequence. When DNA first violated the AI-declaration requirement, the Court allowed a cure. Dkt. 42 at 2. Faced with a second violation, after it had quoted to DNA the exact language DNA later omitted, the Court chose a different remedy: no refiling. Dkt. 67 at 2. That choice was squarely within the Court's authority. As the Ninth Circuit has explained, district courts have "considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002). The Ninth Circuit has also held that a district court's inherent power to control its docket "includes the power to strike items from the docket as a sanction for litigation conduct." *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

DNA's request is the mirror image of that Order. DNA asks the Court to "[m]odify the November 20, 2026 order (Dkt. 67) to permit DNA to file . . . the Opposition (Dkt. 65)." App. at 6:27–7:1. DNA says it "asks only for an opportunity to comply." *Id.* at 4:16–17. But DNA already had that opportunity, along with an explicit warning. DNA calls the Order "the only barrier" to its Opposition. *Id.* at 6:23–24. It is not. The barrier is DNA's own failure to follow a Standing Order the Court had already quoted to it; the Order simply imposes the consequence the Standing Order announced. As the Ninth Circuit has warned, "[p]arties must understand that they will pay a price for failure to comply strictly with scheduling and other orders." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (explaining that a scheduling order "is not a frivolous piece of paper, idly



TROJAN LAW OFFICES
BEVERLY HILLS

entered, which can be cavalierly disregarded by counsel without peril" (citation omitted)).

DNA's resort to *ex parte* procedure to undo that ruling only compounds the problem. As Judge Rymer, then of this District, explained:

> Ex parte applications throw the system out of whack. **They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.** They demand priority consideration, where such consideration is seldom deserved.

*In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) (emphasis added; footnote omitted). The Court should exercise its discretion and deny the Application.

**B. DNA Cannot Satisfy *Mission Power***

This Court's Standing Order makes clear that "[e]x parte applications are solely for extraordinary relief, are rarely granted, and should be used with discretion." Standing Order, ¶ 13. As the court in *Mission Power* held, the movant must show that its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). DNA can show neither.

DNA's own concessions defeat the second prong. DNA "**acknowledges the omission and takes responsibility for it**," App. at 1:9 (emphasis added), and concedes that "[t]he Standing Order's text is clear, and the omission is counsel's responsibility." *Id.* at 5:24–25. A party that admits it caused the crisis cannot show, as *Mission Power* requires, that it is "without fault in creating the crisis." 883 F. Supp. at 492. And DNA is bound by its counsel's omission. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962) (holding that a party "cannot now avoid the



TROJAN LAW OFFICES
BEVERLY HILLS

consequences of the acts or omissions of this freely selected agent"); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–97 (1993) (clients are accountable for the acts and omissions of their attorneys).

Nor was DNA's neglect excusable. DNA calls the omission "an isolated drafting error." App. at 5:23. It was neither isolated nor excusable. It was DNA's second violation of the same requirement, after the Court had quoted the omitted language to DNA and warned that noncompliance could result in striking. Dkt. 42 at 1. It also followed the Court's July caution to "adhere to the applicable rules going forward." Dkt. 35 at 6. Tellingly, the Application does not mention the September order at all.

DNA also had a full week to notice and correct the defect before the Court acted. It did not. The Supreme Court has made clear that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392. An omission from a requirement DNA concedes is "clear," App. at 5:24, after a prior warning on the same point, is not the unusual case. Nor was the omitted sentence a technicality. DNA attests that AI was used in drafting "each portion" of its Opposition. Dkt. 70-1 at 9/13 ¶ 4. For such a filing, the sworn attestation that counsel reviewed the source material and verified the AI-generated content is the substance of the rule. DNA plainly knows how to comply when it wants something from the Court: the AI declaration accompanying this Application, which DNA's counsel attests was likewise drafted with AI in every portion, contains the full attestation. Dkt. 70-2 ¶¶ 4–5.

DNA's claimed urgency is likewise self-created. DNA argues there is "no time for a noticed motion" before the December 4 hearing. App. at 1:27–28. But the timing problem exists only because DNA's own filing did not comply with the Standing Order. A party cannot create an emergency through its own noncompliance and then use it, in the words of the *Mission Power* court, to "go to the head of the line in front of all other litigants and receive special treatment." 883 F. Supp. at 492.



TROJAN LAW OFFICES
BEVERLY HILLS

Finally, DNA faces no irreparable prejudice. Losing the Opposition is the consequence the Standing Order announced for noncompliance, and one the Local Rules contemplate. *See* L.R. 7-12. DNA argues that the Court will otherwise decide the Motion on a "one-sided record." App. at 2:4–5. But DNA acknowledges that "the movant bears the burden of showing good cause." *Id.* at 6:14–16. Striking DNA's Opposition does not relieve Sharkroad of that burden, and the Court can decide whether leave to amend is appropriate on Sharkroad's moving papers.

**C. The Application Is a Motion for Reconsideration That Cannot Satisfy Local Rule 7-18**

Whatever DNA calls it, DNA's request to "[m]odify" an order the Court has already entered is a request for reconsideration. Local Rule 7-18 governs any "motion for reconsideration of an Order on any motion or application," and permits reconsideration "only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." L.R. 7-18; *see In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1031, 1036 (C.D. Cal. 2013).

DNA's invocation of Rule 54(b), App. at 2:1–2, changes nothing. That the Court *may* revise an interlocutory order does not displace the limits Local Rule 7-18 places on requests that it do so. As the Ninth Circuit has explained, reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources," and it "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).

TROJAN LAW OFFICES
BEVERLY HILLS

No ground under Local Rule 7-18 exists here. DNA's counsel attests that the review occurred "[b]efore the Opposition was filed." Dkt. 70-1 at 9/13 ¶ 5. By DNA's own account, then, that fact existed and was known to DNA on November 13. It is not a fact that, in the words of Local Rule 7-18(a), "could not have been known" through reasonable diligence, nor one that emerged after the Order, L.R. 7-18(b). It is exactly the kind of evidence that the Ninth Circuit has said "could reasonably have been raised earlier" and therefore cannot support reconsideration. *Kona*, 229 F.3d at 890. And the Court quoted DNA's original declaration verbatim before striking the Opposition, so there was no failure to consider material facts. Dkt. 67 at 2; *see* L.R. 7-18(c).

DNA argues that "[t]he Court did not find any inaccuracy in the Opposition." App. at 1:9–10. That is beside the point. The Standing Order does not condition striking on a finding of inaccuracy; it warns that "[f]ailure to submit a declaration attesting to the use or non-use of AI may result in the Court striking the filing." Dkt. 67 at 1 (quoting Standing Order ¶ 1a). The Standing Order requires a sworn attestation at the time of filing precisely because the Court cannot independently verify every AI-generated citation.

**D. Rule 6(b) Does Not Apply, and DNA Cannot Show Excusable Neglect in Any Event**

Rule 6(b)(1)(B) does not help DNA. *See* App. at 2:1–2. By its terms, Rule 6(b)(1) applies "[w]hen an act may or must be done within a specified time," and subsection (B) permits an extension only where the party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). DNA did not fail to act within a specified time; it filed its Opposition on the day it was due. App. at 2:11–13. DNA's obstacle is not an expired deadline but an order striking its filing and expressly denying leave to refile it. Rule 6(b) extends time; it does not authorize a party to override a court order. And even if the *Pioneer* factors applied, the factor the Supreme Court described as "the reason for the delay, including whether it was within the

TROJAN LAW OFFICES
BEVERLY HILLS

reasonable control of the movant," *Pioneer*, 507 U.S. at 395, cuts decisively against DNA: the omission was admittedly within its counsel's control and concerned a requirement the Court had already quoted to DNA. *See* Section II.B, *supra*.

**E. Granting the Application Would Prejudice Sharkroad**

If the Court were to grant the Application, DNA's proposed schedule would reopen closed briefing and force Sharkroad to prepare a reply over the Thanksgiving holiday, on the eve of the December 4 hearing and the close of fact discovery. App. at 5:11–12, 6:12–14, 7:3. DNA asserts that Sharkroad "could have replied" before its November 20 deadline. App. at 2:22–24. But the Court struck the Opposition at 3:08 p.m. that day. From then on, there was no opposition to reply to, and Sharkroad was entitled to rely on the Order. In any event, whether Sharkroad filed a reply has no bearing on whether DNA complied with this Court's Standing Order.

**F. DNA's Application Again Disregards the Rules Governing *Ex Parte* Applications**

Finally, even if *ex parte* relief were otherwise appropriate, the Application repeats the pattern that led to the Order. Local Rule 7-19 requires that an *ex parte* application "be accompanied by a memorandum containing, if known, the name, address, telephone number and e-mail address of counsel for the opposing party." L.R. 7-19. DNA's memorandum contains none of that information. *See* App. at 1–7. This Court's Standing Order is explicit: "*Ex parte* applications that fail to conform to Local Rule 7-19 will not be considered, except on a specific showing of good cause." Standing Order, ¶ 13. The Standing Order further provides that "[t]he applicant must serve the application by facsimile, email, or personal service, even if electronic service is effected under Local Rule 5-3.2.1." *Id.* DNA quotes that very requirement in its Application, App. at 3–4, yet DNA's own papers show that it did not comply. DNA's counsel attests that the Application was emailed to Sharkroad's counsel "before the filing," Dkt. 70-1 ¶ 7, and DNA's certificate of service states that DNA served the filed Application only "via electronic transmission through the



TROJAN LAW OFFICES
BEVERLY HILLS

CM/ECF system." Dkt. 70 at 10/10. DNA makes no showing of good cause, specific or otherwise, for either deficiency. That alone warrants denial.

## III. CONCLUSION

The Court decided this issue on November 20 after warning DNA twice. The Application, which seeks reconsideration without satisfying Local Rule 7-18, seeks *ex parte* relief from a crisis of DNA's own making, and itself fails to comply with Local Rule 7-19 and this Court's Standing Order, gives the Court no reason to revisit that decision. Sharkroad respectfully requests that the Court deny the Application.

Respectfully submitted,

By:

Dated: November 24, 2026

/s/R. Joseph Trojan

R. Joseph Trojan
Dylan C. Dang
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile: (310) 777-8348
Attorneys for Defendant
SHARKROAD, INC.

TROJAN LAW OFFICES
BEVERLY HILLS